

1 | SEYFARTH SHAW LLP
Dana L. Peterson (State Bar No. 178499)
2 | Andrew M. McNaught (State Bar No. 209093)
560 Mission Street, Suite 3100
3 | San Francisco, California 94105
Telephone: (415) 397-2823
4 | Facsimile: (415) 397-8549

5 | Attorneys for Defendants KAISER FOUNDATION HOSPITALS,
GEORGE HALVORSON, BETTIE COLES, RICHARD SIMMS,
6 | PATRICIA HERNANDEZ, BRENDA ROBERTSON (erroneously sued as Brenda "Robinson"),
EARLENE PERSON, and YOLANDA CHAVEZ

7

8

9 | UNITED STATES DISTRICT COURT

10 | NORTHERN DISTRICT OF CALIFORNIA

11 | MARCELLA TRAN,                              USDC Case No. ___ 4384

12 |            Plaintiff,                       Superior Court of County of Alameda Case
                                                 No. HG 07329049
13 |    vs.

14 | GEORGE HALVORSON, CEO/CHAIRMAN,            **DEFENDANTS' NOTICE OF**
KAISER FOUNDATION HOSPITALS,                **REMOVAL OF CIVIL ACTION TO**
15 | BETTIE COLES, RICHARD SIMMS;              **UNITED STATES DISTRICT COURT**
PATRICIA HERNANDEZ; BRENDA
16 | ROBINSON, MILTON AQUINO; EARLENE
PERSON, YOLANDA CHAVEZ; SAL
17 | CURSIO and DOES 1 through 20, Inclusive,

18 |            Defendants.

19

20 |      **TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN**

21 | **DISTRICT OF CALIFORNIA**:

22 |      PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1441(a) and (b) and 1446,

23 | defendants KAISER FOUNDATION HOSPITALS, GEORGE HALVORSON, BETTIE

24 | COLES, RICHARD SIMMS, PATRICIA HERNANDEZ, BRENDA ROBERTSON, EARLENE

25 | PERSON, and YOLANDA CHAVEZ ("Defendants") hereby remove the above-captioned action

26 | from the Superior Court of California in and for the County of Alameda to the United States

27 | District Court for the Northern District of California.

28

1

1         1.    **JURISDICTION**    This Court has original jurisdiction over this action under

2    28 U.S.C. § 1331 because the action arises under the laws of the United States of America. In

3    support of this removal, Defendants make the following showing.

4         2.    Defendants are informed and believe that on or about June 4, 2007, plaintiff

5    MARCELLA TRAN ("Plaintiff") filed a Complaint for Damages ("Complaint") in the Superior

6    Court of California in and for the County of Alameda, titled "MARCELLA TRAN v. GEORGE

7    HALVORSON, CEO/CHAIRMAN, KAISER PERMANENTE (OAKLAND); BETTIE COLES,

8    RICHARD SIMMS, PATRICIA HERNANDEZ, BRENDA ROBINSON, MILTON AQUINO

9    EARLENE PERSON, YOLANDA CHAVEZ, SAL CURSIO and DOES 1 to 20, inclusive,"

10    Case No. HG 07329049. The Complaint purports to allege causes of action for (1) Employment

11    Discrimination under the California Fair Employment & Housing Act ("FEHA") based on Race,

12    National Origin, Age, and Physical Disability; (2) "Common Law" Employment Discrimination;

13    (3) Retaliation under the FEHA; (4) "Common Law" Retaliation; (5) Breach of Contract; (6)

14    Breach of the Covenant of Good Faith and Fair Dealing; (7) Failure to Prevent Discrimination

15    under the FEHA; (8) "Fraud and Deceit;" and (9) Harassment under the FEHA based on Race,

16    National Origin, Gender, and Physical Disability.

17         3.    Defendants were served with the Complaint on July 25, 2007. Defendants Milton

18    Aquino and Sal Cursio are not employees of defendant Kaiser Foundation Hospitals ("KFH")

19    and have not been served with summons and the Complaint. This Notice of Removal is filed

20    within 30 days of service of the Complaint on Defendants. Thus, removal is timely pursuant to

21    28 U.S.C. § 1446(b) and Federal Rule of Civil Procedure 6(a). *See also Murphy Bros., Inc. v.*

22    *Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999) (removal is timely if made within 30

23    days after complaint is served on defendant). Copies of all process, pleadings, notices and orders

24    served upon Defendants in this action, including the Complaint, are attached hereto as Exhibit A.

25         4.    This is a civil action of which this Court has original jurisdiction pursuant to 28

26    U.S.C. § 1331, and is one which may be removed to this Court by Defendants pursuant to 28

27    U.S.C. § 1441(a) and (b), in that it is a civil action which arises under the laws of the United

28    States of America.

1      5.      Plaintiff's claims arise out of her employment with, and termination from, KFH as
2  a janitor at a KFH facility in Oakland. Plaintiff had a number of documented poor performance
3  issues, culminating with her physical assault on a fellow KFH employee where Plaintiff slapped
4  her in the face in a KFH pharmacy on June 9, 2005 during a fight. The incident was reported to
5  and documented by Kaiser Security, as well as the Oakland Police Department, both of whom
6  responded to the scene. KFH terminated Plaintiff's employment days later, on or about June 17,
7  2005. As a janitorial employee of KFH, Plaintiff was covered by a master collective bargaining
8  agreement ("CBA") governing the terms and conditions of her employment. The agreement was
9  entered into by Kaiser and Plaintiff's collective bargaining representative, Health Care Workers'
10 Union, SEIU Local 250(the "Union"), a labor organization within the meaning of Section 301 of
11 the Labor Management Relations Act, 29 U.S.C. § 185 ("Section 301"). The CBA was in full
12 force and effect during the time periods relevant to the Complaint and governed Plaintiff's
13 employment with KFH. A Copy of the CBA is attached hereto as Exhibit B.

14     6.      Plaintiff alleges statutory claims under the FEHA for Discrimination (Complaint,
15 ¶¶ 14-21), Retaliation (Complaint, ¶¶ 25-28), Harassment (Complaint, ¶¶ 61-70), and Failure to
16 Prevent discrimination (Complaint, ¶¶ 49-52). She also purports to allege "common law" public
17 policy claims, sounding in tort, for Discrimination (Complaint, ¶¶ 22-24) and Retaliation (¶¶ 29-
18 31). She alleges another tort claim for "Fraud and Deceit." (Complaint, ¶¶ 53-60). Lastly,
19 Plaintiff alleges two contract claims, one for Breach of Contract (Complaint, ¶¶ 32-41), and one
20 for Breach of the Covenant of Good Faith and Fair Dealing (Complaint, ¶¶ 42-48).

21     7.      Plaintiff's claims are central to, inextricably intertwined with, and substantially
22 dependent upon an interpretation of the terms of the CBA which governed her employment.
23 Subsection (a) of Section 301 states:

24             Suits for **violation of contracts between an employer and a**
25             **labor organization** representing employees in an industry
               affecting commerce as defined in this chapter, or between any such
26             labor organizations, **may be brought in any district court of the**
               **United States having jurisdiction of the parties,** without respect
27             to the amount in controversy or without regard to the citizenship of
               the parties. (Emphasis added.)
28

                                            3

1   Therefore, her claims must necessarily require interpretation of the CBA. Because her lawsuit

2   alleges a "violation of [a] contract[] between an employer and a labor organization," this Court

3   has original jurisdiction.

4          8.     Plaintiff's claims address, concern, and pertain directly to rights and obligations

5   which arise from the CBA itself, and therefore cannot be evaluated without considering the

6   provisions of the CBA. Hence, the claims arise under, and are preempted by, Section 301. *See,*

7   *e.g.*, *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985)(where evaluation of state law

8   claim is "inextricably intertwined" with the terms of a collective bargaining agreement, such

9   claim actually arises under federal labor law and is preempted). The Court further noted that

10  "the preemptive force of section 301 is so powerful that it displaces entirely any state cause of

11  action for violation of a collective bargaining agreement . . . and any state claim whose outcome

12  depends on analysis of the terms of the agreement." *Id.* at 211; *Newberry v. Pacific Racing*

13  *Association*, 854 F.2d 1142, 1146 (9th Cir. 1988); *see also Voorhees v. Naper Aero Club, Inc.*,

14  272 F.3d 398, 403 (7th Cir. 2001) (noting that Section 301 is one of "only two areas in which the

15  Supreme Court has found that Congress intended completely to replace state law with federal

16  law for purposes of federal jurisdiction.")

17         9.     In support of her FEHA claim for discrimination, Plaintiff alleges that "Plaintiff

18  was wrongfully terminated on June 17, 2005, however, she filed a petition of grievance and the

19  hearings were dragged out until a final refusal to arbitrate [by her union] on August 1, 2006."

20  (Complaint, ¶ 17, p. 4). Later in the same long paragraph, she alleges that she "later found out

21  that employees were allowed to bid for [transfers to] different areas, and that different areas were

22  being given to other employees with less seniority [under the CBA]." (Complaint, ¶ 17, p. 8).

23  Plaintiff alleges (still in ¶ 17) on pages 9-11 of the Complaint that she had difficulty with her

24  Shop Steward, defendant Person, regarding her termination grievance, and that defendants

25  Simms and Robertson attended the initial hearing on her termination grievance, but then did not

26  involve themselves further.

27         10.    In support of her Fifth and Sixth Claims for Breach of Contract, Plaintiff alleges

28  that "there existed an express and implied-in-fact employment contract between Plaintiff and

4

1   defendants Kaiser, Coles, Simms, Hernandez, Robinson, Aquino, Person, Chavez and Cursio[1]

2   which included, but was not limited to, the following terms and conditions...." (Complaint, ¶

3   34). Plaintiff goes on to enumerate one of those terms and conditions as being that she "would

4   not be demoted, discharged, or otherwise disciplined for other than good cause...." (Complaint,

5   ¶ 34 (C).) Plaintiff further alleges that the above-named defendants "breached the

6   aforementioned total employment contract by arbitrarily evaluating Plaintiff, denying her the

7   opportunity to respond to grievances, and discharging Plaintiff without regard to or in

8   compliance with the requirements of the aforesaid agreement." (Complaint, ¶ 39).

9       11.   Plaintiff's Complaint includes claims that are not just substantially dependent

10   upon or inextricably intertwined with an interpretation of the CBA between Defendants and

11   Plaintiff's union. They instead are wholly dependent on the promises and "rights and privileges"

12   contained in that CBA. Whether Plaintiff's termination was discriminatory, or supported by

13   good cause as defined by the CBA, relies on an interpretation of the CBA. So does resolution of

14   Plaintiff's contract claims. Indeed, she purports to assert those claims not only against Kaiser

15   defendants, but also against defendant Cursio, who was employed by the union as a

16   representative for Plaintiff. In order to evaluate these claims, and others in the Complaint

17   regarding the terms and conditions of Plaintiff's employment, the Court must *directly* assess and

18   interpret the rights Plaintiff claims she has in the CBA between her former employer and her

19   union. These are causes of action, in other words, that arise from her alleged "contractual"

20   relationship with the Defendants, and the exclusive remedy for a unionized employee such as

21   Plaintiff for such claims is through Section 301.

22       12.   Plaintiff's tort claims for "common law" discrimination (Complaint ¶¶ 22-24),

23   "common law" Retaliation (¶¶ 29-31), and "Fraud and Deceit," (Complaint, ¶¶ 53-60), also

24   depend on an interpretation of the promises she allegedly had been made within her "contractual

25   relationship." These too are at least substantially dependent on the terms of the CBA, or

26   inextricably intertwined with them. What a plaintiff chooses to call her claim does not matter. If

27

28   [1] Cursio was Plaintiff's union representative, who was employed by the union, not by KFH. Other removing defendants, Person and Chavez, are KFH employees, but are also union shop stewards. Plaintiff's allegations against them clearly implicate rights and responsibilities under the CBA.

1    she bases her state law claim on a CBA, or a determination of her claim is substantially

2    dependent on or inextricably intertwined with the terms of a CBA, it is preempted. Thus, causes

3    of action for "common law" discrimination and retaliation or "fraud and deceit" that all flow

4    from an allegedly "wrongful" discharge are preempted if the wrongfulness of the discharge

5    requires, as it does here, interpretation of the CBA. See *Andrews v. Louisville & Nashville R.R.*

6    *Co.,* 406 U.S. 320, 323-324 (1972), and *Stallcop v. Kaiser Found. Hosps.*, 820 F.2d 1044, 1049

7    (9th Cir. 1987). It is well-settled that Federal labor law preempts common law tort claims

8    requiring interpretation of a CBA. See e.g., *Stikes v. Chevron U.S.A., Inc.*, 914 F.2d 1265, 1268-

9    71 (9th Cir. 1990); *Chmiel v. Beverly Wilshire Hotel Co.*, 873 F.2d 1283, 1287 (9th Cir. 1989).

10    13.    Because Plaintiff's claims are partially pled in terms of state law but in fact

11    require interpretation of the CBA, the Court must recharacterize them as arising under Section

12    301. Plaintiff may not conceal the federal character of her claims by "artfully pleading" them in

13    state law terms. See, e.g., *Allis-Chalmers Corp.*, 471 U.S. at 210-11; *Young v. Anthony's Fish*

14    *Grottos, Inc.*, 830 F.2d 993, 999 (9th Cir. 1987) ("[t]he key to determining the scope of

15    preemption is not how the complaint is cast, but whether the claims can be resolved only by

16    referring to the terms of the collective bargaining agreement"). As Plaintiff's claims arise under

17    federal labor law, which preempts any collateral state law claims based on the same facts, this

18    Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1331, and removal is proper

19    under 28 U.S.C. §§ 1441 and 1446. *Paige v. Henry J. Kaiser Co.*, 826 F.2d 857, 861 (9th Cir.

20    1987); *Newberry*, 854 F.2d at 1146.

21    14.    Even if this Court determines that as few as one of Plaintiff's claims is preempted

22    by Section 301, Plaintiff's remaining claims are still within this Court's supplemental

23    jurisdiction, pursuant to 28 U.S.C. § 1367(a), as they relate to and emanate from the same facts

24    and transactions underlying Plaintiff's preempted claim(s), thus forming part of the same "case

25    or controversy." See, e.g., *Jackson v. Southern Cal. Gas Co.*, 881 F.2d 638, 642 (9th Cir. 1989);

26    *Nishimoto v. Federman-Bachrach & Associates,* 903 F.2d 709 (9th Cir. 1990) (removal is proper

27    even where state law claims also exist). Accordingly, by virtue of 28 U.S.C. § 1441, Defendants

28    are entitled to remove all of Plaintiff's claims to this Court.

1    15.    **VENUE/INTRADISTRICT ASSIGNMENT:** Venue lies in the United States

2 District Court for the Northern District of California pursuant to 28 U.S.C. § 1441(a) because the

3 state court action was filed in this District. Pursuant to Civil Local Rule 3-2(c) and (d), this case

4 should be assigned to the San Francisco or Oakland Division of this Court, as a substantial part

5 of the alleged events giving rise to the case are alleged to have occurred in the County of

6 Alameda. (Complaint, ¶¶ 3, 17).

7    16.    All defendants who have been served in this case join in this removal, and they all

8 are represented by the undersigned counsel.

9    17.    Defendants will give notice of the filing of this Notice of Removal to Plaintiff and

10 to the Clerk of the Superior Court of California in and for the County of Alameda.

11    WHEREFORE, Defendants pray that this civil action be removed from the Superior

12 Court of California in and for the County of Alameda to this Court.

13

14

15 DATED: August 24, 2007                    SEYFARTH SHAW LLP

16

17                                          By
                                               Dana L. Peterson
18                                             Andrew M. McNaught

19                                          Attorneys for Defendants
                                            KAISER FOUNDATION HOSPITALS,
20                                          GEORGE HALVORSON, BETTIE
                                            COLES, RICHARD SIMMS, PATRICIA
21                                          HERNANDEZ, BRENDA ROBERTSON,
                                            EARLENE PERSON, and YOLANDA
22                                          CHAVEZ

23

24

25

26

27 SF1 28299749.1 / 23815-000001

28

7

DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

# EXHIBIT A

# SUM ONS
## (CITACION JUDICIAL)

**SUM-100**

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
George Halvorson, CEO/Chairman, Kaiser Permanente (Oakland); Bettie Coles; Richard Simms; Patricia Hernandez; Brenda Robinson; Milton Aquino; Earlene Person; Yolanda Chavez; Sal Cursio and Does 1 through 20, Inclusive.

**RECEIVED**

JUL 2 5 2007

LEGAL DEPARTMENT

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

ENDORSED
FILED
ALAMEDA COUNTY

JUN 0 4 2007

CLERK OF THE SUPERIOR COURT
By ___ORPHA CHAGOLLA___
Deputy

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Marcella Tran

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.
Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of Alameda
Hayward Court of Justice
24405 Amador Street
Hayward, CA 94544

**CASE NUMBER:**
*(Número del Caso):*
**HG0732904**9

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Charles J. Katz, Esq. (SBN68459)               (650)692-2900
Law Offices of Charles J. Katz
475 El Camino Real, Suite 300
Millbrae, CA 94030

DATE: **JUN 0 4 2007**   PAT SWEETEN   Clerk, by   ORPHA CHAGOLLA   , Deputy
*(Fecha)*   EXECUTIVE OFFICER/CLERK   *(Secretario)*   *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Kaiser Foundation Hospital

under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
       ☒ other *(specify):* Business Organization Form Unknown

4. ☒ by personal delivery on *(date):* 7/15/07

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

Legal Solutions Plus

1

2  **CHARLES J. KATZ, ESQ., SBN 68459**
   475 El Camino Real, Suite 300
3  Millbrae, CA 94030
   Telephone: (650) 692-4100/**Facsimile:** (650) 692-2900
4  **ELLADENE LEE KATZ, ESQ., SBN 81021**
   327 North San Mateo Drive, Suite 9
5  P.O. Box 517
   San Mateo, CA 94401
6  Telephone: (650) 348-8078/ **Facsimile:** (650) 348-8073

7  Attorneys for Plaintiff
   **Marcella Tran**
8

ENDORSED
FILED
ALAMEDA COUNTY

JUN 0 4 2007

CLERK OF THE SUPERIOR COURT
By ___ORPHA CHAGOLLA___
                          Deputy

9
                    SUPERIOR COURT OF CALIFORNIA
10                     COUNTY OF ALAMEDA

11  **Marcella Tran**                Case No. H G 0 7 3 2 9 0 4 9

12              Plaintiff          **COMPLAINT**
13                                 FOR EQUITABLE RELIEF AND
                                   DAMAGES
14          vs.

15  **George Halvorson, CEO/**
    **Chairman, Kaiser Permanente;**
16  **Kaiser Permanente (Oakland);**
    **Bettie Coles; Richard Simms;**      1. Employment Discrimination -
17  **Patricia Hernandez; Brenda**           Cal. Gov't Code Section 12940
    **Robinson; Milton Aquino;**         2. Employment Discrimination Common Law
18  **Earlene Person; Yolanda**          3. Employment Discrimination -Retaliation-
19  **Chavez; Sal Cursio and**              Cal.Gov'tCode, Section 12940(f)
    **Does 1 through 20, Inclusive**     4. Employment Discrimination- Retaliation-
20                                          Common Law
21              Defendants.            5. Breach of Contract
                                       6. Breach of Covenant of Good Faith and Fair
22                                        Dealing
                                       7. Failure to Prevent Discrimination-
23                                        Cal. Gov't Code Section 12940
                                       8. Fraud and Deceit
24                                     9. Harassment - Cal.Gov'tCodeSection 12940
25

26  _____/    **JURY TRIAL DEMANDED**
    Plaintiff alleges:
27

28  _____
    COMPLAINT FOR EQUITABLE RELIEF
    AND DAMAGES:  MARCELLA TRAN                              1.

1

## PRELIMINARY STATEMENTS

2       1. The true names and capacities, whether individual, corporate, associate, or

3  otherwise, of defendants, DOES 1 to 20, inclusive, are unknown to Plaintiff, who

4  therefore sues said Defendants by such fictitious names. Plaintiff is informed and

5
6  believes and on such information and belief alleges, that each of the Defendants

7  designated herein as a DOE is negligently or otherwise responsible in some manner for

8  the events and happenings herein referred to, and caused injury and damages

9  proximately thereby to the Plaintiff, as herein alleged.

10       2. At all times herein mentioned, each of the Defendants was the servant,

11
12  agent, co-conspirator, and/or employee of each of the remaining Defendants, and was

13  acting within the scope and course of his agency and employment, and/or pursuant to

14  conspiracy.

15       3. Plaintiff Marcella Tran is a 54 year old Asian female (hereinafter referred to

16
17  as "Plaintiff"), who has been employed by Kaiser Permanente (Oakland) (hereinafter

18  referred to as Defendant Kaiser since on or about October of 1997, as a Janitor.

19       4. Defendant, **Kaiser** was at all times pertinent hereto a private corporation,

20  which at all times relevant hereto was organized and existed under and by virtue of

21  the laws of the State of California, qualified to do business in California with its

22
23  principal place of business in Oakland, California.

24       5. Defendant, **George Halvorson** (hereinafter referred to as "Halvorson") at

25  all times pertinent hereto, was the CEO/Chairman of Defendant, Kaiser.

26

27

28    COMPLAINT FOR EQUITABLE RELIEF
     AND DAMAGES: MARCELLA TRAN             2.

6. Defendant, **Bettie Coles** (hereinafter referred to as "Coles") at all times pertinent hereto, was the Senior Vice President/Area Manager of Defendant, Kaiser.

7. Defendant, **Richard Simms** (hereinafter referred to as "Simms") at all times pertinent hereto, was the Human Resources Director of Defendant, Kaiser.

8. Defendant, **Patricia Hernandez** (hereinafter referred to as "Hernandez") at all times pertinent hereto, was a Supervisor of Defendant, Kaiser.

9. Defendant, **Brenda Robinson** (hereinafter referred to as "Robinson") at all times pertinent hereto, was a Manager of Defendant, Kaiser.

10. Defendant, **Milton Aquino** (hereinafter referred to as "Aquino") at all times pertinent hereto, was a Manager of Defendant, Kaiser.

11. Defendant, **Earlene Person** (hereinafter referred to as "Person") at all times pertinent hereto, was a LVN of Defendant, Kaiser.

12. Defendant, **Yolanda Chaves** (hereinafter referred to as "Chaves") at all times pertinent hereto, was a LVN/Shop Steward of Defendant, Kaiser.

13. Defendant, **Sal Cursio** (hereinafter referred to as "Cursio") at all times pertinent hereto, was a Union Representative of Defendant, Kaiser.

///
///
///
///
///
///
///
///

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES:  MARCELLA TRAN                                    3.

**FIRST CAUSE OF ACTION**
**(Employment Discrimination -**
**Cal. Gov't Code Section 12940 –**
**Race, National Origin, Age and Physical Disability)**
**(Against all Defendants)**

14. Plaintiff refers to and incorporates herein by reference Paragraphs 1 through 13 of the Preliminary Statements as though fully set forth herein at length.

15. Plaintiff was at all times material hereto an employee covered by Cal. Gov't Code Section 12940 prohibiting discrimination in employment on the basis of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex or sexual orientation.

16. Defendant, Kaiser was and is at all times material hereto an employer within the meaning of Cal. Gov't Code Section 12926 and, as such, barred from discriminating in employment decisions on the basis of **race, national origin, age and physical disability** as set forth in Cal. Gov't Code Section 12940.

17. Defendants have discriminated against Plaintiff on the basis of **race, national origin, age and physical disability** in violation of Cal. Gov't Code Section 12940 by engaging in the following course of conduct: Plaintiff was wrongfully terminated on June 17, 2005, however, she filed a petition of grievance and the hearings were dragged out until a final refusal to arbitrate on August 1, 2006. Hearings were held in December 2005 and June 2006. Plaintiff was accused of allegedly hitting another employee at the Fabiola Pharmacy at Kaiser in Oakland.

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES:  MARCELLA TRAN                                      4.

1   Plaintiff has objected to this false accusation, Plaintiff has never hit anyone. Plaintiff

2   has been the victim of harassment, retaliation and discrimination for reasons based

3   solely upon her race, national origin, age, and physical disability. Plaintiff was a loyal

4   and dedicated employee and she received an approximate gross annual salary of

5   
6   $35,000.00. Despite her loyal, dedicated, and satisfactory work performance Plaintiff

7   was terminated.

8        Plaintiff believes that working at Kaiser Permanente in Oakland has been a

9   difficult experience. Although upper management is mainly Caucasian, employees and

10  supervisors at Oakland are from India and Afro-American and Plaintiff was singled out
11  
    because she is Asian, from Viet Nam. Plaintiff is a hard worker and was cleaning the
12  
13  cafeteria when the incident occurred. Becky is from India, over 30 years of age, and

14  a pharmacy worker. Plaintiff asked Becky to please throw her garbage in the garbage

15  cans. On the date in question, Plaintiff observed Becky use a paper towel to wipe her
16  
    mouth and cup. Becky did not throw the rubbish into the garbage can, but rather
17  
18  threw it on the floor. Plaintiff is a janitor and she requested that Becky please throw

19  her garbage away.

20       Becky got extremely upset and drank from the cup, and threw it at Plaintiff's

21  face. Although this was a foam cup, it hit her face. Plaintiff asked Becky why she
22  
    did that. Plaintiff was in the lunch room with all of the pharmacy workers. At that
23  
24  point, Becky started to charge towards Plaintiff to hit her. Another employee tried to

25  grab Becky to hold her back and someone else hit Becky, but it was not Plaintiff.

26  
27  
28  COMPLAINT FOR EQUITABLE RELIEF
    AND DAMAGES:  MARCELLA TRAN                                    5.

1        Plaintiff has complained that the pharmacy employees who are Indian and Afro-

2  American treat her very badly.   Plaintiff has requested that they please throw their

3  garbage away.  Instead, they have intentionally thrown their cups along side the

4
   garbage cans which has made Plaintiff's work more difficult because she has to pick
5

6  up their garbage.

7        On the date in question,  Plaintiff observed Becky throwing her cup on the

8  ground.   Plaintiff picked it up and Becky hit the cup out of Plaintiff's hand.  Someone

9  pushed Plaintiff while someone else grabbed Becky.  People were yelling it's a fight.

10
   There were other employees present who could have accidentally hit Becky.  However,
11

12  Becky was the one who threw the cup at Plaintiff's face.  Plaintiff did not hit Becky.

13        In the past, Plaintiff complained to management that Becky yelled at her.

14  Whenever Plaintiff complained to her supervisors,  Plaintiff was told that everyone

15  was upset with her and considered Plaintiff a trouble maker.   Plaintiff has also been

16
   accused of not getting the job done when she was the hardest working employee.
17

18  Becky and other staff members have deliberately thrown garbage around after Plaintiff

19  cleaned the area.

20        Plaintiff clearly remembers that other employees, at least ten other employees

21  were present, pushing Becky and telling her to fight. There were several white and

22
   Asian, as well as Hispanic and Black employees who witnessed this incident.   Plaintiff
23

24  was too far away from Becky to have hit her in the face. It was clearly someone else

25  who may have done so accidentally.  Plaintiff recalls that there were too many people

26  to see who actually hit Becky,  if she was hit at all.

27

28  COMPLAINT FOR EQUITABLE RELIEF
     AND DAMAGES:  MARCELLA TRAN              6.

1    On June 16, 2005, a letter was sent from Milton Aquino, stating that Plaintiff

2    was accused of hitting an employee in the face on June 9, 2005. Mr. Aquino claims

3    that he thoroughly investigated this matter and that it was concluded that Plaintiff did

4    hit the employee in the face. In accordance with Kaiser Permanente's policy for

5

6    violence in the work place, Mr. Aquino, the Environmental Services Manager, decided

7    to terminate Plaintiff. The termination was effective June 17, 2005.

8    Plaintiff immediately complained to the Union to file a petition. Plaintiff

9    submitted a statement regarding the June 9, 2005 incident. Based on Plaintiff's

10   statement, Plaintiff was trying to empty trash in the Fabiola Pharmacy lounge and she

11

12   was in the middle of tying up garbage bags. Becky, one of the pharmacy workers,

13   was drinking from a cup. After she drank from her cup, she wiped her mouth with a

14   napkin and put the napkin in the cup and threw the cup with the napkin on top of the

15   trash bag that was being tied up.   Plaintiff requested that Becky please throw the cup

16

17   in another trash can because this bag had already been tied. Becky then knocked the

18   cup out of Plaintiff's hand.   Plaintiff picked up the cup and Becky took the cup from

19   Plaintiff and threw it in her face.

20   Plaintiff told Becky *"I am a human being, why are you treating me like a dog?"*

21   Plaintiff then tossed the cup back to her and at that point Becky tried to hit Plaintiff

22

23   while other employees were screaming *"don't fight, don't fight".*  Becky's co-workers

24   called the security guard to call the police.   Plaintiff has repeatedly stated that she

25   never hit Becky and that there were several other employees trying to restrain Becky

26   who could have hit her.

27

28   COMPLAINT FOR EQUITABLE RELIEF
     AND DAMAGES:  MARCELLA TRAN                                          7.

1      Plaintiff complained to Kaiser that she believed that she was being singled out

2    at work in the pharmacy area. Pharmacy workers have yelled at Plaintiff while she

3    was taking the trash and they have thrown papers on the floor in front of her. While

4    Plaintiff has cleaned the employee restrooms the pharmacy workers have ignored

5

6    *"out of order"* signs on the stalls and flushed toilets to flood the bathroom. While

7    cleaning the men's public restroom, other employees have ignored the closed signs

8    and walked into the restroom asking Plaintiff if *"she wanted to join them"*.

9      Plaintiff has complained repeatedly to her supervisors, including Defendant

10    Aquino and Defendant Hernandez about the abusive and hostile behavior. However,

11

12    Plaintiff has been ignored and nothing has been done. This has been a clear signal to

13    other employees and management to continue harassing, retaliating against, and

14    discriminating against Plaintiff.

15      Plaintiff has requested that a male employee be used to clean the men's

16    bathroom because of the ongoing harassment from other male employees who made

17

18    lewd remarks, asking Plaintiff to join them. Further, Plaintiff has repeatedly

19    requested a transfer out of the Pharmacy Department because of the abusive

20    treatment. However, Plaintiff was told by her Supervisor, Defendant Robinson, that

21    this was the only available area and if Plaintiff did not want to do the work she should

22

23    leave.

24      Plaintiff later found out that employees were allowed to bid for different areas

25    and that different areas were being given to other employees with less seniority.

26    Plaintiff has complained repeatedly, but management has ignored her complaints.

27

28    COMPLAINT FOR EQUITABLE RELIEF
       AND DAMAGES: MARCELLA TRAN              8.

1   Plaintiff was accused of doing a poor job and being rude when in fact these

2   accusations were false. Plaintiff was intimidated because she was not fluent in

3   English and she had difficulty communicating.

4    At meetings with management Plaintiff was directed to sign papers before she

5

6   could return to work, and because Plaintiff was afraid of losing her job, she signed

7   without understanding what she signed and the consequences. Plaintiff was told by

8   Defendant Simms that if Plaintiff did not sign papers, she would not be allowed to

9   work. Plaintiff signed complaints that were brought against her, but because of

10   language limitations, Plaintiff did not understand or oppose them.

11

12    Plaintiff signed a statement dated July 20, 2005 requesting that she get her job

13   back because she wanted to continue work, however, Plaintiff wanted a position in

14   another department outside of the pharmacy. The previous complaints which were

15   lodged against her led to a final Last Chance that Agreement that was signed on or

16   about February 12, 2004. Plaintiff did not fully comprehend what she was signing.

17

18   Kaiser Permanent did provide an interpreter, however, the interpreter was not able to

19   explain the consequences.

20    Plaintiff filed a Petition of Grievance through the Union and she had difficulty

21   with the Union Shop Steward, Defendant Person. Plaintiff requested a grievance, but

22

23   she was never given a copy of the grievance. The Human Resource Director,

24   Defendant Simms was an Afro-American male and Plaintiff's Manager, Defendant

25   Robinson was also an Afro-American. On or about June 1, 2005, they attended the

26   first hearing on the grievance and Plaintiff was asked if she had any witness who

27

28   COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES: MARCELLA TRAN        9.

1    would support her facts.   Plaintiff stated that there were several people present from

2    the Pharmacy Department at the time of the incident.   Plaintiff reiterated that she did

3    not hit anyone.

4    
5    Plaintiff recalls a second hearing on this matter that may have occurred in

6    December of 2005 at the  Masonic Hall with the Union.  · Plaintiff stated that only the

7    Union was present and she brought her husband to assist her.    Plaintiff was told to

8    explain what happened.   Plaintiff reiterated that she did not hit anyone. After a few

9    minutes  Plaintiff was told to step outside and  the Union decided that they would not

10   pursue her case.

11   
12   Plaintiff was upset and requested that an appeal be filed regarding her

13   grievance. Defendant Cursio, the Union Representative stated that he would file the

14   appeal.   Plaintiff then called Defendant Cursio from December 2005 to January 2006

15   requesting a status report on her grievance appeal. Defendant Cursio stated that a

16   hearing was to be scheduled, however, he explained that he would have to cancel that

17   hearing.   Plaintiff continued to telephone Defendant Cursio requesting that her

18   grievance appeal be scheduled and in March of 2006 Defendant Cursio stated that

19   there would be a hearing, then he sent a letter canceling that hearing.

20   
21   The next scheduled hearing was for June of 2006.  Plaintiff attended the 2006

22   hearing and the Union was present, however, management was not. Defendant

23   Cursio gave  Plaintiff another 10 minutes to state her facts.  There were three union

24   members present and they stated that  Plaintiff would receive a letter from the Union.

25   
26   
27   
28   COMPLAINT FOR EQUITABLE RELIEF
     AND DAMAGES:  MARCELLA TRAN                                    10.

1     Plaintiff's next contact from the Union was a letter dated August 1, 2006 in

2 which the Union informed her that they were not going to proceed with arbitration.

3 Plaintiff has been severely depressed because of this false accusation, the

4 harassment, retaliation and discrimination and the Union's failure to adequately and

5

6 competently represent her.    Plaintiff has been in treatment with Dr. Les Campbell, a

7 Psychologist at Kaiser Permanente.

8     Dr. Campbell has diagnosed Plaintiff as suffering from depression and

9 that the symptoms of depression, low mood, tension and tearfulness are directly

10 related to the termination which occurred on June 10, 2005. Dr. Campbell has further

11

12 stated that Plaintiff is depressed because she was accused of hitting a woman which

13 was untrue and because she lost a job that she had since October of 1997. The

14 doctor further reported that Plaintiff was harassed and lied about in the pharmacy

15 area at Kaiser by other employees, and that she was not supported by her supervisors

16

17 or manager.

18     Plaintiff filed timely Right to Sue Complaints with the California Department of Fair

19 Employment and Housing, and received notices dated June 7, 2006 of the right to sue in

20 a California Superior Court pursuant to Cal. Gov't Code Section 12965(b) permitting

21 Plaintiff to bring this action. Said complaints and right to sue letters are attached as

22

23 **Exhibit "A"** and incorporated herein by reference. Therefore, Plaintiff has exhausted all

24 of her administrative remedies.

25     18. As a proximate result of Defendants' discrimination against Plaintiff, Plaintiff

26 has suffered and continues to suffer substantial losses incurred in seeking and

27

28 COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES:  MARCELLA TRAN                 11.

1   performing the job duties of her employment, Plaintiff  has and continues to suffer

2   embarrassment, humiliation, and mental anguish all to her damage in an amount

3   according to proof.

4       19.  Defendants committed the acts alleged herein maliciously, fraudulently,

5
6   and oppressively, with the wrongful intention of injuring Plaintiff, from an improper

7   and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights.

8   Plaintiff is thus entitled to recover punitive damages from Defendants in an amount

9   according to proof.

10      20.  As a result of Defendants' discriminatory acts as alleged herein, Plaintiff
11
12  has no plain, adequate, or complete remedy as to law and Defendants continue to

13  engage in said alleged wrongful practices.  Therefore, Plaintiff requests:

14          A.  That she be reinstated in her former position, or comparable position,

15  made whole and afforded all benefits attendant thereto that would have been afforded

16
    Plaintiff but for said discrimination; and,
17
18          B.  That Defendant, its agents, successors, employees and those acting

19  in concert with it be enjoined permanently from engaging in each of the unlawful

20  practices, policies, usages and customs set forth herein.

21      21.  As a result of Defendants' discriminatory acts as alleged herein, Plaintiff is
22
23  entitled to reasonable attorney's fees and costs of said suit as provided by Cal. Gov't

24  Code Section 12965(b).

25      **WHEREFORE**, Plaintiff prays for damages as hereinafter set forth.

26

27

28  COMPLAINT FOR EQUITABLE RELIEF
    AND DAMAGES:  MARCELLA TRAN                    12.

## SECOND CAUSE OF ACTION
**(Employment Discrimination -
Common Law –
Race, National Origin, Age and Physical Disability)
(Against all Defendants)**

22.    Plaintiff refers to and incorporates herein Paragraphs 14 through 21 of the

First Cause of Action as though fully set forth herein at length.

23.    The public policy of the State of California, as set forth in state and federal

statutes and the California Constitution, is strongly opposed to discrimination in

employment including, but not limited to, denial of promotion and termination of

employment, based solely upon race, national origin, age and physical disability.

24.    Defendants' aforesaid conduct, set forth in Paragraph 17 of the First Cause

of Action, violated the public policy of the State of California, and, as a result off the

said acts, Plaintiff suffered damages as aforesaid.

**WHEREFORE**, Plaintiff prays for damages as hereinafter set forth.

## THIRD CAUSE OF ACTION
**(Employment Discrimination Retaliation-
Cal. Gov't Code Section 12940(f)
Retaliation for
Race, National Origin, Age and Physical Disability)
Against all Defendants)**

25.    Plaintiff refers to and incorporates herein Paragraphs 1 through 13 of the

Preliminary Statements as though fully set forth herein at length.

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES:  MARCELLA TRAN                                    13.

26.    Plaintiff was at all times material hereto an employee covered by Cal. Gov't. Code Section 12940(f) prohibiting any person to retaliate against an employee who opposes a discriminatory practice or asserts rights under the Fair Employment and Housing Act, in violation of Cal. Gov't Code Section 12940(f).

27.    Defendant, Kaiser was and are at all times material hereto an employer within the meaning of Call Gov't Code Section 12926 and, as such, barred from discriminating or retaliating in employment decisions on the basis of race, national origin, age and physical disability or as set forth in Cal. Gov't Code Section 12940(f).

28.    Defendants have discriminated and retaliated against Plaintiff on the basis of race, national origin, age and physical disability because Plaintiff opposes a discriminatory practice or asserts rights under Cal. Gov't Code Section 12940(f) by engaging in the following course of conduct: Plaintiff was wrongfully terminated on June 17, 2005, however, she filed a petition of grievance and the hearings were dragged out until a final refusal to arbitrate on August 1, 2006. Hearings were held in December 2005 and June 2006. Plaintiff was accused of allegedly hitting another employee at the Fabiola Pharmacy at Kaiser in Oakland. Plaintiff has objected to this false accusation, Plaintiff has never hit anyone. Plaintiff has been the victim of harassment, retaliation and discrimination for reasons based solely upon her race, national origin, age, and physical disability. Plaintiff was a loyal and dedicated employee and she received an approximate gross annual salary of $35,000.00. Despite her loyal, dedicated, and satisfactory work performance Plaintiff was terminated.

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES: MARCELLA TRAN               14.

1    Plaintiff believes that working at Kaiser Permanente in Oakland has been a

2    difficult experience. Although upper management is mainly Caucasian, employees and

3    supervisors at Oakland are from India and Afro-American and Plaintiff was singled out

4    because she is Asian, from Viet Nam.   Plaintiff is a hard worker and was cleaning the

5
6    cafeteria when the incident occurred.   Becky is from India, over 30 years of age, and

7    a pharmacy worker.   Plaintiff asked Becky to please throw her garbage in the garbage

8    cans. On the date in question, Plaintiff observed Becky use a paper towel to wipe her

9    mouth and cup. Becky did not throw the rubbish into the garbage can, but rather

10   threw it on the floor. Plaintiff is a janitor and she requested that Becky please throw

11
12   her garbage away.

13   Becky got extremely upset and drank from the cup, and threw it at Plaintiff's

14   face.  Although this was a foam cup, it hit her face.   Plaintiff asked Becky why she

15   did that.   Plaintiff was in the lunch room with all of the pharmacy workers.  At that

16
17   point, Becky started to charge towards Plaintiff to hit her.   Another employee tried to

18   grab Becky to hold her back and someone else hit Becky, but it was not Plaintiff.

19   Plaintiff has complained that the pharmacy employees who are Indian and Afro-

20   American treat her very badly.   Plaintiff has requested that they please throw their

21   garbage away. Instead, they have intentionally thrown their cups along side the

22
23   garbage cans which has made Plaintiff's work more difficult because she has to pick

24   up their garbage.

25   On the date in question,  Plaintiff observed Becky throwing her cup on the

26   ground.   Plaintiff picked it up and Becky hit the cup out of Plaintiff's hand. Someone

27

28   COMPLAINT FOR EQUITABLE RELIEF
     AND DAMAGES:  MARCELLA TRAN                                              15.

pushed Plaintiff while someone else grabbed Becky. People were yelling it's a fight. There were other employees present who could have accidentally hit Becky. However, Becky was the one who threw the cup at Plaintiff's face. Plaintiff did not hit Becky.

In the past, Plaintiff complained to management that Becky yelled at her. Whenever Plaintiff complained to her supervisors, Plaintiff was told that everyone was upset with her and considered Plaintiff a trouble maker. Plaintiff has also been accused of not getting the job done when she was the hardest working employee. Becky and other staff members have deliberately thrown garbage around after Plaintiff cleaned the area.

Plaintiff clearly remembers that other employees, at least ten other employees were present, pushing Becky and telling her to fight. There were several white and Asian, as well as Hispanic and Black employees who witnessed this incident. Plaintiff was too far away from Becky to have hit her in the face. It was clearly someone else who may have done so accidentally. Plaintiff recalls that there were too many people to see who actually hit Becky, if she was hit at all.

On June 16, 2005, a letter was sent from Milton Aquino, stating that Plaintiff was accused of hitting an employee in the face on June 9, 2005. Mr. Aquino claims that he thoroughly investigated this matter and that it was concluded that Plaintiff did hit the employee in the face. In accordance with Kaiser Permanente's policy for violence in the work place, Mr. Aquino, the Environmental Services Manager, decided to terminate Plaintiff. The termination was effective June 17, 2005.

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES:  MARCELLA TRAN                 16.

1    Plaintiff immediately complained to the Union to file a petition. Plaintiff

2    submitted a statement regarding the June 9, 2005 incident. Based on Plaintiff's

3    statement, Plaintiff was trying to empty trash in the Fabiola Pharmacy lounge and she

4    was in the middle of tying up garbage bags. Becky, one of the pharmacy workers,

5

6    was drinking from a cup. After she drank from her cup, she wiped her mouth with a

7    napkin and put the napkin in the cup and threw the cup with the napkin on top of the

8    trash bag that was being tied up.  Plaintiff requested that Becky please throw the cup

9    in another trash can because this bag had already been tied. Becky then knocked the

10    cup out of Plaintiff's hand. Plaintiff picked up the cup and Becky took the cup from

11

12    Plaintiff and threw it in her face.

13    Plaintiff told Becky *"I am a human being, why are you treating me like a dog?"*

14    Plaintiff then tossed the cup back to her and at that point Becky tried to hit Plaintiff

15    while other employees were screaming *"don't fight, don't fight".* Becky's co-workers

16    called the security guard to call the police.  Plaintiff has repeatedly stated that she

17

18    never hit Becky and that there were several other employees trying to restrain Becky

19    who could have hit her.

20    Plaintiff  complained to Kaiser that she believed that she was being singled out

21    at work in the pharmacy area. Pharmacy workers have yelled at Plaintiff while she

22    was taking the trash and they have thrown papers on the floor in front of her. While

23

24    Plaintiff has cleaned the employee restrooms the pharmacy workers have ignored

25    *"out of order"* signs on the stalls and flushed toilets to flood the bathroom. While

26

27

28    COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES:  MARCELLA TRAN                                      17.

1    cleaning the men's public restroom, other employees have ignored the closed signs

2    and walked into the restroom asking Plaintiff if "*she wanted to join them*".

3        Plaintiff has complained repeatedly to her supervisors, including Defendant

4    Aquino and Defendant Hernandez about the abusive and hostile behavior. However,

5
6    Plaintiff has been ignored and nothing has been done. This has been a clear signal to

7    other employees and management to continue harassing, retaliating against, and

8    discriminating against Plaintiff.

9        Plaintiff has requested that a male employee be used to clean the men's

10   bathroom because of the ongoing harassment from other male employees who made

11
12   lewd remarks, asking Plaintiff to join them.  Further, Plaintiff has repeatedly

13   requested a transfer out of the Pharmacy Department because of the abusive

14   treatment. However, Plaintiff was told by her Supervisor, Defendant Robinson, that

15   this was the only available area and if Plaintiff did not want to do the work she should

16
     leave.
17

18       Plaintiff later found out that employees were allowed to bid for different areas

19   and that different areas were being given to other employees with less seniority.

20   Plaintiff has complained repeatedly, but management has ignored her complaints.

21   Plaintiff was accused of doing a poor job and being rude when in fact these

22
23   accusations were false.   Plaintiff was intimidated because she was not fluent in

24   English and she had difficulty communicating.

25       At meetings with management Plaintiff was directed to sign papers before she

26   could return to work, and because Plaintiff was afraid of losing her job, she signed

27

28   _____
     COMPLAINT FOR EQUITABLE RELIEF
     AND DAMAGES:   MARCELLA TRAN                              18.

1    without understanding what she signed and the consequences.    Plaintiff was told by

2    Defendant Simms that if Plaintiff did not sign papers, she would not be allowed to

3    work.    Plaintiff signed complaints that were brought against her, but because of

4    language limitations, Plaintiff did not understand or oppose them.

5

6    Plaintiff signed a statement dated July 20, 2005 requesting that she get her job

7    back because she wanted to continue work, however, Plaintiff wanted a position in

8    another department outside of the pharmacy.  The previous complaints which were

9    lodged against her led to a final Last Chance that Agreement that was signed on or

10    about February 12, 2004.    Plaintiff did not fully comprehend what she was signing.

11    Kaiser Permanent did provide an interpreter, however, the interpreter was not able to

12

13    explain the consequences.

14    Plaintiff filed a Petition of Grievance through the Union and  she had difficulty

15    with the Union Shop Steward, Defendant Person.  Plaintiff requested a grievance, but

16    she was never given a copy of the grievance. The Human Resource Director,

17

18    Defendant Simms was an Afro-American male and Plaintiff's  Manager, Defendant

19    Robinson was also an Afro-American.  On or about June 1, 2005, they attended the

20    first hearing on the grievance and  Plaintiff was asked if she had any witness who

21    would support her facts.    Plaintiff stated that there were several people present from

22    the Pharmacy Department at the time of the incident.    Plaintiff reiterated that she did

23    not hit anyone.

24

25    Plaintiff recalls a second hearing on this matter that may have occurred in

26    December of 2005 at the  Masonic Hall with the Union.    Plaintiff stated that only the

27

28    COMPLAINT FOR EQUITABLE RELIEF
     AND DAMAGES:  MARCELLA TRAN                                              19.

Union was present and she brought her husband to assist her. Plaintiff was told to explain what happened. Plaintiff reiterated that she did not hit anyone. After a few minutes Plaintiff was told to step outside and the Union decided that they would not pursue her case.

Plaintiff was upset and requested that an appeal be filed regarding her grievance. Defendant Cursio, the Union Representative stated that he would file the appeal. Plaintiff then called Defendant Cursio from December 2005 to January 2006 requesting a status report on her grievance appeal. Defendant Cursio stated that a hearing was to be scheduled, however, he explained that he would have to cancel that hearing. Plaintiff continued to telephone Defendant Cursio requesting that her grievance appeal be scheduled and in March of 2006 Defendant Cursio stated that there would be a hearing, then he sent a letter canceling that hearing.

The next scheduled hearing was for June of 2006. Plaintiff attended the 2006 hearing and the Union was present, however, management was not. Defendant Cursio gave Plaintiff another 10 minutes to state her facts. There were three union members present and they stated that Plaintiff would receive a letter from the Union.

Plaintiff's next contact from the Union was a letter dated August 1, 2006 in which the Union informed her that they were not going to proceed with arbitration. Plaintiff has been severely depressed because of this false accusation, the harassment, retaliation and discrimination and the Union's failure to adequately and competently represent her. Plaintiff has been in treatment with Dr. Les Campbell, a Psychologist at Kaiser Permanente.

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES: MARCELLA TRAN              20.

1    Dr. Campbell has diagnosed Plaintiff as suffering from depression and

2    that the symptoms of depression, low mood, tension and tearfulness are directly

3    related to the termination which occurred on June 10, 2005. Dr. Campbell has further

4    stated that Plaintiff is depressed because she was accused of hitting a woman which

5
6    was untrue and because she lost a job that she had since October of 1997. The

7    doctor further reported that Plaintiff was harassed and lied about in the pharmacy

8    area at Kaiser by other employees, and that she was not supported by her supervisors

9    or manager.

10    Plaintiff filed timely Right to Sue Complaints with the California Department of Fair
11
12    Employment and Housing, and received notices dated June 7, 2006 of the right to sue in

13    a California Superior Court pursuant to Cal. Gov't Code Section 12965(b) permitting

14    Plaintiff to bring this action. Said complaints and right to sue letters are attached as

15    **Exhibit "A"** and incorporated herein by reference. Therefore, Plaintiff has exhausted all

16    of her administrative remedies.
17
18    **WHEREFORE**, Plaintiff prays for damages as hereinafter set forth.

19    ///

20    ///

21    ///

22    ///

23    ///

24    ///

25    ///

26    ///

27    ///

28    COMPLAINT FOR EQUITABLE RELIEF
      AND DAMAGES: MARCELLA TRAN                                    21.

1

2

## FOURTH CAUSE OF ACTION
(Employment Discrimination -
Common Law – Retaliation-
Cal. Gov't Code Section 12940(f)-
Retaliation for
Race, National Origin, Age and Physical Disability)
(Against all Defendants)

29.  Plaintiff refers to and incorporates herein Paragraphs 22 through 24 of the

Second Cause of Action as though fully set forth herein at length.

30.  The public policy of the State of California, as set forth in state and federal

statutes and the California Constitution, is strongly opposed to discrimination in

employment including, but not limited to, denial of promotion and termination of

employment, based upon race, national origin, age and physical disability.

31.  Defendants' aforesaid conduct, set forth in Paragraph 24 of the Second

Cause of Action, violated the public policy of the State of California, and, as a result off

the said acts, Plaintiff suffered damages as aforesaid.

**WHEREFORE**, Plaintiff prays for damages as hereinafter set forth.

///

///

///

///

///

///

///

///

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES:  MARCELLA TRAN                                  22.

**FIFTH CAUSE OF ACTION**
**(Breach of Contract)**
**(Against All Defendants George Halvorson;**
**Kaiser Permanent (Oakland);**
**Bettie Coles; Richard Simms; Patricia Hernandez;**
**Brenda Robinson; Milton Aquino; Earlene Person**
**Yolanda Chavez; Sal Cursio)**

32. Plaintiff refers to and incorporates herein Paragraphs 1 through 13 of the

Preliminary Statements as though fully set forth herein at length.

33. On or about October 1997, Plaintiff was hired by Defendant, Kaiser as a

Janitor for Defendant.

34. The entire course of Plaintiff's employment with Defendant, Kaiser there

existed an express and implied in fact employment contract between Plaintiff and

Defendants, **Kaiser, Coles, Simms, Hernandez, Robinson, Aquino, Person,**

**Chavez and Cursio** which included, but was not limited to, the following terms and

conditions:

A. Plaintiff would be able to continue her employment with Defendant,

Kaiser indefinitely so long as she carried out her duties in a proper and competent

manner;

B. Plaintiff would be promoted so long as she carried out her duties in a

proper and competent manner and her employment evaluations were marked

*"successfully met"* or *"exceeded her duties"*;

C. Plaintiff would not be demoted, discharged or otherwise disciplined

for other than good cause, with notice thereof;

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES:  MARCELLA TRAN                                          23.

D. Defendants, **Kaiser, Coles, Simms, Hernandez, Robinson, Aquino, Person, Chavez and Cursio** would not evaluate Plaintiff's performance in an arbitrary, untrue or capricious manner;

E. If grievances or complaints were lodged regarding Plaintiff's performance, she would be given written notice and a meaningful opportunity to respond;

F.   Plaintiff was harassed, retaliated and discriminated against because of her gender and physical disability and for complaining to Defendant Kaiser terminated Plaintiff on or about June 17, 2005.

35. This total employment contract was evidenced by various written documents, oral representations to Plaintiff by Defendant's agents and employees, and the parties' entire course of conduct, including the following:

A. Plaintiff is informed and believes and thereon alleges that portions of this contract are embodied in Defendant's written personnel policies and discipline procedures;

B. There was an established policy with Defendant, Kaiser known to Plaintiff and relied upon by Plaintiff that an employee such as Plaintiff, who had performed services as a good and faithful employee, would have secure employment tenure with Defendant; that an employee such as Plaintiff would be permitted to continue employment unless discharged for good and sufficient cause; that an employee such as Plaintiff with a grievance or complaint lodged against her would be

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES:   MARCELLA TRAN                                                    24.

1  provided a meaningful opportunity to respond; and that an employee such as Plaintiff

2  would not be discharged or disciplined without good and sufficient cause;

3              C. Again and again during her employment, Plaintiff was told by her

4  superiors, orally and in writing, that she was doing a satisfactory job. As a result of

5  the above representations, Plaintiff came reasonably to expect and to rely on the

6  promise of job security. Such statements and acts by Defendants communicated to

7  Plaintiff the idea that she had performed satisfactorily and that her job was secure.

8  Plaintiff in good faith, relied upon these representations and believed them to be true.

9   

10             36. Plaintiff's reliance on and belief in and acceptance in good faith of all the

11 assurances, promises, and representations as listed in Paragraphs 34 and 35 above,

12 led Plaintiff throughout her employment with Defendant Kaiser to reasonably believe

13 that her employment was secure and that there thereby existed a contract of

14 continuous employment with Defendant Kaiser.   As independent consideration for

15 this contract of continuing employment, and as evidence of Plaintiff's reliance thereon,

16 at the time she began working for Defendant, Plaintiff gave up professional education

17 and secure employment to accept employment with Defendant Kaiser.   As further

18 independent consideration, in addition to performing her regular duties as an

19 employee of Defendant Kaiser.   Plaintiff refrained from seeking any other

20 employment and from time to time turned down, gave up, and refrained from

21 pursuing other career opportunities.

22  

23             37. Plaintiff understood, and continued employment, and duly performed all the

24 conditions of the contract to be performed by her. Plaintiff has at all times been ready,

25  

26  

27  

28  
COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES: MARCELLA TRAN                     25.

1  willing, and able to perform, and has offered to perform all the conditions of this contract
2  to be performed.

3      38.  Despite the representations made to Plaintiff and the reliance she placed
4  upon them, Defendant Kaiser failed to carry out its responsibilities under the terms of
5  the employment contract in the following ways:
6

7      A.  By subjecting Plaintiff to arbitrary, unfair, and dishonest performance
8  evaluations;

9      B.  By denying Plaintiff a meaningful opportunity to respond to
10 grievances filed against her;
11

12      C.  By constructively discharging Plaintiff on or about June 17, 2005 in
13 spite of Plaintiff's satisfactory job performance and after her complaints of
14 discrimination because of her race, national origin, age, gender and physical disability,
15 and complaints about harassment and retaliation including the humiliating and
16 demeaning manner in which she had been treated.
17

18      39.  Defendants **Halvorson, Kaiser, Coles, Simms, Hernandez, Robinson,**
19 **Aquino, Person, Chavez and Cursio** breached the aforementioned total
20 employment contract by arbitrarily evaluating Plaintiff, denying her the opportunity to
21 respond to grievances, and discharging Plaintiff without regard to or in compliance
22 with the requirements of the aforesaid agreement.
23

24  ///
25  ///
26  ///
27  ///

28  COMPLAINT FOR EQUITABLE RELIEF
    AND DAMAGES:  MARCELLA TRAN                                    26.

40. Defendants **Halvorson, Kaiser, Coles, Simms, Hernandez, Robinson, Aquino, Person, Chavez and Cursio** further breached the aforementioned total employment contract by engaging in a course of conduct with the intent and effect of making Plaintiff's work environment unreasonably burdensome and oppressive, and then terminating Plaintiff.

41. As a proximate result of Defendants' breach of the total employment contract, Plaintiff has suffered and continues to suffer substantial losses in earnings, bonuses, deferred compensation, and other employment benefits which she would have received had defendants not breached said agreement, plus expenses incurred in obtaining substitute employment, all to her damage in an amount to be set forth according to proof.

**WHEREFORE**, Plaintiff prays for damages as hereinafter set forth.

### SIXTH CAUSE OF ACTION
**(Breach of Covenant of
Good Faith and Fair Dealing)
(Against All Defendants George Halvorson;
Kaiser Permanent (Oakland);
Bettie Coles; Richard Simms; Patricia Hernandez;
Brenda Robinson; Milton Aquino; Earlene Person
Yolanda Chavez; Sal Cursio)**

42. Plaintiff refers to and incorporates herein Paragraphs 1 through 13 of the Preliminary Statements as though set forth herein at length.

43. The aforesaid employment contract contained an implied covenant of good faith and fair dealing by which Defendant Kaiser promised i.e. full cooperation to

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES: MARCELLA TRAN                                          27.

1    Plaintiff and her performance under said employment contract, and to refrain from

2    doing any act which would prevent or impede Plaintiff from performing all the

3    conditions of the contract to be performed by her or any act that would prevent

4    Plaintiff's enjoyment of the fruits of said contact. Specifically, said covenant of good

5
6    faith and fair dealing required Defendant Kaiser, too fairly, honestly, and reasonably

7    perform the terms and conditions of the Agreement.

8    44. Plaintiff, as an individual employee, with no legal representation or prior

9    experience in making such contracts as the one alleged herein, was in an inherently

10
11   unequal bargaining position in her dealings with Defendant Kaiser, an established

12   concern with millions of dollars in assets. In addition, once Plaintiff committed herself

13   to the above-stated contract, and took the reasonable actions alleged herein in

14   reliance, Plaintiff was placed in a particularly vulnerable position because she had

15   given up secure employment with her prior employer, and few openings exist in her

16
17   field for persons of her experience and qualifications. She had entrusted her entire

18   livelihood to Defendant's willingness to perform its obligations under the contract, and

19   risked suffering grave harm if Defendant failed to perform. Defendant was aware of

20   Plaintiff's vulnerability in this regard.

21
22   45. Plaintiff is informed and believes that Defendant Kaiser, breached its

23   contract with Plaintiff without conducting any reasonable investigation concerning its

24   obligations under said contract, without good or sufficient cause, for reasons

25   extraneous to the contract, and for the purpose of frustrating Plaintiff's enjoyment of

26   the benefits of the contract. Accordingly, Defendant breached its implied duty of good

27

28   COMPLAINT FOR EQUITABLE RELIEF
     AND DAMAGES: MARCELLA TRAN                                                    28.

1 | faith and fair dealing. Further, Defendant breached this covenant with regard to

2 | Plaintiff through its conduct in:

3 |   A. Subjecting Plaintiff to differential standards of conduct from other

4 | employees;

5 |

6 |   B. Denying Plaintiff the opportunity to respond to grievances filed

7 | against her;

8 |   C. Evaluating Plaintiff's performance in an arbitrary, pretextual, and

9 | untrue manner;

10 |

11 |   D. Removing Plaintiff's responsibilities for reasons that were arbitrary,

12 | pretextual, and untrue;

13 |   E. Constructively discharging Plaintiff's employment without cause and

14 | for reasons that have nothing to do with legitimate business justification;

15 |   F. Failing to follow its written personnel policies, or to apply the same

16 | personal practices to Plaintiff that it provides other employees.

17 |

18 |   46. As a result of Defendant's violations of said implied covenant of good faith

19 | and fair dealing, and the reprehensible and willful conduct toward Plaintiff, Plaintiff

20 | has suffered harm, as follows:

21 |   A. The destruction of Plaintiff's valuable property interests, i.e., her

22 | prospect of continuing future employment with Defendant and receipt of continued

23 |

24 | compensation;

25 |   B. Impairment and damage to Plaintiff's good name by causing her to

26 | be discharged with the untrue implication to all future prospective employers that she

27 |

28 | COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES: MARCELLA TRAN       29.

1   had been disciplined or discharged for misconduct, incompetence, or unsatisfactory

2   performance, and specifically that Plaintiff was a troublemaker said implication was

3   and is completely untrue and totally without foundation; and,

4

5           C.  Substantial losses in earnings, bonuses, deferred compensation, and

6   other employment benefits and costs incurred in seeking and performing substitute

7   employment.

8           47.  The primary motivation of Plaintiff in making the above-stated contract was

9   to obtain secure employment, and terms and conditions of employment, which would

10  permit her growth and development at Defendant Kaiser, as well as all rights of

11  substantial autonomy, freedom of action, and a supportive work environment.

12

13          48.  As a proximate result of Defendant's breach of implied covenant of good

14  faith and fair dealing, Plaintiff has suffered, and continues to suffer losses in earning

15  and other employment benefits, to her damage in an amount to be established at trial.

16          **WHEREFORE**, Plaintiff requests relief as hereinafter provided.

17

18                          **SEVENTH CAUSE OF ACTION**
19                          **(Failure to Prevent Discrimination)**
                            **(Against All Defendants George Halvorson;**
20                          **Kaiser Permanent (Oakland);**
                            **Bettie Coles; Richard Simms; Patricia Hernandez;**
21                          **Brenda Robinson; Milton Aquino; Earlene Person**
22                          **Yolanda Chavez; Sal Cursio)**

23          49.  Plaintiff refers to and incorporates herein Paragraphs 1 through 13 of the

24  Preliminary Statements as though fully set forth herein at length.

25          50. Defendant Kaiser,  was bound by its statutory and common law duties to

26

27

28  _____
    COMPLAINT FOR EQUITABLE RELIEF
    AND DAMAGES:  MARCELLA TRAN                              30.

provide a discrimination-free and retaliation-free workplace. Defendant Kaiser, failed to take all reasonable steps necessary to prevent discrimination, harassment, and retaliation from occurring, in violation of its common law and statutory duties, e.g., Cal. Gov't Code Sections 12940(f) and (I).

51.   Defendants **Halvorson, Kaiser, Coles, Simms, Hernandez, Robinson, Aquino, Person, Chavez and Cursio**, negligently trained, managed, or Supervised the employees who committed the discriminatory acts alleged herein, negligently failed to take all reasonable steps necessary to prevent the said acts, and negligently ratified the discriminatory acts committed. Specifically, Defendants **Halvorson, Kaiser, Coles, Simms, Hernandez, Robinson, Aquino, Person, Chavez and Cursio,** failed to satisfactorily train Defendants **Halvorson, Kaiser, Coles, Simms, Hernandez, Robinson, Aquino, Person, Chavez and Cursio** as to the proper handling of sensitive race, national origin, age and physical disability.   Furthermore, Defendant Kaiser failed to take affirmative steps to correct the discriminatory actions of Defendants' **Halvorson, Kaiser, Coles, Simms, Hernandez, Robinson, Aquino, Person, Chavez and Cursio** following the unlawful constructive discharge of Plaintiff.

52. As a direct consequence of Defendants' **Halvorson, Kaiser, Coles, Simms, Hernandez, Robinson, Aquino, Person, Chavez and Cursio** acts and omissions, Plaintiff has suffered damages as aforesaid.

**WHEREFORE**, Plaintiff prays for judgment as hereinafter set forth.

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES:  MARCELLA TRAN                                                31.

1

## EIGHTH CAUSE OF ACTION
### (Fraud and Deceit)
### (Against All Defendants George Halvorson;
### Kaiser Permanent (Oakland);
### Bettie Coles; Richard Simms; Patricia Hernandez;
### Brenda Robinson; Milton Aquino; Earlene Person
### Yolanda Chavez; Sal Cursio)

2

3

4

5

6       53.  Plaintiff refers to and incorporates herein Paragraphs 1 through 13 of the

7
Preliminary Statements and Paragraphs 32 through 41 of the Fifth Cause of Action, as
8
though set forth herein.
9

10      54.  By the above described acts incorporated herein, Defendants and each of

11   them, individually and through their officers, partners, agents, and/or employees

12   acting within the scope of their employment, falsely and fraudulently and with the

13   intent to deceive and defraud Plaintiff, represented to Plaintiff that she would not be
14
terminated as an employee of Defendant Kaiser,  as long as her work performance
15
was satisfactory.  Specifically, at the time she was offered employment with Defendant
16
17   Kaiser.    Plaintiff was assured by Defendant Kaiser, that Plaintiff would have better

18   job security with Defendant Kaiser,  than she did at her previous job.  Defendant

19   Kaiser and DOES 1 through 20, repeated all the above assurances on several
20
occasions during Plaintiff's employment with Defendant Kaiser.
21

22      55.  Said representations were false and Defendants knew them to be false, and

23   intended not to be bound by such representations; in truth and in fact, Plaintiff was

24   constructively discharged, even though her work performance was exemplary.

25

26

27

28
COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES:  MARCELLA TRAN                              32.

56.  Said representations were made for the purpose of inducing Plaintiff to enter into an employment contract with Defendant Kaiser,  and thereafter for the purpose of inducing Plaintiff to continue performing said employment.

57.  Plaintiff was unaware of Defendants' intention not to be bound by the said representations, and justifiably believed and relied upon them, and was thereby induced to give up her prior employment to work for Defendant Kaiser,  and to give up, turn down, and refrain from seeking other more secure employment opportunities.

58.   Plaintiff did not discover the fraud and deceit practiced upon her, as aforesaid, until being given notice of alleged performance problems and subsequently Plaintiff was harassed, retaliated, and discriminated against on an ongoing basis since February 12, 2004.    Plaintiff would not with reasonable diligence have discovered the said fraud and deceit prior to that date in that Plaintiff was repeatedly misled by Defendants further same false representations, and prior to February 12, 2004.  Plaintiff had been given no indication that threats, termination, and ongoing harassment, retaliation, and discrimination was likely because of her work performance, or for any other reason.

59.  As a proximate result of the representations of Defendants to Plaintiff, as aforesaid, Plaintiff will suffer substantial losses incurred in seeking and performing her job duties and employment, and has caused Plaintiff to suffer and continue to suffer embarrassment, humiliations, and anguish, all to her damage in an amount according to proof.

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES:   MARCELLA TRAN                                         33.

1    60. Defendants committed the acts alleged herein maliciously, fraudulently,

2    and oppressively, with the wrongful intention of injuring Plaintiff, from an improper

3    and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights.

4    Plaintiff thus is entitled to recover punitive damages from Defendants, and each of

5
6    them, in an amount according to proof.

7        **WHEREFORE**, Plaintiff prays for damages as hereinafter set forth.

8
9                        **NINTH CAUSE OF ACTION**
                    **(Harassment - Gov't Code Section 12940)**
10                  **(Against All Defendants George Halvorson;**
                    **Kaiser Permanent (Oakland);**
11                  **Bettie Coles; Richard Simms; Patricia Hernandez;**
                    **Brenda Robinson; Milton Aquino; Earlene Person**
12                  **Yolanda Chavez; Sal Cursio)**

13       61. Plaintiff refers to and incorporates herein Paragraphs 1 through 13 of the
14
15    Preliminary Statements as though fully set forth herein at length.

16       62. Plaintiff was at all times material hereto an employee covered by California

17    Government Code Section 12940(h)(1) prohibiting harassment based upon race,

18    national origin, gender, sexual harassment and physical disability.

19
20       63. Defendant employer was at all times material hereto an employer within

21    the meaning of California Government Code Section 12926(c) and, as such, barred

22    from harassing an employee based upon race, national origin, age and physical

23    disability.

24
25
26
27
28    ───────────────────────────
      COMPLAINT FOR EQUITABLE RELIEF
      AND DAMAGES:  MARCELLA TRAN                          34.

64. Defendants **Halvorson, Kaiser, Coles, Simms, Hernandez, Robinson, Aquino, Person, Chavez and Cursio** were at all times material hereto managers within the meaning of California Government Code Section 12940(h)(1) prohibited from harassing an employee based upon race, national origin, age and physical disability.

65. Defendants' **Halvorson, Kaiser, Coles, Simms, Hernandez, Robinson, Aquino, Person, Chavez and Cursio** harassment of Plaintiff included, but was not limited to, crude, hostile, derogatory and disparaging remarks against Plaintiff's race, national origin, age and physical disability.

66. Plaintiff made numerous complaints regarding the discrimination to Defendants **Halvorson, Kaiser, Coles, Simms, Hernandez, Robinson, Aquino, Person, Chavez and Cursio** but no steps were taken to prevent this harassment.

67. Plaintiff filed timely Right to Sue complaints with the California Department of Fair Employment and Housing, and received notices dated June 7, 2006 of the right to sue in a California Superior Court pursuant to Cal. Gov't Code Section 12965(b) permitting Plaintiff to bring this action. Said complaints and right to sue letters are attached as **Exhibit "A"** and incorporated herein by reference. Therefore, Plaintiff has exhausted all of her administrative remedies.

68. As a proximate result of Defendants' **Halvorson, Kaiser, Coles, Simms, Hernandez, Robinson, Aquino, Person, Chavez and Cursio** and harassment of Plaintiff, Plaintiff has suffered and continues to suffer embarrassment, humiliation, and mental anguish all to her damage in an amount according to proof.

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES:  MARCELLA TRAN                                35.

69. Defendant Kaiser committed the acts alleged herein maliciously, fraudulently and oppressively with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice and in conscious disregard of Plaintiff's rights. Plaintiff thus is entitled to recover punitive damages from Defendants and each of them in an amount to be determined according to proof.

70. As a result of Defendants' **Halvorson, Kaiser, Coles, Simms, Hernandez, Robinson, Aquino, Person, Chavez and Cursio** harassment, and Defendants' **Halvorson, Kaiser, Coles, Simms, Hernandez, Robinson, Aquino, Person, Chavez and Cursio** failure to take immediate and appropriate corrective action, Plaintiff is entitled to reasonable attorney's fees and costs of suit.

**WHEREFORE**, Plaintiff requests relief as follows:

1. Injunctive relief requiring Defendants to refrain from further discriminatory acts and remedying past discrimination;

2. Actual damages in a sum to be ascertained at trial;

3. General damages in an amount within the jurisdiction of this Court;

4. Exemplary and punitive damages in an amount within the jurisdiction of this Court;

5. For reinstatement of Plaintiff to the position from which she was wrongfully harassed, retaliated, and discriminated against or a comparable position with Defendant Kaiser, and all benefits attendant thereto that would have been afforded Plaintiff but for said discrimination;

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES: MARCELLA TRAN       36.

1    6.  For a permanent injunction enjoining Defendants, their agents, successors,

2    and employees and those acting in concert with them from engaging in each of the

3    unlawful practices, policies, usages, and customs set forth herein;

4        7.  Costs of suit, including reasonable attorney's fees;

5

6        8.  Prejudgment interest; and,

7        9.  Such relief as the Court deems just and proper.

8

9                **PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY**

10   Dated: June 1, 2007

11

12

13

14

15   **Charles J. Katz.**
     Attorney for Plaintiff,
16   **Marcella Tran**

17

18

19

20

21

22

23

24

25

26

27

28   COMPLAINT FOR EQUITABLE RELIEF
     AND DAMAGES:  MARCELLA TRAN                          37.

IA - STATE AND CONSUMER SERVICES AGENCY                                 ARNOLD SCHWARZENEGGER, Governor

MENT OF FAIR EMPLOYMENT & HOUSING
Street, Suite 701, Oakland, CA 94612
22-2941 TTY (800) 700-2320 Fax (510) 622-2951
.dfeh.ca.gov



June 7, 2006


MARCELLA TRAN
1505 25th Avenue
San Francisco, CA 94612

RE:   E200506M1763-00-prb
       TRAN/KAISER FOUNDATION HOSPITAL

Dear MARCELLA TRAN:

### NOTICE OF CASE CLOSURE

The consultant assigned to handle the above-referenced discrimination complaint that was filed with the Department of Fair Employment and Housing (DFEH) has recommended that the case be closed on the basis of: An Administrative Decision.

Please be advised that this recommendation has been accepted and the case has been closed effective May 12, 2006.

This letter is also the Right-To-Sue Notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment Opportunity Commission (EEOC) must be visited to file a complaint within 30 days of receipt of this DFEH *Notice of Case Closure* or within 300 days of the alleged discriminatory act, whichever is earlier.

Notice of Case Closure
Page Two

DFEH does not retain case files beyond three years after a complaint is filed, unless the case is still open at the end of the three-year period.

Sincerely,

Allan H. Pederson
District Administrator


cc:    Case File

Malcolm Trifon
Attorney
KAISER FOUNDATION HOSPITAL
1 Kaiser Plaza, Ste. 1906
Oakland, CA 94612

DFEH-200-08b (06/06)
MSIMMONA

## *Superior Court of California, County of Alameda*



## *Notice of Judicial Assignment for All Purposes*

Case Number: HG07329049
Case Title:    Tran VS Halvorson
Date of Filing: 06/04/2007

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**This case is hereby assigned for all purposes to:**

|  |  |
|---|---|
| **Judge:** | **Kenneth Mark Burr** |
| **Department:** | **30** |
| **Address:** | **U.S. Post Office Building** |
|  | **201 13th Street** |
|  | **Oakland CA 94612** |
| **Phone Number:** | **(510) 208-3926** |
| **Fax Number:** | **(510) 267-1510** |
| **Email Address:** | **Dept.30@alameda.courts.ca.gov** |

Under direct calendaring, this case is assigned to a single judge for all purposes including trial.

**Please note: In this case, any challenge pursuant to Code of Civil Procedure §170.6 must be exercised within the time period provided by law. (See Govt. Code 68616(i); Motion Picture and Television Fund Hosp. v. Superior Court (2001) 88 Cal.App.4th 488, 494; and Code Civ. Proc. §1013.)**

IT IS THE DUTY OF EACH PLAINTIFF AND CROSS COMPLAINANT TO SERVE A COPY OF THIS NOTICE IN ACCORDANCE WITH LOCAL RULES.

### General Procedures

All pleadings and other documents must be filed in the clerk's office at any court location except when the Court permits the lodging of material directly in the assigned department. All documents, with the exception of the original summons and the original civil complaint, shall have clearly typed on the face page of each document, under the case number, the following:

ASSIGNED FOR ALL PURPOSES TO
JUDGE Kenneth Mark Burr
DEPARTMENT 30

Page 1 of 3

Counsel are expected to know and comply with the Local Rules of this Court, which are available on the Court's website at:
http://www.alameda.courts.ca.gov/courts/rules/index.shtml and with the California Rules of Court, which are available at www.courtinfo.ca.gov.

The parties are always encouraged to consider using various alternatives to litigation, including mediation and arbitration, prior to the Initial Case Management Conference. The Court may refer parties to alternative dispute resolution resources.

A courtesy copy of all filed briefs must be delivered directly to Department 30.

### Schedule for Department 30

The following scheduling information is subject to change at any time, without notice. Please contact the department at the phone number or email address noted above if you have questions.

- Trials generally are held: Court Trials: Mondays through Thursdays at 9:45 a.m.
- Jury Trials: Mondays through Thursdays at 9:45 a.m.
- Master Trial Calendar: Fridays at 9:30 a.m.
- Case Management Conferences are held: Initial Case Management Conferences: Fridays at 9:15 a.m., 9:45 a.m., 10:45 a.m. and 11:15 a.m.
- Case Management Conference Continuances: Mondays through Thursdays at 9:15 a.m.
- Law and Motion matters are heard: Tuesdays and Wednesdays at 9:30 a.m.
- Settlement Conferences are heard: Fridays at 9:30 a.m., 10:00 a.m. and 10:30 a.m.
- Ex Parte matters are heard: Tuesdays and Thursdays at 9:00 a.m.
- For time-sensitive emergency applications, contact the Court by email to receive instructions on when the matter may be heard.

### Law and Motion Procedures

To obtain a hearing date for a Law and Motion or ex parte matter, parties must contact the department as follows:

- Motion Reservations
     Email:     Dept.30@alameda.courts.ca.gov

     Reservations by email only.

- Ex Parte Matters
     Email:     Dept.30@alameda.courts.ca.gov

     Reservations by email only.

### Tentative Rulings

The court will issue tentative rulings in accordance with the Local Rules. Tentative rulings

will become the Court's order unless contested in accordance with the Local Rules. Tentative rulings will be available at:

- Website: http://www.alameda.courts.ca.gov/courts/DomainWeb, Calendar Information for Dept. 30

- Cases Assigned to Judge Burr, Tentative Ruling Line before July 1, 2007: (510) 208-4931

- Cases Assigned to Judge Miller, Tentative Ruling Line before July 1, 2007: (510) 690-2709

- All cases, Tentative Ruling Line after July 1, 2007: 1-866-223-2244

Dated: 06/06/2007                    Executive Officer / Clerk of the Superior Court

                                     By  _____
                                              Deputy Clerk

---

**CLERK'S CERTIFICATE OF MAILING**

I certify that the following is true and correct: I am the clerk of the above-named court and not a party to this cause. I served this Notice by placing copies in envelopes addressed as shown on the attached Notice of Initial Case Management Conference and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 06/07/2007

                                     By  _____
                                              Deputy Clerk

**ALTERNATIVE DISPUTE RESOLUTION
INFORMATION PACKAGE
Effective April 15, 2005**

---

### Instructions to Plaintiff / Cross-Complainant

In all general civil cases filed in the trial courts after June 30, 2001, the plaintiff
is required to serve a copy of this ADR information package on each defendant.

California Rules of Court, Rule 201.9 (Excerpt)

(a) Each court must make available to the plaintiff, at the time of filing of the
complaint, an Alternative Dispute Resolution (ADR) information package that
includes, at a minimum, all of the following:

(1) General information about the potential advantages and disadvantages
of ADR and descriptions of the principal ADR processes . . .

(2) Information about the ADR programs available in that court . . .

(3) In counties that are participating in the Dispute Resolution Programs
Act (DRPA), information about the availability of local dispute resolution
programs funded under the DRPA . . .

(4) An ADR stipulation form that parties may use to stipulate to the use
of an ADR process.

(b) Court may make package available on Web site . . .

**(c) The plaintiff must serve a copy of the ADR information package on
each defendant along with the complaint. Cross-complainants must serve a
copy of the ADR information package on any new parties to the action
along with the cross-complaint.**

Rev 4/05

## GENERAL INFORMATION ABOUT ADR

### Introduction to Alternative Dispute Resolution

Did you know that most civil lawsuits settle without a trial? And did you know that there are a number of ways to resolve civil disputes without having to sue somebody? These alternatives to a lawsuit are known as alternative dispute resolution (also called ADR). The most common forms of ADR are mediation, arbitration, and neutral evaluation. There are a number of other kinds of ADR as well.

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. In mediation, for example, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court.

ADR is not new. ADR is available in many communities through court-connected and community dispute resolution programs and private neutrals.

### Advantages of Alternative Dispute Resolution

ADR can have a number of advantages over a lawsuit:

- **ADR can be speedier.** A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.

- **ADR can save money.** Court costs, attorney fees, and expert witness fees can be saved.

- **ADR can permit more participation.** With ADR, the parties may have more chances to tell their side of the story than in court and may have more control over the outcome.

- **ADR can be flexible.** The parties can choose the ADR process that is best for them.

- **ADR can be cooperative.** In mediation, for example, the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other.

- **ADR can reduce stress.** There are fewer, if any, court appearances. And because ADR can be speedier, cheaper, and can create an atmosphere in which the parties are normally cooperative, ADR is easier on the nerves. The parties don't have a lawsuit hanging over their heads. For all the above reasons, many people have reported a high degree of satisfaction with ADR.

Because of these advantages, many parties choose ADR to resolve a dispute instead of filing a lawsuit. Even when a lawsuit has been filed, ADR can be used before the parties' positions harden and the lawsuit becomes costly. ADR has been used to resolve disputes even after a trial, when the result is appealed.

### Disadvantages of Alternative Dispute Resolution

ADR may not be suitable for every dispute.

If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure and review for legal error by an appellate court.

There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

The neutral may charge a fee for his or her services.

If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

Lawsuits must be brought within specified periods of time, known as statutes of limitations. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

Rev 4/05

## Three Common Types of Alternative Dispute Resolution

This section describes the forms of ADR most often found in the California state courts and discusses when each may be right for a dispute.

### Mediation

In mediation, a neutral (the mediator) assists the parties in reaching a mutually acceptable resolution of their dispute. Unlike lawsuits or some other types of ADR, the mediator does not decide how the dispute is to be resolved; the parties do.

Mediation is a cooperative process in which the parties work together toward a resolution that tries to meet everyone's interests, instead of working against each other where at least one party loses. Mediation normally leads to better relations between the parties and to resolutions that hold up. For example, mediation has been very successful in family disputes, particularly with child custody and visitation.

Mediation is particularly effective when the parties have a continuing relationship, like neighbors or business people. Mediation also is very effective where personal feelings are getting in the way of a resolution. This is because mediation normally gives the parties a chance to let out their feelings and find out how they each see things.

Mediation may not be a good idea when one party is unwilling to discuss a resolution or when one party has been a victim of the other or has unequal bargaining power in the mediation. However, mediation can be successful for victims seeking restitution from offenders. A mediator can meet with the parties separately when there has been violence between them.

### Arbitration

In arbitration, a neutral (the arbitrator) reviews evidence, hears arguments, and makes a decision (award) to resolve the dispute. Arbitration normally is more informal and much speedier and less expensive than a lawsuit. Often a case that may take a week to try in court can be heard by an arbitrator in a matter of hours, because evidence can be submitted by documents (like medical reports and bills and business records) rather than by testimony.

There are two kinds of arbitration in California: (1) Private arbitration, by agreement of the parties involved in the dispute, takes place outside of the courts and is normally binding. In most cases "binding" means that the arbitrator's decision (award) is final and there will not be a trial or an appeal of that decision. (2) "Judicial arbitration" takes place within the court process and is not binding unless the parties agree at the outset to be bound. A party to this kind of arbitration who does not like a judicial arbitration award may file a request for trial with the court within a specified time. However, if that party does not do better in the trial than in arbitration, he or she may have to pay a penalty.

Arbitration is best for cases where the parties want a decision without the expense of a trial. Arbitration may be better than mediation when the parties have no relationship except for the dispute.

Arbitration may not be a good idea when the parties want to decide on the outcome of their dispute themselves.

### Neutral Evaluation

In evaluation, a neutral (the evaluator) gives an opinion on the strengths and weaknesses of each party's evidence and arguments and makes an evaluation of the case. Each party gets a chance to present his or her side and hear the other side. This may lead to a settlement or at least help the parties prepare to resolve the dispute later on. If the neutral evaluation does not resolve the dispute, the parties may go to court or try another form of ADR.

Neutral evaluation, like mediation, can come early in the dispute and save time and money.

Neutral evaluation is most effective when a party has an unrealistic view of the dispute, when the only real issue is what the case is worth, or when there are technical or scientific questions to be worked out.

Neutral evaluation may not be a good idea when it is too soon to tell what the case is worth or if the dispute is about something besides money, like a neighbor playing loud music late at night.

## Other Types of Alternative Dispute Resolution

There are several other types of ADR besides mediation, arbitration, and neutral evaluation. Some of these are conciliation, settlement conferences, fact-finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR methods. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.

The selection of a neutral is an important decision. There is no legal requirement that the neutral be licensed or hold any particular certificate. However, some programs have established qualification requirements for neutrals. You may wish to inquire about the qualifications of any neutral you are considering.

Agreements reached through ADR normally are put in writing by the neutral and, if the parties wish, may become binding contracts that can be enforced by a judge.

You may wish to seek the advice of an attorney about your legal rights and other matters relating to the dispute.

## Help Finding an Alternative Dispute Resolution Provider in Your Community

To locate a dispute resolution program or private neutral in your community:

- **Visit the Court's Web site.** The Alameda County Superior Court maintains a list of court-connected mediators, neutral evaluators, and private arbitrators at http://www.co.alameda.ca.us/courts/adr.htm.

- **Contact the Small Claims Court Legal Advisor.** The small claims legal advisor for Alameda County is located at the Wiley W. Manuel Courthouse, Self-Help Center.  The phone number is 510-268-7665.

- **Visit the California Department of Consumer Affairs' Web site.** The Department of Consumer Affairs (also called the DCA) has posted a list of conflict resolution programs throughout the state. The list can be found at http://www.dca.ca.gov/r_r/mediati1.htm

  You can also call the Department of Consumer Affairs, Consumer Information Center, at 800-952-5210.

- **Contact your local bar association.** You can find a list of local bar associations in California on the State Bar Web site at http://www.calbar.org/2lin/2bar.htm.

  If you cannot find a bar association for your area on the State Bar Web site, check the yellow pages of your telephone book under "Associations."

- **Look in the yellow pages of your telephone book under "Arbitrators" or "Mediators."**

- **Automotive Repair, Smog Check: The California Bureau of Automotive Repair** (also known as BAR) offers a free mediation service for consumers who are dissatisfied with an auto repair or a smog check, or who dispute an invoice for such services. BAR registers and regulates California automotive repair facilities and licenses smog, lamp, and brake inspection stations. Learn more at http://smogcheck.ca.gov/smogweb/geninfo/otherinfo/mediation.htm or call 800-952-5210.

- **Attorney Fees: The State Bar of California** administers a mandatory fee arbitration program to resolve attorney fee disputes between lawyers and their clients. The program is an informal, low-cost forum and is mandatory for a lawyer if a client requests it. Mediation of attorney fees disputes may also be available in some areas of California. Learn more at http://www.calbar.org/2bar/3arb/3arbndx.htm or call 415-538-2020.

Rev 4/05

## DISPUTE RESOLUTION PROGRAMS IN ALAMEDA COUNTY

**Mediation Services**
**222278 Redwood Road, Castro Valley, CA 94546**
Phone: (510) 733-4940   fax: (510) 733-4945
Provides a panel of mediators to assist in the process of reaching an agreement in the areas of Neighborhood Disputes, Child Custody, Divorce, Parent/Teel Conflicts, Home Owners Association, Business, Real Estate, Employer/Employee, and Fremont Rent Increases.

**East Bay Community Mediation**
**1968 San Pablo Avenue, Berkeley, CA 94702-1612**
Phone: (510) 548-2377   fax: (510) 548-4051
EBCM is a community-based mediation program created by the union of Berkeley Dispute Resolution Service and Conciliation Forums of Oakland. EBCM offers counseling on options and approaches to resolving a dispute, mediation, large-group conflict facilitation, and conflict resolution skills workshops.

**Catholic Charities of the East Bay: Oakland – Main Office**
**433 Jefferson Street, Oakland, CA 94607**
Phone: (510) 768-3100   fax: (510) 451-6998
Mediators are responsible for mediation sessions involving the youth, victim and family members to work towards a mutually agreeable restitution agreement. Also provide free workshops in anger management and mediation.

**Center for Community Dispute Settlement**
**1789 Barcelona Street, Livermore, CA 94550**
Phone: (925) 373-1035
Provides services in Tri-Valley for all of Alameda County. Program goals are to increase the number of court cases resolved, mediating small claims cases four days per week, and training youth in listening and conflict resolution skills.

**California Lawyers for the Arts: Oakland Office**
**1212 Broadway Street, Suite 837, Oakland, CA 94612**
Phone: (510) 444-6351   fax: (510) 444-6352
This program increases the resolution of arts related disputes such as artistic control, ownership of intellectual property, credit for work performed or produced and contract issues, through the use of alternative dispute resolution. It also increases the capacity to provide services for counseling, conciliation and administration of mediation, arbitration and meeting facilitation.

JH    Document 1    Filed 08/24/...7    Page 57 of 264

## ALAMEDA COUNTY SUPERIOR COURT
## ADR PROGRAM

### ADR Program Administrator

Pursuant to California Rule of Court 1580.3, the presiding judge of the Superior Court of California, County of Alameda has designated Benjamin D. Stough, Berkeley Trial Court Administrator, to serve as ADR program administrator.

A Plaintiff may elect, the parties may stipulate or a judge may refer a case to Judicial Arbitration. The Judicial Arbitration Program Coordinator may be contacted at (510) 670-6646.

### The Judicial Arbitration Process

**Appointment of Arbitrator** (must be appointed within 30 days after referral per *CRC 1605*).
⇒ Parties mailed list of five names from which to select. (List mailed within 5-10 business days after receipt of referral).

⇒ Each party may reject one of the names listed (10 calendar days per *CRC 1605a*)

⇒ The administrator randomly appoints the arbitrators from the names remaining on the list. If only one remains then is deemed appointed.

### Assignment of Case *(CRC 1605a(4))*
⇒ Within 15 days of notice of the appointment, the arbitrator shall contact parties in writing about time, date, and place of the hearing. The parties shall receive at least 30 days notice prior to the hearing.

### Hearings *(CRC 1611)*
⇒ Shall be scheduled so as to be completed not less than 35 days nor more than 90 days from the date the arbitrator was assigned. For good cause shown, the case may be continued an additional 90 days by the Case Management Judge.

### Award of Arbitrator *(CRC 1615b & c)*
⇒ Arbitrator must file an award within 10 days after conclusion of the arbitration hearing. The court may allow 20 additional days upon application of arbitrator is cases of unusual length or complexity.

⇒ Within 30 days of the filing of the award the parties may file a Request for Trial de Novo. The clerk shall enter the award as a judgment after 30 days provided a Trial de Novo has not been filed.

### Return of Case to Court
⇒ Upon Filing of Trial de Novo the action is returned to Case Management Judge for further proceedings. *(CRC 1616 & Local Rule 6.4)*

⇒ If Trial de Novo is not filed then judgment is entered and the Case Management Judge is notified *(CRC 1615c & Local Rule 6.6)*

⇒ If parties indicate a settlement then case is returned to Case Management Judge and case is continued 45 days for an Order to Show Cause RE filing a dismissal. *(Local Rule 6.6)*

Rev 4/05

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

| Allen E. Broussard Justice Center<br>600 Washington Street, Oakland, CA 94707 | Berkeley Courthouse<br>2000 Center Street, 2nd Fl., Berkeley, CA 94704 | George E. McDonald Hall of Justice<br>2233 Shoreline Drive, Alameda, CA 94501 |
|---|---|---|
| Fremont Hall of Justice<br>39439 Paseo Padre Parkway, Fremont, CA 94538 | Gale/Schenone Hall of Justice<br>5672 Stoneridge Drive, Pleasanton, CA 94588 | Wiley W. Manuel Courthouse<br>661 Washington Street, Oakland, CA 94607 |
| Hayward Hall of Justice<br>24405 Amador Street, Hayward, CA 94544 | René C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | |

Case No.: _____

         Plaintiff

vs.

### STIPULATION FOR ALTERNATIVE DISPUTE RESOLUTION (ADR)

         Defendant

The parties by and through their attorneys of record hereby stipulate to submit the within

controversy to the following Alternative Dispute Resolution process:

_____

_____

_____

### ORDER

The foregoing stipulation having been read and considered, and good cause appearing, now therefore,

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the matter be set for Order to Show Cause Hearing RE:

Dismissal on _____ at _____ a.m./p.m. in Department _____

Dated: _____

_____
JUDGE OF THE SUPERIOR COURT

(SEAL)

Rev 4/05

1  CHARLES J. KATZ, ESQ. (SBN: 68459)
     475 El Camino Real, Suite 300
2  Millbrae, California 94030
     Telephone: (650) 692-4100
3  Facsimile: (650) 692-2900

4  Attorney for Plaintiff
     MARCELLA TRAN
5

**ENDORSED
FILED
ALAMEDA COUNTY**

**JUL 1 2 2007**

CLERK OF THE SUPERIOR COURT
By Cecilia Anchundo, Deputy

6

7

8               SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                      COUNTY OF ALAMEDA

10

11  MARCELLA TRAN               Case No. HG07329049

12         Plaintiff,           **AMENDMENT TO COMPLAINT**

13  vs.

14  GEORGE HALVORSON,
      CEO/CHAIRMAN, KAISER
15  PERMANENTE; KAISER PERMANENTE
      (OAKLAND); BETTIE COLES; RICHARD
16  SIMMS; PATRICIA HERNANDEZ;
      BRENDA ROBINSON; MILTON
17  AQUINO; EARLENE PERSON;
      YOLANDA CHAVEZ; SAL CURSIO AND
18  DOES 1 through 20, Inclusive.

19         Defendants
                            /

20

21      Plaintiff has now discovered that she designated a Defendant in the Complaint by an

22  incorrect name. Plaintiff hereby amends the Complaint to substitute the correct name for the

23  incorrect name wherever it appears in the Complaint

24     Correct Name                          Incorrect Name

25     Kaiser Foundation Hospital     to substitute for:     Kaiser Permanente.

26

27  Amendment to Complaint

28                            1

1     Correct Name                         Incorrect Name

2     Kaiser Foundation Hospital     to substitute for:     Kaiser Permanente
                                                     (Oakland).

3

4

5

6 Date: July ___, 2007

7                                 CHARLES J. KATZ, Attorney for Plaintiff
                                MARCELLA TRAN

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27 Amendment to Complaint

28                                       2

# EXHIBIT B

# Health Care Workers Union
# Local 250

**SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO**



**SEIU
250**

Health Care
Workers Union
Leading the Way

---

## Collective Bargaining Agreement
## With



## KAISER PERMANENTE

## of
## Northern California

**Effective October 1, 2000**

1

KFH 00933

## TABLE OF CONTENTS

PAGE

ARTICLE I      PURPOSE OF AGREEMENT                                      1

ARTICLE II     SCOPE OF AGREEMENT                                        1

      Section 1   -   Jurisdiction of Agreement
      Section 2   -   Subcontracting

ARTICLE III    RECOGNITION AND UNION SECURITY                            3

      Section 1   -   Recognition
      Section 2   -   Union Membership
      Section 3   -   Hiring
      Section 4   -   Notification of New Employees
      Section 5   -   Checkoff
      Section 6   -   Employer Indemnification
      Section 7   -   Volunteers

ARTICLE IV     UNION AND MANAGEMENT RESPONSIBILITY                       5

      Section 1   -   Management Rights
      Section 2   -   Agreed Objectives
      Section 3   -   Working Conditions

ARTICLE V      DISCRIMINATION                                            6

      Section 1   -   Scope
      Section 2   -   Wage Equality

ARTICLE VI     SENIORITY                                                 7

      Section 1   -   Definition of Bargaining Unit Seniority
      Section 2   -   Seniority Lists
      Section 3   -   Order of Application
      Section 4   -   Work Force Adjustments and Transition
      Section 5   -   Temporary Reductions in Work Schedules
      Section 6   -   Mechanization
      Section 7   -   Promotions, Transfers and Seniority
      Section 8   -   Job Posting
      Section 9   -   Assignment of Casual Hours

KFH 00934

ARTICLE VII      HOURS OF EMPLOYMENT                                    14

                 Section 1   -  Intent of Article
                 Section 2   -  Normal Work Week
                 Section 3   -  Scheduling
                 Section 4   -  Float Differential
                 Section 5   -  Workload Distribution
                 Section 6   -  Distribution of "Standby" Time, Overtime
                                and Additional Hours
                 Section 7   -  Split Shifts
                 Section 8   -  Rest Periods

ARTICLE VIII     OVERTIME AND ALLOWED TIME                              19

                 Section 1   -  Intent of Article
                 Section 2   -  Definition of Terms
                 Section 3   -  Overtime Rates
                 Section 4   -  "Standby" Pay and Duty
                 Section 5   -  Reporting Pay
                 Section 6   -  Call-in on Scheduled Day Off
                 Section 7   -  Calculation of Allowed Time
                 Section 8   -  Non-Duplication of Overtime

ARTICLE IX       SHIFT PREMIUM                                          22

ARTICLE X        TYPES OF EMPLOYEES                                     23

                 Section 1   -  Regular (R) Employees
                 Section 2   -  Short-Hour (S), Temporary (T) and
                                Casual (C) Employees
                 Section 3   -  Pay in Lieu of Benefits
                 Section 4   -  Service Date Commencement
                 Section 5   -  Tenure Service Credit

ARTICLE XI       WAGE RATES                                             25

                 Section 1   -  Schedule of Wages
                 Section 2   -  Premium Employees
                 Section 3   -  Pay Day
                 Section 4   -  Automatic Paycheck Deposit
                 Section 5   -  Effective Date of Tenure Increases
                 Section 6   -  Tenure Step/Experience Credit
                 Section 7   -  Job Descriptions

KFH 00935

Section 8   -   Classification Review Requests
Section 9   -   Maintenance, Service and .............. 25
              Technical Classifications
Section 10  -   Clerical Classifications

ARTICLE XII    HOLIDAYS .............................................. 30

Section 1   -   Holidays Observed
Section 2   -   Conditions of Observance
Section 3   -   Birthday Holiday
Section 4   -   Float Holiday
Section 5   -   Holidays, Regular Full-time Employees, Eligibility
Section 6   -   Holidays, Regular Full-time Employees, Compensation
Section 7   -   Holidays, Regular Part-time Employees
Section 8   -   Holiday Pay, Short-Hour, Temporary and Casual Employees
Section 9   -   Compensatory Time Off
Section 10  -   Overtime Calculation
Section 11  -   Holiday Scheduling
Section 12  -   Observation, Sunday Holidays
Section 13  -   Definition of Pay

ARTICLE XIII    VACATIONS ............................................ 35

Section 1   -   Vacation Pay
Section 2   -   Vacation Scheduling
Section 3   -   Call-Back
Section 4   -   Radiologic Technologist Special Compensation
Section 5   -   Vacation Pay for Terminated Employees

ARTICLE XIV    PERQUISITES ......................................... 37

Section 1   -   Room and Personal Laundry
Section 2   -   Uniforms
Section 3   -   Meals
Section 4   -   Mileage

ARTICLE XV    SICK LEAVE .......................................... 38

Section 1   -   Accumulation

Section 2   -   Pay

4

KFH 00936

Section 3    -  Applicability

Section 4    -  Holiday During Sick Leave
Section 5    -  Integration With Disability and
                   Workers' Compensation
Section 6    -  Return From Sick Leave
Section 7    -  Employee Requests for Data

ARTICLE XVI    LEAVES OF ABSENCE                                41

Section 1    -  Emergency Situations
Section 2    -  Non-Industrial Disability
Section 3    -  Written Confirmation
Section 4    -  Insurance Benefits During
                   Leave of Absence
Section 5    -  Industrial Disability
Section 6    -  Return From Leave
Section 7    -  Modified Work Plans

ARTICLE XVII    BEREAVEMENT LEAVE                               43

ARTICLE XVIII    PAID EDUCATIONAL LEAVE                         44

Section 1    -  Eligible Employees
Section 2    -  Eligible Programs
Section 3    -  Administration
Section 4    -  Hours Paid
Section 5    -  Night Shift Employees

ARTICLE XIX    IN-SERVICE EDUCATION                             46

ARTICLE XX    TRAINING COMMITTEE                                47

ARTICLE XXI    JURY DUTY PAY                                    47

ARTICLE XXII    INSURANCE BENEFITS                              48

Section 1    -  Health Insurance
   A. Description of Coverage
   B. Eligible Dependents
   C. Maintenance of Benefits



   D. Effective Date of Coverage
   E. Change in Plans

5

KFH 00937

F.  Ineligible Dependents
G. Retiree Coverage
Section 2    -  Life Insurance
Section 3    -  Dental Insurance
A. Basic Coverage
B. Claims Disputes
C. Orthodontia Coverage
D. Coordination of Benefits
Section 4    -  Short Hour Employee's Coverage
Section 5    -  Complete Details on Benefits

ARTICLE XXIII    DOMESTIC PARTNER COVERAGE                          52

ARTICLE XXIV    ANNUAL PHYSICAL EXAMINATIONS                       53

ARTICLE XXV    UNEMPLOYMENT COMPENSATION                          54

ARTICLE XXVI    PENSIONS                                          54

Section 1    -  Participation
Section 2    -  Service
Section 3    -  Credited Service
Section 4    -  Eligibility for and Amount of Benefits
A.  Normal Retirement
B.  Postponed Retirement
C.  Early Retirement
D.  Disability Retirement
E.  Deferred Vested Pension
F.  Survivor Annuity
G.  Other Pensions
H.  Manner of Payment
I.   Reinstatement of Benefits
Section 5    -  Voluntary Employee Contributions
Section 6    -  Cost
Section 7    -  Administration
Section 8    -  Salary Deferral Retirement Plan

ARTICLE XXVII    CHILD CARE                                       58

ARTICLE XXVIII    CONSCIENTIOUS OBJECTION                         58

ARTICLE XXIX    UNION BUSINESS                                    59

6

KFH 00938

ARTICLE XXX    DISPUTES                                                        60

            Section 1    -    Work Stoppages
            Section 2    -    Probationary Period
            Section 3    -    Definition of Grievance
            Section 4    -    Discussion of Request or Complaint
            Section 5    -    Grievance Procedure
            Section 6    -    General Provisions
            Section 7    -    Modification of Procedure
            Section 8    -    Discipline
                A. Just Cause
                B. Patient and Physician Complaints
                C. Warning Letters and Performance Evaluations
                D. Orientation
                E. Performance/Production Standards

ARTICLE XXXI    CONFIDENTIALITY OF MEDICAL RECORDS                            65

ARTICLE XXXII    JOINT CONFERENCE ON SERVICE-RELATED ISSUES                   65

ARTICLE XXXIII    COMPETITIVE WAGE REVIEW AND EQUITY ADJUSTMENTS    66

ARTICLE XXXIV    LABOR-MANAGEMENT COMMON INTEREST FORUM               67

ARTICLE XXXV    SAVINGS CLAUSE                                                68

ARTICLE XXXVI    DURATION OF AGREEMENT                                        68


APPENDIX A    WAGE ADMINISTRATIVE PRACTICES                                   71

            Section 1    -    Wage Structure Definitions
            Section 2    -    Geographic Area Definitions
            Section 3    -    Administration of Wage Structure "A"
            Section 4    -    Administration of Wage Structures
                        "B-1" and "B-2"
            Section 5    -    Selection of Employees and
                        Wage Structures


            Section 6    -    Special Classifications at Vallejo, Napa
                        and Fairfield

APPENDIX B    LIST OF CLASSIFICATIONS                                         80

KFH 00939

APPENDIX C      POSITION SPECIFICATIONS                                          84

APPENDIX D      WAGE RATES  -  1998, 1999, 2000                                  108

APPENDIX E      SHIFT DIFFERENTIAL / TENURE STEP /                               185
                EXPERIENCE CREDIT IN LIEU OF BENEFITS

APPENDIX F      RETRAINING COMMITTEE                                             187

APPENDIX G      BILINGUAL ASSIGNMENTS                                           188

APPENDIX H      EXCERPT FROM JULY 20, 1972 LETTER OF                            189
                AGREEMENT INCLUDED FOR REFERENCE
                IN ARTICLE XI -WAGE RATES, SECTION 9,
                NEWLY-LICENSED LVNs

APPENDIX I      SERVICE PERFORMANCE PAY PROGRAM -                               190
                PILOT PROJECT

APPENDIX J      JOINT TRAINING INSTITUTE ON UNION/MANAGEMENT                    193
                RELATIONS (PILOT)

APPENDIX K      MEMBER FOCUSED CARE INITIATIVE                                  195

INDEX           ALPHABETICAL LISTING BY TOPIC AREA                              198

8

KFH 00940

AGREEMENT

THIS AGREEMENT made and entered into as of the **1st** day of **October 2000** by and between the KAISER FOUNDATION HOSPITALS, THE PERMANENTE MEDICAL GROUP, INC., and KAISER FOUNDATION HEALTH PLAN, (hereinafter referred to as the "Employer") and the SEIU, Local 250, HEALTH CARE WORKERS' UNION, affiliated with the AFL-CIO (hereinafter referred to as the "Union").

WITNESSETH:

That the parties hereto have agreed as follows:

ARTICLE I - PURPOSE OF AGREEMENT

1.     It is the intent and purpose of the parties hereto to set forth herein the basic agreement covering the rates of pay, hours of work and conditions of employment between the parties.

ARTICLE II - SCOPE OF AGREEMENT

Section 1 - Jurisdiction of Agreement

2.     This Master Agreement covers the following:

3.          All of the Employer's employees presently represented by the Union.

4.          Employees in existing facilities not presently represented by any Union in the event a majority of such employees in any appropriate bargaining unit in any individual facility express a desire to be represented by the Union; provided, however that any such employees who at the time do not desire to become members of the Union shall be exempted from the provisions of Article III, Section 2 hereof.

5.          Employees in classifications covered by this Agreement in any new facility in California north of the Tehachapi line; provided, however, that the Master Agreement provisions dealing with wages and benefits covering the employees of such new facilities shall not apply and such matters shall be subject to negotiations between the Employer and the Union.

9

KFH 00941

6.           In the event a new facility is opened which is connected to or is adjacent to an existing facility where employees are represented by another Union or in the event there is a combination of present facilities where employees in one of the combining existing facilities are represented by another Union, an appropriate procedure shall be agreed upon by which the matter of representation of such employees can be resolved.

7.           Under no circumstances will the provisions of this Agreement apply to Registered Nurses, Supervisors, Confidential Employees and Stationary Engineers.

8.           The Employer recognizes the fact that bona fide supervisory employees are only those who have the authority to hire, promote, discipline, discharge or otherwise change status; and it is not its policy to establish jobs or job titles for the purpose of excluding such employees from the unit as established in Article II, Section 1 of this Agreement.

9.           The Employer and the Union agree that no jurisdiction over any group of employees shall be surrendered to any other union during the life of this Agreement except by mutual agreement of the parties hereto.

### Section 2 - Subcontracting

10.          The Union recognizes that the Employer has the obligation to provide effective health care in as efficient a manner as possible. The Employer recognizes that the Union has the obligation to protect the rights of Union members. To this end, they jointly establish procedures for subcontracting work which has traditionally been performed by bargaining unit employees to an outside shop or agency, and/or for bringing in temporary employees from an outside shop or agency.

11.          Before subcontracting bargaining unit work which is expected to last less than ninety (90) days, the Employer shall first offer the work to existing bargaining unit employees within the facility. If there is an additional need for work after the work is offered to employees within the facility, the work shall be offered to bargaining unit employees from other facilities who have submitted a written request to be considered for additional work. Such written request shall be sent to the facility(s) at which the employee has an interest in accepting additional work. Such written request shall be valid for a period of ninety (90) days and will be maintained in the Personnel Office of the facility where the employee desires extra work. Disputes under this paragraph shall be subject to the grievance procedure.

KFH 00942

12.           For the subcontracted work which is expected to last more than ninety (90) days, the Employer shall notify the Union at least thirty (30) days prior to such subcontracting, and the Employer and the Union shall discuss the circumstances resulting in the decision for such subcontracting including the impact, if any, it will have on existing employees.

13.           Following the procedures outlined in the preceding paragraph, the Union may appeal the Employer's decision directly to arbitration and the arbitrator shall determine if the Employer's decision was logical in light of the mutual obligations set forth in this Section.


## ARTICLE III - RECOGNITION AND UNION SECURITY

### Section 1 - Recognition

14.           The Employer recognizes the Union as the exclusive bargaining agency of the employees covered by this Agreement for the purposes of collective bargaining with respect to rates of pay, hours of work and working conditions.

### Section 2 - Union Membership

15.           Not later than the thirty-first (31st) day following the beginning of employment, or the effective date of this Agreement, or the execution date of this Agreement, whichever is later, every employee subject to the terms of this Agreement shall, as a condition of employment, become and remain a member of the Union paying the periodic dues and initiation fees uniformly required, or, in the alternative, shall, as a condition of employment, pay a fee in the amount equal to the periodic dues and initiation fees uniformly required as a condition of acquiring or retaining membership, or, if the employee objects to the payment of that agency fee, such employee shall as a condition of employment pay that portion of the agency fee that is related to the Union's representation costs.

16.           Employees who are required hereinunder to maintain membership, or the payments described in Paragraph 15 above, and fail to do so and employees who are required hereinunder to join the Union and fail to do so shall, upon notice of such action in writing from the Union to the Employer, be replaced by a competent employee whenever such competent employee is available. The Employer shall be the sole judge of the competency of such employees.

KFH 00943



Section 3 - Hiring

17.     When vacancies occur in positions subject to this Agreement, the Employer
        shall notify the Union and shall afford it an opportunity to send applicants for
        the position. The Employer will notify the Union of any position openings prior
        to other recruitment efforts being made in an attempt to fill the specific position
        with outside applicants. The Employer may likewise consider other applicants
        for the position who may or may not be members of the Union. The Employer
        may employ the person who, in its judgment, will make the best employee.
        The Employer shall be the sole judge of the fitness of any applicant.

Section 4 - Notification of New Employees

18.     At the time a new employee is hired who will be subject to this Agreement, the
        Employer shall deliver to the employee a written notice stating that the
        Employer recognizes the Union as the collective bargaining agent for the
        employees covered by the Agreement and quoting or paraphrasing the
        provisions of Article III of this Agreement. At the time of hire, each new
        employee shall be given a copy of the Collective Bargaining Agreement. The
        cost of issuing such agreements shall be shared equally by the Employer and
        the Union. Not later than the tenth (10th) of the following month the Employer
        shall supply the Union with the names, addresses and classifications of work
        of new employees and the names of employees terminated. The Employer
        will, at the time of hire, distribute packets of information to new hires which
        have been prepared by the Union and furnished to the Personnel office.

Section 5 - Checkoff

19.     The Employer shall deduct from each employee's wages the amount of Union
        dues and initiation fees, as specified by the Union, of all employees covered
        by this Agreement who have voluntarily provided the Employer with a written
        assignment authorizing such deductions. Once signed, the authorization
        cannot be canceled for a period of one (1) year from the date appearing on
        such written assignment or within a fifteen (15) day period prior to the
        termination date of the current Collective Bargaining Agreement between the
        Employer and the Union, whichever occurs sooner.

Section 6 - Employer Indemnification

20.     The Union shall indemnify the Employer and hold it harmless against any and
        all suits, claims, demands and liabilities that shall arise out of or by reason of
        any action that shall be taken by the Employer for the purpose of complying
        with the foregoing provisions of this Article, or in reliance on any list or
        certificate which shall have been furnished to the Employer under any of such
        provisions.

Section 7 - Volunteers

12

KFH 00944

21.   The volunteer's role in the Medical Centers is to provide services to patients that may not otherwise be offered. Volunteers will not be assigned to replace or be used in lieu of Union personnel in the performance of the typical duties of their classification.

## ARTICLE IV - UNION AND MANAGEMENT RESPONSIBILITY

### Section 1 - Management Rights

22.   The Union recognizes that the Employer has the duty and the right to manage the Hospital and clinics and to direct the working forces. This includes the right to hire, transfer, promote, demote, layoff, discipline and discharge employees, subject to the terms of this Agreement and the grievance procedure.

### Section 2 - Agreed Objectives

23.   The Union agrees with the objectives of achieving the highest level of employee performance and production consistent with safety, good health and sustained effort, and the Union and Employer will use their best efforts to effectuate this objective.

24.   The Union and the Employer agree that all Kaiser Permanente employees, physicians, managers, field representatives, human resource representatives and labor relation representatives will treat each other, regardless of position or profession, with dignity, respect, courtesy and trust.   The foregoing principles shall also apply in providing service to patients and visitors. **By creating an environment of mutual trust and respect, recognizing each person's expertise, knowledge and value, and providing training and education to expand those capabilities, we can achieve our common goals of achieving organizational success and creating a challenging work environment.   This agreement, in conjunction with the National Agreement, jointly initiates a wide array of activities designed to increase employee skills training, growth and development, and learning opportunities.**

### Section 3 - Working Conditions

25.   The Employer shall provide reasonable and safe working conditions consistent with accepted standards for the nature of the process and work performed. Work assignments shall be made only if they are in accordance with this principle.  Work conditions which appear to be inconsistent with this principle may be brought to the attention of the area supervisor by any employee; and if the supervisor is unable to resolve the problem, it may be submitted for

13

KFH 00945



investigation by the facility safety committee. Thirty (30) days following ratification of this Agreement the Union shall designate an employee representative to be assigned to the Facilities Safety Committee. Such attendance on safety committees shall not result in loss of pay to employees.

## ARTICLE V - DISCRIMINATION

### Section 1 - Scope

26.     No employee or applicant for employment covered by this Agreement shall be discriminated against because of membership in the Union or activities on behalf of the Union, and the Union agrees that employees covered hereby shall be admitted to membership without discrimination. Neither the Employer nor the Union shall discriminate for or against any employee or applicant for employment covered by this Agreement on account of race, color, religion, national origin age, sex or political affiliation. It is the continuing policy of the Employer and the Union that the provisions of this Agreement shall be applied to all employees without regard to race, color, religious creed, national origin, age, sex, sexual orientation, political affiliation, marital status, handicapped, medical condition, disabled veteran, and veterans of the Vietnam era as defined by Federal and State laws.

### Section 2 - Wage Equality

27.     There shall be no distinction between the wages paid to men and the wages paid to women for the performance of comparable quality and quantity of work on the same or similar jobs.

## ARTICLE VI - SENIORITY

### Section 1 - Definition of Bargaining Unit Seniority

28.     Bargaining unit seniority for all employees shall be defined as the employee's most recent date of hire into a bargaining unit position. Bargaining unit seniority date shall not be adjusted for leaves of absence as specified in Article XVI.

### Section 2 - Seniority Lists

14

KFH 00946

29.    Seniority lists of employees will be maintained within the department and shall
       be provided to the Union Representative, his/her designee or concerned
       employees upon request.

       Section 3 - Order of Application

30.    Seniority shall be applied in the following order except for filling vacant
       positions, as described in Article VI, Section 4:

       1. All Regular employees in department.
       2. All eligible Short-Hour employees in department.
       3. All Regular employees in facility.
       4. All eligible Short-Hour employees in facility.
       5. All Regular employees in bargaining unit.
       6. All eligible Short-Hour employees in bargaining unit.
       7. All Casual, ineligible Short-Hour, Temporary employees in department.
       8. All Casual, ineligible Short-Hour, Temporary employees in facility.
       9. All Casual, ineligible Short-Hour, Temporary employees in bargaining unit.

31.    All Short-Hour Employees must work three hundred (300) hours in Short-Hour
       status to qualify as an eligible Short-Hour employee regardless of prior status,
       except those who have already been classified as an eligible Short-Hour
       employee at any time in the past.

       Section 4 - Work Force Adjustments and Transition

32.    To address restructuring efforts and issues of work force adjustments and
       transitions, the parties agree to the following:

       The Employer will provide the employee and the Union with sixty-(60) days
       written notice of decisions to permanently layoff Regular and Short-Hour
       employees. A permanent layoff is defined as a reduction in force of more than
       30 days. Prior to implementation of such layoff, the Employer will meet with
       the Union to identify positions to be eliminated, the seniority of affected
       employees, the present work schedule, the proposed work schedule, and the
       date(s) of layoff. Additionally, the parties will meet and confer to discuss
       alternatives to layoffs that will minimize the impact on employees. Such
       discussions may include consideration of hiring freezes, early retirement for
       eligible retirees, leaves of absence, reduction of hours, transfers to other
       departments or facilities, reduction in utilization of contractual and temporary
       employees or any other alternative(s) that meet management established
       operational objectives prior to the designated date(s) of layoff. Any agreement

       or alternatives to layoffs prior to the designated date(s) of layoff, if any, shall
       be in writing and enforceable under the terms of this Agreement. Additionally,
       when layoffs are necessary, the Employer agrees to work with Local 250

15

KFH 00947

representatives to obtain available federal and state training and development funding to assist laid off workers in securing employment outside the Kaiser Permanente Medical Care Program.

If it is necessary to reduce force, the principle of bargaining unit seniority in each department and craft shall govern provided merit and ability are adequate. Employees who are transferred to a lower rated job as a result of a reduction in force shall receive the step rate which is equal to or next below his/her former rate (See Transition Assistance Program package for special instructions on red circling employee wages). In addition, he/she shall receive credit for time spent in his/her assigned step rate of his/her former classification in determining his/her eligibility date for future step rate increases in his/her new classification unless the employee was receiving the maximum step rate of his/her classification at the time of transfer. Regular and eligible Short-Hour employees who are laid off shall be given preference region-wide for posted vacancies at department, facility and bargaining unit levels as follows:

1. All Regular employees in the department.
2. All Regular laid off employees in the region.
3. All eligible Short-Hour employees in the department.
4. All laid off eligible Short-Hour employees in the region.
5. All Regular employees in facility.
6. All eligible Short-Hour employees in facility.
7. All Regular employees in bargaining unit.
8. All eligible Short-Hour employees in bargaining unit.
9. All casual, ineligible Short-Hour, temporary employees in department.
10. All casual, ineligible Short-Hour temporary employees in facility.
11. All casual, ineligible Short-Hour temporary employees in bargaining unit.

The provisions of Article VI, Section 8 - Job Posting, shall be applicable for the purpose of administering this paragraph.

33. To be eligible to bid for vacant positions, laid off employees must submit a transfer request for vacancies and meet the posted qualifications of the position, or meet the qualifications within the training period set forth in Paragraph 35. Such transfer requests shall be valid until the employee meets the conditions set forth in A, B, C, and D below. Regular or Short-Hour employee who has been laid off from a department or whose status has been changed due to a reduction in force for lack of work, shall retain bidding rights of the status and amount of seniority in department, facility and bargaining unit respectively which the employee has prior to the layoff for:

A. Twelve (12) months, or;

16

KFH 00948


B.    Until the employee has been placed in a permanent position on the same status within one position grade of the position held prior to the layoff in another department, or; (Note: Work Force Adjustment Committee referenced in the Side Letter of Agreement will determine the number of opportunities an employee shall have to reject offers of employment.)

C.    Until the employee accepts a position for which training is provided under the terms of this Article, or;

D.    Until the employee has refused recall to a position of the same status within one position grade of that held prior to layoff in their previous department, whichever occurs first.

34.    In recalling from layoff, the last laid off person remaining on the layoff status in each department and craft shall be the first recalled for available work to include casual and temporary assignments. Except as provided above, all the other provisions in the application of seniority and promotion shall apply.

35.    Employees who have received notice of layoff, have asserted their "laid off" seniority rights, and applied for a vacant position at the facility or bargaining unit level as provided for in Paragraph 32 above, shall be given on-the-job training necessary to meet the minimum qualifications of the posted position. Such on-the-job training shall be determined by the Employer and shall not be in excess of 160 hours.

Regular and Short-Hour employees who have received written notice of layoff and have asserted their "laid off" seniority rights for a position for which the training period will not allow them to meet the minimum qualifications of the posted position, or who after the maximum training period fail to meet the minimum qualifications of the posted position, or who are within a targeted group and have volunteered to be laid off shall be eligible for the Transition Assistance Program as set forth in the side Letter of Agreement dated February 24, 1994. The Transition Assistance Agreement as referenced in this Article shall not extend beyond the term of this Agreement. Refer to the Labor-Management Partnership Agreement on Employment and Income Security.

Employees who apply for a lead position in accordance with this Article shall be subject to the special seniority provisions set forth in Article VI - Seniority; Section 7 - Promotions, Transfers and Seniority.

Section 5 - Temporary Reductions in Work Schedules

36.    All Regular employees who are placed on layoff status for a period of one (1) to two (2) weeks for reasons within the control of the Employer will receive one

17



(1) week's notice or one (1) week's pay therefor. Regular employees who are placed on layoff status for more than two (2) weeks, for reasons within the control of the Employer, but for thirty (30) days or less will receive two (2) weeks' notice or two (2) weeks' pay therefor. Situations considered as being outside the control of the Employer shall include work stoppages, fires, and natural disasters.

### Section 6 - Mechanization

37.    When an employee's particular job is eliminated because of mechanization, the following steps shall be taken by the Employer. The term "mechanization" is defined as replacement of essential elements of an employee's particular job by a machine or other technological improvement, including but not limited to introduction of automated processes and work-saving devices.

38.    The employee, if he/she has at least five (5) years of continuous service as a Regular employee, shall be given three (3) months prior notice that his/her job is being eliminated. The employee, if he/she has less than five (5) years but more than one (1) year of continuous service as a Regular employee shall be given four (4) weeks prior notice that his/her job is being eliminated. The employee, if he/she has less than one (1) year of continuous service as a Regular employee, shall be given two (2) weeks prior notice that his/her job is being eliminated. The applicable period of notice shall be termed the "notification period."

39.    The employee with at least five (5) years of continuous service as a Regular employee shall be offered another job during the notification period, if an available job opening exists for which he/she can reasonably be expected to qualify within a training and trial period not to exceed sixty (60) days, either at the same facility or at another facility within reasonable proximity. The Employer is not obligated to offer another job to an employee with less than five (5) years of continuous service as a Regular employee, but will make reasonable effort to accomplish the force reduction through attrition and transfer regardless of length of service.

40.    If an available job opening exists during the notification period and it is offered to and accepted by the employee, the rate of pay for the job, as set forth in the Wage Rates hereto attached, shall become effective at the end of the notification period.

41.    If an available job opening does not exist by the end of the notification period, the employee shall receive severance pay on the following basis for full years of continuous service as a Regular employee:

| Years of Service | Days of Pay |
|------------------|-------------|
| 1-2              | 2           |

18

KFH 00950

|        |    |
|--------|----|
| 2-3    | 4  |
| 3-5    | 10 |
| 5-7    | 15 |
| 7-10   | 20 |
| 10 - Over | 30 |

42.   If another job is offered to an employee and the employee refuses to accept such job, he/she shall be terminated at the end of the notification period and shall not be eligible for any severance pay; provided that the straight-time hourly rate of pay for the new job offered the employee was within fifteen cents ($0.15) per hour of the regular straight-time hourly rate of pay assigned the job currently being performed by the employee.

43.   If another job is offered to an employee and the employee refuses to accept such new job, he/she may be terminated immediately or at the end of the notification period at the discretion of the Employer and shall receive severance pay on the following basis for full years of continuous service as a Regular employee; provided that the straight-time hourly rate of pay for the new job offered the employee was at least fifteen cents ($0.15) per hour less than the regular straight-time hourly rate of pay assigned the job currently being performed by the employee.

| Years of Service | Days of Pay |
|------------------|-------------|
| 1-2   | 2  |
| 2-3   | 4  |
| 3-5   | 10 |
| 5-7   | 15 |
| 7-10  | 20 |
| 10-Over | 30 |

44.   It is understood and agreed that the foregoing Section 6 shall apply only to employees whose jobs are eliminated because of mechanization and this Section shall not be applicable to reduction in force caused by or resulting from any other reason.

Section 7 - Promotions, Transfers and Seniority

45.   In filling any vacancy, all qualified employees shall be preferred over outside applicants. Between existing employees, bargaining unit seniority shall govern provided merit and ability are adequate.  However, for those positions that require the directing and checking of others, the Employer shall have discretion in filling the position by selecting from among the three (3) most senior qualified applicants within the department. In the event there are less than three (3) applicants, the Employer shall have the option to consider applicants from the facility or region, in that order.  The Employer will not consider sources outside the bargaining unit unless there are no qualified

19

KFH 00951


internal applicants. The intent is to consider no more than three (3) qualified applicants at any one time.

46.    When choosing among Casual employees for casual work, the Employer will use its best efforts to assign that work on the basis of bargaining unit seniority.

47.    Employees who are promoted shall undergo a ninety (90) day evaluation period in the new position. Should the employee fail to qualify for the new position he/she shall be returned to his/her former comparable position without change in his/her previous seniority wage rate. Such rights to return shall be given preference in filling open positions.

48.    An inter-facility transfer or promotion request will constitute an automatic bid for an open position for ninety (90) days following submission of such request. Written request for changes in shift assignment and lateral transfer at the same location and its environs may be submitted in advance for jobs that may subsequently become vacant.

49.    The Employer will provide one (1) copy of the request for transfer to the Union, or its designee, at the time it is processed. The Employer shall maintain a file of such requests and shall provide such names to supervisors in departments where vacancies occur.

50.    An employee, including new hires, who applies for and is awarded a posted position in a different department may not apply for another vacancy in a different department for six (6) months, unless the vacancy results in a promotion. This bidding restriction shall not apply to changes in position, classification shift, or scheduled hours within the same department or to employees whose hours have been reduced by the Employer. It shall also be waived by the Employer prior to considering outside applicants.

Section 8 - Job Posting

51.    To expedite the administration of this Article, position vacancies shall be posted within the department in which they occur for one (1) workday. If the position is not filled from within the department in accordance with the seniority provisions, the vacancy shall be posted for five (5) days in the department, facility and its environs where the vacancy occurs. Posting for jobs vacated by promotion will indicate the reason for the vacancy. Written requests for transfer to a specific position vacancy within the facility and its environs may be submitted in advance and shall constitute an automatic bid for a period of thirty (30) days after submission. Qualifications for vacant positions shall appear on position postings and shall be based on the job requirements. Forty-eight (48) hours prior notice will be given to the Union before the Employer uses private fee charging agencies as a recruitment source for all Maintenance and Service classifications in Housekeeping,

20

KFH 00952

Laundry and Dietary Departments, Nurse Attendants in the Nursing
Department and clerical positions classified in Grade 1 or 2.

A.     All postings shall indicate the time and date of posting.

B.     Postings shall include department, entity, shift (day/evening/night), days
       of the week and the number of currently scheduled hours.

C.     Job descriptions for all posted positions shall be retained in Personnel
       for review by applicants.

D.     If there is a qualified applicant within the five (5) day posting period, the
       Employer will notify the employee of his/her acceptance or cancel the
       posting in writing within thirty (30) days of expiration of the five (5) day
       posting.

E.     The Employer will in good faith and subject to efficient operations use
       its best efforts to release successful bidders to their new jobs within
       thirty (30) days.

52.    The Employer will provide one (1) copy of the job posting to the Union, or its
       designee, at the time it is processed.

### Section 9 - Assignment of Casual Hours

'53.   When choosing among casual employees for casual work, the Employer will
       use its best efforts to assign that work on the basis of seniority.


## ARTICLE VII - HOURS OF EMPLOYMENT

### Section 1 - Intent of Article

54.    This Article is intended to define the normal hours of work and shall not be
       construed as a guarantee of hours of work per day or per week, or of days of
       work per week.   This Article shall not be construed as any basis for the
       calculation of overtime.


### Section 2 - Normal Work Week

55.    The Employer will exercise its efforts in good faith, subject to the requirements
       of efficient operations, to the end that employees will be scheduled on a basis
       of a normal work week of forty (40) hours within the work week period during
       which there are two (2) consecutive days of rest.

21

KFH 00953



Section 3 - Scheduling

56. Schedules of starting and quitting times and days off of Regular employees will be posted by the Employer fourteen (14) days in advance subject to emergency situation changes and as much advance notice of overtime requirements will be given as permitted by operational circumstances. When it becomes necessary because of emergency situations to change such work schedules, consideration will be given to the desires of the affected employees. Where agreement cannot be reached, such changes in work schedules will be made in reverse bargaining unit seniority order within the department.

57. An employee's shift assignment and days off will be changed only in response to operational requirements. In such event, consideration will be given to the desires of the affected employees. If there is no mutual agreement, changes will be made in reverse order of bargaining unit seniority within the department provided that merit and ability are adequate as to the Employer's staffing requirements on all shifts of the department.

58. Rest Period Between Shifts  -  Regular employees shall have an unbroken rest period of twelve (12) hours between any 8-hour shifts. All hours worked within the 12-hour rest period shall be paid at the rate of time and one half (1-1/2). This provision may be waived upon the written request of the employee and with the agreement of the supervisor. Time for which any premium pay is paid shall count as rest time for purposes of this paragraph. This paragraph is waived if conditions beyond the Employer's control and/or acts of God so require the services of the employees.

59. The Employer will also use its best efforts to grant each full-time employee who desires such a schedule, every other weekend off. In the exercise of "best efforts" it is intended that the Employer will use the successful techniques employed at other medical centers as applicable within the framework of economic constraints and availability of staffing. The Union may present suggested staffing schedules which shall be implemented within sixty (60) days from the date such schedules have been proven feasible to the Employer. Other weekend staffing schedules for full-time employees may be suggested by the Union within the same framework of consideration and implementation.

60. Guarantee of Every Third Weekend Off  -  The Employer will guarantee every third (3rd) weekend off to the full-time employees in a department and will pay time and one-half (1-1/2) for all hours of work, performed on the third (3rd) consecutive weekend and each weekend thereafter until granted a weekend off subject to the conditions of Paragraph 61. This guarantee does not apply to full-time employees who desire a schedule which includes weekend work or

22

KFH 00954

to full-time employees who desire to work certain weekends which make up a portion of the three (3) consecutive weekends.

61.    It is understood that to guarantee employees every third (3rd) weekend off in a department it may be necessary to rotate days off for all full-time employees in that department and that there can be no restrictions on split days off in such department.    The Employer may utilize back-to-back workweeks and the eighty (80) hour option under the Fair Labor Standards Act for purposes of computing overtime.    An employee required to work more than seven (7) consecutive days without a day off shall be compensated thereafter at time and one-half (1-1/2) the employee's basic straight-time hourly rate for each day worked or portion thereof until granted a day off. The Employer shall not be required to pay time and one-half (1-1/2) for the sixth (6th) day nor double time for the seventh (7th) day. This provision may be waived on the request of an individual employee and with the agreement of the Employer.    All employees in a department which selects the guaranteed weekend off provision will be covered by the provisions of this paragraph.

62.    Once each year (month to be determined by the facility) each affected department, by shift, subject to the requirement of efficient operations, shall vote, if the employees so request, and by majority vote of all employees on the shift decide whether the provisions of Paragraph 60 subject to the conditions of Paragraph 61 shall apply for the following twelve (12) months. The vote will be held on each shift.

63.    Voting shall be conducted by a Joint Committee composed of three (3) persons appointed by the Employer and three (3) selected by the Union.    The departmental units for the purpose of voting shall be determined by the Joint Committee in each hospital.

64.    Disputes under this Section with the exception of Paragraphs 56, 57, and 58 shall be subject to mediation through the California State Conciliation Service, but shall not be subject to the complaints and grievance procedure and arbitration provisions of this Agreement.

Section 4 - Float Differential

65.    It is the intention of the Employer to schedule employees on regular assignments.    If an employee floats from one assignment to another, as described below, a premium of ten cents ($.10) per hour shall be paid for work performed in the area to which he/she is reassigned, if the assignment exceeds one (1) hour.

23

KFH 00955

66. The premium shall apply to:

    A.    Employees assigned to a permanent work area who commence a shift and are then reassigned to another "service" or "multiple service" area as traditionally identified at the location involved and its environs;

    B.    Employees whose primary jobs are as unassigned relief employees;

    C.    Clinic employees whose primary jobs are to relieve other personnel within a shift on a pre-arranged basis;

    D.    Employees temporarily reassigned from one facility and its environs to another.

67. Casual and Temporary employees shall qualify for the premium only if they satisfy the conditions specified in (A) above. Professional and Technical employees shall qualify for the premium only if they satisfy the condition specified in (D) above.

68. The premium shall not apply to:

    A.    Employees who normally move through the facility or function in multiple services or departments during the usual performance of their duties (e.g., those in the Housekeeping, Dietary, Storeroom and Chartroom Departments, Medical Secretaries and Transcriptionists, etc.);

    B.    Employees who receive additional pay based on relief work in a higher classification;

    C.    Employees whose reassignment becomes permanent;

    D.    Employees who are transferred from any area to another for training purposes;

    E.    Employees who relieve other employees in a lower classification and whose rate is not reduced during the time worked on a relief basis.

69. Solely for this paragraph the parties agree that if other situations arise pertaining to float assignments it is the obligation of the Union to cite such situations to the Employer and the parties shall resolve the matter consistent with the above principles without resorting to the grievance procedure. Any additional float differentials agreed to by the parties to be paid per this paragraph shall become effective at the beginning of the first payroll period following receipt of notification by the Union that a new situation exists which is consistent with the principles herein stated which should entitle an employee to float differential pay.

24

KFH 00956



70.    In the application of this Section, Maternity Service shall include delivery, labor, nurseries and postpartum areas; Surgery Suite shall include operating, recovery, cast and cystoscopic rooms and central supply and related functions; Rehabilitation Service and Psychiatric Service shall include all inpatient and outpatient areas and related services and functions. It is also understood that in the medical offices there are related services and functions which in the application of this Section qualify as "multiple service" areas such as, but not limited to Emergency Room/Observation/Non-appointment area and the Medical Department/Medical Procedure rooms and the Surgery Department/Surgery Procedure rooms.

71.    Further the following geographical areas are to be considered as facilities (or locations) and its environs herein before referred to for the purpose of this Section 4 only:

| Antioch | Napa | San Jose Call Center |
|---|---|---|
| Berkeley | Novato | San Rafael |
| Berkeley Regional Lab | Oakland | Santa Clara |
| Campbell | Petaluma | Santa Rosa |
| Davis | Pleasanton | Santa Teresa |
| Fairfield | Rancho Cordova | South Sacramento |
| Fremont | Redwood City | South San Francisco |
| Gilroy | Richmond | Stockton |
| Hayward | Roseville | Vacaville |
| Livermore | Sacramento Call Cntr | Vallejo Call Center |
| Martinez | San Francisco | Walnut Creek |
| Milpitas | (including French) | |
| Modesto | | |
| Mountain View | | |

## Section 5 - Workload Distribution

72.    When an employee is absent for any reason and if a replacement cannot be obtained in time, it is the intention of the Employer to distribute the workload equitably among the employees in the work unit so that no undue hardship may be placed on an individual worker. It is further the intent of the Employer, subject to the dispute section of this Agreement, to distribute the workloads equitably among employees in both single work units and departments.

### Section 6 - Distribution of "Standby" Time, Overtime and Additional Hours

73.    Standby Distribution - The Employer will distribute standby duty in a rotational sequence established by seniority among those qualified employees in any one classification concerned at any one location who have volunteered to be on the standby list. The Employer will maintain lists of those employees

25



requesting standby. If no one on the list volunteers to take the standby and no other qualified employee volunteers, it will be assigned on a rotational basis by reverse bargaining unit seniority within the department to those who have volunteered to be on the standby list; or, if there have been no such volunteers for the list, to those qualified employees in the unit on a rotational basis by reverse bargaining unit seniority within the department.

74.    Overtime and Additional Hours    - The Employer shall assign overtime and additional hours to employees in any one classification concerned at any one location who have volunteered to be on the list for overtime or additional hours. Such work shall be assigned from the lists in the following order, based upon bargaining unit seniority within the department:

   1.    All Regular employees.
   2.    All eligible Short-Hour employees.
   3.    All ineligible Short-Hour, Casual and Temporary employees.

75.    If no one on the list volunteers for overtime or additional hours, and no other qualified employee volunteers, it will be assigned on a rotational basis by reverse seniority to those who have volunteered to be on the list; or, if there had been no volunteers for such list, to those qualified employees in the unit on a rotational basis by reverse seniority. The assignment of additional hours shall not require the Employer to split the additional hours among two or more employees, to pay overtime as a result of such assignment or to change the employees' normally assigned work schedule.

Section 7 - Split Shifts

76.    A straight shift is defined as a regular day's work of eight (8) hours completed within nine (9) consecutive hours with no more than one (1) hour for lunch.

77.    A split shift is defined as eight (8) hours completed within a spread in excess of nine (9) consecutive hours without more than one break.

78.    In addition to their regular rate of pay, employees performing work on a split shift completed within a spread of not more than eleven (11) hours shall be paid the appropriate premium as set forth in the California State Industrial Welfare Orders. In addition, any split shift work completed beyond a spread of eleven (11) consecutive hours shall be paid for at the rate of time and one-half (1-1/2) for all hours worked beyond the eleven (11) hour spread.

79.    There shall be no new split shifts except as requested by the employee and approved by the Employer and the Union.

Section 8 - Rest Periods

KFH 00958



80.    Each employee is allowed a rest period during each continuous four (4) hours of work. If continuous operation is required in the job concerned, a substitute will be provided for the rest period. The exact length of the rest period is determined by the distance to the nearest convenience. In no case shall a rest period be longer than fifteen (15) minutes nor less than ten (10) minutes.

## ARTICLE VIII - OVERTIME AND ALLOWED TIME

### Section 1 - Intent of Article

81.    This Article is intended to provide the basis for calculation of and payment for overtime and allowed time and shall not be construed as a guarantee of hours of work per day or per week or days of work per week.

### Section 2 - Definition of Terms

82.    "Payroll Week" as used in this Article shall mean and consist of the seven (7) day period beginning at 12:01 a.m., Sunday, or at the shift changing hour nearest that time.

83.    "Payroll Day" as used in this Article shall mean and consist of a twenty-four (24) hour period, beginning at the same time each Payroll Day as the Payroll Week begins.

### Section 3 - Overtime Rates

84.    Employees shall be paid at the rate of time and one-half (1-1/2) the straight-time hourly rate, including shift differential and split shift differential, for all hours of work performed in excess of eight (8) hours in any one work day and/or for all hours worked in excess of forty (40) hours within the work week. Employees shall be paid at the rate of double the straight-time hourly rate including shift differential and split shift differential for all hours worked in excess of twelve (12) consecutive hours in any one workday.

85.    Employees assigned to a scheduled work week of twenty (20) hours or more in a period of more than five (5) work days shall be paid at the rate of time and one-half (1-1/2) for all hours of work performed on the sixth (6th) day of work; whether or not such hours of work are in excess of forty (40) hours within the work week.

86.    Employees shall be paid at the rate of double the straight-time hourly rate, including shift differential and split shift differential, for all hours of work performed on the seventh (7th) consecutive Payroll Day worked within the Payroll Week.

27

KFH 00959



### Section 4 - "Standby" Pay and Duty

87.    Employees on a predetermined work schedule who are placed on standby duty beyond their regularly scheduled work day or work week shall be allowed within the following thirty (30) days at the option of the employee, (subject to efficient operations) either compensatory time off equal to one-half (1/2) of the time they were on such standby duty, or payment for such time at one-half (1/2) times their straight-time hourly rate including shift differential and split shift differential. Requests and approval for compensatory time off shall be in writing. The election for compensatory time off must be submitted within the payroll period in which the standby occurs. If no request is submitted as set forth above, the employee shall receive pay rather than compensatory time off. In the event more than one employee requests the same compensatory day or days off and the Employer cannot accommodate such requests because of patient care requirements, elections for compensatory time off, to the extent that they can be accommodated to such requirements, shall be determined on the basis of bargaining unit seniority within the department. Standby duty assigned on a recognized holiday shall be paid at three-quarters (3/4) times their regular base rate.

88.    Such employees on standby duty who are called to work shall be compensated for the time worked at one and one-half (1-1/2) times their straight-time hourly rate including shift differential and split shift differential; provided, however, that such employees are guaranteed a minimum credit of three (3) hours' work for each occasion on which they are called in. However, the total hours of work paid at time and one-half (1-1/2) shall not exceed the number of hours in the standby period assigned to the employee and further, the number of hours credited to an employee at time and one-half (1-1/2) shall be deducted from the number of hours the employee has been on standby to determine the number of hours, if any, to be paid at one-half (1/2) time. Work which is performed under this Section is defined as a call for an employee who has left the premises to return to perform work of an indefinite duration, but shall not be work performed continuous with his/her daily work schedule. Any employee may decline call-in duty if he/she has not been notified of such duty on or prior to the preceding shift. Standby periods of more than eight (8) hours shall be broken into eight (8) hour periods and fractions thereof, and the rules dealing with the three (3) hour guarantee and shift differential shall be applied to each period separately.

### Section 5 - Reporting Pay

89.    Employees who are scheduled to report for work and who are permitted to come to work without receiving prior notice that no work is available shall perform any work to which they may be assigned. The Employer may utilize such employee in any related capacity in which he/she is qualified to perform. The employee shall be compensated at his/her regular rate or appropriate rate

28

KFH 00960

of pay for the job he/she is assigned, whichever is higher. When the Employer is unable to utilize such employee and the reason for lack of work is within the control of the Employer, the employee shall be paid an amount of money equivalent to eight (8) hours times the straight-time hourly rate, excluding shift differential; provided that an employee who was scheduled to work less than eight (8) hours on such day shall be paid his/her regular pay for reporting and not being put to work through no fault of his/her own. In such cases, the authorized supervisor of the employee may allow the employee to leave work before eight (8) hours have elapsed. The provisions of this Section shall not apply if the lack of work is not within the control of the Employer or, if the Employer makes a reasonable effort to notify the employee by telephone (or telegram if no response), not to report for work at least two (2) hours before their scheduled time to work. It shall be the responsibility of the employees to notify the Employer of their current address and telephone number. Failure to do so shall preclude the Employer from the notification requirements and payment of the above minimum guarantee. If an employee is discharged and is not notified before the start of the next shift that he/she would have worked otherwise, he/she shall receive two (2) hours' pay in accordance with the provisions of this Section.

### Section 6 - Call-In on Scheduled Day Off

90.    If an employee is called to work on what would otherwise have been a regularly scheduled day off and if the Employer fails to give one (1) hour's notice before the start of the required shift, the employee shall be paid for the hours of work actually performed plus one (1) hour, but is to be paid not less than three (3) hours nor more than eight (8) hours of pay in any one shift unless the employee works more than eight (8) hours in that shift.

### Section 7 - Calculation of Allowed Time

91.    Pay under Section 4 above for work which was not performed (allowed time) shall not be included in the hours worked during the payroll day or payroll week for the purpose of calculating overtime, and likewise, shall not be paid for at overtime rates. When employees are specifically directed by their supervisors to attend mandatory meetings, such time spent in meetings shall count as time worked.

### Section 8 - Non-Duplication of Overtime

92.    Payment of overtime rates shall not be duplicated for the same hours worked under any of the terms of this Agreement, and to the extent that hours are compensated for at overtime rates under one provision, they shall not be counted as hours worked in determining overtime under the same or any other provisions.

KFH 00961

## ARTICLE IX - SHIFT PREMIUM

93.    An evening shift shall be defined as any shift of four (4) hours or more commencing at or after 12:00 noon and terminating after 6:00 p.m.

94.    A night shift shall be defined as any shift of four (4) hours or more commencing at or after 10:00 p.m. but before 6:00 a.m.

95.    Shift differential amounts are as set forth below and the classifications to which the different shift differentials apply are shown in Appendix E, Schedules Y and Z:

Effective November 1, 1992:

|              | Evening | Night  |
|--------------|---------|--------|
| Schedule Y:  | $1.00   | $1.25  |
| Schedule Z:  | $1.45   | $1.95  |

96.    Additional hours or overtime, including additional shifts, immediately prior to or following an employee's regular shift shall be paid the shift differential, if any, applicable to their regular shift that day.

## ARTICLE X - TYPES OF EMPLOYEES

### Section 1 - Regular (R) Employees

97.    A Regular employee is defined as an employee who is regularly employed to work a predetermined work schedule of twenty (20) or more hours per work week. Any employee designated as a Regular employee shall accumulate and receive all of the fringe benefits as provided in this Agreement when he/she becomes and so long as he/she remains a Regular employee.

### Section 2 - Short-Hour (S), Temporary (T) and Casual (C) Employees

98.    A Short-Hour (S) employee is one who is regularly scheduled to work a predetermined work schedule of less than twenty (20) hours per work week; a Temporary (T) employee is one who is hired as an interim replacement or for temporary work on any predetermined work schedule which does not extend beyond three (3) calendar months. A Casual (C) employee is one who is employed to work on an intermittent basis. All Short-Hour, Temporary and Casual employees as defined above shall be ineligible for fringe benefits provided under this Agreement except for the premium pay of time and one-half (1-1/2) for worked holidays, shift differential as provided in Article IX hereof, split shift differential as provided in Article VII hereof, and effective

30

KFH 00962



January 1, 1990, credited service referenced in Article XXVI, Pension, Section 3, Credited Service.

99.    A Casual employee who is regularly assigned a predetermined work schedule shall be reclassified to either Short-Hour, Temporary or Regular status and service credit for the purpose of benefit accrual shall be the effective date of reclassification to Regular status. Written posting or notification of one (1) week constitutes a predetermined work schedule.

100.    In no event will there be any duplication of the differential and accumulation or rights to fringe benefits and tenure adjustments other than those specified above.

101.    A Regular employee who, with no break in service, becomes a Temporary, Short-Hour or Casual employee will be paid at the rate he/she was receiving as a Regular employee plus the appropriate differential.

## Section 3 - Pay In Lieu of Benefits

102.    In lieu of eligibility for benefits, Short-Hour, Temporary and Casual employees shall be paid a wage differential as set forth below and the classifications to which the differential apply are shown in Appendix E, Schedules Y and Z.

Schedule Y: $1.00 per hour        Schedule Z: $2.00 per hour

## Section 4 - Service Date Commencement

103.    An employee who is designated a Regular employee shall have his/her service date for purposes of eligibility and accumulation of fringe benefits established as of the date he/she is determined a Regular employee. An employee once designated as a Temporary, Short-Hour or Casual employee and later designated as a Regular employee shall have his/her service date commence for the purpose of eligibility for and accumulation of fringe benefits as of the date he/she is designated a Regular employee. The period during which an employee is designated as a Temporary, Short-Hour or Casual employee shall not be included for purposes of determining eligibility for or accumulation of fringe benefits provided under this Agreement or for the amount of such fringe benefits. As an exception to this paragraph, Regular employees shall receive credit towards retirement benefits for time in Short-Hour, Casual, or Temporary status as provided in Article XXVI, Section 3.

## Section 5 - Tenure Service Credit

104.    Short-Hour, Temporary and Casual employees shall be eligible for progression through all tenure steps of their classification in accordance with the following formula:

31

KFH 00963

Each one hundred (100) hours of work equals one (1) month's tenure service credit. For example, three hundred (300) hours of work would equal three (3) months' service credit. However, no employee shall accumulate more than one (1) month's tenure credit in any calendar month.

## ARTICLE XI - WAGE RATES

### Section 1 - Schedule of Wages

105. The minimum straight-time hourly rates of pay shall be as shown in the salary schedules attached hereto and made a part hereof (Appendix D).

### Section 2 - Premium Employees

106. The wage scales set forth are intended to constitute minimum scales only and nothing in this Agreement shall preclude the Employer from paying in excess of such minimum rates at the Employer's discretion. However, no employee covered by this Agreement shall, as a result of the provisions of this Agreement, suffer a reduction in his/her wage rate so long as he/she continues in the same classification except as results from the application of Article X.

107. No employee shall be required to relieve in a non-bargaining unit managerial position.

### Section 3 - Pay Day

108. Pay days now in effect shall continue and there shall he no more lapse of time between wages earned and wages paid than as results from operation of the present system. The Employer may place any employee on a weekly payroll without the permission of the Union. Any employee who terminates shall receive all wages due him/her as provided in the State Labor Code. The Employer will in good faith attempt to distribute pay checks to the employees on their normal work shifts on pay days.

109. The employee's supervisor or the Personnel Department will provide information to the employee about pay upon request.

### Section 4 - Automatic Paycheck Deposit

110. Effective June 3, 1990 employees upon written request may direct automatic deposit of their paycheck directly to a bank or savings institution of their choice provided such bank or institution participates in the National Automatic

32

KFH 00964



Clearing House Association.    Employees electing automatic deposit shall receive a check stub each pay period indicating all payments made. Employees electing this option who later cancel automatic deposit shall not be eligible again for such deposit until the first of the year (January 1) following cancellation.

### Section 5 - Effective Date of Tenure Increases

111.    Tenure increases shall become effective at the beginning of the first full payroll period nearest the employee's tenure increase eligibility date as indicated for his/her classification.

33

KFH 00965

<u>Section 6 - Tenure Step/Experience Credit</u>

112.    1.    The following provisions shall apply only to those classifications listed in Schedule Z, Appendix E.

113.    2.    Employees with at least three (3) or more years within the last five (5) years of Regular (twenty (20) hours or more per week) relevant experience than that required by the classification into which the employee is being hired, will be placed at step two (2) of that classification, provided that the employee's experience is directly related to the duties of the position as determined by the Employer.

114.    3.    Employees with at least five (5) or more years within the last ten (10) years of Regular (twenty (20) hours or more per week) relevant experience than that required by the classification into which the employee is being hired, will be placed at step (3) of that classification, provided that the employee's experience is directly related to the duties of the position as determined by the Employer.

115    4.    The relevance of the experience referred to in numbers 2 and 3 above is determined by the Employer.

<u>Section 7 - Job Descriptions</u>

116.    It is agreed that the Employer and the Union shall maintain descriptions setting forth job duties in accordance with duties necessary and traditional in the operation of hospitals concerned with the care, treatment, and recovery of patients. At the time an employee commences work or is assigned a new position, he/she will be provided with a job description outlining the duties and assignments of that position as an aid to understanding the requirements of the new job. A copy will be sent to the Union. When new jobs are created and mutually agreed to be within the jurisdiction of this bargaining agreement, the Employer shall notify the Union of the wage rate and attach a copy of the new job description.    Any disagreements may be resolved under the provisions of this Section.

117.    It is recognized that changes in job titles contained in this Agreement may be necessary in accomplishing this project and such changes shall be by mutual agreement under the terms of this Agreement.    Job descriptions shall be made available to the Union upon request.

34

KFH 00966



Section 8 — Classification Review Requests

118.   An employee may request a classification review when he/she has a question whether he/she is properly classified within the listed contract classifications. Such a request shall be submitted to his/her supervisor on the designated Classification Review Request Form (CRRF).   The effective date of the classification determination will be the date the CRRF was submitted to the supervisor who has signed the form as proof of receipt.  The supervisor will give a signed copy of the form to the employee.

119.   The Employer shall distribute copies of the CRRFs to the Union Classification Review Committee (UCRC).  The Employee Relations Department (ERD) will review and analyze all pertinent information and make a classification determination which may include the designation of a new classification if appropriate.  The job description, classification determination and any other pertinent information shall be sent to the UCRC within forty-five (45) days of submission of the CRRF to the supervisor.

120.   The UCRC shall have thirty (30) days to appeal the Employer's determination, stating its reasons therefor, to an expedited grievance procedure.

121.   Such a procedure shall consist of two steps:

    A.   A joint meeting shall be convened between the UCRC and the Employer representatives.  Such meetings shall be held on the first and third Wednesday of each month as required or as otherwise mutually agreed to by the parties.  Unpaid release time for the two employee members of the UCRC will be provided for the purpose of attending these joint meetings, subject to the requirements of efficient operations.  If the individual cannot be released and an alternate UCRC member cannot be appointed, another meeting date will be selected by the parties.  If, following the meeting, the classification issue has not been satisfactorily resolved, the Union may, within five (5) days, appeal the dispute to Step 2 (arbitration) of this expedited procedure.

    B.   Arbitration (Step 4 of the grievance procedure as described in the Master Agreement).

122.   If the Employer fails to observe any of the above-prescribed time limits, the Union may appeal the issue to the next level in this process.  Should the Union Committee not appeal the job classification determination within the prescribed time limit, the dispute shall be considered settled.  Time limits specified herein may be extended by mutual agreement.

35

KFH 00967



123. Release time: five (5) hours per month of unpaid release time shall be authorized for each of the two (2) employees on the UCRC to be used for investigation and preparation of classification claims.

Section 9 - Maintenance, Service and Technical Classifications

124. **An employee who is promoted to a senior/lead position shall be paid at the step of the new position, which will provide an increase of at least five percent per hour above his/her former rate.**

125. Under the specific conditions presented in the Letter of Understanding revised July 20, 1972, (see Appendix H) any employee who delivers patient care as traditionally considered in terms of nursing such as practiced by Nurse Attendants and Medical Assistants (Clinic Assistants) in nursing departments and who possesses a valid State of California license as a Licensed Vocational Nurse shall be so classified and paid. All Licensed Vocational Nurses may wear the appropriate pin and cap or other insignia designating such certification.

126. Employees from other departments who deliver patient care as traditionally considered in terms of nursing, such as practiced by Nurse Attendants and Medical Assistants (Clinic Assistants) in nursing departments, and who obtain a valid State of California license as a Licensed Vocational Nurse shall be so classified and paid retroactively to the date they presented their license to the Employer provided they accept the first available LVN vacancy to which their Seniority rights entitle them which is comparable in status, i.e., short-hour, regular, or casual, to their current position. Failure to accept such position will result in forfeiture of the retroactive reclassification provided for in this paragraph. Determination of the LVN step rate to which they are assigned and the date they begin to accumulate credit for tenure step increases will be based upon the specific conditions presented in the Letter of Understanding revised July 20, 1972.

127. Any employee working in a Maintenance, Service and Technical classification who, as a part of his/her regular predetermined work schedule, performs work in a higher classification (except for rest period and meal relief) shall be paid at the higher rate of pay for all hours worked in the higher classification (that step in the higher classification which provides a minimum increase of $0.15 per hour).

128. An employee promoted from a Maintenance, Service or Technical classification to another Maintenance, Service, Technical or Clerical classification shall be paid the first step rate of the new classification which is next above his/her former rate and which will provide an increase of at least $0.15 per hour except that in no case will an employee be eligible for a rate in excess of the maximum of his/her new classification. In addition to this

KFH 00968



minimum increase, the employee shall receive credit for time spent in the assigned step rate of his/her former classification in determining his/her eligible date for future step rate increases in his/her new classification unless he/she is receiving the maximum step rate of his/her classification at the time of promotion. (For transfers between geographical areas, see Appendix A, Sections 1, 2, 3, 4 and 5.)

129.    An employee who is permanently transferred to a position in a lower grade shall receive the step rate which is equal to or next below his/her former rate. In addition, the employee shall receive credit for time spent in the assigned step rate of his/her former classification in determining his/her eligible date for future step rate increases in his/her new classification unless he/she is receiving the maximum step rate of his/her classification at the time of transfer to the lower grade. (For transfers between geographical areas, see Appendix A, Sections 1, 2, 3, 4, and 5).

Section 10 - Clerical Classifications

**130.    An employee who is promoted to a senior/lead position shall be paid at the step of the new position, which will provide an increase of at least five percent per hour above his/her former rate.**

131.    Using the "Kaiser Foundation Hospitals Manual for the Evaluation of Clerical Positions," the Employer and the Union have jointly classified each existing position into one of the scheduled grades on the basis of the duties and responsibilities of the position.

132.    An employee who is permanently promoted to a position in a higher grade or classification (a higher starting rate of pay) shall be paid the first step of the new position grade or classification which is next above his/her former rate and which will provide an increase of at least $0.15 per hour.

133.    In addition to this minimum increase, employees who are permanently promoted from a position in a Clerical classification to another position in a Clerical classification or to a position in the Maintenance, Service or Technical classifications shall receive credit for time spent in his/her assigned step rate of his/her former classification in determining his/her eligibility date for future step rate increases in his/her new classification unless the employee is receiving the maximum step rate of his/her classification at the time of promotion. (For promotions into a different geographical area, see Appendix A, Sections 1, 2, 3, 4, and 5.)

134.    An employee who is transferred to another position in the same grade: 1) shall receive not less than his/her former rate (Structure A employees only); and 2) shall receive credit for time spent at his/her assigned step rate in his/her former position for the purpose of determining the date of his/her step rate

37

KFH 00969



adjustment, if any (all employees). (For transfers between geographical areas, see Appendix A, Section 1, 2, 3, 4, and 5.)

135.  An employee who is permanently transferred to a position in a lower grade shall receive the step rate which is equal to or next below his/her former rate. In addition, the employee shall receive credit for time spent in the assigned step rate of his/her former classification in determining his/her eligible date for future step rate increases in his/her new classification unless he/she is receiving the maximum step rate of his/her classification at the time of transfer to the lower grade. (For demotions into a different geographical area, see Appendix A, Sections 1, 2, 3, 4, and 5.)

136.  All temporary transfers or promotions to a higher classified position within the same geographical area (Area I or II), shall be paid for the shift at the higher rate of pay (that step in the higher classification which provides a minimum increase of $0.15 per hour) provided that the employee completes four (4) hours in the assignment.

137.  An employee working in a Clerical classification who as part of his/her regular predetermined work schedule performs work in a classification in a Maintenance and Service or Technical classification shall be paid at a rate based on the ratio of the time spent in each classification.

138.  A permanent transfer or promotion is defined as lasting one (1) calendar month or more. All other transfers or promotions for whatever purpose shall be designated as temporary.

## ARTICLE XII - HOLIDAYS

### Section 1 - Holidays Observed

139.  The following days shall be observed as holidays:

New Year's Day                         Independence Day
Martin Luther King, Jr.'s Birthday      Labor Day
Washington's Birthday                  Thanksgiving Day
Memorial Day                           Christmas
Employee's Personal Birthday (as provided in Section 3 hereof), and
One (1) Float Holiday (as provided in Section 4 hereof)

KFH 00970

Section 2 - Conditions of Observance

140.    Each Regular employee shall be granted a day off for at least one (1) of the
        following holidays:

                Thanksgiving, Christmas, New Year's Day

141.    If an employee is not granted one of these holidays off, he/she shall be
        compensated at three (3) times his/her regular rate for working New Year's
        Day.

142.    Washington's Birthday will be observed on the third Monday in February.
        Memorial Day will be observed on the last Monday in May.   Martin Luther
        King, Jr.'s Birthday will be observed on the 3rd Monday in January.

143.    It is the Employer's intent to abide by any changes in Federal legislation
        related to the holidays listed in Section 1.

Section 3 - Birthday Holiday

144.    Employees with more than thirty (30) days of continuous service as a Regular
        employee are entitled to their personal birthday as a recognized holiday.   If
        such employee's personal birthday falls on any of the other recognized
        holidays, the employee's next regularly scheduled work day following said
        recognized holiday shall be considered as the employee's birthday.

145.    It is the responsibility of employees entitled to their personal birthday as a
        holiday to inform their supervisor one (1) month in advance of the date of their
        birthdays.

Section 4 - Float Holiday

146.    Employees with more than ninety (90) days of continuous service as a
        Regular employee are eligible for one (1) floating holiday per year. Each year
        (November 1 to November 1) the Employer and the employee shall agree on
        the date to be taken as a float holiday. If agreement is not reached on which
        day, one day will be added to the employee's vacation. It is the responsibility
        of the employees entitled to a float holiday to give thirty (30) days notice of the
        day they have elected.

Section 5 - Holidays, Regular Full-time Employees, Eligibility

147.    Regular full-time employees will receive pay at their regular straight-time rate
        for their normal scheduled daily working hours for the above holidays, when
        not worked, provided they meet all of the following eligibility rules:

39

KFH 00971



A.   The employee has successfully completed his/her probationary period as of the date of the holiday.

B.   The employee was not directed to work on the holiday.

C.   The employee was not on layoff or leave of absence, including any time off taken due to illness beyond the period of paid sick leave eligibility, as of the date of the holiday.

Section 6 - Holidays, Regular Full-time Employees, Compensation

148.   Regular full-time non-probationary employees, who work on a holiday specified in Section 1 above shall be paid at the overtime rate of time and one-half (1-1/2) and shall also be given a paid day off or additional pay of eight (8) hours for such holiday.   The determination of the options shall be in accordance with Section 9 below.

149.   Regular full-time employees who have not completed their probationary period as of the date of a holiday and who work on a holiday specified in Section 1 above shall be paid for time worked at the overtime rate of time and one-half (1-1/2).

150.   If a Regular full-time non-probationary employee's day off falls on a holiday and he/she meets the eligibility requirements outlined in Sections 3, 4 and 5 of this Article, he/she shall receive a paid day off or an additional day's pay.  The determination of the options shall be in accordance with Section 9 below.

Section 7 - Holidays, Regular Part-time Employees

151.   Regular part-time **non probationary** employees working less than forty (40) hours per week, who meet the eligibility requirements outlined in Sections 3, 4 and 5 of this Article shall be paid for holidays on the following basis:

A.   **Regular part-time employees who have not completed their probationary period as of the date of a holiday and who work on a holiday specified in Section 1 above shall be paid for time worked at the overtime rate of time and one-half (1-1/2)**

B.   If the holiday falls on a normally scheduled workday and the employee is scheduled off because of the holiday, the pay for such holiday not worked shall be for the number of hours at the straight-time rate as the employee would have received had he/she worked.

C.   If the holiday falls on a day normally scheduled off, the employee shall receive additional pay equal to one-fifth (1/5th) his/her regular weekly scheduled hours of work.

40

KFH 00972



D.  **Regular part-time non-probationary employees who work on a holiday specified in Section 1 above,** shall receive one and one-half (1-1/2) times their regular straight time pay for all hours worked plus additional straight time holiday pay equal to the actual hours worked on the holiday for up to eight (8) hours **except as noted in the next paragraph.**

E.  **Regular part-time non-probationary employees, who work Thanksgiving, Christmas or New Years Day shall be paid at the overtime rate of the time and one-half (1-1/2) and shall also be given a paid day off or additional pay of up to eight (8) hours for such holiday. The determination of the options shall be in accordance with Section 9 below.**

Section 8 - Holiday Pay, Short Hour, Temporary and Casual Employees

152.  Short-Hour, Temporary and Casual employees who work on a holiday specified in Section 1 above shall be paid at the overtime rate of time and one-half (1-1/2).

Section 9 - Compensatory Time Off

153.  Subject to the Employer's staffing and scheduling requirements for patient care, employees entitled to either compensatory time off or additional pay under this Article may elect to receive either time off or pay.  Compensatory time off must either be added consecutively to an employee's vacation or be taken on a mutually agreed date within thirty (30) days prior to or following the holiday for which it is due; provided, however, compensatory time off added to a vacation may not be carried over from one vacation anniversary year to another.  The election for compensatory time off must be submitted in writing by the employee to his/her supervisor prior to the holiday for which it is due; and if time off is requested, the date desired must be specified.  If the election is not submitted in writing on a timely basis, the employee shall receive pay rather than compensatory time off.  In the event more than one employee requests the same compensatory day or days off and the Employer cannot accommodate such requests because of patient care requirements, elections for compensatory time off, to the extent that they can be accommodated to such requirements shall be determined on the basis of bargaining unit seniority within the department.

Section 10 - Overtime Calculation

41

KFH 00973



154.   Holidays paid for but not worked shall count as time worked for computing weekly overtime for work performed later in the same work week if the holiday falls on the employee's normally scheduled work day.

Section 11 - Holiday Scheduling

155.   Holiday schedules shall be posted at least thirty (30) days and no more than one (1) year prior to the holiday. The Employer will first seek volunteers by shift for the holiday work and if there are more volunteers than needed, holiday assignments will be based on bargaining unit seniority by shift. If there are not enough volunteers for the holiday work, the Employer will assign the work by reverse bargaining unit seniority to those qualified employees on the shift.

156.   However, if shifts are combined because of the holiday, bargaining unit seniority among all employees in the department shall be used to determine holiday assignments. This holiday scheduling shall be based on operational needs.

157.   Unless approved by the Employer this provision shall not result in any premium pay other than premium pay for the worked holiday.

158.   By mutual agreement of the parties, bargaining unit seniority may be used without regard to shift.

Section 12 - Observation, Sunday Holidays

159.   Holidays falling on Sunday (Christmas, New Year's and July 4th) shall be observed on that Sunday.  Holiday premium rates for time worked on the holiday shall only be paid for hours worked on the Sunday shift to a maximum of eight (8) hours.  Holiday premium rates will not apply to any hours worked on the Monday following the Sunday holiday shift.  Regular employees whose normally scheduled day off falls on the Sunday holiday or who work the Sunday holiday and are entitled to another day off, shall take their holiday off on the Monday following the Sunday holiday as required by the Employer (it is understood that Medical Center and other operations will be significantly reduced on the Monday following the Sunday holiday).

Section 13 - Definition of Pay

160.   Pay, as referred to in this Article, means base rate plus any shift differential and split shift differential being received by the employee concerned.

161.   Holiday pay will be paid for the shift in which the majority of the hours are worked on the holiday.

42

KFH 00974

## ARTICLE XIII - VACATIONS

### Section 1 - Vacation Pay

162.    All Regular employees who have been continuously in service with the Employer for a period of one (1) year shall be entitled to two (2) weeks' vacation with pay.

163.    All Regular employees who have been continuously in service with the Employer for a period of two (2) years shall annually thereafter be entitled to three (3) weeks' vacation with pay.

164.    All Regular employees who have been continuously in service with the Employer for a period of five (5) years shall annually thereafter be entitled to four (4) weeks' vacation with pay.

165.    All Regular employees who have been continuously in service with the Employer for a period of ten (10) years shall annually thereafter be entitled to five (5) weeks' vacation with pay.

166.    Employees may split their vacation into increments of not less than **four (4) hours**, subject to the requirements of efficient operations.

167.    The vacation pay for Regular full-time employees shall be the base rate, including shift differential and split shift differential, for their regular straight-time schedule of work. The vacation pay for Regular part-time employees shall be the base rate, including shift differential and split shift differential, at the time the vacation is taken, times the average number of straight-time hours worked per week during the vacation accrual year.  If such pay for a Regular part-time employee exceeds the employee's regular schedule, the excess shall be attributed to weeks of earned vacation and shall be paid on days not normally scheduled.  Except as described above, vacation accruals shall be based on an eligible employee's regular schedule and shall be affected only by permanent schedule changes.

### Section 2 - Vacation Scheduling

168.    Such vacation periods shall be designated by the Employer so as not to adversely affect the efficiency of operations and shall be designated during the twelve (12) month period following the date of eligibility for the vacation. Normally vacations may not be carried over from one anniversary year to the next.  However, unused vacation may be granted up to six months after the completion of that year with the supervisor's approval, if due to operating requirements, the employee has been unable to take his/her complete vacation within the required time limits.  In addition, regular employees with

43

KFH 00975



five (5) or more years of continuous service may carry over one (1) week's unused vacation to their next anniversary year provided that they notify their supervisor in writing of their intention at least thirty (30) days prior to the completion of the anniversary year in which the one (1) week's vacation would normally be taken.

169.    Employees will submit to their supervisors in January of each year a list of their first, second, and third choices for vacation dates occurring during the twelve-month period commencing April 1st. On or before March 15th of each calendar year, the supervisor or department head will post the vacation schedule for that year. Whenever possible, employees shall be given preference on the basis of bargaining unit seniority within the department in the choice of vacation periods with full consideration to the length of employment regardless of bargaining unit status.

170.    If a holiday as set forth in Article XII occurs during the employee's vacation period, he/she shall be granted an additional day of vacation at his/her regular pay, or an additional day's pay in the amount he/she would have received had he/she not been on vacation at the option of the Employer.

**171.    Employees eligible for vacation may during each anniversary year chose pay in lieu of up to 50 percent of their earned annual vacation. Acceptance of in lieu shall be voluntary. NOTE: Final language pending IRS research.**

Section 3 - Call-Back

172.    In the event an employee is called back to work while on vacation, he/she shall be paid at time and one-half (1-1/2) in addition to his/her vacation pay. In instances where there is a combination of vacation and work on a prescheduled basis, vacation hours paid shall count as hours worked in determining eligibility for weekly overtime.

Section 4 - Radiologic Technologist Special Compensation

173.    Effective November 4, 1990, Regular employees hired prior to October 25, 1986, shall receive, once each year, (December 1) a lump sum payment equal to eighty (80) hours straight-time pay. Part-time Regular employees shall have their lump sum payment prorated. **This lump sum payment shall not apply to employees at the Kaiser Permanente Medical Facility in Fresno.**
Section 5 - Vacation Pay for Terminated Employees

174.    Regular employees with at least six (6) months of service shall be entitled to vacation pay prorated on the basis of actual months of service in accordance with the benefits outlined in Section 1 of this Article at the conclusion of their employment. However, the Employer can require at least one (1) week's

44

KFH 00976



notice of the intention of an employee to quit as a condition of this proration of vacation pay.

175.　Employees discharged for cause with less than one year's service shall not be entitled to prorated vacation.

## ARTICLE XIV - PERQUISITES

### Section 1 - Room and Personal Laundry

176.　When the Employer offers any employee the option of room and/or personal laundry service in partial satisfaction of the employee's wages, the amount to be deducted from the wages of the employee shall be a matter of individual arrangement between the Employer and the employee.　Nothing herein contained shall be construed to require the Employer to make or continue to make available room or personal laundry service.

### Section 2 - Uniforms

177.　When employees are required to wear uniforms or special type work clothes while in the employ of the Employer, the cost of laundering and furnishing same shall be borne by the Employer; provided that the Employer shall not be required to furnish or launder apparel traditionally worn by such employees in hospitals generally.　The term "uniform" includes wearing apparel and accessories of distinctive design or color.

178.　The cost of any safety equipment required shall be paid by the Employer.

### Section 3 - Meals

179.　Employees who spend the major part of their work time in the performance of culinary or dietary duties, as differentiated from clerical, technical, housekeeping, nursing, etc., shall be entitled to meals provided by the Employer as follows:

| | |
|---|---|
| Up to Three (3) Hours' Work | One (1) Meal |
| Three (3) Hours to Six (6) Hours' Work | Two (2) Meals |
| Six (6) Hours' Work or More | Three (3) Meals |

These meals shall be furnished to such employees without deduction in compensation.

180.　Meals must be taken during the hour before work, the designated lunch period or the hour following quitting time.　If meals are not available during these periods, a credit shall be given to such employee amounting to one dollar ($1.00) for each unavailable meal.

45



Section 4 - Mileage

181.    Between the time an employee commences work and subsequently completes his/her assignment preparatory to returning home, should an employee be required to use his/her own vehicle in order to complete his/her work assignment, such employee shall be reimbursed for travel expenses incurred such as **bridge tolls and mileage** in accordance with the **IRS reimbursement rate on the day of travel.** **All** employees temporarily reassigned to another facility or meeting location at the Employer's convenience shall also be reimbursed for incurred travel expenses as described above in excess of their usual commute.

ARTICLE XV  -  SICK LEAVE

Section 1 - Accumulation

182.    Each Regular employee shall accumulate one (1) day's sick leave with pay for each calendar month of employment.  After completion of the 4th year of employment each Regular employee shall accumulate one and one-fourth (1-1/4) days of sick leave with pay for each calendar month of employment.  An employee shall not be entitled to sick leave with pay unless he/she has acquired three (3) months' continuous service credit and in no case shall sick leave be retroactive to any absence due to sickness during the first three (3) months of service credit.

183.    Regular employee working less than forty (40) hours per week shall accumulate sick leave on the basis of the ratio of his/her regularly scheduled hours of work per week to forty (40) hours per week.

184.    **Any employee who has accrued 250 hours of sick leave at the time of retirement shall have all accrued sick leave hours applied to his/her credited service.**

46

KFH 00978



Section 2 - Pay

185.    Pay for sick leave shall be that straight-time pay which the employee would have received had he/she worked his/her regular schedule that day, including any shift differential or split shift differential being received by the employee concerned. Paid sick leave shall count as time worked for purposes of computing overtime for hours worked later in the same work week.

Section 3 - Applicability

186.    Sick leave shall be applicable only if the employee is ill on days he/she is regularly scheduled to work. If an employee claims sick leave, the Employer may require reasonable proof of physical disability sufficient to justify the employee's absence from work for the period claimed, if the Employer has reasonable doubt of the validity of the disability.

187.    **An employee hospitalized while on vacation is eligible to convert vacation time to unused sick leave for the period of hospitalization provided reasonable proof of the hospitalization is provided. Conversion of vacation time to sick leave time will apply only to those days the employee was pre-scheduled for vacation**

188.    **An employee who suffers a disabling illness or injury of at least five (5) consecutive days duration while on prescheduled vacation leave, may convert 50% of the verified period of illness to unused sick leave. Such conversion shall be limited to blocks of pre-scheduled vacation of one or more weeks. The employer shall require reasonable proof of the disabling illness or injury, obtained at the time of the disabling event.**

189.    **Upon completion of the probationary period**, paid sick leave shall also apply for hours directly associated with medical, dental, or **mental health** appointments. For those employees whose appointments are away from the facility where they work the appointment will be scheduled so that at least a part of the scheduled appointment falls in the first or last hour of each paid period of scheduled work. The employee will give written notice of at least twenty-four (24) hours and supply verification that the appointment was kept.

190.    Sick leave shall be applicable not only as described elsewhere in this Article, but also for **mental health** treatment as an in-patient **and/or outpatient** in an accredited institution

47

KFH 00979



### Section 4 - Holiday During Sick Leave

191.    If an employee is absent on paid sick leave and a holiday occurs during such absence, if he/she is eligible for holiday pay, such pay shall be charged to the holiday and not against sick leave credits.

### Section 5 - Integration With Disability and Workers' Compensation

192.    If an employee is eligible for basic UCD benefits, Employer-paid sick leave shall be reduced by the amount of the UCD benefit the employee is eligible to receive. Payments received in the form of basic UCD benefits shall not be charged against the employee's accumulated sick leave.

193.    If an employee is eligible for Worker's Compensation Insurance payment, the same method of integration with Employer paid sick leave shall apply. Employees who receive full sick leave and are subsequently reimbursed by Worker's Compensation or State Disability Insurance benefits will have their pay adjusted by the amount of overpayment and their sick leave recredited proportionately.

### Section 6 - Return From Sick Leave

194.    Employees returning from paid sick leave shall be returned to their jobs, and any employee sent home after such return on the grounds that his/her position has been filled shall be paid his/her regular pay for the time lost; provided, however, for absence of one (1) work week or less, employees shall furnish notice of their readiness to return to work by 2:00 p.m. of the work day prior to their return and for absences of more than one (1) work week they shall furnish forty-eight (48) hours' notice of their readiness to return to work. The employee must also, if requested, supply certification by a physician on the staff of the Employer of their physical fitness to perform the work required. Delays occasioned by the Employer's failure to provide such examination shall extend the period of eligibility for sick leave.

### Section 7 - Employee Requests for Data

195.    Data concerning an employee's sick leave accrual will be supplied by his/her supervisor upon request.

KFH 00980

## ARTICLE XVI - LEAVES OF ABSENCE

### Section 1 – **Compelling or Personal** Situations

196.    Leaves of absence without pay for **compelling or personal** situations may be granted to employees at the discretion of the **department manager**. Normally, an employee must have at least six (6) months' service to be considered for a leave of absence. A leave of absence request shall not be unreasonably denied without adequate cause based upon operational requirements, nor because of the season of the year.

197.    Such leaves of absence shall not be in excess of thirty (30) days, but may be extended beyond that time at the discretion of the head of the facility **or his/her designee.** In no case shall **compelling or personal** leaves in combination with other non-industrial unpaid leaves of absence be in excess of six (6) months.

### Section 2 - Non-Industrial Disability

198.    Leaves of absence for non-industrial physical disability including maternity leaves shall be granted for the period of disability provided that physician's certification setting forth the length of such disability is submitted. Leaves of absence as referred to in this paragraph shall not exceed a total of six (6) months. The period of any leave of absence, except those of a duration of less than thirty (30) days, will not accrue to the service credit of the employee for the purposes of tenure increases or for vacation and sick leave computations or any other benefit where length of service is a condition of entitlement.

### Section 3 - Written Confirmation

199.    Leaves of absence and renewals thereof shall be in writing with one (1) copy to the employee and one (1) copy to the Personnel Office.

### Section 4 - Insurance Benefits During Leave of Absence

200.    An employee placed on an authorized leave of absence must pay the required premium necessary for continued insurance benefits as specified in Article XXII during the period of any authorized leave of absence, except in the case of industrial disability leave, as provided in Section 5 of this Article.

### Section 5 - Industrial Disability

201.    Leave of absence for an industrial injury or illness shall be granted for the period of the employee's disability or for thirty (30) day renewable increments based upon a physician's certification setting forth the length of such disability.

49

KFH 00981

Such industrial leaves shall not exceed a total of six (6) months. However, for those employees with two (2) or more years of continuous service, such industrial leaves shall be extended beyond that time for a period not to exceed an additional six (6) months upon a physician's verification of need. During the period of time during which an employee is on a leave of absence resulting from an industrial injury or illness incurred in the course of employment or arising out of employment with the Employer, he/she shall accrue service credit for the purposes of wage tenure increases. For a maximum of six (6) months during the period of the leave, or up to a maximum of twelve (12) months for those employees with two (2) or more years of continuous service, the employee shall continue to be covered by the Health Plan and the life insurance policy, defined in Article XXII of this Agreement at the Employer's expense.

202.    An employee eligible for 12 months' industrial leave of absence who has been terminated due to his/her inability to return to work shall retain seniority as of that date for a period of an additional one (1) year. Such seniority may be utilized during the one (1) year period only for the purpose of bidding on vacancies for which he/she is qualified.

### Section 6 - Return from Leave

203.    When an employee returns to duty from an authorized leave of absence he/she shall be reinstated in the same classification, position, unit, shift and number of hours in which he/she was employed before his/her absence; but if operational conditions have changed so that it is not reasonable to so reinstate him/her, the Employer will reinstate him/her in a classification that is as nearly comparable to his/her original classification as is reasonable under the circumstances. Prior notice of two (2) weeks of intent to return from a leave of absence must be given by the employee to the employee's supervisor as a condition of reinstatement to any position.

204.    In the event the employee has returned to a job in a department other than that from which he/she was granted his/her leave of absence, he/she shall retain his/her total bargaining unit seniority which he/she had accrued at the time the leave of absence commenced. Such seniority shall be used for the purposes of bidding on vacancies in his/her prior department for a period of six (6) months or until he/she has declined a position in his/her prior department and classification, whichever occurs first.

205.    All persons hired to replace employees who are on a leave of absence shall be so advised and shall be informed of the approximate date the Regular employee is expected to return from leave.

### Section 7 - Modified Work Plans

KFH 00982

206.    Nothing herein shall prohibit the Employer and the Union from mutually agreeing to "reasonable accommodations" for injured or disabled employees.

## ARTICLE XVII - BEREAVEMENT LEAVE

207.    When a death occurs in the immediate family of an employee, he/she shall be entitled to a leave of absence of up to three (3) days with pay. Immediate family is defined as spouse/domestic partner, sister, brother, daughter, son, mother, mother-in-law, father, father-in-law, or grandparents. In addition, the employee shall be granted an additional two (2) days' unpaid leave of absence if the funeral is out of state.

208.    If an employee is on vacation and a death occurs in the employee's immediate family, the employee may convert such vacation time to funeral leave, provided however:

      A.    The employee requests such conversion in writing on a form designated by the Employer within five (5) working days upon return from scheduled vacation.

      B.    The form shall in part require the following information:

            1.    Name and relationship of deceased immediate family member.

            2.    Date of death and appropriate recording entity within the country or state in which the death occurred.

            3.    Dates of vacation days to be converted to funeral leave.

209.    Pay for such leave shall be calculated in the same manner as that for paid sick leave in Article XV.

## ARTICLE XVIII - PAID EDUCATIONAL LEAVE

### Section 1 - Eligible Employees

210.    After the completion of one full year of service, employees shall begin to earn paid educational leave at the rate of forty (40) hours per year, accumulative to a maximum of 160 hours. Paid educational leave may be taken by full days or by hourly increments as time away from the job, commencing with the thirteenth month of service. Part-time Regular employees will accrue paid educational leave on a prorated basis up to a maximum of one hundred sixty (160) hours.

51

KFH 00983

Section 2 - Eligible Programs

211.    Educational programs and programs necessary for licensure or relicensure will be related to the current job or jobs to which the employee can expect to transfer or be promoted in the usual course of eligibility in accordance with the following:

212.    Education programs to be considered for paid educational leave will be as follows:

    A.    Formally organized courses related to the employee's current job or jobs to which the employee can expect to transfer or be promoted in the usual course of eligibility or, if mutually agreed, in another appropriate job field.

    B.    Formally organized seminars and symposia dealing with contemporary practices in the employee's current job or jobs to which the employee can expect to transfer or be promoted in the usual course of eligibility or, if mutually agreed upon, in another appropriate job field.

    C.    Formally organized courses in related subjects leading to a degree in the employee's current job or jobs to which the employee can expect to transfer or be promoted in the usual course of eligibility or, if mutually agreed upon, in another appropriate job field.

    D.    Formally organized specialized courses relating to the employee's current job field.

213.    The various programs covered above include those sponsored by educational institutions, government agencies, hospital, union, or professional associations. It is agreed that the above set forth activities shall be job related or those to which the employee can expect to transfer or be promoted in the usual course of eligibility. Educational leave shall be applicable only for actual attendance in the course, seminar, class or symposium and shall not apply for preparatory time incidental to those courses, seminars, classes, or symposia.

Section 3 - Administration

214.    Requests for leave shall be made in writing setting forth the details, i.e., dates, hours, subject, faculty and purpose of taking the course. The employee may be requested by the Employer to make a report on subject activity in writing to be presented to the employee's supervisor or department manager.

215.    If an employee submits a written request for paid educational leave at least one (1) month in advance, the Employer will notify the employee in writing at least two (2) weeks in advance as to whether the requested leave will be

KFH 00984

permitted or denied.  A later request will not be denied solely because of non-conformance with this time limit.

216.   Such leave shall not be unreasonably denied without adequate cause based upon operational requirements nor because of the season of the year.

Section 4 - Hours Paid

217.   **An employee who is entitled to education leave may elect to utilize up to (16) sixteen hours per year of their educational leave pay, on a day or days when the employee is not normally scheduled to work, including home based courses. The educational course must meet the following and all other criteria established above for paid educational leave:**

A.   **All course programs must be approved prior to starting course, including the actual time required for the course.**

B.   **The course announcement must accompany the request for approval.**

C.   **The employee must show proof of successful completion of the course prior to being paid education leave pay for the time.**

D.   **Courses will not be used to calculate overtime hours.**

218.   Employees who attend the above-defined programs on their normally scheduled days of work shall be eligible for paid educational leave in accordance with the following:

A.   If four (4) or more hours of an educational program fall within an employee's normally scheduled shift, the employee will be excused from his/her shift assignment and will receive educational leave pay equal to his/her regularly scheduled shift that day.

B.   If less than four (4) hours of the educational program fall within an employee's shift, the Employer shall have the option of excusing the employee from his/her shift assignment or scheduling the employee to work the remainder of his/her shift.  If the employee is scheduled off, such employee shall receive educational leave equal to his/her regularly scheduled shift that day.  If the employee is scheduled to work the remainder of his/her shift, then the employee shall be paid the combination of educational leave and worked time which shall equal but not exceed his/her regularly scheduled shift that day.

Section 5 - Night Shift Employees

53

219.    A night shift (as opposed to day or evening shift) employee who is presently licensed, certified or registered as defined by the Collective Bargaining Agreement who attends educational programs which would otherwise qualify under the educational leave and pay provision but fall entirely outside of the employee's night shift may accumulate such educational leave time until he/she has accumulated the equivalent of a full shift. At that time equivalent paid time off at the mutual convenience of the facility and the employee will be arranged.

## ARTICLE XIX  -  IN-SERVICE EDUCATION

220.    When an In-Service Education Program is provided by the Employer for employees in a particular classification or classifications under the Agreement, the Employer will use its best efforts to insure that the training sessions are available to all employees in such classification or classifications. Such best efforts shall include duplicates of program on alternate shifts when appropriate, alternating the time and shift of showing or rescheduling of employees upon their request when operations permit. In the event that such best efforts are unsuccessful, the Employer will meet with the Union for the purpose of working out a mutually acceptable solution.

221.    Other interested employees may attend such programs when space is available to permit their attendance and, secondly, if such program is during the employee's working hours, their supervisor is able to arrange to let them leave their assignment without unduly affecting the work flow.

222.    When an In-Service Education Program provided by the Employer qualifies for accreditation by the State for purposes of continuing education for relicensure or recertification, the Employer will seek such accreditation and obligate itself to pay state fees required for the state to make such determination.

## ARTICLE XX  -  TRAINING COMMITTEE

223.    Joint Training Committees may be established at each medical center. The committees shall each consist of not more than three (3) representatives from management and three (3) representatives from the Union, and shall meet not more than three (3) hours per month unless the time is extended by mutual agreement. Such time in these meetings shall be consistent with the operational requirements of the medical center.

224.    The Committees shall study and investigate areas where additional employee training would create opportunities for advancement to positions that are expected to become available. Subject to full approval of Union and

KFH 00986

management representatives, the committee may initiate meetings with appropriate outside agencies to identify available resources and services.

225. Training shall be subject to the Employer's needs to continue the highest quality of medical care consistent with efficiency of operations and services rendered to the Health Plan membership.

226. Recommendations from the Committee shall be forwarded in writing to the facility administrator for his/her consideration and review, and he/she shall advise the Committee in writing of the disposition of the recommendations.

## ARTICLE XXI - JURY DUTY PAY

227. An employee required to report for jury service or subpoenaed to appear as a witness in a judicial procedure arising out of his/her employment will be excused from work on such days and shall receive, on days he/she otherwise would have worked, the difference between his/her regular straight-time day's pay and any amount of jury pay or witness fees received. The employee must show proof of having been directed to report in connection with jury service or the subpoena and the amount of such fees.

228. On any day of jury service or such subpoena during which an employee is excused entirely or in sufficient time to permit him/her to return to work for a minimum of one-half (1/2) his/her regular scheduled shift, he/she shall be required to do so and the pay provided for herein shall be reduced accordingly.

229. For judicial service as set forth in Paragraph 227 during hours other than normally scheduled hours, the employee shall not be required to work regularly scheduled hours with less than an eight (8) hour interval from such service. Such service shall include travel time. Such protected time lost shall not result in loss of pay when considered in conjunction with fee received.

230. Pay provided for in this Article for work which was not performed shall be included in the hours worked for the purposes of calculating daily or weekly overtime.

## ARTICLE XXII - INSURANCE BENEFITS

### Section 1 - Health Insurance

231. Description of Coverage

KFH 00987



The Employer agrees to provide Kaiser Foundation Health Plan benefits **currently described as "SS" coverage,** the Psychiatric Plan, pre-paid maternity, **durable medical equipment coverage** and the Optical Plan for Regular employees, spouse/domestic partner and eligible dependents or to pay the premium required to provide the alternate **medical plan** coverage **as** described **in the plan document.** Effective August 1, 1996, the Employer agrees to provide the drug benefit currently described as Kaiser Foundation Health Plan Drug Program Benefit "N" ($5.00 co-pay) **or** the Drug Program Benefit ($5.00 co-pay) **included under the alternate medical plan** to all Regular employees/retirees, their spouses/domestic partners and their dependents. The $5.00 drug co-pay shall apply to eligible employees who retire on or after January 1, 1998.

232.     Eligible Dependents

Eligible dependents shall also include unmarried children of the employee and the employee's spouse/domestic partner **to age** twenty five (25) provided they have the same regular residence as the employee and are dependent upon the employee for support and maintenance.

233.     Maintenance of Benefits

The Employer agrees to pay any additional premium payments required to maintain the benefits described in Section 1 during the term of this Agreement, except as otherwise stated.

234.     Effective Date of Coverage

Hospital-medical-surgical and drug coverage for employees and dependents shall become effective the first day of the month following the date the employee becomes a regular employee.

235.     Change in Plans

Employees may change from one hospital-medical-surgical plan to another on January 1 of any year, provided they submit a notice in writing to the Employer's **Human Resources Service Center** of their desire to change Plans at least thirty (30) days prior to any January 1.

236.     Ineligible Dependents

An employee's dependents who otherwise receive Kaiser Foundation Health Plan coverage by virtue of eligibility or membership through employment with another employer with benefits at least equal to

KFH 00988

benefits received by dependents under the Employer's plan will not be eligible for Employer-paid dependent coverage. The Union shall cooperate in the administration of this Section.

237.  Retiree Coverage

The Employer agrees to provide to those employees covered by the Kaiser Foundation Health Plan, Kaiser Foundation hospital-surgical-medical benefits described as Senior Advantage or the alternate **medical plan** coverage integrated with Medicare, for employees retired under the normal, disability and postponed provisions of the pension plan and who are eligible for and participating in Parts A and B of Medicare. Employees retiring under the early or disability provisions of the pension plan shall become eligible for the Kaiser Foundation Health Plan Senior Advantage coverage (or the dual choice option **if accepted by the Administrator**) upon becoming eligible for and participating in Parts A and B of Medicare. For early and disability retirees who retire after November 1, 1992, the requirement that employees must maintain Kaiser coverage during the period from early retirement to age sixty-five (65) in order to qualify for coverage at age sixty-five is eliminated. Covered spouses/**domestic partners** of such employees must also enroll in Parts A and B of Medicare when eligible. Medicare-eligible employees who retired prior to August 1, 1996, along with their Medicare-eligible dependents, will be allowed to retain their existing coverage presently described as "MS" or may choose to enroll in the Senior Advantage Plan provided they meet eligibility requirements. **Employees** who retire on or after August 1, 1996, **and their dependents** will be required to enroll in the Senior Advantage Plan **upon becoming Medicare-eligible**. The medical benefits that retirees receive from the Senior Advantage program will continue to be the same as those described in the "SS" coverage in Article XXII, Section 1. Retirees covered by Senior Advantage must receive all medical care at Kaiser Permanente facilities in order to receive benefits. If individuals covered under this plan move outside the Kaiser Permanente service area, and do not elect the alternate **medical plan**, Kaiser Permanente will offer its Out of Area Group plan. However, effective January 1, 1997, such Medicare-eligible retirees and their dependents will be required to pay that amount of the Out of Area retiree group rate which is in excess of the Health Plan retiree group rate in effect on January 1 of each year. Dependents **of employees who retire on or after August 1, 1996** who are not yet Medicare-eligible must enroll in Kaiser Permanente's Senior Advantage Plan as soon as they become eligible in order to maintain health plan coverage.

238.  For employees hired after October 25, 1986, fifteen (15) years of service under the Retirement Plan shall be required for eligibility for the post-

57



retirement health care coverage described above, and such coverage shall not include optical benefits.

239.    Costs for post-retirement medical coverage shall be shared as follows for employees who terminate on or after January 1, 1998, and who meet the eligibility requirements for retiree medical coverage. Such costs will be based on the January 1 retiree Senior Advantage group rate for each year.

| Years of Service | Employer Monthly Payments | Retiree Monthly Payments |
|---|---|---|
| 15 | 50% | 50% |
| 16 | 55% | 45% |
| 17 | 60% | 40% |
| 18 | 65% | 35% |
| 19 | 70% | 30% |
| 20 | 75% | 25% |
| 21 | 80% | 20% |
| 22 | 85% | 15% |
| 23 | 90% | 10% |
| 24 | 95% | 5% |
| 25 | 100% | 0% |

Section 2 - Life Insurance

240.    The Employer will provide each Regular employee with $5,000 Group Life Insurance and $5,000 Accidental Death and Dismemberment coverage and the cost of such coverage shall be paid by the Employer.

241.    Coverage shall become effective the first day of the month following the date the employee becomes a Regular employee.

KFH 00990

Section 3 - Dental Insurance

242.    Basic Coverage

An Employer-paid Dental Program will be provided to all Regular employees, their spouses/domestic partners, **and** their eligible dependent children up to age 25 provided such employees have been continuously employed as Regular employees for six (6) or more continuous months. The basic dental plan shall be for covered services at the rate of 90% of usual, reasonable customary fees, except for 50% reimbursement for bridges and dentures.

243.    Claims Disputes

The Employer will provide a central area for resolving difficulties in processing claims and the Union may designate a representative to assist in the expediting of these problems with the dental insurance carrier.

244.    Orthodontia Coverage

Orthodontia coverage for dependent children to age eighteen (18) at 50% of usual, reasonable and customary charges for corrective procedures only to $1,000 lifetime maximum, will be provided at the Employer's expense.

245.    Coordination of Benefits

If employees and eligible dependents entitled to dental benefits under this Agreement are also entitled to dental benefits under another group plan, benefits from this plan will be coordinated with the benefits from any other group plans so that up to 100% of the allowable expenses incurred during a benefit year will be paid jointly by the plans. An allowable expense is any necessary, reasonable and customary item of dental expense covered in full or in part under any one of the group plans involved. This plan will always pay either its regular benefits in full or a reduced amount which when added to the benefits payable by other group plans, will equal 100% of allowable expenses during each benefit year. Also in cases where an employee is entitled to Dental Benefits under this Agreement in his/her own right and also as a dependent of another employee in this same plan such coordination of benefits shall be applicable.

Section 4 - Short Hour Employee's Coverage

246.    Short-Hour employees as defined in Paragraph 98 whose regular predetermined work schedule is at least eight (8) hours per week may purchase at their own expense through a payroll deduction plan the same Kaiser Foundation Health Plan coverage available to regular employees under this Agreement provided that a minimum of 75% of all eligible Short-Hour

KFH 00991



employees in the Region elect to purchase and continue to purchase such Health Plan coverage. Coverage will be offered on the Health Plan's three-rate structure. At any time participation falls below seventy-five percent (75%) of the group of eligible employees such coverage shall be discontinued. There shall be an annual enrollment period during which these eligible Short-Hour employees may elect to purchase the coverage.

### Section 5 - Complete Details on Benefits

247.    This Agreement contains only a summary of benefit plans. Complete details concerning these benefits are contained in the appropriate provider contracts, plan documents or summary plan descriptions which are provided to the Union. Summary plan descriptions shall be provided by the Employer to employees upon request.

Also refer to the National Agreement, October 1, 2000 for additional information regarding Insurance.

### ARTICLE XXIII - DOMESTIC PARTNER COVERAGE

248.    The following benefits and policies shall be offered to employees' domestic partners and their eligible dependents, who meet the eligibility requirements as stated in paragraph 249.

    A.    Medical Benefits
    B.    Dental Benefits
    C.    Bereavement Leave
    D.    Post-retirement Medical Benefits

#### Eligibility

249.    In order for an employee to be eligible for domestic partner benefits provided in this Agreement, he/she and the individual for whom benefits are being applied, must provide a completed Affidavit of Domestic Partnership as requested by the Employer. For purposes of this Agreement, a domestic partnership is one in which the employee and the domestic partner both meet all the following requirements:

    A.    Live together, sharing the same living quarters as a primary residence, in an intimate, committed relationship and mutual caring;

    B.    Have no other domestic partner at this time;

    C.    Are responsible for each other's basic living expenses during the domestic partnership, and agree to be financially responsible for any

KFH 00992

debts each other incurs as a direct result of Kaiser Permanente's extension of benefits to either domestic partner;

D.   Are not married to anyone;

E.   Are 18 years of age or older;

F.   Are not related to each other as a parent, brother or sister, half brother or sister, niece, nephew, aunt, uncle, grandparent, or grandchild; and

G.   Have not been covered by Kaiser Permanente sponsored benefits with another domestic partner at any time during the last **twelve (12)** months.

250.   The Employer's provision of insurance benefits to domestic partners and their eligible dependents will be in accordance with applicable federal and state laws, withholding tax requirements and Internal Revenue Service requirements.

## ARTICLE XXIV - ANNUAL PHYSICAL EXAMINATIONS

251.   When an employee is notified of the need to complete his/her annual physical examination, he/she may select from the Department of Medicine a Permanente Medical Group, Inc. physician of his/her choice; however, if the employee fails to secure an appointment for his/her physical examination within thirty (30) days following notification, the Employer may assign a Permanente Medical Group, Inc. physician for the examination.

## ARTICLE XXV - UNEMPLOYMENT COMPENSATION

252.   The Employer will cause employees to be covered by unemployment insurance and disability compensation in accordance with the terms of the California Unemployment Insurance Code.

253.   The above coverage may be adjusted during the life of this Agreement in the event future legislation is enacted that is applicable to non-profit hospitals.

**KFH 00993**



## ARTICLE XXVI - PENSIONS

### Section 1 - Participation

254.    All Regular employees are eligible to participate in the Kaiser Permanente Employees Pension Plan after twelve (12) months of service. Major benefit provisions of the plan are described below. A full description of the plan is contained in a separate summary plan description distributed to all employees and a plan document is available for employee inspection.

### Section 2 - Service

255.    Years of service determines eligibility for Early Pension, Disability Pension or a Deferred Vested Pension. Any calendar year in which an employee receives pay for 1,000 or more hours of employment with the Kaiser Permanente Medical Care Program is a year of service. In addition each year of employment with a member hospital of the Federation of Bay Area Hospital Retirement Plans and any member of the Affiliated Hospitals of San Francisco is a year of service if an employee had 1,000 or more hours of employment in such year and if the period between termination or commencement of employment with the Kaiser Permanente Medical Care Program and termination or commencement of employment with such member hospital does not exceed 90 days.

### Section 3 - Credited Service

256.    Years of Credited Service determine the amount of the Normal Pension and other pensions provided by the Plan. Any calendar year in which an employee receives pay for 2,000 or more hours of employment with the Medical Care Program is a year of Credited Service. In calendar years in which an employee is paid for less than 2,000 hours, partial years of Credited Service are counted for periods of time when an employee is regularly scheduled to work 20 or more hours per week. For vested participants who terminate or retire after January 1, 1990, any calendar year during which the employee is in Short-Hour, Temporary, or Casual employee status and works one thousand (1,000) or more hours will be counted toward Credited Service. Final Average Monthly Compensation for Short-Hour, Temporary and Casual employees shall be calculated by reducing the employee's contractual pay rate by the amount of pay in lieu of benefits.

KFH 00994



Section 4 ¬ Eligibility for and Amount of Benefits

257.    A.    Normal Retirement

An employee is entitled to a Normal Monthly Pension if he/she retires on his/her 65th birthday. The Normal Pension for employees retiring on or after November 1, 1978, is computed as follows:

258.    1.    For each year of Credited Service after 1978, 1.2% of Final Average Compensation (final average compensation is the monthly average of an employee's base wages over the highest 60 consecutive months of employment within the last 120 months of employment). Lump sum wage payments paid to employees during the term of the 1986-1989 Agreement shall be included in yearly compensation for the purposes of computing pension benefits. The month immediately before a month(s) in which the employee had no compensated hours of employment and the month immediately after such a period are considered to be consecutive months of employment; and

259.    2.    For years of Credited Service before 1979, the larger of:

a.    1.2% of Final Average Monthly Compensation multiplied by years of Credited Service before 1979; or

b.    The sum of the following:

1)    For each year before 1964, 203% of 1-1/4% times monthly compensation in 1963;

2)    For each year after 1963 but before 1971, 203% of 1% of base monthly compensation subject to Social Security tax plus 1-1/2% of any excess;

3)    For each year after 1970 but before 1975, 145% of 1% of base monthly Compensation up to $650 plus 1-1/2% of any excess; and

4)    For each year after 1974 but before 1979, 1% of base monthly compensation up to $650 plus 1-1/2% of any excess.

260.    B.    Postponed Retirement

An employee is entitled to a Postponed Pension if he/she retires after his/her 65th birthday. The Postponed Pension is computed in the same

KFH 00995



manner as a Normal Pension based upon the employee's Credited Service and Final Average Compensation as of his/her retirement date.

261.    C.    Early Retirement

An employee is entitled to an Early Pension if he/she retires after his/her fifty-fifth (55th) birthday and has ten (10) or more years of service. The Early Pension is computed in the same manner as a Normal Pension based upon Credited Service and final Average Compensation as of the employee's date of retirement, and actuarially reduced to reflect earlier commencement of benefits.

262.    D.    Disability Retirement

An employee is entitled to a Disability Pension if he/she is eligible for and receives disability income benefits under Title II of the Social Security Act when he/she retires and if he/she has ten (10) or more years of service. Eligibility for a Disability Pension is subject to periodic review by the Administrative Committee of the Plan. The Disability Pension is computed in the same manner as a Normal Pension, based upon the employee's years of Credited Service and Final Average Compensation at the time of his/her termination, and is not actuarially adjusted.

263.    E.    Deferred Vested Pension

An employee is entitled to a Deferred Vested Pension if his/her employment terminates and he/she has completed five (5) or more years of service or if the sum of his/her age and service totals sixty-five (65) or more for employees hired before January 1, 1976. If such employee dies prior to receiving benefits and is survived by a spouse, the spouse will receive a monthly benefit equal to the amount that would have been payable if the employee had retired the day before his/her death and elected the joint and survivor method of payment with a fifty percent (50%) continuation to the survivor. The Deferred Vested Pension is computed in the same manner as a Normal Pension, based on Credited Service and Final Average Compensation at termination of employment. Payments commence at age sixty-five (65), subject to filing a retirement application.

264.    F.    Survivor Annuity

An employee who has attained five (5) or more years of service is entitled to survivor annuity coverage. If such an employee dies prior to retirement, and is survived by a spouse, the spouse will receive a monthly benefit equal to the amount that would have been payable if

KFH 00996

the employee had retired the day before his death and elected the joint and survivor method of payment with a 50% continuation to the survivor.

265.    G.    Other Pensions

Any pension payable under this plan will be reduced by the amount of any pension payable under any other plan maintained by, or to which contributions are made by the Employer to the extent that such benefits are attributable to the same period of service.

266.    H.    Manner of Payment

Pensions are paid monthly under a method of payment elected by the employee. The employee may elect a life annuity, a joint and survivor annuity, a guaranteed years of payment annuity, an annuity which together with Social Security provides level payments before and after Social Security begins, or a single sum. If the method of payment is other than a life annuity, the amount of the payment will be actuarially adjusted.

267.    I.    Reinstatement of Benefits

If an employee terminates employment and is reemployed, all prior service and Credited Service is reinstated upon reemployment.

Section 5 - Voluntary Employee Contributions

268.    An employee who is eligible to participate in the plan may provide for a supplementary retirement income financed by voluntary employee contributions.

Section 6 - Cost

269.    The cost of the Plan will be paid entirely by the Employer whose contributions are deposited in trusts created by the Employer.

Section 7 - Administration

270.    The Plan is administered by a pension committee appointed by the Employer. Contributions to the plan are held in trust funds established by the Employer.

271.    Upon request to the facility, an employee shall receive an accounting of the employee's current status relative to the Pension Plan.
Section 8 - Salary Deferral Retirement Plan

65

KFH 00997



272.    All employees shall be eligible for the Kaiser Permanente Salary Deferral Retirement Plan (KPSDR), which allows tax-deferred contributions to a 401(k) type retirement plan.

Also refer to the National Agreement October 1, 2000 for additional information regarding pensions.

## ARTICLE XXVII - CHILD CARE

273.    **The Employer shall offer an optional Dependent Care Plan to all eligible employees. This plan shall provide employees the option to set aside tax free dollars for eligible dependent care expenses in accordance with the Internal Revenue Code. Coverage, limitations and exclusions of the Dependent Care are governed by the Employer's service agreements with the provider, the Plan Documents, and summary Plan Descriptions.**

274.    No later than June 1, 1993 a list of licensed child care providers from the State of California will be available in each facility's Personnel Office for use by employees. The Employer is providing this list as a courtesy, for informational purposes only. The Employer, nor the Union, had any role in preparing the list, and in no way endorses, recommends, or certifies the competence of any provider on the list. The Employer and the Union disclaims liability for any acts or omissions of any of the providers on the list.

## ARTICLE XXVIII - CONSCIENTIOUS OBJECTION

275.    The rights of patients to receive medical care and the obligation of the facility to render such care must be recognized and respected. In the case of therapeutic abortions, employees accept the obligation of providing competent medical care as a major responsibility; however, it is recognized that an employee may hold sincere moral or religious beliefs which require the employee in good conscience to refuse direct participation in such medical procedures.

276.    The Employer agrees that an employee may refuse to directly participate in such medical procedures and will not be subject to coercion, censure, unreasonable transfer, unreasonable assignment or discipline by reason of such refusal. An employee who has an assignment where participation in therapeutic abortion occurs and who conscientiously objects to such participation, shall notify his/her supervisor of this position in writing which may require reassignment or transfer.

277.    In emergency situations where the immediate nature of the patient's needs will not allow for substitution, the patient's right to receive medical care shall take

66



precedence over the exercise of the employee's individual beliefs and rights. In such cases, the Employer shall arrange for reassignment/transfer at the earliest possible opportunity.

## ARTICLE XXIX - UNION BUSINESS

278.    Duly authorized representatives of the Union shall be permitted at all reasonable times to enter the facilities operated by the Employer for the purpose of transacting Union business and observing conditions under which employees are employed; provided, however, that no interference with the work of employees shall result and such right of entry shall at all times be subject to general hospital and clinic rules applicable to non-employees. The Union Representative shall, upon arrival at the facility, notify the office of Administration, or its designee of his/her presence.

279.    The Employer agrees to recognize Union Stewards and Field Representatives duly appointed by the Union, who may receive complaints and see that the terms and, conditions of the Labor Agreement are observed, provided that such activity does not unduly interfere with the work assignment of the Steward(s) or other employees. The Union will notify the Employer in writing of the names and assignments of all duly appointed Stewards and Field Representatives.

280.    Employees have the right to have a Union Steward or Union representative present at meetings with supervisors or management representatives when such meetings are accusatory or disciplinary in nature. Furthermore, the Employer shall advise the employee in advance if a requested meeting may result in suspension, discharge or other discipline of the employee.

281.    Union Field Representatives shall be allowed access to appropriate materials in personnel files which are directly related to an alleged contract violation if the employee's written consent is presented to Personnel. The Employer will not use any materials from personnel files for the purpose of discipline, or in the grievance procedure, which have been specifically denied the Union in a request for access.

282.    The Employer shall provide space at each facility for a bulletin board for the use of the Union.

KFH 00999

## ARTICLE XXX - DISPUTES

### Section 1 - Work Stoppages

283.     The Employer and the Union realize that the Employer's facilities are different in their operations from industries because of services rendered to the community and for humanitarian reasons, and agree that there shall be no lockouts on the part of the Employer, nor suspension of work on the part of the employees, it being one of the purposes of this Agreement to guarantee that there will be no strikes, lockouts or work stoppages.

284.     All disputes in other matters of controversy coming within the scope of this Agreement will be settled by the procedure hereinafter provided.

### Section 2 - Probationary Period

285.     Regular employees may be discharged without recourse to the grievance procedure within the first ninety (90) days of employment. Short Hour, Casual and Temporary employees may be discharged without recourse to the grievance procedure within the first three hundred (300) hours or **ninety (90)** days whichever is later.

### Section 3 - Definition of Grievance

286.     Grievance, as referred to in this Article, includes every dispute concerning application or interpretation of this contract and/or any dispute concerning wages, hours or working conditions. All such disputes shall be subject to the grievance procedure; however, only such grievances that allege a specific violation of the contract may be appealed to Step 3 of the grievance procedure.

### Section 4 - Discussion of Request or Complaint

287.     Both the Employer and the Union pledge their active, aggressive and continuing efforts to secure prompt disposition of requests, complaints and grievances; and agree that most disputes can be, should be and will be resolved in the oral discussions. In the few cases where such is not accomplished, the following procedure shall apply.

### Section 5 - Grievance Procedure

#### Step 1

288.     The first step of a grievance, as defined in Section 3 above, shall be the discussion with the Department Head by the employee, Field Representative and/or Shop Steward. Every grievance must be initiated in the first step within thirty (30) working days after occurrence of the event causing the grievance or

KFH 01000



the grievance shall be considered waived. Should the dispute fail to be resolved within three (3) working days after that discussion, the matter may be pursued by the Field Representative or the Chief Steward with the Employer's designee.

289.   In the event the grievance concerns the discharge of the employee, the grievance must be presented in the first step within seven (7) working days following the discharge or the grievance shall be considered waived.

290.   The Employer's designee must give the aggrieved employee and/or the Field Representative and/or the Shop Steward, as the case may be, an answer within three (3) working days after such discussion. The grievance shall be considered settled on the basis of the answer given and not eligible for further consideration unless it is appealed in writing within two (2) working days after the Employer's designee's answer. In the event the Employer's designee has failed to reply to the grievance, it shall automatically proceed to Step 2 if appealed by the Union within ten (10) working days after the grievance was initiated.

Step 2

291.   A grievance appealed to this second step of the grievance procedure shall be in writing on a mutually agreed upon grievance form. Such grievance shall be discussed by the Field Representative and the Personnel Director at a mutually convenient time within five (5) working days after receipt by the Personnel Director of the appealed grievance into this Step 2. In the event the Personnel Director and the Union Representative conclude that they have made every reasonable effort to resolve the grievance and that further oral discussions will not result in a solution within a reasonable period of time, a grievance control number shall be assigned.

292.   Only when a grievance control number has been assigned and after all avenues of discussion have been exhausted should the Personnel Director's Step 2 disposition be placed in writing on the grievance form. Such answer must be given within fifteen (15) calendar days after presentation of the grievance into this Step 2. If the Personnel Director's reply is not appealed to Step 3 within ten (10) working days after receipt in writing by the Field Representative, the grievance shall be considered settled on the basis of such reply and shall not be eligible for further appeal. If the Personnel Director fails to satisfy the time limits herein provided, the grievance shall automatically progress to Step 3 upon notification by the Union in writing within twenty (20) working days after presentation of the grievance to Step 2 that the time limits have not been waived.

Step 3

KFH 01001


293.   A grievance appealed to this third step must be served within the time limits previously described by the Representative of the Union to the Employee Relations Manager or his/her designee. Such notice shall state the subject matter of the grievance, identifying grievance control number and objections taken by either party to the previous disposition. Review of the appealed grievance shall take place promptly, not to exceed ten (10) working days following receipt of notice of appeal.

294.   A grievance discussed in such meeting must be answered in writing by the Employee Relations Manager or his/her designee within ten (10) working days after the date of such meeting. If the reply of the Employee Relations Manager or his/her designee is not appealed to Step 4 within ten (10) calendar days after receipt in writing by the Field Representative, the grievance shall be considered settled on the basis of such reply and shall not be eligible for further appeal. If the Employee Relations Manager or his/her designee fails to satisfy the time limits herein provided, the grievance shall automatically progress to arbitration upon notification by the Union in writing within thirty (30) working days after presentation of the grievance to this Step 3 that the time limits have not been waived.

### Step 4

295.   A grievance appealed to this fourth step shall be submitted to an Arbitrator who shall be impartial and who shall be appointed by mutual agreement of the parties. In the event mutual agreement cannot be reached on an Arbitrator within ten (10) working days of receipt of notice of appeal to arbitration, the State Conciliation Service shall be asked to name a panel of five (5) individuals from which one (1) name shall be selected by the parties within five (5) working days after receipt of the names provided by the State Conciliation Service.

296.   The arbitrator shall have jurisdiction and authority only to interpret, apply or determine compliance with specific terms of this Agreement and shall not have jurisdiction to add to, detract from or alter in any way the provisions of this Agreement. Any decision within the jurisdiction of the arbitrator shall be final and binding upon all concerned. The expenses and salary incident to the services of the arbitrator shall be shared equally by the Employer and the Union.

KFH 01002

Section 6 - General Provisions

297.    Grievances may by mutual agreement be referred back for further consideration or discussion to a prior step or advanced to a higher step of the grievance procedure.

298.    Time limits specified in the processing of a grievance may be waived by mutual agreement.

299.    Settlements reached in Step 1 or Step 2 of the grievance procedure shall not establish a precedent or practice for future similar or dissimilar cases unless specifically agreed to. Such agreement must be reduced to writing and state that the settlement may be used as a precedent in future cases.

300.    Grievances may be filed against the Union by the Employer in accordance with the general provisions referred to in this Article.

301.    Minutes shall be prepared and jointly signed by the participants in all grievance discussions which have been assigned a grievance control number. Minutes shall conform to the following general outline:

    A       Grievance control number.

    B.      Names and positions of those present, including witnesses.

    C.      Background information and facts.

    D.      Statement of Union position and reason therefor; the relevant contract provisions; past grievances and/or awards; supporting evidence and arguments.

    E.      Statement of Employer's position; full response to all claims; points of evidence; testimony and arguments presented by the Union; Employer evidence including past grievances and/or awards.

    F.      Summary of discussion.

    G.      Decision reached.

    H.      Statement of concurrence in or exceptions to minutes.

Section 7 - Modification of Procedure

302.    Since the parties are determined that there will be a procedure for the resolution of all disputes which works rapidly and equitably to bring such disputes to a final resolution, the foregoing may be changed at any time by

71

KFH 01003

mutual agreement after experience has demonstrated that any of the foregoing provisions or procedures are causing undue delays.

Section 8 - Discipline

303.   Just Cause

Discipline shall be administered only for just cause.

304.   Patient and Physician Complaints

Patient and physician complaints will be investigated and discussed with the employee and, if the employee chooses, a Union Representative, before being used as the basis for discipline.

305.   Warning Letters and Performance Evaluations

Employees shall be given an opportunity to read, sign and attach written comments to formal performance evaluations or formal letters of warning prior to the placement of such material into the employee's personnel file.

306.   Warning letters and performance evaluations shall become a valid part of the personnel file if they have been signed by the employee, as proof of receipt only, or the Shop Steward has been notified in writing of an employee's refusal to sign.

307.   Letters of Warning shall be given consideration based upon the seriousness of the incident and length of time since the occurrence of the incident.

308.   Orientation

If employees are assigned to familiarize others with the duties and responsibilities of their job, any resulting reduced work performance shall not be appropriate cause for discipline.

309.   Performance/Production Standards

Discipline related to Employer established performance/production standards shall be subject to the "just cause" provisions referenced in paragraph 303 above.

KFH 01004

ARTICLE XXXI - CONFIDENTIALITY OF MEDICAL RECORDS

310.   Indiscriminate or unauthorized review, use or disclosure of personal
       information, medical or otherwise, regarding any patient or employee is
       expressly prohibited.  Except when required in the regular course of business,
       the discussion, use, transmission or narration, in any form, of any patient or
       employee information which is obtained in the regular course of business is
       prohibited.

ARTICLE XXXII - JOINT CONFERENCE ON SERVICE RELATED ISSUES

311.   On a mutually agreed upon date in each year of this Agreement, the Employer
       and the Union will sponsor a region-wide joint conference on service related
       issues.  The purpose of this conference will be to provide the Employer and
       employees with the opportunity to exchange views on enhancing the
       professionalism of employees in classifications covered by this Agreement
       and the contribution of all employees to the provision of service to Health Plan
       members.  Execution of this conference shall be subject to the following:

       A.   Attendees at the conference shall consist of one (1) employee selected
            by the Union and one (1) employee selected by the Employer for each
            medical center.  Each party shall designate a chairperson from among
            the selected attendees.  The Committee representatives will report to
            and involve the medical offices (clinics) in their area.  Chairpersons
            shall have the authority to work out coordination of representatives and
            if mutually agreed expand the number as necessary.  Two (2) Labor
            Relations representatives of the Employer and two (2) representatives
            of the Union may observe the activities of the conference but shall be
            excluded from participation.  Attendees shall be paid for time spent at
            the conference at their regular hourly rate of pay.

       B.   The conference may cover a period of up to eight (8) hours on a
            mutually agreed date each year.  Each party shall have one-half (1/2) of
            the scheduled conference time to present issues and to discuss them,
            unless otherwise mutually agreed.

       C.   No later than thirty (30) days prior to the conference the two (2)
            chairpersons and two (2) committee members from each side
            referenced in A. above shall meet to determine the conference format
            and the most efficient ways of maximizing available conference time.
            They will also exchange agendas of items each party wishes to discuss
            at the conference.  The chairpersons shall moderate the conference.
            Attendees shall be paid at their regular rate for time spent at the joint
            agenda planning session.

73

KFH 01005

D.    Issues which are covered by the provisions of this Agreement, which are proper subjects of collective bargaining between the Employer and the Union, or which are the proper subject of the grievance procedure contained herein shall not be discussed at this conference.

E.    Publication or discussion of the content or results of the conference shall be limited to the Union and employees of the Employer and minutes shall be kept of all conference proceedings.    Information regarding the conference shall be disseminated jointly through the facility service committee representatives.

F.    At each conference the attendees shall determine if any follow-up activity subsequent to the conference is needed.    If such a determination is made, the attendees shall develop the procedures which will govern such activity.    Any mutually agreed upon joint follow-up activity shall be paid at the employee's regular hourly rate.

G.    Nothing in this Article shall be subject to the grievance and arbitration provisions of this Agreement, with the exception of dispute related to pay as set forth above.

## ARTICLE XXXIII - COMPETITIVE WAGE REVIEW AND EQUITY ADJUSTMENTS

312.    During September in each year of this Labor Agreement, excluding the year in which the contract expires, the Employer will meet with representatives of the Union to review specific job classifications, identified by each party, as requiring wage increases over and above the negotiated wage increases for that specific year.    Wage data used by the Employer or the Union in identifying such classifications shall be reviewed by the parties prior to the Employer implementing any changes in the previously negotiated wage rates.    Nothing herein shall limit nor change the parties' rights under the Collective Bargaining Agreement or be used to modify any of the provisions of the Collective Bargaining Agreement.    Disputes under this Article shall not be subject to the provisions of Article XXX ("Disputes").

## ARTICLE XXXIV - LABOR-MANAGEMENT COMMON INTEREST FORUM

313.    Effective January 1, 1990, the parties hereby agree to establish a Joint Labor-Management Common Interest Forum at each Medical Center and Free Standing Medical Office Building (presently Stockton and Fresno), Livermore and the Berkeley Complex in order to improve labor-management and employee-employer relations.    The purpose of the Common Interest Forum shall be to address issues of mutual concern to the Union and the Employer. The Common Interest Forum shall consist of no more than eight (8)

KFH 01006

representatives chosen by the Union and no more than eight (8) representatives chosen by the Employer and shall meet on a quarterly basis at mutually agreeable times and places.

314. Employee representatives on the Labor-Management Common Interest Forum shall be paid at their straight-time hourly rate for time spent at meetings of the Common Interest Forum.

315. The Common Interest Forums shall not engage in collective bargaining nor shall they resolve issues which have already been raised under the Dispute Resolution Procedure.

316. Except for pay as referenced in paragraph 312 above none of the provisions of this Article shall be subject to the Dispute Resolution Procedure of this Agreement.

317. Nothing herein shall:

   1. Dissolve, restrict or prevent continuation of existing committees.

   2. Require Medical Centers to have more than one (1) Labor-Management Committee, provided such committee meets the above conditions.

   3. Preclude the participation of employees represented by other bargaining units.

   4. Preclude the parties from mutually agreeing to meet more often than quarterly.

## ARTICLE XXXV - SAVINGS CLAUSE

318. If any provision of this Agreement is found to be in conflict with the laws of the State of California or of the United States of America or any agency thereof, the remaining provisions of this Agreement shall remain in full force and effect.

KFH 01007

ARTICLE XXXVI - DURATION OF AGREEMENT

319.    **Except as otherwise specifically provided, this Agreement shall be effective as of October 1, 2000, and shall continue in effect through the month, day, and year as specified in the National Agreement, Section 3: Scope of The Agreement, D. Term of Agreement and** shall be automatically renewed from year to year thereafter, unless either party serves upon the other ninety (90) days prior written notice of a desire to modify this agreement, it shall contain the provisions of the Agreement which that party desires to be modified. If such notice to modify or terminate is timely served, negotiations shall commence between the parties within fifteen (15) days after receipt thereof.

76

**KFH 01008**

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day herein above written.

KAISER FOUNDATION HOSPITALS
THE PERMANENTE MEDICAL GROUP, INC.
KAISER FOUNDATION HEALTH PLAN

NANCY A. CARLSON
Manager, Labor Relations

SANDI SMALL
Vice President/Service Area Manager

HENRY DIAZ
Asst. Mgr., Labor Relations

DEANNA MEDINAS
Medical Group Administrator

MINYON ROBINSON
Senior Labor Relations Representative

ROSE CARINO
Director, Internal Medicine

TONY GATELY
VP & Regional Medical Group
Administrator

DAVID ISAAC
HR Consultant

MARYANN THODE
Sr. VP & Chief Operating Officer

ANDREA OSTLING
Project Manager

ANABEL ANDERSON-IMBERT, MD
Physician in Chief

JAIME VARGUARA
Manager, Celular Pathology

DIANNE PRESTON
Asst. Regional Medical Group
Administrator

HELEN GALLEGOS
Director, HIM Services

SHARON EASTMAN
Asst. Regional Medical Group
Administrator

ED PORTER
Administrative Services Director

GREG SOUZA
Director, HR Services

ROBERT BRUUN
Medical Group Administrator

77

KFH 01009

DEBORAH ROMER
Medical Group Administrator

MARCIE ANDERSON
Laboratory Administrative Director

BOB BROSNAN
HR Leader

SHEILA FUSARO
Director, Imaging Services

PAT KENDALL
Medical Group Administrator

SUSAN YEE
Regional Laboratory Administrator

KAREEN KNOWLES
Medical Group Administrator

JUDY COFFEY
Medical Group Administrator

PAT PEKROL
Director, Nursing Practice

SHARON PARMENTIER
Asst. Medical Group Administrator

78

KFH 01010

HEALTH CARE WORKERS UNION, LOCAL 250,

SEIU, AFL-CIO/CLC

SAL ROSSELLI
President, Chief Negotiator

LUCY FURCH, Fresno

JOAN EMSLIE
Secretary – Treasurer

SANDRA HOLLAND, Gilroy

WILL CLAYTON
Director, Kaiser Division

PIERRE GERRARDS, Hayward

RACHEL RODRIGUEZ
Assistant Director, Kaiser Division

TOM ANGELO, Livermore

LINDA LUESCHER
Project Coordinator

ANN STEPP, Manteca, Modesto

LAURA TORRANCE, Antioch

BRANDY VICTORY, Martinez

LARRY RATTO, Berkeley

PAM LITTLEJOHN, Martinez

SALLY MOED, Campbell

ARLENE NAVARRO, Milpitas

BRENDA STELL, Fairfield

DAWN HORTON, Napa

ARMENTHA TAYLOR, Fairfield

JACKIE WILLIAMS. Oakland

SYLVIA RAYMOND, Fremont

CORNELIUS STEWART, Pleasanton

GRETA TAYLOR, Fremont

JULIA HILL, Rancho Cordoba

SHIRLEY NELSON, Redwood City

DIANE BARTON, Santa Clara

79

KFH 01011



GAIL MATULOVICH, Richmond

GAYLE VALVERDE, Roseville

MAUREEN FARRO, Sacramento

CARLOYN PERKINS, San Francisco

GLORIA FERNANDEZ, San Jose CC

MORRIS CERVANTES, San Rafael

ROY MORGAN, San Rafael

CINDY THOMAS, Santa Rosa

DOROTHY MARCELLE, Santa Teresa

CORRINE WILSON, Stockton

CAROL MORRIS, S Sacramento

LINDA ROSE, Vacaville

MIKE GRAHAM, Vallejo

ROY CHAFFEE, Vallejo CC

80

KFH 01012

APPENDIX A

WAGE ADMINISTRATIVE PRACTICES

Section 1.    WAGE STRUCTURE DEFINITIONS

A.    Structure A

Structure "A" is the pay structure for all employees hired on or before October 25, 1986. All such employees will remain on this structure and move accordingly. This structure shall apply to employees in Areas I and II.

B.    Structure B-I

Structure "B-I" is the pay structure for all employees hired on or after October 26, 1986 in Area I.

C.    Structure B-2

Structure "B-2" is the pay structure for employees hired on or after October 26, 1986 in Area II.

Section 2.    GEOGRAPHIC AREA DEFINITIONS

Area I and Area II shall be defined as follows:

AREA I

| | |
|---|---|
| 1950 Franklin and Environs | Pleasanton |
| Antioch | Redwood City |
| Campbell | Richmond |
| Fairfield | San Francisco (including French) |
| Fremont | San Jose |
| Gilroy | San Rafael |
| Hayward | Santa Clara |
| Martinez | Santa Rosa |
| Milpitas | Santa Teresa |
| Mountain View | South San Francisco |
| Napa | Vacaville |
| Novato | Vallejo |
| Oakland | Walnut Creek |
| Petaluma | |

AREA II

81

KFH 01013

Davis                          Sacramento
Fresno                         South Sacramento
Modesto/Stanislaus             Stockton
Rancho Cordova
Roseville


Section 3.     ADMINISTRATION OF WAGE STRUCTURE "A"

Employees on Structure "A" shall remain on that Structure regardless of any transfers, promotions or demotions within or between Areas I and II.

Section 4.     ADMINISTRATION OF WAGE STRUCTURES "B-1" AND "B-2"

Employees on Structure "B-1" or Structure "B-2" will remain on either of these two "B" Structures but may move between the two Structures as a result of the following:

A.     Lateral transfers between Area I and Area II   -   Employees on either Structure B-1 or B-2 who permanently transfer between the two Areas in the same job classification will be placed on the "B" Structure within the Area to which the employee transfers. The employee will be placed on the tenure step of the new "B" Structure which is the same as the tenure step held on the previous "B" Structure.  Tenure credit earned on the previous "B" Structure will apply for movement to higher tenure steps on the new "B" Structure.

B.     Promotions and Demotions between Area I and Area II   -   In determining the appropriate wage rates for employees who are promoted or demoted into a different area, the following shall apply:

The employee will first be treated as a lateral transfer in accordance with (1) above.  Once the lateral transfer wage rate and tenure step is determined, the appropriate promotion or demotion language contained in Article XI, Section 9, #128 or #129 or Article XI, Section 10, #132 or #135 shall be applied.

82

KFH 01014



## Section 5.    SELECTION OF EMPLOYEES AND WAGE STRUCTURES

Employees shall be considered for promotions, demotions, transfers and reductions in force based upon the seniority provisions and other relevant sections outlined in the Labor Agreement. Wage structures will not be a factor in selecting employees for promotions, demotions, transfers and reductions in force.

83

KFH 01015

APPENDIX B

## LIST OF CLASSIFICATIONS

A.    MAINTENANCE AND SERVICE CLASSIFICATIONS

Head Housekeeping Aide
Linen Room Supervisor
Storekeeper
Housekeeping Aide
Watchman
Cook in Charge
Cook A
Cook B
Dishwasher/Potwasher
Fountain Attendant
Nutrition Aide
Nutrition Clerk
Sr. Nutrition Clerk
Driver/Foreman                                    (Berkeley and Livermore only)
Truck Driver                                        (Berkeley and Livermore only)
Warehouse Leadman                            (Berkeley and Livermore only)
Warehouseman                                    (Berkeley and Livermore only)
Radiographic Film Processing Technician    (Berkeley and Livermore only)
Sr. Messenger Driver
Messenger Driver
Sr. Gardener
Gardener
Yardkeeper
Custodian Watchman
Storekeeper I
Storekeeper II
Chief Storekeeper
Service Partner

B.    LICENSED NURSING CLASSIFICATIONS

Sr. Licensed Vocational Nurse
Licensed Vocational Nurse

84

KFH 01016

C.    NURSING CLASSIFICATIONS

Care Partner
Certified Surgical Assistant
Surgical Assistant
Surgical Assistant Trainee
Sr. Orthopedic Technician
Orthopedic Technician
Sr. Surgical Technician
Surgical Technician
Sr. OB Technician
OB Technician
Sr. Psychiatric Technician
Psychiatric Technician
Psychiatric Attendant
Sr. Pathology Technical Assistant
Pathology Technical Assistant
Sr. Nurse Assistant
Nurse Assistant
Sr. Surgical/Supply Technician
Central Supply Technician
Sterile Processing Technician I
Certified Sterile Processing Technician II
Sr. Certified Sterile Processing Technician
Anesthesia Technical Assistant
Sr. Anesthesia Technical Assistant
Sr. Anesthesia Supply Aide
Anesthesia Supply Aide
Sr. Respiratory Supply Aide
Respiratory Supply Aide
Home Health Aide
Sr. Medical Assistant
Medical Assistant
Monitor Technician
Sr. Unit Assistant
Unit Assistant
Patient Transportation Aide
Sr. Physical Therapy Aide
Physical Therapy Aide
Service Partner
Vision Services Asst. I
Vision Services Asst. II

85

D.    CLERICAL CLASSIFICATIONS

Grades 1-7
Medical Secretary Trainee
Medical Secretary
Sr. Medical Secretary
Medical Records Coder I
Medical Records Coder II
Department Secretary
Sr. Communication Operator
Communication Operator

E.    TECHNICAL CLASSIFICATIONS

1.    Licensed Technical Classifications

Cytotechnologist I
Cytotechnologist II
Cytotechnologist III
Chief Cytotechnologist
Supervising Cyto-Histology Technologist
Nuclear Medicine Technologist I
Nuclear Medicine Technologist II
Supervising Nuclear Medicine Technologist
Respiratory Care Permittee
Respiratory Care Practitioner I
Respiratory Care Practitioner II
Registered Respiratory Care Practitioner I
Registered Respiratory Care Practitioner II
Supervising Respiratory Care Practitioner
Physical Therapy Assistant I
Physical Therapy Assistant II
Radiologic Technologist I
Radiologic Technologist II
Radiologic Technologist III
Supervising Radiologic Technologist
MRI Technologist Trainee
MRI Technologist I
MRI Technologist II
Supervising MRI Technologist

KFH 01018

2.    Technical Classifications

    Allergy Technician Trainee
    Allergy Technician
    Sr. Allergy Technician
    Assistant Supervisor, Central Allergy Laboratory
    Cytogenetic Trainee
    Cytogenetic Technologist I
    Cytogenetic Technologist II
    Cytogenetic Technologist III
    Sr. Cytogenetic Technologist
    EKG Technician
    Sr. EKG Technician
    EEG Technologist I
    EEG Technologist II
    Cardiovascular Technician
    Sr. Cardiovascular Technician
    Reagent Chemist (S.F. Only)
    Laboratory Assistant I
    Laboratory Assistant II
    Laboratory Assistant III
    Sr. Laboratory Assistant
    Histologic Technician Trainee
    Histologic Technician I
    Histologic Technician II
    Supervisory Histologic Technician
    Dark Room Technician
    Diagnostic Ultrasonographer Trainee
    Diagnostic Ultrasonographer I
    Diagnostic Ultrasonographer II
    Diagnostic Ultrasonographer III
    Supervisory Diagnostic Ultrasonographer
    Ophthalmic Photographer
    Ophthalmic Technician
    Certified Ophthalmic Technician II
    Trainee Ophthalmic Technician
    Pharmacist Intern
    Inpatient Pharmacy Technician
    Outpatient Pharmacy Technician
    Molecular Technologist I
    Molecular Technologist II
    Molecular Technologist III
    Certified Occupational Therapist Assistant I
    Certified Occupational Therapist Assistant II

APPENDIX C

KFH 01019



POSITION SPECIFICATIONS
FOR
ALL GEOGRAPHIC AREAS INCLUDING FRESNO

## MAINTENANCE AND SERVICE CLASSIFICATIONS

### HEAD HOUSEKEEPING AIDE

This classification shall apply to those employees who are responsible for directing, checking and coordinating the work of Housekeeping Aides.

### LINEN ROOM SUPERVISOR

This classification shall apply to those employees who are responsible for directing, checking and coordinating the work of other linen room employees and who were classified as Linen Room Supervisor as of 10/27/74.

### NUTRITION AIDE AND NUTRITION CLERK

Specifications for Nutrition Aide and Nutrition Clerk are outlined in the Nutrition Classifications Agreement dated 10/26/83. Classifications replace Dietary Aide I, II, and III, effective 01/04/84. Nutrition Clerk specifications can be located in the Clerical Manual.

### SENIOR NUTRITION CLERK

This classification shall apply to those employees who regularly and routinely direct and check the work of three or more Nutrition Aides and/or Nutrition Clerks.

### STOREKEEPER I

Receives deliveries. Unloads supplies, materiel and equipment.    Unpacks items received. Verifies accuracy of shipment. Delivers supplies and equipment and obtains appropriate signatures from receiving department. Maintains a clean and orderly work place.    May use forklifts, hand trucks, panel trucks and other equipment.    Uses automated and manual systems in the above processes.

88

KFH 01020

## STOREKEEPER II

Must have six (6) months experience as a Storekeeper I, or six (6) months experience as a Storekeeper in another organization.

Inventories departments' supplies. Determines quantities of stock needed to replenish departments' supplies. Fills requisitions from stock in storage area. Packs supplies in cartons and delivers to requisitioning department. Restocks departments' supply closets. Packs, crates and prepares bills of lading for outgoing shipments. Returns supplies and equipment for credit or repair. Maintains proficiency in the use of material handling equipment. Resolve problems relating to the ordering, receiving and distribution of materiel by contacting requisitioning and regional departments. Uses automated and manual Systems in the above processes.

## CHIEF STOREKEEPER

Must have at least one (1) year experience as a Storekeeper with Kaiser Permanente or with other organizations. In addition to performing the duties of a Storekeeper, this position must be specifically assigned on a regular basis to direct, check, assign and coordinate the work of other Storekeepers. The Chief Storekeeper will train and report on the work performance of the employees within the assigned area of responsibility.

# NURSING CLASSIFICATIONS

## SENIOR LICENSED VOCATIONAL NURSE

'This classification shall only apply to:

1.   Licensed Vocational Nurses working in an outpatient or inpatient area who are specifically and regularly assigned by the Employer to direct the work of other employees in a work area for the major portion of a shift; or

2.   Licensed Vocational Nurses working in an outpatient clinical area who are specifically and regularly assigned by the Employer to be in charge of a nursing unit or a nursing station.

## SURGICAL ASSISTANT TRAINEE

All the following requirements must be met:

1.   Two (2) years satisfactory work experience as either:

   A.   Surgical Technician
   B.   Operating Room Aide

2.   Recommendation by the Nursing Administrator and acceptance by the Chief of Surgery.

## SURGICAL ASSISTANT

89

KFH 01021

All the following requirements must be met:

1.  A.  One (1) year continuous service as a Surgical Assistant Trainee; or

    B.  Two years documented satisfactory experience as a Surgical Assistant; or

    C.  Documented graduation from a Surgical Assistant (Surgical Operating Assistant) training program acceptable to the Employer.

2.  Recommendation by the Nursing Administrator and acceptance by the Chief of Surgery.

Duties: Individuals in this classification must perform the following duties the vast majority of their time in an inpatient surgery setting under the direct supervision of a Surgeon: retracting tissue, cutting sutures, suturing skin (including subcuticular tissue), tying sutures, applying damps to superficial vessels above the fascia, and other duties when specifically assigned or delegated by the operating Surgeon. Individuals may perform other related duties as required. (Reference Letter of Agreement dated 04/04/69 and job description dated 03/26/69.)

CERTIFIED SURGICAL ASSISTANT

1.  Must meet all of the requirements of a Surgical Assistant; and

2.  At least three (3) years documented satisfactory performance as a Surgical Assistant and

3.  Must obtain and maintain certification as a Surgical Assistant in the National Surgical Assistant Association.

SENIOR ORTHOPEDIC TECHNICIAN

The senior level classification for Orthopedic Technician shall apply only to Orthopedic Technicians who are specifically and regularly assigned by the Employer to direct and check the work of one (1) or more Orthopedic Technicians; or who have at least two (2) years experience as an Orthopedic Technician plus the demonstrated ability to perform and under general supervision frequently does perform the most complex techniques and procedures of the classification in accordance with the specifications set by the department head.

Orthopedic Technicians certified by the National Board of Certification of Orthopedic Technologists shall qualify as Senior Orthopedic Technicians upon presentation of their certificate.

90

KFH 01022

## SENIOR SURGICAL TECHNICIAN

The senior level classification for Surgical Technician shall apply only to Surgical Technicians who are specifically and regularly assigned by the Employer to direct and check the work of one (1) or more Surgical Technicians; or who have at least two (2) years experience as a Surgical Technician plus the demonstrated ability to perform and under general supervision frequently do perform the most complex techniques and procedures of the classification in accordance with the specifications set by the department head.

Surgical Technicians certified by the Association of Operating Room Technicians, affiliated with the Association of Operating Room Nurses shall qualify as Senior Surgical Technicians upon presentation of their certificate.

In the event in-service training is necessary prior to assignment to the classification of Surgical Technician, such employees shall be classified and paid at the Nurse Assistant rate during the period of training necessary. Upon assignment to this classification, employees shall receive credit for in-service training to determine the eligibility date for the "After One Year" rate of the Surgical Technician classification.

## SENIOR OBSTETRICAL TECHNICIAN

The senior level classification for Obstetrical Technician shall apply only to Obstetrical Technicians who are specifically and regularly assigned by the Employer to direct and check the work of one (1) or more Obstetrical Technicians; or who have at least two (2) years experience as an Obstetrical Technician plus the demonstrated ability to perform and under general supervision frequently do perform the most complex techniques and procedures of the classification in accordance with the specifications set by the department head.

## SENIOR PSYCHIATRIC TECHNICIAN

The senior level classification for Psychiatric Technician shall apply only to Psychiatric Technicians who are specifically and regularly assigned by the Employer to direct and check the work of one (1) or more Psychiatric Technicians; or who have at least two (2) years experience as a Psychiatric Technician plus the demonstrated ability to perform and under general supervision frequently do perform the most complex techniques and procedures of the classification in accordance with the specifications set by the department head.

KFH 01023



## PSYCHIATRIC TECHNICIAN

Assignment to the classification of Psychiatric Technician shall be based on (a) submission of proof that the employee has satisfied the current requirements for Psychiatric Technician as prescribed by the Board of Vocational Nurses and Psychiatric Technician Examiners, and (b) assignment by the Employer of the employee to the classification of Psychiatric Technician in a recognized Psychiatric Unit. The classification of Psychiatric Technician does not preclude the employment of other nursing personnel in the Psychiatric Unit.

## SENIOR PATHOLOGY TECHNICAL ASSISTANT

The senior level classification for Pathology Technical Assistant shall apply only to Pathology Technical Assistants who are specifically and regularly assigned by the Employer to direct and check the work of one (1) or more Pathology Technical Assistants; or who have at least two (2) years experience as a Pathology Technical Assistant plus the demonstrated ability to perform and under general supervision frequently do perform the most complex techniques and procedures of the classification in accordance with the specifications set by the department head.

## CENTRAL SUPPLY TECHNICIAN

Works a majority of the time in a Central Services or Sterile Processing Department. Picks up, cleans, restocks, and distributes select medical supplies and equipment for the medical center and/or medical office building. Does not meet the requirements of Sterile Processing Technician I.

## STERILE PROCESSING TECHNICIAN I

Works a majority of the time in a Central Services or Sterile Processing Department, cleaning, preparing, assembling, sterilizing, preparing packs, instruments and trays for the medical center and/or medical office building. May also process inpatient operating room instruments. Does not meet the requirements of a Certified Sterile Processing Technician II.

## CERTIFIED STERILE PROCESSING TECHNICIAN II

Must work a majority of the time in a Central Services or Sterile Processing Department. Must also work a majority of the time cleaning, preparing, assembling and sterilizing instruments and trays for an inpatient operating room, including processing tray sets for major joint implants (e.g., hips), cardiovascular, neurosurgery and other major general surgeries.

Must maintain certification as a Central Supply Technician through either the California Central Services Association or the International Association of Hospital Central Services Management.

## SENIOR CERTIFIED STERILE PROCESSING TECHNICIAN

92

KFH 01024

Must meet all the requirements of Certified Sterile Processing Technician II. Must specifically and regularly be assigned by the Employer to direct, check, review, assign, organize, and coordinate the work of one (1) or more other Central Service Technicians or Sterile Processing Technicians. Also is responsible for the training and for reporting on the work performance of other employees as required. The Senior Technician must be capable of performing all duties within the area of responsibility.

## SR. ANESTHESIA TECHNICAL ASSISTANT

Must meet all the requirements of an Anesthesia Technical Assistant.

Must specifically ad regularly be assigned by the Employer to direct, check, review, assign, organize and coordinate the work of two (2) or more Regular Anesthesia Technical Assistants. May also oversee the work of Anesthesia Supply Aides.

Responsible for training and reporting on the work performance of other employees as required.

Must be capable of performing all duties within the area of responsibility.

## SENIOR ANESTHESIA SUPPLY AIDE

The senior level classification for Anesthesia Supply Aide shall apply only to those Anesthesia Supply Aides who are specifically and regularly assigned by the Employer to direct and check the work of one (1) or more other Anesthesia Supply Aides.

## SENIOR RESPIRATORY SUPPLY AIDE

The senior level classification for Respiratory Supply Aide shall apply only to those Respiratory Supply Aides who are specifically and regularly assigned by the Employer to direct and check the work of one (1) or more other Respiratory Supply Aides.

## SENIOR MEDICAL ASSISTANT

This classification shall apply only to a Medical Assistant who is specifically and regularly assigned by the Employer to direct, check, train, and report on the work performance of one (1) or more Medical Assistants in the area of assigned responsibility.

## VISION SERVICES ASSISTANT I

Must be a graduate of an Accredited Medical Assisting program or an in-house Kaiser Permanente Medical Assisting program, or have at least **one (1)** year (1,000 hours or more per year) of experience as a Kaiser Permanente Medical Assistant, or have **one (1)** year (1,000 hours or more per year) recent experience of assisting physicians or Optometrists in an eye care setting.

## VISION SERVICES ASSISTANT II

93

KFH 01025

Must be certified by JCAHPO as an Ophthalmic Assistant (**effective January 1, 2001), and** have **a minimum of** two (2) years (1,000 hours or more per year) recent experience in conducting objective ophthalmic testing on a regular basis, including, but not limited to, experience in several of the following procedures: visual acuity testing, non-contact or contact tonometry, visual fields testing, lensometry, testing for color deficiency and depth perception or autorefraction.

**Must be proficient in ophthalmic procedures and testing as required by the Employer.**

Must have knowledge of medical and ophthalmological terminology.

EMERGENCY DEPARTMENT TECHNICIAN II

The Emergency Department Technician II classification shall apply only to those Emergency Department Technicians who are regularly assigned to perform casting and/or Ortho Tech duties for at least thirty percent (30%) of their work time. This assignment may also include, but is not limited to, phlebotomy and EKG. (Reference Letter of Agreement dated 08/12/97.)

MONITOR TECHNICIAN

Must be responsible for continuous monitoring of patients on a centralized cardiac display module in an ICU, CCU, telemetry or stepdown care unit. Must be fully capable of detecting and differentiating abnormal cardiac rhythms as evidenced by a passing score on a cardiac monitoring/EKG test specified by the department manager. Must have successfully completed a course acceptable to the Employer in EKG interpretation. May be required to perform the duties of Unit Assistant as a minor proportion of the job.

UNIT ASSISTANT

In addition to the duties outlined in the Clerical Manual for a "Unit Assistant", the Unit Assistant may also perform a variety of other duties to include processing patient admissions and discharges including the completion of required paperwork, coordinating patient bed assignments and transfers and performs other secretarial duties for the nursing units(s).

KFH 01026

SENIN PHYSICAL THERAPY AIDE  (Performs 1. and/or 2.)

1.    Non-Patient Tasks:

    A.    May perform all duties and functions of a Physical Therapy Aide.

    B.    Check and direct:  Typically will be responsible for activities such as directing, checking, reviewing, assigning, organizing and coordinating the work of other aides within the area of assigned responsibility.  Also, the Senior Physical Therapy Aide will be responsible for certain aspects of training and orientation and for reporting on the work performance of other aides as required.

2.    Patient Tasks:   Functions only under orders, direction and immediate supervision by a Registered Physical Therapist.

    A.    Performs all duties and functions of a Physical Therapy Aide.

    B.    Performs the more complex patient care procedures requiring special training.  Has demonstrated ability to and performs a majority of time patient care procedures to include at least two of the following:  patient supervision in the performance of established exercise programs; gait training; wound care to include debridement, dressing changes and sterile whirlpool technique; PRE classes per established protocol, e.g., knee class.  (Reference Letter of Agreement dated 01/17/85.)

## CLERICAL CLASSIFICATIONS

CLERICAL CLASSIFICATIONS GRADES 1-7

Representative job duties for Clerical Classifications, Grades 1-7, are set forth in the Manual for the Evaluation of Clerical Positions.

MEDICAL SECRETARY TRAINEE

1.    Typing speed of 55 words per minute.

2.    Satisfactory completion of a medical terminology course at an accredited institution, or at the Employer's determination, that the employee has demonstrated equivalent proficiency to that obtained from an accredited institution.

3.    Satisfactory completion of an anatomy and physiology course at an accredited institution, or at the Employer's determination, that the employee has demonstrated equivalent proficiency to that obtained from an accredited institution.

4.    Demonstrated proficiency in English grammar and spelling.

MEDICAL SECRETARY

95

KFH 01027

Position requirements for employees in this classification include thorough familiarity with medical terminology plus the demonstrated ability to take medical transcription on a frequent and regularly recurring basis. These duties may be performed in a secretarial pool and/or in a medical/doctor's office. New employees to this classification on or after 10/31/82 may be required to take medical shorthand on a regular recurring basis, as required. Incumbents in this classification (formerly Medical Transcriptionists or Medical Secretaries), as of 10/30/82, may be required to take medical shorthand if they have the capability to do so.

## SENIOR MEDICAL SECRETARY

1. Must be fully proficient in all the duties of a Medical Secretary as determined by the Employer.

2. Must be specifically and regularly assigned by the Employer to direct, check, train and report on the work of four (4) or more Regular (twenty (20) hours or more) Medical Secretaries.

## MEDICAL RECORD CODER I AND II

Refer to the Manual for the Evaluation of Clerical Positions for specifications.

## SENIOR COMMUNICATION OPERATOR

This classification will apply only to a Communication Operator who is specifically and regularly assigned by the Employer to direct, check, train and report on the work performance of two (2) or more Communication Operators as required.

# TECHNICAL CLASSIFICATIONS

## CYTOTECHNOLOGIST I

This classification shall apply only to those individuals who have been certified by the American Society of Clinical Pathologists (ASCP).

## CYTOTECHNOLOGIST II

Must be certified by the ASCP and have at least eighteen (18) months experience as a Cytotechnologist I plus the demonstrated ability to perform, under minimum supervision, all routine cytology procedures including staining and screening, in accordance with specifications set by the department head.

96

KFH 01028

## CYTOTECHNOLOGIST III

Must be certified by ASCP and have at least thirty-six (36) months experience as a Cytotechnologist plus the demonstrated ability to perform, under minimal supervision, all cytology procedures in accordance with specifications set by the department head.

### CHIEF CYTOTECHNOLOGIST

All requirement set forth for the Cytotechnologist III and must direct and check the work of two (2) or more Cytotechnologists.

### SUPERVISOR CYTO/HISTO TECHNOLOGIST

All requirements set forth for the Chief Cytotechnologist plus acceptable knowledge of histopathology techniques and must direct and check the work of two (2) or more Cytotechnologists/Histologic Technicians.

### NUCLEAR MEDICINE TECHNOLOGIST I

All the following requirements must be met:

1. Must be certified by the State of California and may be registry eligible with ARRT, ASCP and/or NMTCB.

2. Must be able to perform the full scope of duties for this position as required by the Employer.

Employees who do not meet the requirements for Supervising or Nuclear Medicine Technologist II, shall be classified as a Technologist I.

### NUCLEAR MEDICINE TECHNOLOGIST II

All the following requirements must be met:

1. Must be certified by the State of California and registered by ARRT, ASCP and/or NMTCB.

2. Must have a minimum of three (3) years continuous recent experience in nuclear medicine.

3. Must demonstrate the ability to perform all procedures and processes as determined by the Employer.

4. Must have the ability to direct and check the work of other Nuclear Medicine Technologists and may be required to do so.

97

KFH 01029

## SUPERVISING NUCLEAR MEDICINE TECHNOLOGIST

Must meet all requirements of the Nuclear Medicine Technologist II and, in addition, must be specifically and regularly assigned by the Employer to direct, check, train and report on the work of three (3) or more Regular (twenty (20) hours or more) Nuclear Medicine Technologists and perform other required lead functions as determined by the Employer.

## RESPIRATORY CARE PERMITTEE

The Employer may, at its discretion, employ Respiratory Care Permittee. Such Permittee must have met all the requirements of an applicant under the Respiratory Care Act. The Permittee must take and pass the first available State examination. In no event shall Permittee remain in this classification longer than one (1) year. The Permittee shall perform as a Respiratory Care Practitioner under the direct and immediate supervision of a Licensed Respiratory Care Practitioner.

## RESPIRATORY CARE PRACTITIONER I

Must be licensed by the State of California as a Certified Respiratory Care Practitioner and must have the demonstrated ability to perform the duties required of this position as determined by the Employer.

## RESPIRATORY CARE PRACTITIONER II

All the following requirements must be met:

1.     Licensed by the State of California as a Certified Respiratory Care Practitioner.

2.     Fully proficient in all the procedures, both routine and advanced, as required by the Employer.

3.     Have at least three (3) years Regular (twenty (20) hours or more per week) recent experience as a Respiratory Care Practitioner.

## REGISTERED RESPIRATORY CARE PRACTITIONER I AND II

Respiratory Care Practitioners who meet all the requirements of a Respiratory Care Practitioner I or II, and who are registered by the National Board of Respiratory Care, shall receive a registered premium.

KFH 01030

## SUPERVISING RESPIRATORY CARE PRACTITIONER

All requirements set forth for the Respiratory Care Practitioner II, plus the need for the performance of the duties required of this position as determined and specified by the Employer. This includes directing, checking, reviewing, assigning, organizing and coordinating the work of three (3) or more Regular (twenty (20) hours or more per week) Respiratory Care Practitioners and the responsibility for training and reporting on the work performance of those assigned Practitioners.

## PHYSICAL THERAPY ASSISTANT I

Shall apply only to those individuals who: (a) possess a Certification as a Physical Therapy Assistant in the State of California; (b) have the ability to perform routine therapy as determined by the Employer, working under the supervision of a California Licensed Physical Therapist; and (c) have less than two (2) years of experience as Physical Therapy Assistant.

## PHYSICAL THERAPY ASSISTANT II

Shall apply only to those individuals who: (a) possess a Certification as a Physical Therapy Assistant in the State of California; (b) have the ability to perform routine and complex therapy as determined by the Employer, working under the supervision of a California Licensed Physical Therapist; and (c) have two (2) years or more experience as Physical Therapy Assistant.

## CERTIFIED OCCUPATIONAL THERAPIST ASSISTANT I

Certification by the American Occupational Therapy Certification Board (AOTCB). Less than two years of practical experience as a COTA and is competent in the delivery of occupational therapy treatment, under the direction of an OTR (as delineated in the AOTA Entry-Role Delineation for OTRs and COTAs).

## CERTIFIED OCCUPATIONAL THERAPIST ASSISTANT II

Certification by the American Occupational Therapy Certification Board (AOTCB). Two or more years of practical experience in a physical disabilities setting as a COTA and is competent in the delivery of occupational therapy treatment under the direction of an OTR.

## RADIOLOGIC TECHNOLOGIST I

Must possess a valid State of California Certified Radiologic Technologist license (CRT) and the ability to perform all general diagnostic and routine fluoroscopic duties as determined by the Employer. Must have completed an AMA approved course of training in Radiologic Technology. Does not meet the experience requirements of a Radiologic Technologist II.

## RADIOLOGIC TECHNOLOGIST II

KFH 01031



Must possess a valid State of California Certified Radiologic Technologist license (CRT) and have two (2) years continuous recent experience as a Radiologic Technologist and must have the ability to perform duties required of this position as determined by the Employer.

## RADIOLOGIC TECHNOLOGIST III

Must possess a valid State of California Certified Radiologic Technologist license (CRT) and have five (5) years continuous recent experience as a Radiologic Technologist and must have the ability to perform duties required of this position as determined by the Employer.

## SUPERVISING RADIOLOGIC TECHNOLOGIST

Must possess a valid State of California Certified Radiologic Technologist license (CRT) and satisfaction of Radiologic Technologist III experience requirements plus the need for performance of duties, including supervision responsibility required of this position, as determined by the Employer, which includes directing, checking, reviewing, assigning, organizing and coordinating the work of other Radiologic Technologists.

## SPECIAL PROCEDURES DIFFERENTIAL

Radiologic Technologists specifically and regularly called upon to participate in "special procedures" shall receive a ten percent (10%) differential in pay for that proportion of time spent in this activity. (The interpretation of this provision shall be consistent with Arbitrator Joseph Garbarino's full opinion and award dated 02/14/73).

## MAGNETIC RESONANCE IMAGING TECHNOLOGIST TRAINEE

The following requirements must be met:

1.    Have one (1) year continuous Regular (twenty (20) hours or more per week) recent experience as a Radiologic Technologist or Nuclear Medicine Technologist with Kaiser Permanente and be fully proficient, to the satisfaction of the department manager in all the duties required of a Radiologic Technologist or Nuclear Medicine Technologist, or,

Have two (2) years continuous Regular (twenty (20) hours or more per week) recent experience as a Radiologic Technologist or Nuclear Medicine Technologist in other hospitals and clinics and be fully proficient, to the satisfaction of the department manager in all the duties required of a Radiologic Technologist or Nuclear Medicine Technologist, and

Magnetic Resonance Imaging Technologist Trainee (continued)

2.    Have satisfactorily completed a three (3) unit semester course in cross-sectional anatomy at an accredited college or have the demonstrated equivalent knowledge as determined by the department manager.

100

KFH 01032

3.    Employees who do not fully meet the experience requirements for a MRI Technologist I, but are licensed Radiologic Technologists or have Ultrasound experience, may be classified as a MRI Technologist Trainee.

## MAGNETIC RESONANCE IMAGING TECHNOLOGIST I

The following requirements must be met:

1.    Have two (2) years continuous Regular (twenty (20) hours or more per week) recent experience performing computerized tomography (CT) and must, to the satisfaction of the department manager be fully proficient in performing all the duties of CT; or,

Have two (2) years continuous Regular (twenty (20) hours or more per week) recent experience as a Registered Ultrasound Technologist in two (2) or more modalities and must, to the satisfaction of the department manager be fully proficient in performing all the duties of an Ultrasound Technologist, or,

Have one (1) year of continuous Regular (twenty (20) hours or more per week) recent experience as a MRI Technologist and must, to the satisfaction of the department manager, be fully proficient in performing all the duties of a MRI Technologist I.

2.    Have satisfactorily completed a three (3) unit semester course in cross-sectional anatomy at an accredited college or have the demonstrated equivalent knowledge as determined by the department manager.

3.    If the above experience requirements are not met fully, classification as a MRI Technologist Trainee is appropriate.

4.    Must be able to communicate well in order to train other MRI Technologist Trainees and MRI Technologists I in MRI procedures. May be required to direct, check and train other MRI employees.

KFH 01033

## MAGNETIC RESONANCE IMAGING TECHNOLOGIST II

The following requirements must be met:

1. Have two (2) years Regular (twenty (20) hours or more per week) continuous recent experience as a MRI Technologist and be fully proficient in all the duties required of a MRI Technologist II to the satisfaction of the department manager.

2. Must have demonstrated proficiency in teaching other Technologists. May be required to direct, check and train other MRI employees.

3. Must be fully proficient in MRI to the full satisfaction of the department manager and have knowledge of the required protocols in performing complex MRI procedures.

## SUPERVISING MAGNETIC RESONANCE IMAGING TECHNOLOGIST

The following requirements must be met:

1. Have two (2) years Regular (twenty (20) hours or more per week) continuous recent experience as a MRI Technologist with Kaiser Permanente and be fully proficient in all the duties required of a MRI Technologist to the satisfaction of the department manager, or

   Have three (3) years Regular (twenty (20) hours or more per week) continuous recent experience in other hospitals and clinics as a MRI Technologist.

2. Must have demonstrated proficiency in teaching other Technologists.

3. Must be fully proficient in MRI to the full satisfaction of the department manager and have knowledge of the required protocols in performing complex MRI procedures.

4. Must be specifically and regularly assigned by the department manager to direct, check train and report on the work performance of three (3) or more Regular employees in MRI; at least two (2) of the three employees must work as MRI Technologists.

## ALLERGY TECHNICIAN TRAINEE

This classification shall apply only to those employees who, under close supervision, prepare testing and treatment trays for patients and who are being trained in the techniques of skin testing.

## ALLERGY TECHNICIAN

This classification shall apply only to those employees who, under general supervision, perform general skin testing with a wide variety of antigens and allergens.

## SENIOR ALLERGY TECHNICIAN

102

KFH 01034

This classification shall apply only to those employees in the Central Allergy Laboratory who weigh and extract antigens and allergens, concentrate, culture and filter extracts to produce serums used in treating allergy conditions. Outside the Central Allergy Laboratory, this classification shall apply only to those technicians who are specifically and regularly assigned by the Employer to direct and check the work of one (1) or more Allergy Technicians.

ASSISTANT SUPERVISOR CENTRAL ALLERGY LABORATORY

This classification shall apply only to those employees in the Central Allergy Laboratory who maintain quality control and procedural standards in the manufacture of treatment serums.

CYTOGENETIC TRAINEE

Must meet the requirements for program entry as specified by the Employer. Performs a variety of Cytogenetic Technologist duties under close supervision for a minimum six (6) month training period. Must satisfactorily complete this six month training program and demonstrate ability to perform most laboratory procedures under general supervision prior to becoming a Cytogenetic Technologist I.

CYTOGENETIC TECHNOLOGIST I

Less than eighteen (18) months recent, direct experience in a genetics laboratory not including time in training or as a trainee. Must have demonstrated ability, under general supervision, to perform most laboratory procedures required by the Employer including G and R banding and including preparing samples for analysis, performing that analysis, constructing and interpreting karyotypes.

CYTOGENETIC TECHNOLOGIST II

Must have a minimum of eighteen (18) months recent, direct experience in a genetics laboratory not including time in training or as a trainee. Must be qualified to perform most laboratory procedures and some specialized procedures, under general supervision, including the demonstrated ability to prepare biological specimens for cytogenetic analysis, to perform that analysis, and to construct and interpret karyotypes including Q, R and C banding as determined by the Employer.

103

KFH 01035

## CYTOGENETIC TECHNOLOGIST III

Must have a minimum of thirty-six (36) months recent, direct experience in a genetics laboratory not including time in training or as a trainee. Must have a minimum of six (6) months experience with The Permanente Medical Group in a genetics laboratory as a Cytogenetic Technologist. Must have the demonstrated ability to prepare biological specimens for cytogenetic analysis, to perform that analysis: and to construct and interpret karyotypes. Must have the demonstrated ability to perform and often does perform, under minimal supervision all laboratory procedures including all specialized diagnostic procedures as determined by the Employer. Must be a Certified Cytogenetic Technologist by the Association of Cytogenetic Technologists (ACTINCA).

## SENIOR CYTOGENETIC TECHNOLOGIST

Must meet all the requirements of Cytogenetic Technologist III and in addition must possess a minimum of twelve (12) months experience with The Permanente Medical Group in a genetics laboratory as a Cytogenetic Technologist. Must be specifically and regularly assigned to direct, check, coordinate, train and report on the work of two (2) or more technologists and/or be in charge of a facility training program for technologists for one (1) or more trainees. Must have the demonstrated ability/knowledge to perform the above duties and responsibilities.

## MOLECULAR (DNA) TECHNOLOGIST I

Must have a minimum of one (1) year of experience in a clinical or research molecular (DNA) laboratory, not including time on training nor time as a trainee, performing clinical molecular (DNA) diagnostic testing procedures and techniques. Must have the demonstrated ability to perform clinical molecular (DNA) diagnostic testing procedures and techniques as determined by the Employer, including preparing human and bacterial samples using genomic and plasmid DNA preparation techniques, performing restriction enzyme digestion techniques, and performing electrophoresis blotting, hybridization and sequencing techniques on DNA samples.

## MOLECULAR (DNA) TECHNOLOGIST II

Must have a minimum of two (2) years of experience in a clinical or research molecular (DNA) laboratory, not including time in training nor time as a trainee, performing clinical molecular (DNA) diagnostic testing procedures and techniques. Must have the demonstrated ability to perform clinical molecular (DNA) diagnostic testing procedures and techniques as determined by the Employer, including preparing polymerase chain reaction reagents, preparing human and bacterial samples using genomic and plasmid DNA preparation techniques, performing restriction enzyme digestion techniques, and performing electrophoresis blotting, hybridization and sequencing techniques on DNA samples.

KFH 01036

## MOLECULAR (DNA) TECHNOLOGIST III

Must have a minimum of four (4) years of experience in a clinical or research molecular (DNA) laboratory, not including time in training nor time as a trainee, performing clinical molecular (DNA) diagnostic testing procedures and techniques. Must have the demonstrated ability to perform clinical molecular (DNA) diagnostic testing procedures and techniques as determined by the Employer, including preparing polymerase chain reaction reagents, preparing human and bacterial samples using genomic and plasmid DNA preparation techniques, performing restriction enzyme digestion techniques, and performing electrophoresis blotting, hybridization and sequencing techniques on DNA samples, testing new procedures and techniques, performing complex tissue culture procedures, and constructing new recombinant DNA plasmids.

## SENIOR EKG TECHNICIAN

This classification shall apply only to an EKG Technician who is specifically and regularly assigned by the Employer to direct and check the work of one (1) or more EKG Technicians.

## EEG TECHNOLOGIST I

All of the following requirements must be met:

1.     Completion of at least six (6) months on the job training, or graduation from an approved Electroneurodiagnostic school in the operation of EEG and Evoked Potential equipment.

2.     Demonstrated ability to perform under minimum supervision the routine Electroencephalograph, Evoked Potentials and other specialized procedures in accordance with the requirements/ specifications of the Employer.

## EEG TECHNOLOGIST II

All of the following requirements must be met:

1.     Must be registered with the American Board of Registered EEC Technologists with two (2) years of satisfactory continuous recent experience as an EEC Technologist, or, has three (3) years of satisfactory continuous recent experience as and EEG Technologist.

2.     Must have the demonstrated ability to perform all of the duties required of this classification as determined by the Employer, such as Evoked Potentials, EMGs, polysomnograms, and other specialized tests.

An EEG Technologist II who is required to direct, check, train and report on the work performance of other EEG Technologists II will receive an additional fifty cents ($0.50) per hour in pay.

105

KFH 01037

## CARDIOVASCULAR TECHNICIAN

Completion of a two (2) year training program in cardiopulmonary technology or successful completion of a twelve (12) month on the job training program in a licensed catheterization laboratory.

## SENIOR CARDIOVASCULAR TECHNICIAN

Experienced Cardiovascular Technician with three (3) continuous years of experience as a Cardiovascular Technician with The Permanente Medical Group or four (4) years acceptable experience in other hospitals as Cardiovascular Technician. Demonstrated ability to perform all duties required of the position as determined by the supervisor with limited or no supervision. May be required to direct, check coordinate the work of others.

## LABORATORY ASSISTANT I

Employees who do not meet the specifications for Laboratory Assistant II will be classified at this level.

Typical duties include preparing specimens for testing, answering telephones and relaying test results, entering data, registering patients, preparing stains and reagents, cleaning and sterilizing equipment and glassware and specimen processing. The specimen processing duties include receiving, sorting, matching, prioritizing, aliquoting, labeling, and shipping specimens.

Will be required to perform all Laboratory Assistant duties that are not specifically defined as complex under Laboratory Assistant III. These duties include using computers/terminals to enter test results, patient demographics, physician's name and test requested.

May perform complex duties for a portion of time and/or as part of their training. May be required to draw blood.

## LABORATORY ASSISTANT II

Employees classified at this level must be able to perform all Laboratory Assistant I duties and must meet the following criteria:

1.    Employees whose primary responsibilities involve drawing blood and registering patients or,

2.    Employees who spend the majority of time drawing blood.

106

KFH 01038

## LABORATORY ASSISTANT III

Employees classified at this level must meet all of the following requirements:

1.  Have at least one (1) year experience as a Laboratory Assistant.

2.  Be fully proficient in all Laboratory Assistant duties in a Medical Center or in a Regional Laboratory Department.

3.  Frequently performs most complex procedures in a Medical Center or in a Regional Laboratory Department Complex procedures include blood drawing, plating and processing microbiology specimens, operating an maintaining automated and semi-automated test equipment, and problem solving, e.g., reviewing computer error lists and resolving reporting discrepancies.

4.  May be required to register patients.

## SENIOR LABORATORY ASSISTANT

Employees classified at this level must meet all of the following requirements:

1.  Be specifically assigned by the Employer to regularly direct, check, assign and coordinate the work of three (3) or more other Laboratory Assistants. Train and report on the work performance of other Laboratory Assistants.

2.  Be fully proficient in all Laboratory Assistant duties in a Medical Center or in a Regional Laboratory Department, including the complex procedures defined for a Laboratory Assistant III.

3.  Have at least one (1) year experience as a Laboratory Assistant.

## HISTOLOGIC TECH TRAINEE

At least one (1) year of college chemistry plus one (1) year experience as a Laboratory Assistant. Must demonstrate aptitude for work as Histologic Technician to the Chief of Pathology's (Employer's) satisfaction.

## HISTOLOGIC TECHNICIAN I

All requirements set forth for the Histologic Technician Trainee, plus the demonstrated ability to perform, under general supervision, all of the special stains that are used in the routine practice of pathology. This includes the preparation of all stains, solutions, and other reagents, as well as the care and maintenance of all equipment used by the Histologic Technician. Normally requires zero (0) to twenty-four (24) months of experience, including the training period.

107

KFH 01039

## HISTOLOGIC TECHNICIAN II

Demonstrated ability to perform histochemical stains and all other special procedures as required by the Chief of Pathology (Employer), including knowledge of the biochemical nature of reaction. Must be certified as a Histologic Technician or Histologic Technologist by the American Society of Clinical Pathologists or an equivalent society, as approved by the Chief of Pathology. Experience requirement normally thirty (30) months or more as a Histologic Technician.

## SUPERVISORY HISTOLOGIC TECHNICIAN

All requirements set forth for Senior Histologic Technician, plus the need for the performance of the duties required of this position, as determined and specified by the Chief of Pathology (Employer). This includes directing, checking, reviewing, assigning, organizing and coordinating the work of two (2) or more employees and the responsibility for training and reporting on the work performance of these assigned employees.

## DIAGNOSTIC ULTRASONOGRAPHER TRAINEE

1.  The applicant must be a qualified EKG Technician who has completed at least thirty (30) hours of course work in the following areas:

    A.    Cardiac anatomy and physiology
    B.    Physics of ultrasound
    C.    Theoretical aspects of M-mode, 2-D, doppler and color flow
    D.    Cardiac disease states.

2.  "Hands on" training will be provided by a qualified Echocardiographic Technologist with consultation by the Cardiologist and Laboratory Manager. The training would be conducted over six (6) months at twenty (20) hours per week. The Trainee will be expected to continue with home study on his/her own time. Home study would include a course in cross-sectional anatomy and other topics identified by the trainer and Cardiologist.

    Upon completion of the course, the Trainee will be expected to perform all aspects of Echocardiography to the satisfaction of the trainer, the Laboratory Manager and the Cardiologist.

    Under no circumstances shall a Trainee remain in this classification longer than six (6) months. In the even that the Trainee does not successfully complete the training program, or in the event that a Diagnostic Ultrasonographer I position is not available, he/she shall return to the former EKG position.

KFH 01040

## DIAGNOSTIC ULTRASONOGRAPHER I

All the following requirements must be met:

- Must have the demonstrated ability to perform all the duties of this position as required by the Employer.

## DIAGNOSTIC ULTRASONOGRAPHER II

All the following requirements must be met:

1. Must be registered with ARDMS and have at least twelve (12) months recent continuous experience in clinical ultrasound, or must have at least twenty-four (24) months continuous recent experience and be registry eligible.

2. Must be fully proficient in all the duties required of this position as determined by the Employer.

## DIAGNOSTIC ULTRASONOGRAPHER III

All the following requirements must be met:

1. Must be registered with ARDMS in three (3) or more disciplines, e.g., abdomen, OB-GYN, cardiology, ophthalmology, and have at least four (4) years recent continuous experience.

2. Must be fully proficient in all the duties required of this position as determined by the Employer. Duties may include performing both medical sonography and echocardiography, or vascular ultrasonography.

## SUPERVISORY DIAGNOSTIC ULTRASONOGRAPHER

Satisfaction of Diagnostic Ultrasonographer II requirements plus the need for the performance of duties, including supervision responsibility required of the position, as determined by the Employer, which includes directing, checking, reviewing, assigning, organizing and coordinating the work of three (3) or more Regular (twenty (20) hours or more per week) Diagnostic Ultrasonographers, and the responsibility for training and reporting on the work performance of those assigned Ultrasonographers.

## OPHTHALMIC PHOTOGRAPHER

Knowledge of normal and abnormal ocular anatomy, physiology and pathology. Knowledge of ocular medical terminology. A minimum of nine (9) months on the job training with demonstrated ability to perform all procedures satisfactorily as determined by the Employer. To be paid at the Medical Assistant rate during this nine (9) month training period; or

KFH 01041

Ophthalmic Photographer (continued)

Two (2) years continuous experience as an Ophthalmic Photographer with The Permanente Medical Group or with other hospitals or clinics, and the ability to perform duties required of this position as determined by the Chief of Ophthalmology. One (1) year experience in other hospitals or clinics and one (1) year of experience with The Permanente Medical Group will also satisfy the experience factor.

## OPHTHALMIC TECHNICIAN

This classification shall meet all the educational and skills requirements as set forth by the Employer and in addition must have the demonstrated ability to perform the following functions and does perform these activities the vast majority of time to the satisfaction of the Employer    Biometric Measurements; Visual Fields; Stereo Photo/Photography; Retinometry; Fluorescein Angiograms; Keratometry; Tonography.

In performing these activities, must perform Biometric Measurements a significant portion of the time utilizing ultrasound equipment.

Individuals must be able to perform and meet all the requirements of Ophthalmic Photographer. May be required to perform tasks of an Operating Assistant and meet those requirements as specified in the Labor Agreement. May be required to be certified as an Ophthalmic Technician by the Joint Commission on Allied Health Personnel in Ophthalmology and/or three (3) to six (6) months of minimum practical related experience with the Employer.

Candidates for this classification must be accepted and certified by both the Chief of Ophthalmology and the Director of Nursing.

## CERTIFIED OPHTHALMIC TECHNICIAN II

To qualify for this position, employees must meet all of the requirements as listed for the Ophthalmic Technician position and be a Certified Ophthalmic Technician (COT) by the JCAHPO (Joint Commission on Allied Health Personnel in Ophthalmology). In addition, the employee must have at least three (3) years of work experience (working twenty (20) or more hours per week) as an Ophthalmic Technician within the last (five) years and be fully proficient in and perform Goldman Visual Fields, Biometrics, Fluorescein Angiography and Retinal Photography a great majority of the time.

Qualified employees will be paid per the attached wage structure which will be effective May 1, 1994.

KFH 01042



## OPHTHALMIC TECHNICIAN TRAINEE

Individuals who must be trained by the Employer or who have not demonstrated their ability to perform the tasks of Ophthalmic Technician are paid and classified as Medical Assistant. Should they become fully qualified as an Ophthalmic Photographer during the course of this training, they may be reclassified to that higher classification, if they perform photographer duties a significant portion of the time.

## OUTPATIENT PHARMACY TECHNICIAN

All the following requirements must be met:

1.    Must be certified by the California Board of Pharmacy as an Outpatient Pharmacy Technician.

2.    Must have completed either the Employer's Pharmacy Technician Training Program or an equivalent outside training program, or must possess relevant experience as determined by the Employer.

3.    Must be specifically and regularly assigned by the Employer to perform the functions of an Outpatient Pharmacy Technician for a majority of the time.

111

KFH 01043



## APPENDIX D
### WAGE RATES EFFECTIVE OCTOBER 8, 2000
### STRUCTURE A/B1

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| ALLEGY LAB CENTL - ASST SUPV | 16.9201 | 17.3538 | 17.7988 | 18.2037 | 18.8174 | 19.3899 | |
| ALLERGY TECHNICIAN | 15.8507 | 16.2572 | 16.6739 | 16.9953 | 17.4553 | 17.9024 | |
| ALLERGY TECHNICIAN – TRAINEE | 15.0373 | 15.4228 | 15.8183 | 16.1111 | 16.5158 | 16.8928 | |
| ALLERGY TECHNICIAN SR | 16.4937 | 16.9166 | 17.3503 | 17.7276 | 18.2435 | 18.7460 | |
| ANESTHESIA SUPPLY AIDE | 14.3883 | 14.7570 | 15.1355 | 15.4829 | 15.8432 | 16.1647 | |
| ANESTHESIA SUPPLY AIDE SR | 14.6356 | 15.0109 | 15.3960 | 15.6792 | 16.0906 | 16.5023 | |
| ANESTHESIA TECH ASST SR | 17.0149 | 17.4513 | 17.8984 | 18.3419 | 18.8284 | 19.2716 | |
| ANESTHESIA TECH ASST | 16.6000 | 17.0257 | 17.4621 | 17.8948 | 18.3692 | 18.8015 | |
| ATHLETIC TRAINER – CERTIFIED | 18.8899 | 19.3743 | 19.8587 | 20.2559 | 20.6610 | 21.0742 | |
| BONE DENSITOMETRY TECH | 16.6895 | 17.1173 | 17.5560 | 18.0644 | 18.7962 | 19.3363 | |
| CARDIOVAS ANESTHESIA TECH | 20.4731 | 20.9981 | 21.5366 | 22.2796 | 23.3936 | 24.5071 | |
| CARDIOVASCULAR TECH | 20.8374 | 21.3719 | 21.9200 | 22.7319 | 23.9492 | 25.1673 | |
| CARDIOVAS TECHNICIAN SR | 22.3809 | 22.9548 | 23.5434 | 24.3552 | 25.5728 | 26.7906 | |
| CARE PARTNER | 14.5260 | 14.8982 | 15.2803 | 15.6311 | 15.9949 | 16.3194 | |
| CENTRAL SUPPLY TECHNICIAN | 14.3883 | 14.7570 | 15.1355 | 15.4829 | 15.8432 | 16.1647 | |
| CLERICAL GRADE 1 | 13.3469 | 13.6892 | 14.0401 | 14.2588 | 14.5550 | 14.8504 | |
| CLERICAL GRADE 2 | 13.9081 | 14.2649 | 14.6306 | 14.8754 | 15.2227 | 15.5702 | |
| CLERICAL GRADE 3 | 14.2010 | 14.5653 | 14.9388 | 15.2473 | 15.5827 | 15.9620 | |
| CLERICAL GRADE 4 | 14.4942 | 14.8658 | 15.2473 | 15.5307 | 15.9421 | 16.3536 | |
| CLERICAL GRADE 5 | 15.0778 | 15.4644 | 15.8611 | 16.1953 | 16.6587 | 17.1212 | |
| CLERICAL GRADE 6 | 15.7617 | 16.1659 | 16.5802 | 16.9660 | 17.4935 | 18.0208 | |
| CLERICAL GRADE 7 | 16.4388 | 16.8604 | 17.2926 | 17.7170 | 18.3347 | 18.9521 | |
| COMMUNICATION OPERATOR | 14.1743 | 14.5379 | 14.9106 | 15.1601 | 15.5141 | 15.7367 | 16.2741 |
| COMMUNICATION OPERATOR SR | 14.4728 | 14.8441 | 15.2247 | 15.5391 | 15.8810 | 16.1034 | 16.6666 |
| COOK A | 15.5325 | 15.9309 | 16.3394 | 16.7399 | 17.1405 | | |
| COOK IN CHARGE (SR) | 16.1999 | 16.6156 | 17.0417 | 17.4423 | 17.8427 | | |
| CT SCHEDULING ASSISTANT | 14.4942 | 14.8658 | 15.2473 | 15.5307 | 15.9421 | 16.3536 | |
| CUSTODIAN/WATCHMAN | 14.9910 | 15.3755 | 15.7699 | 16.1556 | 16.5416 | | |
| CYTOGENETIC TECH I | 26.0405 | 26.7255 | 27.4111 | 27.7738 | 28.7505 | 29.7071 | |
| CYTOGENETIC TECH II | 26.9016 | 27.6095 | 28.3175 | 28.8618 | 29.8181 | 30.8756 | |
| CYTOGENETIC TECH III | 27.8202 | 28.5524 | 29.2846 | 29.9285 | 31.0264 | 32.1042 | 33.2396 |
| CYTOGENETIC TECH SR | 29.3429 | 30.1150 | 30.8869 | 31.5309 | 32.4874 | 33.4641 | 34.6439 |
| CYTOGENETIC TRAINEE | 21.4708 | 22.3747 | | | | | |

### WAGE RATES EFFECTIVE OCTOBER 8, 2000
### STRUCTURE A/B1

KFH 01044

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| CYTO-HISTO TECHNOL – SUPV | 32.0789 | 32.9230 | 33.7666 | 35.1834 | 36.3439 | 37.0250 | |
| CYTOLOGY TECHNOL- CHIEF | 31.0276 | 31.8441 | 32.6603 | 33.3413 | 34.3527 | 35.3855 | |
| CYTOTECHNOLOGIST I | 27.5356 | 28.2599 | 28.9849 | 29.3685 | 30.4012 | 31.4127 | |
| CYTOTECHNOLOGIST II | 28.4462 | 29.1948 | 29.9434 | 30.5189 | 31.5302 | 32.6483 | |
| CYTOTECHNOLOGIST III | 29.4175 | 30.1918 | 30.9660 | 31.6469 | 32.8078 | 33.9475 | |
| DARK ROOM TECHNICIAN | 14.6016 | 14.9761 | 15.3601 | 15.6562 | 16.1964 | 16.5823 | |
| DEPARTMENT SECRETARY | 15.5882 | 15.9879 | 16.3979 | 16.7028 | 17.1451 | 17.5880 | |
| DIAG ULTRASONOGRPHR – SUPV | 31.9365 | 32.7765 | 33.6170 | 35.1314 | 36.6447 | 38.2637 | 39.6718 |
| DIAG ULTRASONOGRAPHER I | 26.3940 | 27.0884 | 27.7829 | 28.2213 | 28.8448 | 29.8376 | |
| DIAG ULTRASONOGRAPHER II | 28.2419 | 28.9850 | 29.7283 | 30.5747 | 32.0162 | 33.4581 | 34.8994 |
| DIAG ULTRASONOGRAPHER III | 29.6539 | 30.4341 | 31.2146 | 32.1035 | 33.6169 | 35.2287 | 36.6445 |
| DIAG ULTRASONOGPHR TRAINEE | 23.1833 | | | | | | |
| DRIVER FOREMAN | 22.1106 | 22.6778 | 23.2590 | 23.7051 | 24.1498 | 24.6372 | |
| EEG TECHNOLOGIST I | 17.4735 | 17.9216 | 18.3812 | 18.8780 | 19.7725 | 20.5674 | |
| EEG TECHNOLOGIST II | 18.5127 | 18.9874 | 19.4742 | 19.9708 | 20.9644 | 21.9579 | |
| EKG TECHNICIAN | 16.6895 | 17.1173 | 17.5560 | 18.0644 | 18.7962 | 19.3363 | |
| EKG TECHNICIAN SR | 17.4139 | 17.8600 | 18.3181 | 18.8709 | 19.7611 | 20.4492 | |
| EMER DEPT TECHNICIAN I | 14.6441 | 15.0198 | 15.4048 | 15.7574 | 16.1099 | 16.3967 | |
| EMER DEPT TECHNICIAN II | 17.3216 | 17.7657 | 18.2212 | 18.6727 | 19.1678 | 19.6191 | |
| EMER ROOM ASST SF ONLY | 14.4276 | 14.8072 | 15.1868 | 15.5344 | 15.8819 | 16.1649 | |
| GARAGE ATTENDANT | 13.9081 | 14.2649 | 14.6306 | 14.8754 | 15.2227 | 15.5702 | |
| GARAGE/PARKING ATTENDANT | 13.9081 | 14.2649 | 14.6306 | 14.8754 | 15.2227 | 15.5702 | |
| GARDENER | 15.3863 | 15.7810 | 16.1853 | 16.5784 | 16.9717 | | |
| GARDENER – SENIOR | 16.5857 | 17.0109 | 17.4472 | 17.8438 | 18.2373 | | |
| HISTOLOGIC TECH I | 21.6288 | 22.1980 | 22.7671 | 23.2321 | 23.5990 | 23.9088 | |
| HISTOLOGIC TECH II | 23.4043 | 24.0204 | 24.6361 | 25.2750 | 25.7001 | 25.9908 | |
| HISTOLOGIC TECH TRAINEE | 18.1027 | 18.5786 | 19.0551 | 19.3736 | 19.8260 | 20.2784 | |
| HISTOLOGIC TECHNICIAN – SUPV | 25.8966 | 26.5782 | 27.2598 | 27.9378 | 28.4796 | 28.8864 | |
| HOME HEALTH AIDE | 14.5988 | 14.9733 | 15.3573 | 15.7045 | 16.0649 | 16.3865 | |
| HOMEMAKER | 7.7622 | | | | | | |
| HOUSEKEEPING AIDE | 14.0019 | 14.3609 | 14.7289 | 15.1149 | 15.5008 | | |
| HOUSEKEEPING HEAD AIDE | 14.3684 | 14.7365 | 15.1149 | 15.5008 | 15.8866 | | |
| LABORATORY ASSISTANT I | 14.5711 | 14.9446 | 15.3282 | 15.5846 | 15.9483 | 16.3123 | |
| LABORATORY ASSISTANT II | 15.1850 | 15.5745 | 15.9739 | 16.2712 | 16.7018 | 17.1332 | |
| LABORATORY ASSISTANT III | 15.4414 | 15.8374 | 16.2434 | 16.5407 | 16.9714 | 17.4030 | |
| LABORATORY ASSISTANT SR | 15.7964 | 16.2015 | 16.6172 | 16.9672 | 17.4528 | 17.9374 | |

**WAGE RATES EFFECTIVE OCTOBER 8, 2000**
**STRUCTURE A/B1**

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| LICENSED VOC NURSE | 18.9595 | 19.4586 | 19.9574 | 20.4421 | 20.9128 | 21.3831 | 21.8538 |

113

KFH 01045

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| LICENSED VOC NURSE SR | 19.8012 | 20.3224 | 20.8434 | 21.3288 | 21.7993 | 22.2693 | 22.7398 |
| LIFT TECHNICIAN | 14.3883 | 14.7570 | 15.1355 | 15.4829 | 15.8432 | 16.1647 | |
| LINEN ROOM SUPERVISOR | 14.3684 | 14.7365 | 15.1149 | 15.5008 | 15.8866 | | |
| LITHOTRIPSY TECHNICIAN | 15.8807 | 16.2878 | 16.7055 | 17.0880 | 17.4702 | 17.7812 | |
| MEDICAL ASSISTANT | 14.6441 | 15.0198 | 15.4048 | 15.7574 | 16.1099 | 16.3967 | |
| MEDICAL ASSISTANT SR | 15.0166 | 15.4016 | 15.7967 | 16.1488 | 16.5010 | 16.7883 | |
| MEDICAL RECORD CODER I | 18.0612 | 18.5362 | 19.0115 | 19.4122 | 19.9675 | 20.5222 | |
| MEDICAL RECORD CODER II | 19.4961 | 20.0092 | 20.5222 | 20.9532 | 21.5523 | 22.1492 | |
| MEDICAL SECRETARY | 18.4994 | 18.9862 | 19.4730 | 20.0540 | 20.6822 | 21.3095 | |
| MEDICAL SECRETARY SR | 19.4240 | 19.9353 | 20.4466 | 21.0568 | 21.7166 | 22.3748 | |
| MEDICAL SECRETARY TRAINEE | 14.9103 | 15.2925 | 15.6850 | 15.9765 | 16.3998 | 16.8231 | |
| MESSENGER DRIVER | 14.1238 | 14.4862 | 14.8574 | 15.1149 | 15.3081 | | |
| MESSENGER DRIVER SR | 14.9611 | 15.3449 | 15.7383 | 15.9954 | 16.1883 | | |
| MOLECULAR TECHNOLOGIST I | 26.0405 | 26.7255 | 27.4111 | 27.7738 | 28.7505 | 29.7071 | |
| MOLECULAR TECHNOLOGIST II | 26.9016 | 27.6095 | 28.3175 | 28.8618 | 29.8181 | 30.8756 | |
| MOLECULAR TECHNOLOGIST III | 27.8202 | 28.5523 | 29.2846 | 29.9285 | 31.0264 | 32.1042 | |
| MOLECULAR TECHNOL SENIOR | 29.3429 | 30.1149 | 30.8869 | 31.5309 | 32.4874 | 33.4641 | 34.6439 |
| MOLECULAR TECHNOL TRAINEE | 21.4708 | 22.3747 | | | | | |
| MONITOR TECHNICIAN | 15.3480 | 15.7332 | 16.1283 | 16.4580 | 16.8067 | 17.2140 | |
| MRI TECHNOLOGIST I | 27.4758 | 28.0258 | 28.5861 | 29.1579 | 29.7238 | | |
| MRI TECHNOLOGIST II | 29.3710 | 29.9583 | 30.5575 | 31.1684 | 31.7920 | 32.4279 | |
| MRI TECHNOLOGIST- SUPVR | 31.2655 | 31.8911 | 32.5288 | 33.1794 | 33.8429 | 34.5198 | |
| MRI TECHNOLOGIST TRAINEE | 25.0797 | 25.5812 | 26.0925 | | | | |
| NUCLEAR MED TECH – SUPV | 29.2625 | 30.0323 | 30.8025 | 31.6971 | 32.6322 | 33.5270 | |
| NUCLEAR MEDICINE TECH I | 26.4733 | 27.1700 | 27.8668 | 28.7615 | 29.6963 | 30.5910 | |
| NUCLEAR MEDICINE TECH II | 28.0983 | 28.8377 | 29.5768 | 30.4716 | 31.4065 | 32.3018 | |
| NURSE ASSISTANT | 14.5260 | 14.8982 | 15.2803 | 15.6311 | 15.9949 | 16.3194 | |
| NURSE ASSISTANT SR | 14.6863 | 15.0630 | 15.4492 | 15.7998 | 16.1378 | 16.4879 | |
| NUTRITION AIDE | 13.8424 | 14.1976 | 14.5618 | 15.1111 | 15.4775 | | |
| NUTRITION CLERK | 14.0169 | 14.3763 | 14.7448 | 15.2943 | 15.6606 | | |
| NUTRITION CLERK – SENIOR | 14.3078 | 14.6673 | 15.0359 | 15.5853 | 15.8994 | | |
| OB TECHNICIAN | 15.3010 | 15.6932 | 16.0954 | 16.4941 | 16.9316 | 17.3301 | |
| OB TECHNICIAN SR | 15.6677 | 16.0693 | 16.4815 | 16.8804 | 17.3176 | 17.7163 | |

**WAGE RATES EFFECTIVE OCTOBER 8, 2000**
**STRUCTURE A/B1**

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| OCCUPTIONL THEP ASST I CERT | 17.7369 | 18.1918 | 18.6582 | 19.1101 | 19.6047 | 20.0561 | |
| OCCUPTIONL THEP ASST II CERT | 18.8009 | 19.2834 | 19.7776 | 20.2566 | 20.7809 | 21.2593 | |
| OPTHALMIC PHOTOGRAPHER | 19.0328 | 19.5209 | 20.0216 | 20.4923 | 22.0625 | 23.6333 | |

114

KFH 01046



| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| OPTHALMIC TECH II – CERTIFIED | 21.3320 | 21.8790 | 22.4396 | 23.6208 | 24.8022 | 25.9833 | 27.1643 |
| OPTHALMIC TECHNICIAN | 20.3159 | 20.8371 | 21.3714 | 22.4961 | 23.6212 | 24.7459 | 25.8708 |
| | | | | | | | |
| OR EQUIPMENT TECH | 17.3217 | 17.7657 | 18.2212 | 18.6727 | 19.1678 | 19.6191 | |
| OR EQUIPMENT TECH – SR | 17.7369 | 18.1917 | 18.6582 | 19.1101 | 19.6047 | 20.0561 | |
| | | | | | | | |
| ORTHOPEDIC TECH ASST SR | 14.8970 | 15.2890 | 15.6811 | 16.0467 | 16.4469 | 16.8123 | |
| ORTHOPEDIC TECHNICIAN | 17.3217 | 17.7657 | 18.2212 | 18.6727 | 19.1678 | 19.6191 | |
| ORTHOPEDIC TECHNICIAN SR | 17.7369 | 18.1917 | 18.6582 | 19.1101 | 19.6047 | 20.0561 | |
| | | | | | | | |
| PATHOLOGY TECHNCAL ASST | 16.6000 | 17.0257 | 17.4621 | 17.8948 | 18.3692 | 18.8015 | |
| PATHOLOGY TECHNCAL ASST SR | 16.9979 | 17.4336 | 17.8809 | 18.3134 | 18.7881 | 19.2205 | |
| | | | | | | | |
| PATIENT TRANSPORTATION AIDE | 13.6629 | 14.0131 | 14.3724 | 14.5911 | 14.8873 | 15.1829 | |
| | | | | | | | |
| PHARMACY INTERN | 16.3266 | 16.7453 | 17.1748 | 17.4942 | 17.9578 | 18.4215 | |
| PHARMACY TECH – OUTPATIENT | 15.9209 | 16.3290 | 16.7478 | 17.0547 | 17.5000 | 17.9456 | |
| PHARMACY TECH – INPATIENT | 16.5643 | 16.9889 | 17.4247 | 17.7439 | 18.2073 | 18.6709 | |
| | | | | | | | |
| PHYSICAL THERAPY AIDE | 13.9790 | 14.3375 | 14.7051 | 14.9496 | 15.2966 | 15.6439 | |
| PHYSICAL THERAPY AIDE SR | 14.5653 | 14.9388 | 15.3219 | 15.6047 | 16.0161 | 16.4281 | |
| PHYSICAL THERAPY ASST I | 19.2445 | 19.7381 | 20.2442 | 20.7344 | 21.2712 | 21.7608 | |
| PHYSICAL THERAPY ASST II | 20.3991 | 20.9224 | 21.4588 | 21.9784 | 22.5472 | 23.0663 | |
| PHYSICAL THERAPY TECHNICIAN | 15.3010 | 15.6932 | 16.0954 | 16.4941 | 16.9316 | 17.3301 | |
| | | | | | | | |
| PSYCHIATRIC ATTENDANT | 16.1696 | 16.5952 | 17.0205 | 17.4393 | 17.8583 | 18.2627 | |
| PSYCHIATRIC TECHNICIAN | 18.6912 | 19.1833 | 19.6749 | 20.1528 | 20.6169 | 21.0805 | 21.5446 |
| PSYCHIATRIC TECHNICIAN SR | 19.5210 | 20.0348 | 20.5485 | 21.0270 | 21.4908 | 21.9542 | 22.4180 |
| | | | | | | | |
| RADIOGRAPHIC FILM PROC TECH | 19.1906 | 19.6337 | 20.1372 | 20.6789 | 21.4182 | 22.1572 | |
| RADIOLGC FILM PROCLEADTECH | 21.0675 | 21.6079 | 22.1620 | 23.0050 | 23.5100 | 24.0634 | |
| RADIOLOGIC TECH – LIMITED | 20.9256 | 21.4761 | 22.0268 | 22.3745 | 22.8687 | | |
| RADIOLOGIC TECH I | 21.9268 | 22.5037 | 23.0807 | 23.4450 | 23.9629 | | |
| RADIOLOGIC TECH II | 23.2387 | 23.8505 | 24.4620 | 25.0160 | 25.7952 | | |
| RADIOLOGIC TECH III | 24.2509 | 24.8889 | 25.5271 | 26.2540 | 27.4918 | 28.7304 | 29.9681 |
| RADIOLOGIC TECHNOL – SUPV | 26.1175 | 26.8045 | 27.4918 | 28.7304 | 29.9681 | 31.2055 | 32.4435 |
| | | | | | | | |
| REG RESP THERAPY TECH I | 23.4042 | 24.0201 | 24.6359 | 25.1146 | 25.7127 | 26.3095 | |
| REG RESP THERAPY TECH II | 24.6544 | 25.3028 | 25.9519 | 26.5494 | 27.5066 | 28.7026 | 29.8985 |
| | | | | | | | |
| REGL LAB SUPPORT SPEC | 15.1850 | 15.5745 | 15.9739 | 16.2712 | 16.7018 | 17.1332 | |
| | | | | | | | |
| RESP CARE PRACTR – SUPV | 25.8870 | 26.5680 | 27.2496 | 27.8769 | 28.8819 | 30.1378 | 31.3932 |
| RESP CARE PRACTR I | 22.2898 | 22.8765 | 23.4630 | 23.9186 | 24.4884 | 25.0578 | 0.0000 |
| RESP CARE PRACTR II | 23.4804 | 24.0982 | 24.7161 | 25.2851 | 26.1968 | 27.3356 | 28.4747 |

**WAGE RATES EFFECTIVE OCTOBER 8, 2000**
**STRUCTURE A/B1**

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| RESPIRATORY CARE PERMITTEE | 20.0608 | | | | | | |
| | | | | | | | |
| RESPIRATORY SUPPLY AIDE | 14.3883 | 14.7570 | 15.1355 | 15.4829 | 15.8432 | 16.1647 | |
| RESPIRATORY SUPPLY AIDE SR | 14.6356 | 15.0109 | 15.3960 | 15.6792 | 16.0906 | 16.5023 | |
| | | | | | | | |
| SERVICE PARTNER | 14.0019 | 14.3609 | 14.7289 | 15.1149 | 15.5008 | | |

KFH 01047



| | | | | | |
|---|---|---|---|---|---|
| STERILE PROC TECH II – CERT | 15.5625 | 15.9612 | 16.3704 | 16.7465 | 17.1360 | 17.4839 |
| STERILE PROC TECH SR – CERT | 16.1848 | 16.5998 | 17.0251 | 17.4164 | 17.8214 | 18.1834 |
| STERILE PROCESSING TECH I | 14.9639 | 15.3474 | 15.7408 | 16.1024 | 16.4769 | 16.8113 |
| | | | | | |
| STOCK ROOM ASST REG LAB SR | 15.8463 | 16.2631 | 16.6801 | 16.9038 | 17.1276 | 17.5346 |
| STOCK RM ASST REG LAB ONLY | 14.3968 | 14.7757 | 15.1545 | 15.3578 | 15.5614 | 15.9475 |
| | | | | | |
| STOREKEEPER | 14.1608 | 14.5238 | 14.8963 | 15.2815 | 15.6679 | |
| STOREKEEPER – CHIEF | 15.8671 | 16.2740 | 16.6912 | 17.1431 | 17.5366 | |
| STOREKEEPER I | 14.4280 | 14.7979 | 15.1775 | 15.5701 | 15.9634 | |
| STOREKEEPER II | 14.6597 | 15.0357 | 15.4211 | 15.8117 | 16.3503 | |
| | | | | | |
| SURGICAL ASSISTANT – CERT | 19.5007 | 20.0008 | 20.5137 | 21.0449 | 21.6766 | 22.4076 |
| SURGICAL ASST – TRAINEE | 18.4477 | | | | | |
| SURGICAL ASST SR | 19.4182 | 19.9293 | 20.4402 | 20.9586 | 21.5750 | 22.2878 |
| SURGICAL ASST. | 19.0252 | 19.5129 | 20.0132 | 20.5317 | 21.1480 | 21.8612 |
| SURGICAL TECHNICIAN | 17.7361 | 18.1907 | 18.6572 | 19.1194 | 19.6264 | 20.0885 |
| SURGICAL TECHNICIAN SR | 18.1612 | 18.6269 | 19.1045 | 19.5673 | 20.0737 | 20.5359 |
| | | | | | |
| SURPLUS MATERLS ASST/OPER | 18.1543 | 18.6197 | 19.0972 | 19.5430 | 19.9892 | 20.4767 |
| | | | | | |
| TRUCK DRIVER | 20.9805 | 21.5181 | 22.0699 | 22.5158 | 22.9621 | 23.4495 |
| | | | | | |
| UNIT ASSISTANT | 14.9377 | 15.3207 | 15.7137 | 16.0413 | 16.3883 | 16.7934 |
| UNIT ASSISTANT SR | 15.2471 | 15.6481 | 16.0496 | 16.3482 | 16.7810 | 17.2145 |
| | | | | | |
| VISION SERVICES ASST I | 14.6441 | 15.0198 | 15.4048 | 15.7574 | 16.1099 | 16.3967 |
| VISION SERVICES ASST II | 15.1588 | 15.5476 | 15.9462 | 16.3112 | 16.6760 | 16.9730 |
| | | | | | |
| WAREHOUSE LEADPERSON | 18.5780 | 19.0546 | 19.5433 | 20.2865 | 20.7318 | 21.2198 |
| WAREHOUSE PERSON | 18.1544 | 18.6197 | 19.0972 | 19.5430 | 19.9891 | 20.4767 |
| | | | | | |
| YARDKEEPER | 14.0142 | 14.3731 | 14.7416 | 15.1277 | 15.5134 | |

KFH 01048

**WAGE RATES EFFECTIVE OCTOBER 7, 2001**
**STRUCTURE A/B1**

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| ALLEGY ASST CENT LAB SUPVR | 17.5969 | 18.0480 | 18.5108 | 18.9318 | 19.5701 | 20.1655 | |
| ALLERGY TECHNICIAN | 16.4847 | 16.9075 | 17.3409 | 17.6751 | 18.1535 | 18.6185 | |
| ALLERGY TECHNICIAN – TRAINEE | 15.6388 | 16.0397 | 16.4510 | 16.7555 | 17.1764 | 17.5685 | |
| ALLERGY TECHNICIAN SR | 17.1534 | 17.5933 | 18.0443 | 18.4367 | 18.9732 | 19.4958 | |
| ANESTHESIA SUPPLY AIDE | 14.9638 | 15.3473 | 15.7409 | 16.1022 | 16.4769 | 16.8113 | |
| ANESTHESIA SUPPLY AIDE SR | 15.2210 | 15.6113 | 16.0118 | 16.3064 | 16.7342 | 17.1624 | |
| ANESTHESIA TECH ASST SR | 17.6955 | 18.1494 | 18.6143 | 19.0756 | 19.5815 | 20.0425 | |
| ANESTHESIA TECH ASST | 17.2640 | 17.7067 | 18.1606 | 18.6106 | 19.1040 | 19.5536 | |
| ATHLETIC TRAINER – CERTIFIED | 19.6455 | 20.1493 | 20.6530 | 21.0661 | 21.4874 | 21.9172 | |
| BONE DENSITOMETRY TECH | 17.3571 | 17.8020 | 18.2582 | 18.7870 | 19.5480 | 20.1098 | |
| CARDIOVAS ANESTHESIA TECH | 21.2920 | 21.8380 | 22.3981 | 23.1708 | 24.3293 | 25.4874 | |
| CARDIOVASCULAR TECH | 21.6709 | 22.2268 | 22.7968 | 23.6412 | 24.9072 | 26.1740 | |
| CARDIOVAS TECHNICIAN SR | 23.2761 | 23.8730 | 24.4851 | 25.3294 | 26.5957 | 27.8622 | |
| CARE PARTNER | 15.1070 | 15.4941 | 15.8915 | 16.2563 | 16.6347 | 16.9722 | |
| CENTRAL SUPPLY TECHNICIAN | 14.9638 | 15.3473 | 15.7409 | 16.1022 | 16.4769 | 16.8113 | |
| CLERICAL GRADE 1 | 13.8808 | 14.2368 | 14.6017 | 14.8292 | 15.1372 | 15.4444 | |
| CLERICAL GRADE 2 | 14.4644 | 14.8355 | 15.2158 | 15.4704 | 15.8316 | 16.1930 | |
| CLERICAL GRADE 3 | 14.7690 | 15.1479 | 15.5364 | 15.8572 | 16.2060 | 16.6005 | |
| CLERICAL GRADE 4 | 15.0740 | 15.4604 | 15.8572 | 16.1519 | 16.5798 | 17.0077 | |
| CLERICAL GRADE 5 | 15.6809 | 16.0830 | 16.4955 | 16.8431 | 17.3250 | 17.8060 | |
| CLERICAL GRADE 6 | 16.3922 | 16.8125 | 17.2434 | 17.6446 | 18.1932 | 18.7416 | |
| CLERICAL GRADE 7 | 17.0964 | 17.5348 | 17.9843 | 18.4257 | 19.0681 | 19.7102 | |
| COMMUNICATION OPERATOR | 14.7413 | 15.1194 | 15.5070 | 15.7665 | 16.1347 | 16.3662 | 16.9251 |
| COMMUNICATION OPERATOR SR | 15.0517 | 15.4379 | 15.8337 | 16.1607 | 16.5162 | 16.7475 | 17.3333 |
| COOK A | 16.1538 | 16.5681 | 16.9930 | 17.4095 | 17.8261 | | |
| COOK IN CHARGE (SR) | 16.8479 | 17.2802 | 17.7234 | 18.1400 | 18.5564 | | |
| CT SCHEDULING ASSISTANT | 15.0740 | 15.4604 | 15.8572 | 16.1519 | 16.5798 | 17.0077 | |
| CUSTODIAN/WATCHMAN | 15.5906 | 15.9905 | 16.4007 | 16.8018 | 17.2033 | | |
| CYTOGENETIC TECH I | 27.0821 | 27.7945 | 28.5075 | 28.8848 | 29.9005 | 30.8954 | |
| CYTOGENETIC TECH II | 27.9777 | 28.7139 | 29.4502 | 30.0163 | 31.0108 | 32.1106 | |
| CYTOGENETIC TECH III | 28.9330 | 29.6945 | 30.4560 | 31.1256 | 32.2675 | 33.3884 | 34.5692 |
| CYTOGENETIC TECH SR | 30.5166 | 31.3196 | 32.1224 | 32.7921 | 33.7869 | 34.8027 | 36.0297 |
| CYTOGENETIC TRAINEE | 22.3296 | 23.2697 | | | | | |

**WAGE RATES EFFECTIVE OCTOBER 7, 2001**
**STRUCTURE A/B1**

117

KFH 01049

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| CYTO-HISTO TECHNOL – SUPV | 33.3621 | 34.2399 | 35.1173 | 36.5907 | 37.7977 | 38.5060 | |
| CYTOLOGY TECHNOL – CHIEF | 32.2687 | 33.1179 | 33.9667 | 34.6750 | 35.7268 | 36.8009 | |
| CYTOTECHNOLOGIST I | 28.6370 | 29.3903 | 30.1443 | 30.5432 | 31.6172 | 32.6692 | |
| CYTOTECHNOLOGIST II | 29.5840 | 30.3626 | 31.1411 | 31.7397 | 32.7914 | 33.9542 | |
| CYTOTECHNOLOGIST III | 30.5942 | 31.3995 | 32.2046 | 32.9128 | 34.1201 | 35.3054 | |
| DARK ROOM TECHNICIAN | 15.1857 | 15.5751 | 15.9745 | 16.2824 | 16.8443 | 17.2456 | |
| DEPARTMENT SECRETARY | 16.2117 | 16.6274 | 17.0538 | 17.3709 | 17.8309 | 18.2915 | |
| DIAG ULTRASONOGRPHR – SUPV | 33.2140 | 34.0876 | 34.9617 | 36.5367 | 38.1105 | 39.7942 | 41.2587 |
| DIAG ULTRASONOGRAPHER I | 27.4498 | 28.1719 | 28.8942 | 29.3502 | 29.9986 | 31.0311 | |
| DIAG ULTRASONOGRAPHER II | 29.3716 | 30.1444 | 30.9174 | 31.7977 | 33.2968 | 34.7964 | 36.2954 |
| DIAG ULTRASONOGRAPHER III | 30.8401 | 31.6515 | 32.4632 | 33.3876 | 34.9616 | 36.6378 | 38.1103 |
| DIAG ULTRASONGRPHR TRAINEE | 24.1106 | | | | | | |
| DRIVER FOREMAN | 22.9950 | 23.5849 | 24.1894 | 24.6533 | 25.1158 | 25.6227 | |
| EEG TECHNOLOGIST I | 18.1724 | 18.6385 | 19.1164 | 19.6331 | 20.5634 | 21.3901 | |
| EEG TECHNOLOGIST II | 19.2532 | 19.7469 | 20.2532 | 20.7696 | 21.8030 | 22.8362 | |
| EKG TECHNICIAN | 17.3571 | 17.8020 | 18.2582 | 18.7870 | 19.5480 | 20.1098 | |
| EKG TECHNICIAN SR | 18.1105 | 18.5744 | 19.0508 | 19.6257 | 20.5515 | 21.2672 | |
| EMERGENCY DEPT TECHNICIAN I | 15.2299 | 15.6206 | 16.0210 | 16.3877 | 16.7543 | 17.0526 | |
| EMERGENCY DEPT TECH II | 18.0145 | 18.4763 | 18.9500 | 19.4196 | 19.9345 | 20.4039 | |
| EMERGENCY RM ASST SF ONLY | 15.0047 | 15.3995 | 15.7943 | 16.1558 | 16.5172 | 16.8115 | |
| GARAGE ATTENDANT | 14.4644 | 14.8355 | 15.2158 | 15.4704 | 15.8316 | 16.1930 | |
| GARAGE/PARKING ATTENDANT | 14.4644 | 14.8355 | 15.2158 | 15.4704 | 15.8316 | 16.1930 | |
| GARDENER | 16.0018 | 16.4122 | 16.8327 | 17.2415 | 17.6506 | | |
| GARDENER – SENIOR | 17.2491 | 17.6913 | 18.1451 | 18.5576 | 18.9668 | | |
| HISTOLOGIC TECH I | 22.4940 | 23.0859 | 23.6778 | 24.1614 | 24.5430 | 24.8652 | |
| HISTOLOGIC TECH II | 24.3405 | 24.9812 | 25.6215 | 26.2860 | 26.7281 | 27.0304 | |
| HISTOLOGIC TECH TRAINEE | 18.8268 | 19.3217 | 19.8173 | 20.1485 | 20.6190 | 21.0895 | |
| HISTOLOGIC TECHNICIAN – SUPV | 26.9325 | 27.6413 | 28.3502 | 29.0553 | 29.6188 | 30.0419 | |
| HOME HEALTH AIDE | 15.1828 | 15.5722 | 15.9716 | 16.3327 | 16.7075 | 17.0420 | |
| HOMEMAKER | 8.0727 | | | | | | |
| HOUSEKEEPING HEAD AIDE | 14.9431 | 15.3260 | 15.7195 | 16.1208 | 16.5221 | | |
| HOUSEKEEPING AIDE | 14.5620 | 14.9353 | 15.3181 | 15.7195 | 16.1208 | | |
| LABORATORY ASSISTANT I | 15.1539 | 15.5424 | 15.9413 | 16.2080 | 16.5862 | 16.9648 | |
| LABORATORY ASSISTANT II | 15.7924 | 16.1975 | 16.6129 | 16.9220 | 17.3699 | 17.8185 | |
| LABORATORY ASSISTANT III | 16.0591 | 16.4709 | 16.8931 | 17.2023 | 17.6503 | 18.0991 | |
| LABORATORY ASSISTANT SR | 16.4283 | 16.8496 | 17.2819 | 17.6459 | 18.1509 | 18.6549 | |

**WAGE RATES EFFECTIVE OCTOBER 7, 2001**
**STRUCTURE A/B1**

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| LICENSED VOCATIONAL NURSE | 19.7179 | 20.2369 | 20.7557 | 21.2598 | 21.7493 | 22.2384 | 22.7280 |

KFH 01050

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| LICENSED VOC NURSE SR | 20.5932 | 21.1353 | 21.6771 | 22.1820 | 22.6713 | 23.1601 | 23.6494 |
| LIFT TECHNICIAN | 14.9638 | 15.3473 | 15.7409 | 16.1022 | 16.4769 | 16.8113 | |
| LINEN ROOM SUPERVISOR | 14.9431 | 15.3260 | 15.7195 | 16.1208 | 16.5221 | | |
| LITHOTRIPSY TECHNICIAN | 16.5159 | 16.9393 | 17.3737 | 17.7715 | 18.1690 | 18.4924 | |
| MEDICAL ASSISTANT | 15.2299 | 15.6206 | 16.0210 | 16.3877 | 16.7543 | 17.0526 | |
| MEDICAL ASSISTANT SENIOR | 15.6173 | 16.0177 | 16.4286 | 16.7948 | 17.1610 | 17.4598 | |
| MEDICAL RECORD CODER I | 18.7836 | 19.2776 | 19.7720 | 20.1887 | 20.7662 | 21.3431 | |
| MEDICAL RECORD CODER II | 20.2759 | 20.8096 | 21.3431 | 21.7913 | 22.4144 | 23.0352 | |
| MEDICAL SECRETARY | 19.2394 | 19.7456 | 20.2519 | 20.8562 | 21.5095 | 22.1619 | |
| MEDICAL SECRETARY SR | 20.2010 | 20.7327 | 21.2645 | 21.8991 | 22.5853 | 23.2698 | |
| MEDICAL SECRETARY TRAINEE | 15.5067 | 15.9042 | 16.3124 | 16.6156 | 17.0558 | 17.4960 | |
| MESSENGER DRIVER | 14.6888 | 15.0656 | 15.4517 | 15.7195 | 15.9204 | | |
| MESSENGER DRIVER SR | 15.5595 | 15.9587 | 16.3678 | 16.6352 | 16.8358 | | |
| MOLECULAR TECHNOL- SR | 30.5166 | 31.3195 | 32.1224 | 32.7921 | 33.7869 | 34.8027 | 36.0297 |
| MOLECULAR TECHNOLOGIST I | 27.0821 | 27.7945 | 28.5075 | 28.8848 | 29.9005 | 30.8954 | |
| MOLECULAR TECHNOLOGIST II | 27.9777 | 28.7139 | 29.4502 | 30.0163 | 31.0108 | 32.1106 | |
| MOLECULAR TECHNOLOGIST III | 28.9330 | 29.6944 | 30.4560 | 31.1256 | 32.2675 | 33.3884 | |
| MOLECULAR TECHNOL TRAINEE | 22.3296 | 23.2697 | | | | | |
| MONITOR TECHNICIAN | 15.9619 | 16.3625 | 16.7734 | 17.1163 | 17.4790 | 17.9026 | |
| MRI TECHNOLOGIST - SUPV | 32.5161 | 33.1667 | 33.8300 | 34.5066 | 35.1966 | 35.9006 | |
| MRI TECHNOLOGIST I | 28.5748 | 29.1468 | 29.7295 | 30.3242 | 30.9128 | | |
| MRI TECHNOLOGIST II | 30.5458 | 31.1566 | 31.7798 | 32.4151 | 33.0637 | 33.7250 | |
| MRI TECHNOLOGIST TRAINEE | 26.0829 | 26.6044 | 27.1362 | | | | |
| NUCLEAR MED TECH - SUPV | 30.4330 | 31.2336 | 32.0346 | 32.9650 | 33.9375 | 34.8681 | |
| NUCLEAR MEDICINE TECH I | 27.5322 | 28.2568 | 28.9815 | 29.9120 | 30.8842 | 31.8146 | |
| NUCLEAR MEDICINE TECH II | 29.2222 | 29.9912 | 30.7599 | 31.6905 | 32.6628 | 33.5939 | |
| NURSE ASSISTANT | 15.1070 | 15.4941 | 15.8915 | 16.2563 | 16.6347 | 16.9722 | |
| NURSE ASSISTANT SR | 15.2738 | 15.6655 | 16.0672 | 16.4318 | 16.7833 | 17.1474 | |
| NUTRITION AIDE | 14.3961 | 14.7655 | 15.1443 | 15.7155 | 16.0966 | | |
| NUTRITION CLERK | 14.5776 | 14.9514 | 15.3346 | 15.9061 | 16.2870 | | |
| NUTRITION CLERK SR | 14.8801 | 15.2540 | 15.6373 | 16.2087 | 16.5354 | | |
| OB TECHNICIAN | 15.9130 | 16.3209 | 16.7392 | 17.1539 | 17.6089 | 18.0233 | |
| OB TECHNICIAN SR | 16.2944 | 16.7121 | 17.1408 | 17.5556 | 18.0103 | 18.4250 | |

**WAGE RATES EFFECTIVE OCTOBER 7, 2001**
**STRUCTURE A/B1**

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| OCCUPTIONL THEP ASST I CERT | 18.4464 | 18.9195 | 19.4045 | 19.8745 | 20.3889 | 20.8583 | |
| OCCUPTIONL THEP ASST II CERT | 19.5529 | 20.0547 | 20.5687 | 21.0669 | 21.6121 | 22.1097 | |
| OPTHALMIC PHOTOGRAPHER | 19.7941 | 20.3017 | 20.8225 | 21.3120 | 22.9450 | 24.5786 | |

119

KFH 01051



| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| OPTHALMIC TECH II – CERT | 22.1853 | 22.7542 | 23.3372 | 24.5656 | 25.7943 | 27.0226 | 28.2509 |
| OPTHALMIC TECHNICIAN | 21.1285 | 21.6706 | 22.2263 | 23.3959 | 24.5660 | 25.7357 | 26.9056 |
| OR EQUIPMENT TECH | 18.0146 | 18.4763 | 18.9500 | 19.4196 | 19.9345 | 20.4039 | |
| OR EQUIPMENT TECH SR | 18.4464 | 18.9194 | 19.4045 | 19.8745 | 20.3889 | 20.8583 | |
| ORTHOPEDIC TECH ASST SR | 15.4929 | 15.9006 | 16.3083 | 16.6886 | 17.1048 | 17.4848 | |
| ORTHOPEDIC TECHNICIAN | 18.0146 | 18.4763 | 18.9500 | 19.4196 | 19.9345 | 20.4039 | |
| ORTHOPEDIC TECHNICIAN SR | 18.4464 | 18.9194 | 19.4045 | 19.8745 | 20.3889 | 20.8583 | |
| PATHOLOGY TECH ASST | 17.2640 | 17.7067 | 18.1606 | 18.6106 | 19.1040 | 19.5536 | |
| PATHOLOGY TECH ASST SR | 17.6778 | 18.1309 | 18.5961 | 19.0459 | 19.5396 | 19.9893 | |
| PATIENT TRANSPORTATION AIDE | 14.2094 | 14.5736 | 14.9473 | 15.1747 | 15.4828 | 15.7902 | |
| PHARMACY INTERN | 16.9797 | 17.4151 | 17.8618 | 18.1940 | 18.6761 | 19.1584 | |
| PHARMACY TECH - OUTPATIENT | 16.5577 | 16.9822 | 17.4177 | 17.7369 | 18.2000 | 18.6634 | |
| PHARMACY TECH – INPATIENT | 17.2269 | 17.6685 | 18.1217 | 18.4537 | 18.9356 | 19.4177 | |
| PHYSICAL THERAPY AIDE | 14.5382 | 14.9110 | 15.2933 | 15.5476 | 15.9085 | 16.2697 | |
| PHYSICAL THERAPY AIDE – SR | 15.1479 | 15.5364 | 15.9348 | 16.2289 | 16.6567 | 17.0852 | |
| PHYSICAL THERAPY ASST I | 20.0143 | 20.5276 | 21.0540 | 21.5638 | 22.1220 | 22.6312 | |
| PHYSICAL THERAPY ASST II | 21.2151 | 21.7593 | 22.3172 | 22.8575 | 23.4491 | 23.9890 | |
| PHYSICAL THERAPY TECHNICIAN | 15.9130 | 16.3209 | 16.7392 | 17.1539 | 17.6089 | 18.0233 | |
| PSYCHIATRIC ATTENDANT | 16.8164 | 17.2590 | 17.7013 | 18.1369 | 18.5726 | 18.9932 | |
| PSYCHIATRIC TECHNICIAN | 19.4388 | 19.9506 | 20.4619 | 20.9589 | 21.4416 | 21.9237 | 22.4064 |
| PSYCHIATRIC TECHNICIAN SR | 20.3018 | 20.8362 | 21.3704 | 21.8681 | 22.3504 | 22.8324 | 23.3147 |
| RADIOGRPHC FILM PROC TECH | 19.9582 | 20.4190 | 20.9427 | 21.5061 | 22.2749 | 23.0435 | |
| RADIOLGC FILM PROCLEADTECH | 21.9102 | 22.4722 | 23.0485 | 23.9252 | 24.4504 | 25.0259 | |
| RADIOLOGIC TECH – LIMITED | 21.7626 | 22.3351 | 22.9079 | 23.2695 | 23.7834 | | |
| RADIOLOGIC TECH I | 22.8039 | 23.4038 | 24.0039 | 24.3828 | 24.9214 | | |
| RADIOLOGIC TECH II | 24.1682 | 24.8045 | 25.4405 | 26.0166 | 26.8270 | | |
| RADIOLOGIC TECH III | 25.2209 | 25.8845 | 26.5482 | 27.3042 | 28.5915 | 29.8796 | 31.1668 |
| RADIOLGC TECHNOL – SUPV | 27.1622 | 27.8767 | 28.5915 | 29.8796 | 31.1668 | 32.4537 | 33.7412 |
| REG RESPIRATORY THER TECH I | 24.3404 | 24.9809 | 25.6213 | 26.1192 | 26.7412 | 27.3619 | |
| REG RESPIRATORY THER TECH II | 25.6406 | 26.3149 | 26.9900 | 27.6114 | 28.6069 | 29.8507 | 31.0944 |
| REGL LAB SUPPORT SPEC | 15.7924 | 16.1975 | 16.6129 | 16.9220 | 17.3699 | 17.8185 | |

### WAGE RATES EFFECTIVE OCTOBER 7, 2001
### STRUCTURE A/B1

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| RESP CARE PRACTR – SUPV | 26.9225 | 27.6307 | 28.3396 | 28.9920 | 30.0372 | 31.3433 | 32.6489 |
| RESP CARE PRACTITIONER I | 23.1814 | 23.7916 | 24.4015 | 24.8753 | 25.4679 | 26.0601 | |
| RESP CARE PRACTITIONER II | 24.4196 | 25.0621 | 25.7047 | 26.2965 | 27.2447 | 28.4290 | 29.6137 |
| RESPIRATORY CARE PERMITTEE | 20.8632 | | | | | | |
| RESPIRATORY SUPPLY AIDE | 14.9638 | 15.3473 | 15.7409 | 16.1022 | 16.4769 | 16.8113 | |
| RESPIRATORY SUPPLY AIDE SR | 15.2210 | 15.6113 | 16.0118 | 16.3064 | 16.7342 | 17.1624 | |

KFH 01052

| | | | | | | |
|---|---|---|---|---|---|---|
| SERVICE PARTNER | 14.5620 | 14.9353 | 15.3181 | 15.7195 | 16.1208 | |
| STERILE PROC TECH - SR - CERT | 16.8322 | 17.2638 | 17.7061 | 18.1131 | 18.5343 | 18.9107 |
| STERILE PROC TECH II – CERT | 16.1850 | 16.5996 | 17.0252 | 17.4164 | 17.8214 | 18.1833 |
| STERILE PROCESSING TECH I | 15.5625 | 15.9613 | 16.3704 | 16.7465 | 17.1360 | 17.4838 |
| STOCK ROOM ASST REG LAB SR | 16.4802 | 16.9136 | 17.3473 | 17.5800 | 17.8127 | 18.2360 |
| STOCK RM ASST REG. LAB ONLY | 14.9727 | 15.3667 | 15.7607 | 15.9721 | 16.1839 | 16.5854 |
| STOREKEEPER | 14.7272 | 15.1048 | 15.4922 | 15.8928 | 16.2946 | |
| STOREKEEPER – CHIEF | 16.5018 | 16.9250 | 17.3588 | 17.8288 | 18.2381 | |
| STOREKEEPER I | 15.0051 | 15.3898 | 15.7846 | 16.1929 | 16.6019 | |
| STOREKEEPER II | 15.2461 | 15.6371 | 16.0379 | 16.4442 | 17.0043 | |
| SURGICAL ASSIST – CERTIFIED | 20.2807 | 20.8008 | 21.3342 | 21.8867 | 22.5437 | 23.3039 |
| SURGICAL ASST – TRAINEE | 19.1856 | | | | | |
| SURGICAL ASST SR | 20.1949 | 20.7265 | 21.2578 | 21.7969 | 22.4380 | 23.1793 |
| SURGICAL ASST. | 19.7862 | 20.2934 | 20.8137 | 21.3530 | 21.9939 | 22.7356 |
| SURGICAL TECHNICIAN | 18.4455 | 18.9183 | 19.4035 | 19.8842 | 20.4115 | 20.8920 |
| SURGICAL TECHNICIAN SR | 18.8876 | 19.3720 | 19.8687 | 20.3500 | 20.8766 | 21.3573 |
| SURPLUS MATRLS ASST/OPER | 18.8805 | 19.3645 | 19.8611 | 20.3247 | 20.7888 | 21.2958 |
| TRUCK DRIVER | 21.8197 | 22.3788 | 22.9527 | 23.4164 | 23.8806 | 24.3875 |
| UNIT ASSISTANT | 15.5352 | 15.9335 | 16.3422 | 16.6830 | 17.0438 | 17.4651 |
| UNIT ASSISTANT SR | 15.8570 | 16.2740 | 16.6916 | 17.0021 | 17.4522 | 17.9031 |
| VISION SERVICES ASST I | 15.2299 | 15.6206 | 16.0210 | 16.3877 | 16.7543 | 17.0526 |
| VISION SERVICES ASST II | 15.7652 | 16.1695 | 16.5840 | 16.9636 | 17.3430 | 17.6519 |
| WAREHOUSE LEADPERSON | 19.3211 | 19.8168 | 20.3250 | 21.0980 | 21.5611 | 22.0686 |
| WAREHOUSE PERSON | 18.8806 | 19.3645 | 19.8611 | 20.3247 | 20.7887 | 21.2958 |
| YARDKEEPER | 14.5748 | 14.9480 | 15.3313 | 15.7328 | 16.1339 | |

121

KFH 01053

**WAGE RATES EFFECTIVE OCTOBER 6, 2002**
**STRUCTURE A/B1**

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| ALLRGY CENTRL ASST LAB SUPR | 18.3008 | 18.7699 | 19.2512 | 19.6891 | 20.3529 | 20.9721 | |
| ALLERGY TECHNICIAN | 17.1441 | 17.5838 | 18.0345 | 18.3821 | 18.8796 | 19.3632 | |
| ALLERGY TECHNICIAN SR | 17.8395 | 18.2970 | 18.7661 | 19.1742 | 19.7321 | 20.2756 | |
| ALLERGY TECHNICIAN TRAINEE | 16.2644 | 16.6813 | 17.1090 | 17.4257 | 17.8635 | 18.2712 | |
| ANESTHESIA SUPPLY AIDE | 15.5624 | 15.9612 | 16.3705 | 16.7463 | 17.1360 | 17.4838 | |
| ANESTHESIA SUPPLY AIDE SR | 15.8298 | 16.2358 | 16.6523 | 16.9587 | 17.4036 | 17.8489 | |
| ANESTHESIA TECH ASST SR | 18.4033 | 18.8754 | 19.3589 | 19.8386 | 20.3648 | 20.8442 | |
| ANESTHESIA TECH ASST | 17.9546 | 18.4150 | 18.8870 | 19.3550 | 19.8682 | 20.3357 | |
| ATHLETIC TRAINER CERT | 20.4313 | 20.9553 | 21.4791 | 21.9087 | 22.3469 | 22.7939 | |
| BONE DENSITOMETRY TECH | 18.0514 | 18.5141 | 18.9885 | 19.5385 | 20.3299 | 20.9142 | |
| CARDIOVAS ANESTHESIA TECH | 22.1437 | 22.7115 | 23.2940 | 24.0976 | 25.3025 | 26.5069 | |
| CARDIOVASCULAR TECH | 22.5377 | 23.1159 | 23.7087 | 24.5868 | 25.9035 | 27.2210 | |
| CARDIOVAS TECHNICIAN SR | 24.2071 | 24.8279 | 25.4645 | 26.3426 | 27.6595 | 28.9767 | |
| CARE PARTNER | 15.7113 | 16.1139 | 16.5272 | 16.9066 | 17.3001 | 17.6511 | |
| CENTRAL SUPPLY TECHNICIAN | 15.5624 | 15.9612 | 16.3705 | 16.7463 | 17.1360 | 17.4838 | |
| CLERICAL GRADE 1 | 14.4360 | 14.8063 | 15.1858 | 15.4224 | 15.7427 | 16.0622 | |
| CLERICAL GRADE 2 | 15.0430 | 15.4289 | 15.8244 | 16.0892 | 16.4649 | 16.8407 | |
| CLERICAL GRADE 3 | 15.3598 | 15.7538 | 16.1579 | 16.4915 | 16.8542 | 17.2645 | |
| CLERICAL GRADE 4 | 15.6770 | 16.0788 | 16.4915 | 16.7980 | 17.2430 | 17.6880 | |
| CLERICAL GRADE 5 | 16.3081 | 16.7263 | 17.1553 | 17.5168 | 18.0180 | 18.5182 | |
| CLERICAL GRADE 6 | 17.0479 | 17.4850 | 17.9331 | 18.3504 | 18.9209 | 19.4913 | |
| CLERICAL GRADE 7 | 17.7803 | 18.2362 | 18.7037 | 19.1627 | 19.8308 | 20.4986 | |
| COMMUNICATION OPERATOR | 15.3310 | 15.7242 | 16.1273 | 16.3972 | 16.7801 | 17.0208 | 17.6021 |
| COMMUNICATION OPERATOR SR | 15.6538 | 16.0554 | 16.4670 | 16.8071 | 17.1768 | 17.4174 | 18.0266 |
| COOK A | 16.8000 | 17.2308 | 17.6727 | 18.1059 | 18.5391 | | |
| COOK IN CHARGE (SR) | 17.5218 | 17.9714 | 18.4323 | 18.8656 | 19.2987 | | |
| CT SCHEDULING ASSISTANT | 15.6770 | 16.0788 | 16.4915 | 16.7980 | 17.2430 | 17.6880 | |
| CUSTODIAN/WATCHMAN | 16.2142 | 16.6301 | 17.0567 | 17.4739 | 17.8914 | | |
| CYTOGENETIC TECH I | 28.1654 | 28.9063 | 29.6478 | 30.0402 | 31.0965 | 32.1312 | |
| CYTOGENETIC TECH II | 29.0968 | 29.8625 | 30.6282 | 31.2170 | 32.2512 | 33.3950 | |
| CYTOGENETIC TECH III | 30.0903 | 30.8823 | 31.6742 | 32.3706 | 33.5582 | 34.7239 | 35.9520 |
| CYTOGENETIC TECH SR | 31.7373 | 32.5724 | 33.4073 | 34.1038 | 35.1384 | 36.1948 | 37.4709 |
| CYTOGENETIC TRAINEE | 23.2228 | 24.2005 | | | | | |

**WAGE RATES EFFECTIVE OCTOBER 6, 2002**
**STRUCTURE A/B1**

KFH 01054

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| CYTO-HISTO TECHNOL – SUPV | 34.6966 | 35.6095 | 36.5220 | 38.0543 | 39.3096 | 40.0462 | |
| CYTOLOGY TECHNOL - CHIEF | 33.5594 | 34.4426 | 35.3254 | 36.0620 | 37.1559 | 38.2729 | |
| CYTOTECHNOLOGIST I | 29.7825 | 30.5659 | 31.3501 | 31.7649 | 32.8819 | 33.9760 | |
| CYTOTECHNOLOGIST II | 30.7674 | 31.5771 | 32.3867 | 33.0093 | 34.1031 | 35.3124 | |
| CYTOTECHNOLOGIST III | 31.8180 | 32.6555 | 33.4928 | 34.2293 | 35.4849 | 36.7176 | |
| DARK ROOM TECHNICIAN | 15.7931 | 16.1981 | 16.6135 | 16.9337 | 17.5181 | 17.9354 | |
| DEPARTMENT SECRETARY | 16.8602 | 17.2925 | 17.7360 | 18.0657 | 18.5441 | 19.0232 | |
| DIAG ULTRASONOGRAPHER I | 28.5478 | 29.2988 | 30.0500 | 30.5242 | 31.1985 | 32.2723 | |
| DIAG ULTRASONOGRAPHER II | 30.5465 | 31.3502 | 32.1541 | 33.0696 | 34.6287 | 36.1883 | 37.7472 |
| DIAG ULTRASONOGRAPHER III | 32.0737 | 32.9176 | 33.7617 | 34.7231 | 36.3601 | 38.1033 | 39.6347 |
| DIAG ULTRASONGRAPHER SUPV | 34.5426 | 35.4511 | 36.3602 | 37.9982 | 39.6349 | 41.3860 | 42.9090 |
| DIAG ULTRASONGRPHR TRAINEE | 25.0750 | | | | | | |
| DRIVER FOREMAN | 23.9148 | 24.5283 | 25.1570 | 25.6394 | 26.1204 | 26.6476 | |
| EEG TECHNOLOGIST I | 18.8993 | 19.3840 | 19.8811 | 20.4184 | 21.3859 | 22.2457 | |
| EEG TECHNOLOGIST II | 20.0233 | 20.5368 | 21.0633 | 21.6004 | 22.6751 | 23.7496 | |
| EKG TECHNICIAN | 18.0514 | 18.5141 | 18.9885 | 19.5385 | 20.3299 | 20.9142 | |
| EKG TECHNICIAN SR | 18.8349 | 19.3174 | 19.8128 | 20.4107 | 21.3736 | 22.1179 | |
| EMERGENCY DEPT TECH I | 15.8391 | 16.2454 | 16.6618 | 17.0432 | 17.4245 | 17.7347 | |
| EMERGENCY DEPT TECH II | 18.7351 | 19.2154 | 19.7080 | 20.1964 | 20.7319 | 21.2201 | |
| EMERGENCY RM ASST SF ONLY | 15.6049 | 16.0155 | 16.4261 | 16.8020 | 17.1779 | 17.4840 | |
| GARAGE ATTENDANT | 15.0430 | 15.4289 | 15.8244 | 16.0892 | 16.4649 | 16.8407 | |
| GARAGE/PARKING ATTENDANT | 15.0430 | 15.4289 | 15.8244 | 16.0892 | 16.4649 | 16.8407 | |
| GARDENER | 16.6419 | 17.0687 | 17.5060 | 17.9312 | 18.3566 | 0.0000 | |
| GARDENER SR | 17.9391 | 18.3990 | 18.8709 | 19.2999 | 19.7255 | 0.0000 | |
| HISTOLOGIC TECH I | 23.3938 | 24.0093 | 24.6249 | 25.1279 | 25.5247 | 25.8598 | |
| HISTOLOGIC TECH II | 25.3141 | 25.9804 | 26.6464 | 27.3374 | 27.7972 | 28.1116 | |
| HISTOLOGIC TECH TRAINEE | 19.5799 | 20.0946 | 20.6100 | 20.9544 | 21.4438 | 21.9331 | |
| HISTOLOGIC TECHNICIAN - SUPV | 28.0098 | 28.7470 | 29.4842 | 30.2175 | 30.8036 | 31.2436 | |
| HOME HEALTH AIDE | 15.7901 | 16.1951 | 16.6105 | 16.9860 | 17.3758 | 17.7237 | |
| HOMEMAKER | 8.3956 | | | | | | |
| HOUSEKEEPING AIDE | 15.1445 | 15.5327 | 15.9308 | 16.3483 | 16.7656 | | |
| HOUSEKEEPING HEAD AIDE | 15.5408 | 15.9390 | 16.3483 | 16.7656 | 17.1830 | | |
| LABORATORY ASSISTANT I | 15.7601 | 16.1641 | 16.5790 | 16.8563 | 17.2496 | 17.6434 | |
| LABORATORY ASSISTANT II | 16.4241 | 16.8454 | 17.2774 | 17.5989 | 18.0647 | 18.5312 | |
| LABORATORY ASSISTANT III | 16.7015 | 17.1297 | 17.5688 | 17.8904 | 18.3563 | 18.8231 | |
| LABORATORY ASSISTANT SR | 17.0854 | 17.5236 | 17.9732 | 18.3517 | 18.8769 | 19.4011 | |

**WAGE RATES EFFECTIVE OCTOBER 6, 2002**
**STRUCTURE A/B1**

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| LICENSED VOC NURSE | 20.5066 | 21.0464 | 21.5859 | 22.1102 | 22.6193 | 23.1279 | 23.6371 |

123

KFH 01055



| Job Title | | | | | | | |
|---|---|---|---|---|---|---|---|
| LICENSED VOC NURSE SR | 21.4169 | 21.9807 | 22.5442 | 23.0693 | 23.5782 | 24.0865 | 24.5954 |
| LIFT TECHNICIAN | 15.5624 | 15.9612 | 16.3705 | 16.7463 | 17.1360 | 17.4838 | |
| LINEN ROOM SUPERVISOR | 15.5408 | 15.9390 | 16.3483 | 16.7656 | 17.1830 | | |
| LITHOTRIPSY TECHNICIAN | 17.1765 | 17.6169 | 18.0686 | 18.4824 | 18.8958 | 19.2321 | |
| MEDICAL ASSISTANT | 15.8391 | 16.2454 | 16.6618 | 17.0432 | 17.4245 | 17.7347 | |
| MEDICAL ASSISTANT SR | 16.2420 | 16.6584 | 17.0857 | 17.4666 | 17.8474 | 18.1582 | |
| MEDICAL RECORD CODER I | 19.5349 | 20.0487 | 20.5629 | 20.9962 | 21.5968 | 22.1968 | |
| MEDICAL RECORD CODER II | 21.0869 | 21.6420 | 22.1968 | 22.6630 | 23.3110 | 23.9566 | |
| MEDICAL SECRETARY | 20.0090 | 20.5354 | 21.0620 | 21.6904 | 22.3699 | 23.0484 | |
| MEDICAL SECRETARY SR | 21.0090 | 21.5620 | 22.1151 | 22.7751 | 23.4887 | 24.2006 | |
| MEDICAL SECRETARY TRAINEE | 16.1270 | 16.5404 | 16.9649 | 17.2802 | 17.7380 | 18.1958 | |
| MESSENGER DRIVER | 15.2764 | 15.6682 | 16.0698 | 16.3483 | 16.5572 | 0.0000 | |
| MESSENGER DRIVER SR | 16.1819 | 16.5970 | 17.0225 | 17.3006 | 17.5092 | 0.0000 | |
| MOLECULAR TECHNOLOGIST I | 28.1654 | 28.9063 | 29.6478 | 30.0402 | 31.0965 | 32.1312 | |
| MOLECULAR TECHNOLOGIST II | 29.0968 | 29.8625 | 30.6282 | 31.2170 | 32.2512 | 33.3950 | |
| MOLECULAR TECHNOLOGIST III | 30.0903 | 30.8822 | 31.6742 | 32.3706 | 33.5582 | 34.7239 | |
| MOLECULAR TECHNOLOGIST SR | 31.7373 | 32.5723 | 33.4073 | 34.1038 | 35.1384 | 36.1948 | 37.4709 |
| MOLECULAR TECHNOL TRAINEE | 23.2228 | 24.2005 | | | | | |
| MONITOR TECHNICIAN | 16.6004 | 17.0170 | 17.4443 | 17.8010 | 18.1782 | 18.6187 | |
| MRI TECHNOLOGIST - SUPV | 33.8167 | 34.4934 | 35.1832 | 35.8869 | 36.6045 | 37.3366 | |
| MRI TECHNOLOGIST I | 29.7178 | 30.3127 | 30.9187 | 31.5372 | 32.1493 | 0.0000 | |
| MRI TECHNOLOGIST II | 31.7676 | 32.4029 | 33.0510 | 33.7117 | 34.3862 | 35.0740 | |
| MRI TECHNOLOGIST TRAINEE | 27.1262 | 27.6686 | 28.2216 | 0.0000 | 0.0000 | 0.0000 | |
| NUCLEAR MED TECH - SUPV | 31.6503 | 32.4829 | 33.3160 | 34.2836 | 35.2950 | 36.2628 | |
| NUCLEAR MEDICINE TECH I | 28.6335 | 29.3871 | 30.1408 | 31.1085 | 32.1196 | 33.0872 | |
| NUCLEAR MEDICINE TECH II | 30.3911 | 31.1908 | 31.9903 | 32.9581 | 33.9693 | 34.9377 | |
| NURSE ASSISTANT | 15.7113 | 16.1139 | 16.5272 | 16.9066 | 17.3001 | 17.6511 | |
| NURSE ASSISTANT SR | 15.8848 | 16.2921 | 16.7099 | 17.0891 | 17.4546 | 17.8333 | |
| NUTRITION AIDE | 14.9719 | 15.3561 | 15.7501 | 16.3441 | 16.7405 | | |
| NUTRITION CLERK | 15.1607 | 15.5495 | 15.9480 | 16.5423 | 16.9385 | 0.0000 | |
| NUTRITION CLERK SENIOR | 15.4753 | 15.8642 | 16.2628 | 16.8570 | 17.1968 | 0.0000 | |
| OB TECHNICIAN | 16.5495 | 16.9737 | 17.4088 | 17.8401 | 18.3133 | 18.7442 | |
| OB TECHNICIAN SR | 16.9462 | 17.3806 | 17.8264 | 18.2578 | 18.7307 | 19.1620 | |

**WAGE RATES EFFECTIVE OCTOBER 6, 2002**
**STRUCTURE A/B1**

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| OCCUPL THEP CERT ASST I | 19.1843 | 19.6763 | 20.1807 | 20.6695 | 21.2045 | 21.6926 | |
| OCCUPL THERP CERT ASST II | 20.3350 | 20.8569 | 21.3914 | 21.9096 | 22.4766 | 22.9941 | |
| OPTHALMIC PHOTOGRAPHER | 20.5859 | 21.1138 | 21.6554 | 22.1645 | 23.8628 | 25.5617 | |

124

KFH 01056



| | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| OPTHALMIC TECH II – CERT | 23.0727 | 23.6644 | 24.2707 | 25.5482 | 26.8261 | 28.1035 | 29.3809 |
| OPTHALMIC TECHNICIAN | 21.9736 | 22.5374 | 23.1154 | 24.3317 | 25.5486 | 26.7651 | 27.9818 |
| OR EQUIPMENT TECH | 18.7352 | 19.2154 | 19.7080 | 20.1964 | 20.7319 | 21.2201 | |
| OR EQUIPMENT TECH SR | 19.1843 | 19.6762 | 20.1807 | 20.6695 | 21.2045 | 21.6926 | |
| ORTHOPEDIC TECH ASST SR | 16.1126 | 16.5366 | 16.9606 | 17.3561 | 17.7890 | 18.1842 | |
| ORTHOPEDIC TECHNICIAN | 18.7352 | 19.2154 | 19.7080 | 20.1964 | 20.7319 | 21.2201 | |
| ORTHOPEDIC TECHNICIAN SR | 19.1843 | 19.6762 | 20.1807 | 20.6695 | 21.2045 | 21.6926 | |
| PATHOLOGY TECH ASST | 17.9546 | 18.4150 | 18.8870 | 19.3550 | 19.8682 | 20.3357 | |
| PATHOLOGY TECH ASST SR | 18.3849 | 18.8561 | 19.3399 | 19.8077 | 20.3212 | 20.7889 | |
| PATIENT TRANSPORTATION AIDE | 14.7778 | 15.1565 | 15.5452 | 15.7817 | 16.1021 | 16.4218 | |
| PHARMACY INTERN | 17.6589 | 18.1117 | 18.5763 | 18.9218 | 19.4231 | 19.9247 | |
| PHARMACY TECH INPATIENT | 17.9160 | 18.3752 | 18.8466 | 19.1918 | 19.6930 | 20.1944 | |
| PHARMACY TECH OUTPATIENT | 17.2200 | 17.6615 | 18.1144 | 18.4464 | 18.9280 | 19.4099 | |
| PHYSICAL THERAPY AIDE | 15.1197 | 15.5074 | 15.9050 | 16.1695 | 16.5448 | 16.9205 | |
| PHYSICAL THERAPY AIDE SR | 15.7538 | 16.1579 | 16.5722 | 16.8781 | 17.3230 | 17.7686 | |
| PHYSICAL THERAPY ASST I | 20.8149 | 21.3487 | 21.8962 | 22.4264 | 23.0069 | 23.5364 | |
| PHYSICAL THERAPY ASST II | 22.0637 | 22.6297 | 23.2099 | 23.7718 | 24.3871 | 24.9486 | |
| PHYSICAL THERAPY TECHNICIAN | 16.5495 | 16.9737 | 17.4088 | 17.8401 | 18.3133 | 18.7442 | |
| PSYCHIATRIC ATTENDANT | 17.4891 | 17.9494 | 18.4094 | 18.8624 | 19.3155 | 19.7529 | |
| PSYCHIATRIC TECHNICIAN | 20.2164 | 20.7486 | 21.2804 | 21.7973 | 22.2993 | 22.8006 | 23.3027 |
| PSYCHIATRIC TECHNICIAN SR | 21.1139 | 21.6696 | 22.2252 | 22.7428 | 23.2444 | 23.7457 | 24.2473 |
| RADIOGRAPHIC FILM PROC TECH | 20.7565 | 21.2358 | 21.7804 | 22.3663 | 23.1659 | 23.9652 | |
| RADIOLGC FILM PROCLEADTECH | 22.7866 | 23.3711 | 23.9704 | 24.8822 | 25.4284 | 26.0269 | |
| RADIOLOGIC TECH I | 23.7161 | 24.3400 | 24.9641 | 25.3581 | 25.9183 | | |
| RADIOLOGIC TECH II | 25.1349 | 25.7967 | 26.4581 | 27.0573 | 27.9001 | | |
| RADIOLOGIC TECH III | 26.2297 | 26.9199 | 27.6101 | 28.3964 | 29.7352 | 31.0748 | 32.4135 |
| RADIOLOGIC TECH LIMITED | 22.6331 | 23.2285 | 23.8242 | 24.2003 | 24.7347 | | |
| RADIOLOGIC TECHNOL - SUPV | 28.2487 | 28.9918 | 29.7352 | 31.0748 | 32.4135 | 33.7518 | 35.0908 |
| REG RESPIRATORY THEP TECH I | 25.3140 | 25.9801 | 26.6462 | 27.1640 | 27.8108 | 28.4564 | |
| REG RESPIRATORY THEP TECH II | 26.6662 | 27.3675 | 28.0696 | 28.7159 | 29.7512 | 31.0447 | 32.3382 |
| REGL LAB SUPPORT SPEC | 16.4241 | 16.8454 | 17.2774 | 17.5989 | 18.0647 | 18.5312 | |

### WAGE RATES EFFECTIVE OCTOBER 6, 2002
### STRUCTURE A/B1

| **Job Title** | **START** | **1 YEAR** | **2 YEARS** | **3 YEARS** | **4 YEARS** | **5 YEARS** | **6 YEARS** |
|---|---|---|---|---|---|---|---|
| RESP CARE PRACT – SUPV | 27.9994 | 28.7359 | 29.4732 | 30.1517 | 31.2387 | 32.5970 | 33.9549 |
| RESP CARE PRACTITIONER I | 24.1087 | 24.7433 | 25.3776 | 25.8703 | 26.4866 | 27.1025 | |
| RESP CARE PRACTITIONER II | 25.3964 | 26.0646 | 26.7329 | 27.3484 | 28.3345 | 29.5662 | 30.7982 |
| RESPIRATORY CARE PERMITTEE | 21.6977 | | | | | | |
| RESPIRATORY SUPPLY AIDE | 15.5624 | 15.9612 | 16.3705 | 16.7463 | 17.1360 | 17.4838 | |
| RESPIRATORY SUPPLY AIDE SR | 15.8298 | 16.2358 | 16.6523 | 16.9587 | 17.4036 | 17.8489 | |

KFH 01057

| | | | | | | |
|---|---|---|---|---|---|---|
| SERVICE PARTNER | 15.1445 | 15.5327 | 15.9308 | 16.3483 | 16.7656 | |
| | | | | | | |
| STERILE PROC TECH CERT SR | 17.5055 | 17.9544 | 18.4143 | 18.8376 | 19.2757 | 19.6671 |
| STERILE PROC TECH II – CERT | 16.8324 | 17.2636 | 17.7062 | 18.1131 | 18.5343 | 18.9106 |
| STERILE PROCESSING TECH I | 16.1850 | 16.5998 | 17.0252 | 17.4164 | 17.8214 | 18.1832 |
| | | | | | | |
| STOCK ROOM ASST REG LAB SR | 17.1394 | 17.5901 | 18.0412 | 18.2832 | 18.5252 | 18.9654 |
| STOCK RM ASST REG LAB ONLY | 15.5716 | 15.9814 | 16.3911 | 16.6110 | 16.8313 | 17.2488 |
| | | | | | | |
| STOREKEEPER | 15.3163 | 15.7090 | 16.1119 | 16.5285 | 16.9464 | 0.0000 |
| STOREKEEPER - CHIEF | 17.1619 | 17.6020 | 18.0532 | 18.5420 | 18.9676 | |
| STOREKEEPER I | 15.6053 | 16.0054 | 16.4160 | 16.8406 | 17.2660 | |
| STOREKEEPER II | 15.8559 | 16.2626 | 16.6794 | 17.1020 | 17.6845 | |
| | | | | | | |
| SURGICAL ASSISTANT CERT | 21.0919 | 21.6328 | 22.1876 | 22.7622 | 23.4454 | 24.2361 |
| SURGICAL ASST SR | 21.0027 | 21.5556 | 22.1081 | 22.6688 | 23.3355 | 24.1065 |
| SURGICAL ASST TRAINEE | 19.9530 | 19.9530 | | | | |
| SURGICAL ASST. | 20.5776 | 21.1051 | 21.6462 | 22.2071 | 22.8737 | 23.6450 |
| SURGICAL TECHNICIAN | 19.1833 | 19.6750 | 20.1796 | 20.6796 | 21.2280 | 21.7277 |
| SURGICAL TECHNICIAN SR | 19.6431 | 20.1469 | 20.6634 | 21.1640 | 21.7117 | 22.2116 |
| | | | | | | |
| SURPLUS MATERLS ASST/OPER | 19.6357 | 20.1391 | 20.6555 | 21.1377 | 21.6204 | 22.1476 |
| | | | | | | |
| TRUCK DRIVER | 22.6925 | 23.2740 | 23.8708 | 24.3531 | 24.8358 | 25.3630 |
| | | | | | | |
| UNIT ASSISTANT | 16.1566 | 16.5708 | 16.9959 | 17.3503 | 17.7256 | 18.1637 |
| UNIT ASSISTANT SR | 16.4913 | 16.9250 | 17.3593 | 17.6822 | 18.1503 | 18.6192 |
| | | | | | | |
| VISION SERVICES ASST I | 15.8391 | 16.2454 | 16.6618 | 17.0432 | 17.4245 | 17.7347 |
| VISION SERVICES ASST II | 16.3958 | 16.8163 | 17.2474 | 17.6421 | 18.0367 | 18.3580 |
| | | | | | | |
| WAREHOUSE LEADPERSON | 20.0939 | 20.6095 | 21.1380 | 21.9419 | 22.4235 | 22.9513 |
| WAREHOUSE PERSON | 19.6358 | 20.1391 | 20.6555 | 21.1377 | 21.6202 | 22.1476 |
| | | | | | | |
| YARDKEEPER | 15.1578 | 15.5459 | 15.9446 | 16.3621 | 16.7793 | 0.0000 |

KFH 01058


**WAGE RATES EFFECTIVE OCTOBER 5, 2003**
**STRUCTURE A/B1**

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| ALLERY ASST SUPV CENTRL LAB | 19.0328 | 19.5207 | 20.0212 | 20.4767 | 21.1670 | 21.8110 | |
| ALLERGY TECHNICIAN | 17.8299 | 18.2872 | 18.7559 | 19.1174 | 19.6348 | 20.1377 | |
| ALLERGY TECHNICIAN SR | 18.5531 | 19.0289 | 19.5167 | 19.9412 | 20.5214 | 21.0866 | |
| ALLERGY TECHNICIAN TRAINEE | 16.9150 | 17.3486 | 17.7934 | 18.1227 | 18.5780 | 19.0020 | |
| ANESTHESIA SUPPLY AIDE | 16.1849 | 16.5996 | 17.0253 | 17.4162 | 17.8214 | 18.1832 | |
| ANESTHESIA SUPPLY AIDE SR | 16.4630 | 16.8852 | 17.3184 | 17.6370 | 18.0997 | 18.5629 | |
| ANESTHESIA TECH ASST SR | 19.1394 | 19.6304 | 20.1333 | 20.6321 | 21.1794 | 21.6780 | |
| ANESTHESIA TECH ASST | 18.6728 | 19.1516 | 19.6425 | 20.1292 | 20.6629 | 21.1491 | |
| ATHLETIC TRAINER CERT | 21.2486 | 21.7935 | 22.3383 | 22.7850 | 23.2408 | 23.7057 | |
| BONE DENSITOMETRY TECH | 18.7735 | 19.2547 | 19.7480 | 20.3200 | 21.1431 | 21.7508 | |
| CARDIOVAS ANESTHESIA TECH | 23.0294 | 23.6200 | 24.2258 | 25.0615 | 26.3146 | 27.5672 | |
| CARDIOVASCULAR TECH | 23.4392 | 24.0405 | 24.6570 | 25.5703 | 26.9396 | 28.3098 | |
| CARDIOVAS TECHNICIAN SR | 25.1754 | 25.8210 | 26.4831 | 27.3963 | 28.7659 | 30.1358 | |
| CARE PARTNER | 16.3398 | 16.7585 | 17.1883 | 17.5829 | 17.9921 | 18.3571 | |
| CENTRAL SUPPLY TECHNICIAN | 16.1849 | 16.5996 | 17.0253 | 17.4162 | 17.8214 | 18.1832 | |
| CLERICAL GRADE 1 | 15.0134 | 15.3986 | 15.7932 | 16.0393 | 16.3724 | 16.7047 | |
| CLERICAL GRADE 2 | 15.6447 | 16.0461 | 16.4574 | 16.7328 | 17.1235 | 17.5143 | |
| CLERICAL GRADE 3 | 15.9742 | 16.3840 | 16.8042 | 17.1512 | 17.5284 | 17.9551 | |
| CLERICAL GRADE 4 | 16.3041 | 16.7220 | 17.1512 | 17.4699 | 17.9327 | 18.3955 | |
| CLERICAL GRADE 5 | 16.9604 | 17.3954 | 17.8415 | 18.2175 | 18.7387 | 19.2589 | |
| CLERICAL GRADE 6 | 17.7298 | 18.1844 | 18.6504 | 19.0844 | 19.6777 | 20.2710 | |
| CLERICAL GRADE 7 | 18.4915 | 18.9656 | 19.4518 | 19.9292 | 20.6240 | 21.3185 | |
| COMMUNICATION OPERATOR | 15.9442 | 16.3532 | 16.7724 | 17.0531 | 17.4513 | 17.7016 | 18.3062 |
| COMMUNICATION OPERATOR SR | 16.2800 | 16.6976 | 17.1257 | 17.4794 | 17.8639 | 18.1141 | 18.7477 |
| COOK A | 17.4720 | 17.9200 | 18.3796 | 18.8301 | 19.2807 | | |
| COOK IN CHARGE (SR) | 18.2227 | 18.6903 | 19.1696 | 19.6202 | 20.0706 | | |
| CT SCHEDULING ASSISTANT | 16.3041 | 16.7220 | 17.1512 | 17.4699 | 17.9327 | 18.3955 | |
| CUSTODIAN/WATCHMAN | 16.8628 | 17.2953 | 17.7390 | 18.1729 | 18.6071 | | |
| CYTOGENETIC TECH I | 29.2920 | 30.0626 | 30.8337 | 31.2418 | 32.3404 | 33.4164 | |
| CYTOGENETIC TECH II | 30.2607 | 31.0570 | 31.8533 | 32.4657 | 33.5412 | 34.7308 | |
| CYTOGENETIC TECH III | 31.2939 | 32.1176 | 32.9412 | 33.6654 | 34.9005 | 36.1129 | 37.3901 |
| CYTOGENETIC TECH SR | 33.0068 | 33.8753 | 34.7436 | 35.4680 | 36.5439 | 37.6426 | 38.9697 |
| CYTOGENETIC TRAINEE | 24.1517 | 25.1685 | | | | | |

**WAGE RATES EFFECTIVER OCTOBER 5, 2003**
**STRUCTURE A/B1**

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|

KFH 01059



| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| CYTO-HISTO TECHNOL SUPV | 36.0845 | 37.0339 | 37.9829 | 39.5765 | 40.8820 | 41.6480 | |
| CYTOLOGY TECHNOL – CHIEF | 34.9018 | 35.8203 | 36.7384 | 37.5045 | 38.6421 | 39.8038 | |
| CYTOTECHNOLOGIST I | 30.9738 | 31.7885 | 32.6041 | 33.0355 | 34.1972 | 35.3350 | |
| CYTOTECHNOLOGIST II | 31.9981 | 32.8402 | 33.6822 | 34.3297 | 35.4672 | 36.7249 | |
| CYTOTECHNOLOGIST III | 33.0907 | 33.9617 | 34.8325 | 35.5985 | 36.9043 | 38.1863 | |
| DARK ROOM TECHNICIAN | 16.4248 | 16.8460 | 17.2780 | 17.6110 | 18.2188 | 18.6528 | |
| DEPARTMENT SECRETARY | 17.5346 | 17.9842 | 18.4454 | 18.7883 | 19.2859 | 19.7841 | |
| DIAG ULTRASONOGRAPHER I | 29.6897 | 30.4708 | 31.2520 | 31.7452 | 32.4464 | 33.5632 | |
| DIAG ULTRASONOGRAPHER II | 31.7684 | 32.6042 | 33.4403 | 34.3924 | 36.0138 | 37.6358 | 39.2571 |
| DIAG ULTRASONOGRAPHER III | 33.3566 | 34.2343 | 35.1122 | 86.1120 | 37.8145 | 39.6274 | 41.2201 |
| DIAG ULTRASONOGRPHER SUPV | 35.9243 | 36.8691 | 37.8146 | 39.5181 | 41.2203 | 43.0414 | 44.6254 |
| DIAG ULTRASNGRPHR TRAINEE | 26.0780 | | | | | | |
| DRIVER FOREMAN | 24.8714 | 25.5094 | 26.1633 | 26.6650 | 27.1652 | 27.7135 | |
| EEG TECHNOLOGIST I | 19.6553 | 20.1594 | 20.6763 | 21.2351 | 22.2413 | 23.1355 | |
| EEG TECHNOLOGIST II | 20.8242 | 21.3583 | 21.9058 | 22.4644 | 23.5821 | 24.6996 | |
| EKG TECHNICIAN | 18.7735 | 19.2547 | 19.7480 | 20.3200 | 21.1431 | 21.7508 | |
| EKG TECHNICIAN SR | 19.5883 | 20.0901 | 20.6053 | 21.2271 | 22.2285 | 23.0026 | |
| EMERGENCY DEPT TECH I | 16.4727 | 16.8952 | 17.3283 | 17.7249 | 18.1215 | 18.4441 | |
| EMERGENCY DEPT TECH II | 19.4845 | 19.9840 | 20.4963 | 21.0043 | 21.5612 | 22.0689 | |
| EMERGENCY RM ASST SF ONLY | 16.2291 | 16.6561 | 17.0831 | 17.4741 | 17.8650 | 18.1834 | |
| GARAGE ATTENDANT | 15.6447 | 16.0461 | 16.4574 | 16.7328 | 17.1235 | 17.5143 | |
| GARAGE/PARKING ATTENDANT | 15.6447 | 16.0461 | 16.4574 | 16.7328 | 17.1235 | 17.5143 | |
| GARDENER | 17.3076 | 17.7514 | 18.2062 | 18.6484 | 19.0909 | | |
| GARDENER – SENIOR | 18.6567 | 19.1350 | 19.6257 | 20.0719 | 20.5145 | | |
| HISTOLOGIC TECH I | 24.3296 | 24.9697 | 25.6099 | 26.1330 | 26.5457 | 26.8942 | |
| HISTOLOGIC TECH II | 26.3267 | 27.0196 | 27.7123 | 28.4309 | 28.9091 | 29.2361 | |
| HISTOLOGIC TECH TRAINEE | 20.3631 | 20.8984 | 21.4344 | 21.7926 | 22.3016 | 22.8104 | |
| HISTOLOGIC TECHNICIAN SUPV | 29.1302 | 29.8969 | 30.6636 | 31.4262 | 32.0357 | 32.4933 | |
| HOME HEALTH AIDE | 16.4217 | 16.8429 | 17.2749 | 17.6654 | 18.0708 | 18.4326 | |
| HOMEMAKER | 8.7314 | | | | | | |
| HOUSEKEEPING AIDE | 15.7503 | 16.1540 | 16.5680 | 17.0022 | 17.4362 | | |
| HOUSEKEEPING HEAD AIDE | 16.1624 | 16.5766 | 17.0022 | 17.4362 | 17.8703 | | |
| LABORATORY ASSISTANT I | 16.3905 | 16.8107 | 17.2422 | 17.5306 | 17.9396 | 18.3491 | |
| LABORATORY ASSISTANT II | 17.0811 | 17.5192 | 17.9685 | 18.3029 | 18.7873 | 19.2724 | |
| LABORATORY ASSISTANT III | 17.3696 | 17.8149 | 18.2716 | 18.6060 | 19.0906 | 19.5760 | |
| LABORATORY ASSISTANT SR | 17.7688 | 18.2245 | 18.6921 | 19.0858 | 19.6320 | 20.1771 | |

**WAGE RATES EFFECTIVE OCTOBER 5, 2003**
**STRUCTURE A/B1**

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| LICENSED VOC NURSE | 21.3269 | 21.8883 | 22.4493 | 22.9946 | 23.5241 | 24.0530 | 24.5826 |
| LICENSED VOC NURSE SR | 22.2736 | 22.8599 | 23.4460 | 23.9921 | 24.5213 | 25.0500 | 25.5792 |
| LIFT TECHNICIAN | 16.1849 | 16.5996 | 17.0253 | 17.4162 | 17.8214 | 18.1832 | |

KFH 01060



| | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| LINEN ROOM SUPERVISOR | 16.1624 | 16.5766 | 17.0022 | 17.4362 | 17.8703 | | |
| LITHOTRIPSY TECHNICIAN | 17.8636 | 18.3216 | 18.7913 | 19.2217 | 19.6516 | 20.0014 | |
| MEDICAL ASSISTANT | 16.4727 | 16.8952 | 17.3283 | 17.7249 | 18.1215 | 18.4441 | |
| MEDICAL ASSISTANT SR | 16.8917 | 17.3247 | 17.7691 | 18.1653 | 18.5613 | 18.8845 | |
| MEDICAL RECORD CODER I | 20.3163 | 20.8506 | 21.3854 | 21.8360 | 22.4607 | 23.0847 | |
| MEDICAL RECORD CODER II | 21.9304 | 22.5077 | 23.0847 | 23.5695 | 24.2434 | 24.9149 | |
| MEDICAL SECRETARY | 20.8094 | 21.3568 | 21.9045 | 22.5580 | 23.2647 | 23.9703 | |
| MEDICAL SECRETARY SR | 21.8494 | 22.4245 | 22.9997 | 23.6861 | 24.4282 | 25.1686 | |
| MEDICAL SECRETARY TRAINEE | 16.7721 | 17.2020 | 17.6435 | 17.9714 | 18.4475 | 18.9236 | |
| MESSENGER DRIVER | 15.8875 | 16.2949 | 16.7126 | 17.0022 | 17.2195 | | |
| MESSENGER DRIVER SR | 16.8292 | 17.2609 | 17.7034 | 17.9926 | 18.2096 | | |
| MOLECULAR TECHNOLOGIST I | 29.2920 | 30.0626 | 30.8337 | 31.2418 | 32.3404 | 33.4164 | |
| MOLECULAR TECHNOLOGIST II | 30.2607 | 31.0570 | 31.8533 | 32.4657 | 33.5412 | 34.7308 | |
| MOLECULAR TECHNOLOGIST III | 31.2939 | 32.1175 | 32.9412 | 33.6654 | 34.9005 | 36.1129 | |
| MOLECULAR TECHNOLOGIST SR | 33.0068 | 33.8752 | 34.7436 | 35.4680 | 36.5439 | 37.6426 | 38.9697 |
| MOLECULAR TECHNOL TRAINEE | 24.1517 | 25.1685 | | | | | |
| MONITOR TECHNICIAN | 17.2644 | 17.6977 | 18.1421 | 18.5130 | 18.9053 | 19.3634 | |
| MRI TECHNOLOGIST I | 30.9065 | 31.5252 | 32.1554 | 32.7987 | 33.4353 | | |
| MRI TECHNOLOGIST II | 33.0383 | 33.6990 | 34.3730 | 35.0602 | 35.7616 | 36.4770 | |
| MRI TECHNOLOGIST SUPVR | 35.1694 | 35.8731 | 36.5905 | 37.3224 | 38.0687 | 38.8301 | |
| MRI TECHNOLOGIST TRAINEE | 28.2112 | 28.7753 | 29.3505 | | | | |
| NUCLEAR MED TECH SUPV | 32.9163 | 33.7822 | 34.6486 | 35.6549 | 36.7068 | 37.7133 | |
| NUCLEAR MEDICINE TECH I | 29.7788 | 30.5626 | 31.3464 | 32.3528 | 33.4044 | 34.4107 | |
| NUCLEAR MEDICINE TECH II | 31.6067 | 32.4384 | 33.2699 | 34.2764 | 35.3281 | 36.3352 | |
| NURSE ASSISTANT | 16.3398 | 16.7585 | 17.1883 | 17.5829 | 17.9921 | 18.3571 | |
| NURSE ASSISTANT SR | 16.5202 | 16.9438 | 17.3783 | 17.7727 | 18.1528 | 18.5466 | |
| NUTRITION AIDE | 15.5708 | 15.9703 | 16.3801 | 16.9979 | 17.4101 | | |
| NUTRITION CLERK | 15.7671 | 16.1715 | 16.5859 | 17.2040 | 17.6160 | | |
| NUTRITION CLERK – SENIOR | 16.0943 | 16.4988 | 16.9133 | 17.5313 | 17.8847 | | |
| OB TECHNICIAN | 17.2115 | 17.6526 | 18.1052 | 18.5537 | 19.0458 | 19.4940 | |
| OB TECHNICIAN SR | 17.6240 | 18.0758 | 18.5395 | 18.9881 | 19.4799 | 19.9285 | |

**WAGE RATES EFFECTIVE OCTOBER 5, 2003**
**STRUCTURE A/B1**

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| OCCUPNL THERP ASST I CERT | 19.9517 | 20.4634 | 20.9879 | 21.4963 | 22.0527 | 22.5603 | |
| OCCUPNL THERP ASST II CERT | 21.1484 | 21.6912 | 22.2471 | 22.7860 | 23.3757 | 23.9139 | |
| OPTHALMIC PHOTOGRAPHER | 21.4093 | 21.9584 | 22.5216 | 23.0511 | 24.8173 | 26.5842 | |
| OPTHALMIC TECH II CERT | 23.9956 | 24.6110 | 25.2415 | 26.5701 | 27.8991 | 29.2276 | 30.5561 |
| OPTHALMIC TECHNICIAN | 22.8525 | 23.3489 | 24.0400 | 25.3050 | 26.5705 | 27.8357 | 29.1011 |
| OR EQUIPMENT TECH | 19.4846 | 19.9840 | 20.4963 | 21.0043 | 21.5612 | 22.0689 | |
| OR EQUIPMENT TECH SR | 19.9517 | 20.4632 | 20.9879 | 21.4963 | 22.0527 | 22.5603 | |

129

KFH 01061

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ORTHOPEDIC TECH ASST SR | 16.7571 | 17.1981 | 17.6390 | 18.0503 | 18.5006 | 18.9116 | |
| ORTHOPEDIC TECHNICIAN | 19.4846 | 19.9840 | 20.4963 | 21.0043 | 21.5612 | 22.0689 | |
| ORTHOPEDIC TECHNICIAN SR | 19.9517 | 20.4632 | 20.9879 | 21.4963 | 22.0527 | 22.5603 | |
| | | | | | | | |
| PATHOLOGY TECH ASST | 18.6728 | 19.1516 | 19.6425 | 20.1292 | 20.6629 | 21.1491 | |
| PATHOLOGY TECH ASST SR | 19.1203 | 19.6103 | 20.1135 | 20.6000 | 21.1340 | 21.6205 | |
| | | | | | | | |
| PATIENT TRANSPT AIDE | 15.3689 | 15.7628 | 16.1670 | 16.4130 | 16.7462 | 17.0787 | |
| | | | | | | | |
| PHARMACY INTERN | 18.3653 | 18.8362 | 19.3194 | 19.6787 | 20.2000 | 20.7217 | |
| PHARMACY TECH INPATIENT | 18.6326 | 19.1102 | 19.6005 | 19.9595 | 20.4807 | 21.0022 | |
| PHARMACY TECH OUTPATIENT | 17.9088 | 18.3680 | 18.8390 | 19.1843 | 19.6851 | 20.1863 | |
| | | | | | | | |
| PHYSICAL THERAPY AIDE | 15.7245 | 16.1277 | 16.5412 | 16.8163 | 17.2066 | 17.5973 | |
| PHYSICAL THERAPY AIDE SR | 16.3840 | 16.8042 | 17.2351 | 17.5532 | 18.0159 | 18.4793 | |
| PHYSICAL THERAPY ASST I | 21.6475 | 22.2026 | 22.7720 | 23.3235 | 23.9272 | 24.4779 | |
| PHYSICAL THERAPY ASST II | 22.9462 | 23.5349 | 24.1383 | 24.7227 | 25.3626 | 25.9465 | |
| PHYSICAL THERAPY TECHNICIAN | 17.2115 | 17.6526 | 18.1052 | 18.5537 | 19.0458 | 19.4940 | |
| | | | | | | | |
| PSYCHIATRIC ATTENDANT | 18.1887 | 18.6674 | 19.1458 | 19.6169 | 20.0881 | 20.5430 | |
| PSYCHIATRIC TECHNICIAN | 21.0251 | 21.5785 | 22.1316 | 22.6692 | 23.1913 | 23.7126 | 24.2348 |
| PSYCHIATRIC TECHNICIAN SR | 21.9585 | 22.5364 | 23.1142 | 23.6525 | 24.1742 | 24.6955 | 25.2172 |
| | | | | | | | |
| RADIOGRPHC FILM PROC TECH | 21.5868 | 22.0852 | 22.6516 | 23.2610 | 24.0925 | 24.9238 | |
| RADIOLGC FILM PROCLEADTECH | 23.6981 | 24.3059 | 24.9292 | 25.8775 | 26.4455 | 27.0680 | |
| | | | | | | | |
| RADIOLOGIC TECH I | 24.6647 | 25.3136 | 25.9627 | 26.3724 | 26.9550 | | |
| RADIOLOGIC TECH II | 26.1403 | 26.8286 | 27.5164 | 28.1396 | 29.0161 | | |
| RADIOLOGIC TECH III | 27.2789 | 27.9967 | 28.7145 | 29.5323 | 30.9246 | 32.3178 | 33.7100 |
| RADIOLOGIC TECH LIMITED | 23.5384 | 24.1576 | 24.7772 | 25.1683 | 25.7241 | | |
| RADIOLOGIC TECHNOL SUPV | 29.3786 | 30.1515 | 30.9246 | 32.3178 | 33.7100 | 35.1019 | 36.4944 |
| | | | | | | | |
| REG RESP THERAPY TECH I | 26.3266 | 27.0193 | 27.7120 | 28.2506 | 28.9232 | 29.5947 | |
| REG RESP THERAPY TECH II | 27.7328 | 28.4622 | 29.1924 | 29.8645 | 30.9412 | 32.2865 | 33.6317 |
| | | | | | | | |
| REGL LAB SUPPORT SPEC | 17.0811 | 17.5192 | 17.9685 | 18.3029 | 18.7873 | 19.2724 | |

## WAGE RATES EFFECTIVE OCTOBER 5, 2003
## STRUCTURE A/B1

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| RESP CARE PRACTITIONER I | 25.0730 | 25.7330 | 26.3927 | 26.9051 | 27.5461 | 28.1866 | |
| RESP CARE PRACTITIONER II | 26.4123 | 27.1072 | 27.8022 | 28.4423 | 29.4679 | 30.7488 | 32.0301 |
| RESP CARE PRACT SUPV | 29.1194 | 29.8853 | 30.6521 | 31.3578 | 32.4882 | 33.9009 | 35.3131 |
| | | | | | | | |
| RESPIRATORY CARE PERMITTEE | 22.5656 | | | | | | |
| RESPIRATORY SUPPLY AIDE | 16.1849 | 16.5996 | 17.0253 | 17.4162 | 17.8214 | 18.1832 | |
| RESPIRATORY SUPPLY AIDE SR | 16.4630 | 16.8852 | 17.3184 | 17.6370 | 18.0997 | 18.5629 | |
| | | | | | | | |
| SERVICE PARTNER | 15.7503 | 16.1540 | 16.5680 | 17.0022 | 17.4362 | | |
| | | | | | | | |
| STERILE PROC TECH II CERT | 17.5057 | 17.9541 | 18.4144 | 18.8376 | 19.2757 | 19.6670 | |
| STERILE PROC TECH SR CERT | 18.2057 | 18.6726 | 19.1509 | 19.5911 | 20.0467 | 20.4538 | |
| STERILE PROCESSING TECH I | 16.8324 | 17.2638 | 17.7062 | 18.1131 | 18.5343 | 18.9105 | |

130

KFH 01062

| Job Title | | | | | | |
|---|---|---|---|---|---|---|
| STOCK ROOM ASST REG LAB SR | 17.8250 | 18.2937 | 18.7628 | 19.0145 | 19.2662 | 19.7240 |
| STOCK RM ASST. REG. LAB ONLY | 16.1945 | 16.6207 | 17.0467 | 17.2754 | 17.5046 | 17.9388 |
| STOREKEEPER | 15.9290 | 16.3374 | 16.7564 | 17.1896 | 17.6243 | |
| STOREKEEPER – CHIEF | 17.8484 | 18.3061 | 18.7753 | 19.2837 | 19.7263 | |
| STOREKEEPER I | 16.2295 | 16.6456 | 17.0726 | 17.5142 | 17.9566 | |
| STOREKEEPER II | 16.4901 | 16.9131 | 17.3466 | 17.7861 | 18.3919 | |
| SURGICAL ASSISTANT CERT | 21.9356 | 22.4981 | 23.0751 | 23.6727 | 24.3832 | 25.2055 |
| SURGICAL ASST SR | 21.8428 | 22.4178 | 22.9924 | 23.5756 | 24.2689 | 25.0708 |
| SURGICAL ASST TRAINEE | 20.7511 | | | | | |
| SURGICAL ASST. | 21.4007 | 21.9493 | 22.5120 | 23.0954 | 23.7886 | 24.5908 |
| SURGICAL TECHNICIAN | 19.9506 | 20.4620 | 20.9868 | 21.5068 | 22.0771 | 22.5968 |
| SURGICAL TECHNICIAN SR | 20.4288 | 20.9528 | 21.4899 | 22.0106 | 22.5802 | 23.1001 |
| SURPLUS MATERLS ASST/OPER | 20.4211 | 20.9447 | 21.4817 | 21.9832 | 22.4852 | 23.0335 |
| TRUCK DRIVER | 23.6002 | 24.2050 | 24.8256 | 25.3272 | 25.8292 | 26.3775 |
| UNIT ASSISTANT | 16.8029 | 17.2336 | 17.6757 | 18.0443 | 18.4346 | 18.8902 |
| UNIT ASSISTANT SR | 17.1510 | 17.6020 | 18.0537 | 18.3895 | 18.8763 | 19.3640 |
| VISION SERVICES ASST I | 16.4727 | 16.8952 | 17.3283 | 17.7249 | 18.1215 | 18.4441 |
| VISION SERVICES ASST II | 17.0516 | 17.4890 | 17.9373 | 18.3478 | 18.7582 | 19.0923 |
| WAREHOUSE LEADPERSON | 20.8977 | 21.4339 | 21.9835 | 22.8196 | 23.3204 | 23.8694 |
| WAREHOUSE PERSON | 20.4212 | 20.9447 | 21.4817 | 21.9832 | 22.4850 | 23.0335 |
| YARDKEEPER | 15.7641 | 16.1677 | 16.5824 | 17.0166 | 17.4505 | |

KFH 01063



WAGE RATES EFFECTIVE OCTOBER 3, 2004
STRUCTURE A/B1

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| ALLRGY CENTRL LAB ASST SUPV | 19.7941 | 20.3015 | 20.8220 | 21.2958 | 22.0137 | 22.6834 | |
| ALLERGY TECHNICIAN | 18.5431 | 19.0187 | 19.5061 | 19.8821 | 20.4202 | 20.9432 | |
| ALLERGY TECHNICIAN SR | 19.2952 | 19.7901 | 20.2974 | 20.7388 | 21.3423 | 21.9301 | |
| ALLERGY TECHNICIAN TRAINEE | 17.5916 | 18.0425 | 18.5051 | 18.8476 | 19.3211 | 19.7621 | |
| ANESTHESIA SUPPLY AIDE | 16.8323 | 17.2636 | 17.7063 | 18.1128 | 18.5343 | 18.9105 | |
| ANESTHESIA SUPPLY AIDE SR | 17.1215 | 17.5606 | 18.0111 | 18.3425 | 18.8237 | 19.3054 | |
| ANESTHESIA TECH ASST SR | 19.9050 | 20.4156 | 20.9386 | 21.4574 | 22.0266 | 22.5451 | |
| ANESTHESIA TECH ASST | 19.4197 | 19.9177 | 20.4282 | 20.9344 | 21.4894 | 21.9951 | |
| ATHLETIC TRAINER CERT | 22.0985 | 22.6652 | 23.2318 | 23.6964 | 24.1704 | 24.6539 | |
| BONE DENSITOMETRY TECH | 19.5244 | 20.0249 | 20.5379 | 21.1328 | 21.9888 | 22.6208 | |
| CARDIOVAS ANESTHESIA TECH | 23.9506 | 24.5648 | 25.1948 | 26.0640 | 27.3672 | 28.6699 | |
| CARDIOVASCULAR TECH | 24.3768 | 25.0021 | 25.6433 | 26.5931 | 28.0172 | 29.4422 | |
| CARDIOVAS TECHNICIAN SR | 26.1824 | 26.8538 | 27.5424 | 28.4922 | 29.9165 | 31.3412 | |
| CARE PARTNER | 16.9934 | 17.4288 | 17.8758 | 18.2862 | 18.7118 | 19.0914 | |
| CENTRAL SUPPLY TECHNICIAN | 16.8323 | 17.2636 | 17.7063 | 18.1128 | 18.5343 | 18.9105 | |
| CLERICAL GRADE 1 | 15.6139 | 16.0145 | 16.4249 | 16.6809 | 17.0273 | 17.3729 | |
| CLERICAL GRADE 2 | 16.2705 | 16.6879 | 17.1157 | 17.4021 | 17.8084 | 18.2149 | |
| CLERICAL GRADE 3 | 16.6132 | 17.0394 | 17.4764 | 17.8372 | 18.2295 | 18.6733 | |
| CLERICAL GRADE 4 | 16.9563 | 17.3909 | 17.8372 | 18.1687 | 18.6500 | 19.1313 | |
| CLERICAL GRADE 5 | 17.6388 | 18.0912 | 18.5552 | 18.9462 | 19.4882 | 20.0293 | |
| CLERICAL GRADE 6 | 18.4390 | 18.9118 | 19.3964 | 19.8478 | 20.4648 | 21.0818 | |
| CLERICAL GRADE 7 | 19.2312 | 19.7242 | 20.2299 | 20.7264 | 21.4490 | 22.1712 | |
| COMMUNICATION OPERATOR | 16.5820 | 17.0073 | 17.4433 | 17.7352 | 18.1494 | 18.4097 | 19.0384 |
| COMMUNICATION OPERATOR SR | 16.9312 | 17.3655 | 17.8107 | 18.1786 | 18.5785 | 18.8387 | 19.4976 |
| COOK A | 18.1709 | 18.6368 | 19.1148 | 19.5833 | 20.0519 | | |
| COOK IN CHARGE (SR) | 18.9516 | 19.4379 | 19.9364 | 20.4050 | 20.8734 | | |
| CT SCHEDULING ASSISTANT | 16.9563 | 17.3909 | 17.8372 | 18.1687 | 18.6500 | 19.1313 | |
| CUSTODIAN/WATCHMAN | 17.5373 | 17.9871 | 18.4486 | 18.8998 | 19.3514 | | |
| CYTOGENETIC TECH I | 30.4637 | 31.2651 | 32.0670 | 32.4915 | 33.6340 | 34.7531 | |
| CYTOGENETIC TECH II | 31.4711 | 32.2993 | 33.1274 | 33.7643 | 34.8828 | 36.1200 | |
| CYTOGENETIC TECH III | 32.5457 | 33.4023 | 34.2588 | 35.0120 | 36.2965 | 37.5574 | 38.8857 |
| CYTOGENETIC TECH SR | 34.3271 | 35.2303 | 36.1333 | 36.8867 | 38.0057 | 39.1483 | 40.5285 |
| CYTOGENETIC TRAINEE | 25.1178 | 26.1752 | | | | | |

WAGE RATES EFFECTIVE OCTOBER 3, 2004
STRUCTURE A/B1

KFH 01064



| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| CYTO-HISTO TECHNOL SUPV | 37.5279 | 38.5153 | 39.5022 | 41.1596 | 42.5173 | 43.3139 | |
| CYTOLOGY TECHNOL CHIEF | 36.2979 | 37.2531 | 38.2079 | 39.0047 | 40.1878 | 41.3960 | |
| CYTOTECHNOLOGIST I | 32.2128 | 33.0600 | 33.9083 | 34.3569 | 35.5651 | 36.7484 | |
| CYTOTECHNOLOGIST II | 33.2780 | 34.1538 | 35.0295 | 35.7029 | 36.8859 | 38.1939 | |
| CYTOTECHNOLOGIST III | 34.4143 | 35.3202 | 36.2258 | 37.0224 | 38.3805 | 39.7138 | |
| DARK ROOM TECHNICIAN | 17.0818 | 17.5198 | 17.9691 | 18.3154 | 18.9476 | 19.3989 | |
| DEPARTMENT SECRETARY | 18.2360 | 18.7036 | 19.1832 | 19.5398 | 20.0573 | 20.5755 | |
| DIAG ULTRASONOGRAPHER I | 30.8773 | 31.6896 | 32.5021 | 33.0150 | 33.7443 | 34.9057 | |
| DIAG ULTRASONOGRAPHER II | 33.0391 | 33.9084 | 34.7779 | 35.7681 | 37.4544 | 39.1412 | 40.8274 |
| DIAG ULTRASONOGRAPHER III | 34.6909 | 35.6037 | 36.5167 | 37.5565 | 39.3271 | 41.2125 | 42.8689 |
| DIAG ULTRASONRAPHER SUPV | 37.3613 | 38.3439 | 39.3272 | 41.0988 | 42.8691 | 44.7631 | 46.4104 |
| DIAG ULTRASONGRPHR TRAINEE | 27.1211 | | | | | | |
| DRIVER FOREMAN | 25.8663 | 26.5298 | 27.2098 | 27.7316 | 28.2518 | 28.8220 | |
| EEG TECHNOLOGIST I | 20.4415 | 20.9658 | 21.5034 | 22.0845 | 23.1310 | 24.0609 | |
| EEG TECHNOLOGIST II | 21.6572 | 22.2126 | 22.7820 | 23.3630 | 24.5254 | 25.6876 | |
| EKG TECHNICIAN | 19.5244 | 20.0249 | 20.5379 | 21.1328 | 21.9888 | 22.6208 | |
| EKG TECHNICIAN SR | 20.3718 | 20.8937 | 21.4295 | 22.0762 | 23.1176 | 23.9227 | |
| EMERGENCY DEPT TECH I | 17.1316 | 17.5710 | 18.0214 | 18.4339 | 18.8464 | 19.1819 | |
| EMERGENCY DEPT TECH II | 20.2639 | 20.7834 | 21.3162 | 21.8445 | 22.4236 | 22.9517 | |
| EMERGENCY RM ASST SF ONLY | 16.8783 | 17.3223 | 17.7664 | 18.1731 | 18.5796 | 18.9107 | |
| GARAGE ATTENDANT | 16.2705 | 16.6879 | 17.1157 | 17.4021 | 17.8084 | 18.2149 | |
| GARAGE/PARKING ATTENDANT | 16.2705 | 16.6879 | 17.1157 | 17.4021 | 17.8084 | 18.2149 | |
| GARDENER | 17.9999 | 18.4615 | 18.9344 | 19.3943 | 19.8545 | | |
| GARDENER SR | 19.4030 | 19.9004 | 20.4107 | 20.8748 | 21.3351 | | |
| HISTOLOGIC TECH I | 25.3028 | 25.9685 | 26.6343 | 27.1783 | 27.6075 | 27.9700 | |
| HISTOLOGIC TECH II | 27.3798 | 28.1004 | 28.8208 | 29.5681 | 30.0655 | 30.4055 | |
| HISTOLOGIC TECH TRAINEE | 21.1776 | 21.7343 | 22.2918 | 22.6643 | 23.1937 | 23.7228 | |
| HISTOLOGIC TECHNICIAN SUPV | 30.2954 | 31.0928 | 31.8901 | 32.6832 | 33.3171 | 33.7930 | |
| HOME HEALTH AIDE | 17.0786 | 17.5166 | 17.9659 | 18.3720 | 18.7936 | 19.1699 | |
| HOMEMAKER | 9.0807 | | | | | | |
| HOUSEKEEPING AIDE | 16.3803 | 16.8002 | 17.2307 | 17.6823 | 18.1336 | | |
| HOUSEKEEPING HEAD AIDE | 16.8089 | 17.2397 | 17.6823 | 18.1336 | 18.5851 | | |
| LABORATORY ASSISTANT I | 17.0461 | 17.4831 | 17.9319 | 18.2318 | 18.6572 | 19.0831 | |
| LABORATORY ASSISTANT II | 17.7643 | 18.2200 | 18.6872 | 19.0350 | 19.5388 | 20.0433 | |
| LABORATORY ASSISTANT III | 18.0644 | 18.5275 | 19.0025 | 19.3502 | 19.8542 | 20.3590 | |
| LABORATORY ASSISTANT SR | 18.4796 | 18.9535 | 19.4398 | 19.8492 | 20.4173 | 20.9842 | |

WAGE RATES EFFECTIVE OCTOBER 3, 2004
STRUCTURE A/B1

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| LICENSED VOC NURSE | 22.1800 | 22.7638 | 23.3473 | 23.9144 | 24.4651 | 25.0151 | 25.5659 |

133

KFH 01065

 
| | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| LICENSED VOC NURSE SR | 23.1645 | 23.7743 | 24.3838 | 24.9518 | 25.5022 | 26.0520 | 26.6024 |
| LIFT TECHNICIAN | 16.8323 | 17.2636 | 17.7063 | 18.1128 | 18.5343 | 18.9105 | |
| LINEN ROOM SUPERVISOR | 16.8089 | 17.2397 | 17.6823 | 18.1336 | 18.5851 | | |
| LITHOTRIPSY TECHNICIAN | 18.5781 | 19.0545 | 19.5430 | 19.9906 | 20.4377 | 20.8015 | |
| MEDICAL ASSISTANT | 17.1316 | 17.5710 | 18.0214 | 18.4339 | 18.8464 | 19.1819 | |
| MEDICAL ASSISTANT SR | 17.5674 | 18.0177 | 18.4799 | 18.8919 | 19.3038 | 19.6399 | |
| MEDICAL RECORD CODER I | 21.1290 | 21.6846 | 22.2408 | 22.7094 | 23.3591 | 24.0081 | |
| MEDICAL RECORD CODER II | 22.8076 | 23.4080 | 24.0081 | 24.5123 | 25.2131 | 25.9115 | |
| MEDICAL SECRETARY | 21.6418 | 22.2111 | 22.7807 | 23.4603 | 24.1953 | 24.9291 | |
| MEDICAL SECRETARY SR | 22.7234 | 23.3215 | 23.9197 | 24.6335 | 25.4053 | 26.1753 | |
| MEDICAL SECRETARY TRAINEE | 17.4430 | 17.8901 | 18.3492 | 18.6903 | 19.1854 | 19.6805 | |
| MESSENGER DRIVER | 16.5230 | 16.9467 | 17.3811 | 17.6823 | 17.9083 | | |
| MESSENGER DRIVER SR | 17.5024 | 17.9513 | 18.4115 | 18.7123 | 18.9380 | | |
| MOLECULAR TECHNOLOGIST I | 30.4637 | 31.2651 | 32.0670 | 32.4915 | 33.6340 | 34.7531 | |
| MOLECULAR TECHNOLOGIST II | 31.4711 | 32.2993 | 33.1274 | 33.7643 | 34.8828 | 36.1200 | |
| MOLECULAR TECHNOLOGIST III | 32.5457 | 33.4022 | 34.2588 | 35.0120 | 36.2965 | 37.5574 | |
| MOLECULAR TECHNOLOGIST SR | 34.3271 | 35.2302 | 36.1333 | 36.8867 | 38.0057 | 39.1483 | 40.5285 |
| MOLECULAR TECHNOL TRAINEE | 25.1178 | 26.1752 | | | | | |
| MONITOR TECHNICIAN | 17.9550 | 18.4056 | 18.8678 | 19.2535 | 19.6615 | 20.1379 | |
| MRI TECHNOLOGIST I | 32.1428 | 32.7862 | 33.4416 | 34.1106 | 34.7727 | | |
| MRI TECHNOLOGIST II | 34.3598 | 35.0470 | 35.7479 | 36.4626 | 37.1921 | 37.9361 | |
| MRI TECHNOLOGIST SUPVR | 36.5762 | 37.3080 | 38.0541 | 38.8153 | 39.5914 | 40.3833 | |
| MRI TECHNOLOGIST TRAINEE | 29.3396 | 29.9263 | 30.5245 | | | | |
| NUCLEAR MED TECH SUPV | 34.2330 | 35.1335 | 36.0345 | 37.0811 | 38.1751 | 39.2218 | |
| NUCLEAR MEDICINE TECH I | 30.9700 | 31.7851 | 32.6003 | 33.6469 | 34.7406 | 35.7871 | |
| NUCLEAR MEDICINE TECH II | 32.8710 | 33.7359 | 34.6007 | 35.6475 | 36.7412 | 37.7886 | |
| NURSE ASSISTANT | 16.9934 | 17.4288 | 17.8758 | 18.2862 | 18.7118 | 19.0914 | |
| NURSE ASSISTANT SR | 17.1810 | 17.6216 | 18.0734 | 18.4836 | 18.8789 | 19.2885 | |
| NUTRITION AIDE | 16.1936 | 16.6091 | 17.0353 | 17.6778 | 18.1065 | | |
| NUTRITION CLERK | 16.3978 | 16.8184 | 17.2493 | 17.8922 | 18.3206 | | |
| NUTRITION CLERK – SENIOR | 16.7381 | 17.1588 | 17.5898 | 18.2326 | 18.6001 | | |
| OB TECHNICIAN | 17.9000 | 18.3587 | 18.8294 | 19.2958 | 19.8076 | 20.2738 | |
| OB TECHNICIAN SR | 18.3290 | 18.7988 | 19.2811 | 19.7476 | 20.2591 | 20.7256 | |

**WAGE RATES EFFECTIVE OCTOBER 3, 2004**
**STRUCTURE A/B1**

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| OCCUPNL THERP CERT ASST I | 20.7498 | 21.2819 | 21.8274 | 22.3562 | 22.9348 | 23.4627 | |
| OCCUPNL THERP CERT ASST II | 21.9943 | 22.5588 | 23.1370 | 23.6974 | 24.3107 | 24.8705 | |
| OPTHALMIC TECH II CERT | 24.9554 | 25.5954 | 26.2512 | 27.6329 | 29.0151 | 30.3967 | 31.7783 |

134

KFH 01066

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| OPTHALMIC TECHNICIAN | 23.7666 | 24.3765 | 25.0016 | 26.3172 | 27.6333 | 28.9491 | 30.2651 |
| OR EQUIPMENT TECH | 20.2640 | 20.7834 | 21.3162 | 21.8445 | 22.4236 | 22.9517 | |
| OR EQUIPMENT TECH SR | 20.7498 | 21.2817 | 21.8274 | 22.3562 | 22.9348 | 23.4627 | |
| ORTHOPEDIC TECH ASST SR | 17.4274 | 17.8860 | 18.3446 | 18.7723 | 19.2406 | 19.6681 | |
| ORTHOPEDIC TECHNICIAN | 20.2640 | 20.7834 | 21.3162 | 21.8445 | 22.4236 | 22.9517 | |
| ORTHOPEDIC TECHNICIAN SR | 20.7498 | 21.2817 | 21.8274 | 22.3562 | 22.9348 | 23.4627 | |
| PATHOLOGY TECH ASST | 19.4197 | 19.9177 | 20.4282 | 20.9344 | 21.4894 | 21.9951 | |
| PATHOLOGY TECH ASST SR | 19.8851 | 20.3947 | 20.9180 | 21.4240 | 21.9794 | 22.4853 | |
| PATIENT TRANSPORTATION AIDE | 15.9837 | 16.3933 | 16.8137 | 17.0695 | 17.4160 | 17.7618 | |
| PHARMACY INTERN | 19.0999 | 19.5896 | 20.0922 | 20.4658 | 21.0080 | 21.5506 | |
| PHARMACY TECH OUTPATIENT | 18.6252 | 19.1027 | 19.5926 | 19.9517 | 20.4725 | 20.9938 | |
| PHARMACY TECH INPATIENT | 19.3779 | 19.8746 | 20.3845 | 20.7579 | 21.2999 | 21.8423 | |
| PHYSICAL THERAPY AIDE | 16.3535 | 16.7728 | 17.2028 | 17.4890 | 17.8949 | 18.3012 | |
| PHYSICAL THERAPY AIDE SR | 17.0394 | 17.4764 | 17.9245 | 18.2553 | 18.7365 | 19.2185 | |
| PHYSICAL THERAPY ASST I | 22.5134 | 23.0907 | 23.6829 | 24.2564 | 24.8843 | 25.4570 | |
| PHYSICAL THERAPY ASST II | 23.8640 | 24.4763 | 25.1038 | 25.7116 | 26.3771 | 26.9844 | |
| PHYSICAL THERAPY TECHNICIAN | 17.9000 | 18.3587 | 18.8294 | 19.2958 | 19.8076 | 20.2738 | |
| PSYCHIATRIC ATTENDANT | 18.9162 | 19.4141 | 19.9116 | 20.4016 | 20.8916 | 21.3647 | |
| PSYCHIATRIC TECHNICIAN | 21.8661 | 22.4416 | 23.0169 | 23.5760 | 24.1190 | 24.6611 | 25.2042 |
| PSYCHIATRIC TECHNICIAN SR | 22.8368 | 23.4379 | 24.0388 | 24.5986 | 25.1412 | 25.6833 | 26.2259 |
| RADIOGRAPHIC FILM PROC TECH | 22.4503 | 22.9686 | 23.5577 | 24.1914 | 25.0562 | 25.9208 | |
| RADIOLGC FILM PROCLEADTECH | 24.6460 | 25.2781 | 25.9264 | 26.9126 | 27.5033 | 28.1507 | |
| RADIOLOGIC TECH I | 25.6513 | 26.3261 | 27.0012 | 27.4273 | 28.0332 | | |
| RADIOLOGIC TECH II | 27.1859 | 27.9017 | 28.6171 | 29.2652 | 30.1767 | | |
| RADIOLOGIC TECH III | 28.3701 | 29.1166 | 29.8631 | 30.7136 | 32.1616 | 33.6105 | 35.0584 |
| RADIOLOGIC TECH LIMITED | 24.4799 | 25.1239 | 25.7683 | 26.1750 | 26.7531 | | |
| RADIOLOGIC TECHNOL SUPV | 30.5537 | 31.3576 | 32.1616 | 33.6105 | 35.0584 | 36.5060 | 37.9542 |
| REG RESPIRATORY THER TECH I | 27.3797 | 28.1001 | 28.8205 | 29.3806 | 30.0801 | 30.7785 | |
| REG RESPIRATORY THER TECH II | 28.8421 | 29.6007 | 30.3601 | 31.0591 | 32.1788 | 33.5780 | 34.9770 |
| REGL LAB SUPPORT SPEC | 17.7643 | 18.2200 | 18.6872 | 19.0350 | 19.5388 | 20.0433 | |
| RESP CARE PRACTITIONER I | 26.0759 | 26.7623 | 27.4484 | 27.9813 | 28.6479 | 29.3141 | |
| RESP CARE PRACTITIONER II | 27.4688 | 28.1915 | 28.9143 | 29.5800 | 30.6466 | 31.9788 | 33.3113 |
| RESP CARE PRACT SUPV | 30.2842 | 31.0807 | 31.8782 | 32.6121 | 33.7877 | 35.2569 | 36.7256 |

**WAGE RATES EFFECTIVE OCTOBER 3, 2004**
**STRUCTURE A/B1**

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| RESPIRATORY CARE PERMITTEE | 23.4682 | | | | | | |
| RESPIRATORY SUPPLY AIDE | 16.8323 | 17.2636 | 17.7063 | 18.1128 | 18.5343 | 18.9105 | |
| RESPIRATORY SUPPLY AIDE SR | 17.1215 | 17.5606 | 18.0111 | 18.3425 | 18.8237 | 19.3054 | |
| SERVICE PARTNER | 16.3803 | 16.8002 | 17.2307 | 17.6823 | 18.1336 | | |

135

KFH 01067

| | | | | | |
|---|---|---|---|---|---|
| STERILE PROC CERT TECH II | 18.2059 | 18.6723 | 19.1510 | 19.5911 | 20.0467 | 20.4537 |
| STERILE PROC CERT TECH SR | 18.9339 | 19.4195 | 19.9169 | 20.3747 | 20.8486 | 21.2720 |
| STERILE PROCESSING TECH I | 17.5057 | 17.9544 | 18.4144 | 18.8376 | 19.2757 | 19.6669 |
| | | | | | | |
| STOCK ROOM ASST REG LAB SR | 18.5380 | 19.0254 | 19.5133 | 19.7751 | 20.0368 | 20.5130 |
| STOCK RM ASST REG. LAB ONLY | 16.8423 | 17.2855 | 17.7286 | 17.9664 | 18.2048 | 18.6564 |
| | | | | | | |
| STOREKEEPER | 16.5662 | 16.9909 | 17.4267 | 17.8772 | 18.3293 | |
| STOREKEEPER CHIEF | 18.5623 | 19.0383 | 19.5263 | 20.0550 | 20.5154 | |
| STOREKEEPER I | 16.8787 | 17.3114 | 17.7555 | 18.2148 | 18.6749 | |
| STOREKEEPER II | 17.1497 | 17.5896 | 18.0405 | 18.4975 | 19.1276 | |
| | | | | | | |
| SURGICAL ASSISTANT CERT | 22.8130 | 23.3980 | 23.9981 | 24.6196 | 25.3585 | 26.2137 |
| SURGICAL ASST SR | 22.7165 | 23.3145 | 23.9121 | 24.5186 | 25.2397 | 26.0736 |
| SURGICAL ASST TRAINEE | 21.5811 | | | | | |
| SURGICAL ASST | 22.2567 | 22.8273 | 23.4125 | 24.0192 | 24.7401 | 25.5744 |
| | | | | | | |
| SURGICAL TECHNICIAN | 20.7486 | 21.2805 | 21.8263 | 22.3671 | 22.9602 | 23.5007 |
| SURGICAL TECHNICIAN SR | 21.2460 | 21.7909 | 22.3495 | 22.8910 | 23.4834 | 24.0241 |
| | | | | | | |
| SURPLUS MATERLS ASST/OPER | 21.2379 | 21.7825 | 22.3410 | 22.8625 | 23.3846 | 23.9548 |
| | | | | | | |
| TRUCK DRIVER | 24.5442 | 25.1732 | 25.8186 | 26.3403 | 26.8624 | 27.4326 |
| | | | | | | |
| UNIT ASSISTANT | 17.4750 | 17.9229 | 18.3827 | 18.7661 | 19.1720 | 19.6458 |
| UNIT ASSISTANT SR | 17.8370 | 18.3061 | 18.7758 | 19.1251 | 19.6314 | 20.1386 |
| | | | | | | |
| VISION SERVICES ASST I | 17.1316 | 17.5710 | 18.0214 | 18.4339 | 18.8464 | 19.1819 |
| VISION SERVICES ASST II | 17.7337 | 18.1886 | 18.6548 | 19.0817 | 19.5085 | 19.8560 |
| | | | | | | |
| WAREHOUSE LEADPERSON | 21.7336 | 22.2913 | 22.8628 | 23.7324 | 24.2532 | 24.8242 |
| WAREHOUSE PERSON | 21.2380 | 21.7825 | 22.3410 | 22.8625 | 23.3844 | 23.9548 |
| | | | | | | |
| YARDKEEPER | 16.3947 | 16.8144 | 17.2457 | 17.6973 | 18.1485 | |

KFH 01068



WAGE RATES EFFECTIVE OCTOBER 8, 2000
STRUCTURE B2

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| ALLRGY ASST SUPV CENTRL LAB | 14.3821 | 14.7508 | 15.1291 | 15.4731 | 15.9950 | 16.4815 | |
| ALLERGY TECHNICIAN | 13.4732 | 13.8185 | 14.1730 | 14.4460 | 14.8368 | 15.2168 | |
| ALLERGY TECHNICIAN SR | 14.0197 | 14.3790 | 14.7479 | 15.0683 | 15.5069 | 15.9340 | |
| ALLERGY TECHNICIAN TRAINEE | 12.7815 | 13.1094 | 13.4456 | 13.6945 | 14.0368 | 14.3589 | |
| ANESTHESIA SUPPLY AIDE | 12.2302 | 12.5437 | 12.8653 | 13.1605 | 13.4667 | 13.7404 | |
| ANESTHESIA SUPPLY AIDE SR | 12.4403 | 12.7592 | 13.0864 | 13.3274 | 13.6770 | 14.0269 | |
| ANESTHESIA TECH ASST SR | 14.4627 | 14.8336 | 15.2135 | 15.5907 | 16.0042 | 16.3809 | |
| ANESTHESIA TECH ASST | 14.1100 | 14.4719 | 14.8426 | 15.2104 | 15.6139 | 15.9813 | |
| BONE DENSITOMETRY TECH | 14.1860 | 14.5497 | 14.9227 | 15.3548 | 15.9766 | 16.4359 | |
| CARDIOVASCULAR TECH | 17.7119 | 18.1659 | 18.6317 | 19.3224 | 20.3568 | 21.3923 | |
| CARDIOVASCULAR TECH SR | 19.0237 | 19.5116 | 20.0120 | 20.7019 | 21.7369 | 22.7719 | |
| CARE PARTNER | 12.3472 | 12.6637 | 12.9884 | 13.2865 | 13.5956 | 13.8717 | |
| CENTRAL SUPPLY TECHNICIAN | 12.2302 | 12.5437 | 12.8653 | 13.1605 | 13.4667 | 13.7404 | |
| CLERICAL GRADE 1 | 11.3449 | 11.6358 | 11.9339 | 12.1199 | 12.3719 | 12.6230 | |
| CLERICAL GRADE 2 | 11.8219 | 12.1251 | 12.4358 | 12.6442 | 12.9394 | 13.2347 | |
| CLERICAL GRADE 3 | 12.0710 | 12.3805 | 12.6978 | 12.9599 | 13.2454 | 13.5680 | |
| CLERICAL GRADE 4 | 12.3203 | 12.6359 | 12.9599 | 13.2012 | 13.5508 | 13.9006 | |
| CLERICAL GRADE 5 | 12.8163 | 13.1448 | 13.4819 | 13.7660 | 14.1598 | 14.5531 | |
| CLERICAL GRADE 6 | 13.3972 | 13.7410 | 14.0934 | 14.4211 | 14.8694 | 15.3175 | |
| CLERICAL GRADE 7 | 13.9732 | 14.3312 | 14.6987 | 15.0596 | 15.5846 | 16.1092 | |
| COMMUNICATION OPERATOR | 12.0481 | 12.3572 | 12.6738 | 12.8862 | 13.1870 | 13.3760 | 13.8330 |
| COMMUNICATION OPERATOR SR | 12.3020 | 12.6175 | 12.9408 | 13.2079 | 13.4989 | 13.6879 | 14.1666 |
| COOK A | 13.2027 | 13.5412 | 13.8886 | 14.2288 | 14.5697 | | |
| COOK IN CHARGE (SR) | 13.7701 | 14.1231 | 14.4852 | 14.8261 | 15.1664 | | |
| CT SCHEDULING ASSISTANT | 12.3203 | 12.6359 | 12.9599 | 13.2012 | 13.5508 | 13.9006 | |
| CUSTODIAN/WATCHMAN | 12.7427 | 13.0693 | 13.4044 | 13.7320 | 14.0606 | | |
| CYTO-HISTO TECHNOL SUPV | 27.2669 | 27.9845 | 28.7018 | 29.9058 | 30.8922 | 31.4713 | |
| CYTOLOGY TECHNLOGIST CHIEF | 26.3735 | 27.0676 | 27.7610 | 28.3400 | 29.1996 | 30.0774 | |
| CYTOTECHNOLOGIST I | 23.4050 | 24.0210 | 24.6373 | 24.9632 | 25.8410 | 26.7008 | |
| CYTOTECHNOLOGIST II | 24.1794 | 24.8156 | 25.4518 | 25.9411 | 26.8007 | 27.7509 | |
| CYTOTECHNOLOGIST III | 25.0050 | 25.6631 | 26.3210 | 26.9000 | 27.8867 | 28.8554 | |
| DARK ROOM TECHNICIAN | 12.4114 | 12.7297 | 13.0561 | 13.3077 | 13.7667 | 14.0950 | |
| DEPARTMENT SECRETARY | 13.2499 | 13.5896 | 13.9383 | 14.1975 | 14.5733 | 14.9498 | |

WAGE RATES EFFECTIVE OCTOBER 8, 2000
STRUCTURE B2

137

KFH 01069



| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| DIAG ULTRASONOGRAPHER I | 22.4350 | 23.0253 | 23.6157 | 23.9881 | 24.5182 | 25.3618 | |
| DIAG ULTRASONOGRAPHER II | 24.0056 | 24.6373 | 25.2690 | 25.9883 | 27.2137 | 28.5185 | 29.6644 |
| DIAG ULTRASONOGRAPHER III | 25.2060 | 25.8691 | 26.5324 | 27.2879 | 28.5745 | 29.9444 | 31.1479 |
| DIAG ULTRASONOGRPHR SUPV | 27.1462 | 27.8599 | 28.5745 | 29.8617 | 31.1480 | 32.5242 | 33.7208 |
| DIAG ULTRASONGRPHR TRAINEE | 19.7060 | | | | | | |
| EEG TECHNOLOGIST I | 14.8525 | 15.2335 | 15.6243 | 16.0463 | 16.8064 | 17.4821 | |
| EEG TECHNOLOGIST II | 15.7358 | 16.1392 | 16.5533 | 16.9753 | 17.8199 | 18.6643 | |
| EKG TECHNICIAN | 14.1860 | 14.5497 | 14.9227 | 15.3548 | 15.9766 | 16.4359 | |
| EKG TECHNICIAN SR | 14.8015 | 15.1810 | 15.5704 | 16.0403 | 16.7970 | 17.3818 | |
| EMERGENCY DEPT TECH I | 12.4476 | 12.7669 | 13.0939 | 13.3939 | 13.6935 | 13.9376 | |
| EMERGENCY DEPT TECH II | 14.7235 | 15.1010 | 15.4882 | 15.8718 | 16.2927 | 16.6760 | |
| GARDENER | 13.0782 | 13.4137 | 13.7574 | 14.0917 | 14.4260 | | |
| GARDENER – SENIOR | 14.0978 | 14.4595 | 14.8300 | 15.1673 | 15.5015 | | |
| HISTOLOGIC TECH I | 18.3845 | 18.8682 | 19.3522 | 19.7471 | 20.0591 | 20.3226 | |
| HISTOLOGIC TECH II | 19.8936 | 20.4173 | 20.9405 | 21.4837 | 21.8453 | 22.0923 | |
| HISTOLOGIC TECH TRAINEE | 15.3871 | 15.7916 | 16.1968 | 16.4677 | 16.8522 | 17.2367 | |
| HISTOLOGIC TECHNICIAN SUPV | 22.0119 | 22.5916 | 23.1707 | 23.7470 | 24.2077 | 24.5532 | |
| HOME HEALTH AIDE | 12.4092 | 12.7271 | 13.0537 | 13.3491 | 13.6551 | 13.9281 | |
| HOMEMAKER | 7.7622 | | | | | | |
| HOUSEKEEPING AIDE | 11.9016 | 12.2066 | 12.5196 | 12.8478 | 13.1757 | | |
| HOUSEKEEPING HEAD AIDE | 12.2132 | 12.5263 | 12.8478 | 13.1757 | 13.5036 | | |
| INVASIVE CARDIO SPECIALIST | 24.3578 | 25.0886 | 25.8412 | 26.4871 | 27.1495 | 27.8279 | |
| LABORATORY ASSISTANT I | 12.3854 | 12.7029 | 13.0289 | 13.2470 | 13.5561 | 13.8655 | |
| LABORATORY ASSISTANT II | 12.9072 | 13.2384 | 13.5781 | 13.7941 | 14.1966 | 14.5634 | |
| LABORATORY ASSISTANT III | 13.1254 | 13.4621 | 13.8071 | 14.0596 | 14.4258 | 14.7925 | |
| LABORATORY ASSISTANT SR | 13.4269 | 13.7713 | 14.1244 | 14.4222 | 14.8350 | 15.2468 | |
| LICENSED VOCNURSE | 16.1156 | 16.5398 | 16.9638 | 17.3758 | 17.7760 | 18.1756 | 18.5758 |
| LICENSED VOC NURSE SR | 16.8312 | 17.2739 | 17.7169 | 18.1296 | 18.5293 | 18.9288 | 19.3287 |
| LIFT TECHNICIAN | 12.2302 | 12.5437 | 12.8653 | 13.1605 | 13.4667 | 13.7404 | |
| LINEN ROOM SUPERVISOR | 12.2132 | 12.5263 | 12.8478 | 13.1757 | 13.5036 | | |
| MEDICAL ASSISTANT | 12.4476 | 12.7669 | 13.0939 | 13.3939 | 13.6935 | 13.9376 | |
| MEDICAL ASSISTANT SR | 12.7641 | 13.0913 | 13.4270 | 13.7263 | 14.0259 | 14.2701 | |
| MEDICAL LEGL SPEC SACR ONLY | 15.0567 | 15.4441 | 15.8320 | 16.2943 | 16.7947 | 17.2939 | |

### WAGE RATES EFFECTIVE OCTOBER 8, 2000
### STRUCTURE B2

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| MEDICAL RECORD CODER I | 15.3522 | 15.7558 | 16.1599 | 16.5004 | 16.9722 | 17.4440 | |
| MEDICAL RECORD CODER II | 16.5717 | 17.0079 | 17.4440 | 17.8102 | 18.3194 | 18.8268 | |

KFH 01070

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| MEDICAL SECRETARY | 15.7243 | 16.1384 | 16.5521 | 17.0458 | 17.5799 | 18.1130 | |
| MEDICAL SECRETARY SR | 16.5103 | 16.9451 | 17.3797 | 17.8983 | 18.4589 | 19.0186 | |
| MEDICAL SECRETARY TRAINEE | 12.6740 | 12.9987 | 13.3319 | 13.5802 | 13.9398 | 14.2997 | |
| MESSENGER DRIVER | 12.0052 | 12.3133 | 12.6289 | 12.8478 | 13.0119 | | |
| MESSENGER DRIVER SR | 12.7169 | 13.0430 | 13.3778 | 13.5964 | 13.7600 | | |
| MONITOR TECHNICIAN | 13.0939 | 13.4225 | 13.7583 | 14.0383 | 14.3351 | 14.6812 | |
| MRI TECHNOLOGIST I | 23.3546 | 23.8217 | 24.2982 | 24.7839 | 25.2653 | | |
| MRI TECHNOLOGIST II | 24.9652 | 25.4646 | 25.9738 | 26.4932 | 27.0232 | 27.5636 | |
| MRI TECHNOLOGIST SUPV | 26.5759 | 27.1072 | 27.6495 | 28.2026 | 28.7665 | 29.3419 | |
| MRI TECHNOLOGIST TRAINEE | 21.3175 | 21.7440 | 22.1787 | | | | |
| NUCLEAR MED TECH SUPV | 24.8731 | 25.5276 | 26.1822 | 26.9425 | 27.7373 | 28.4981 | |
| NUCLEAR MEDICINE TECH I | 22.5025 | 23.0945 | 23.6869 | 24.4474 | 25.2419 | 26.0021 | |
| NUCLEAR MEDICINE TECH II | 23.8834 | 24.5121 | 25.1404 | 25.9010 | 26.6958 | 27.4564 | |
| NURSE ASSISTANT | 12.3472 | 12.6637 | 12.9884 | 13.2865 | 13.5956 | 13.8719 | |
| NURSE ASSISTANT SR | 12.4834 | 12.8036 | 13.1320 | 13.4295 | 13.7171 | 14.0148 | |
| NUTRITION AIDE | 11.7664 | 12.0679 | 12.3772 | 12.8445 | 13.1556 | | |
| NUTRITION CLERK | 11.9144 | 12.2198 | 12.5332 | 13.0004 | 13.3116 | | |
| NUTRITION CLERK - SENIOR | 12.2054 | 12.5108 | 12.8243 | 13.2916 | 13.6027 | | |
| OB TECHNICIAN | 13.0057 | 13.3391 | 13.6810 | 14.0201 | 14.3918 | 14.7307 | |
| OB TECHNICIAN SR | 13.3173 | 13.6588 | 14.0093 | 14.3484 | 14.7199 | 15.0589 | |
| OCCUPNL THERP ASST I CERT | 15.0762 | 15.4628 | 15.8592 | 16.2433 | 16.6640 | 17.0477 | |
| OCCUPNL THERP ASST II CERT | 15.9809 | 16.3904 | 16.8110 | 17.2180 | 17.6637 | 18.0706 | |
| OPTHALMIC PHOTOGRAPHER | 16.1779 | 16.5927 | 17.0182 | 17.4186 | 18.7533 | 20.0883 | |
| OPTHALMIC TECH II CERT | 18.1324 | 18.5971 | 19.0739 | 20.0777 | 21.0819 | 22.0858 | 23.0894 |
| OPTHALMIC TECHNICIAN | 17.2688 | 17.7117 | 18.1655 | 19.1216 | 20.0780 | 21.0341 | 21.9900 |
| ORTHOPEDIC TECHNICIAN | 14.7235 | 15.1010 | 15.4882 | 15.8718 | 16.2927 | 16.6760 | |
| ORTHOPEDIC TECHNICIAN SR | 15.0762 | 15.4628 | 15.8592 | 16.2433 | 16.6640 | 17.0477 | |
| PACEMAKER TECHNICIAN | 15.2647 | 15.6285 | 16.0016 | 16.4335 | 17.0553 | 17.5146 | |
| PACEMAKER TECHNICIAN SR | 15.8803 | 16.2598 | 16.6491 | 17.1192 | 17.8757 | 18.4606 | |
| PATHOLOGY TECH ASST | 14.1100 | 14.4718 | 14.8427 | 15.2104 | 15.6139 | 15.9812 | |
| PATHOLOGY TECH ASST SR | 14.4482 | 14.8186 | 15.1988 | 15.5665 | 15.9696 | 16.3374 | |
| PATIENT TRANSPORTATION AIDE | 11.6135 | 11.9109 | 12.2165 | 12.4024 | 12.6541 | 12.9056 | |

## WAGE RATES EFFECTIVE OCTOBER 8, 2000
## STRUCTURE B2

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| PHARMACY INTERN | 13.8777 | 14.2336 | 14.5988 | 14.8700 | 15.2643 | 15.6582 | |
| PHARMACY TECH OUTPATIENT | 13.5328 | 13.8798 | 14.2355 | 14.4964 | 14.8751 | 15.2538 | |
| PHARMACY TECH INPATIENT | 14.0796 | 14.4407 | 14.8109 | 15.0823 | 15.4763 | 15.8703 | |
| PHYSICAL THERAPY AIDE | 11.8823 | 12.1871 | 12.4996 | 12.7072 | 13.0024 | 13.2976 | |

139

KFH 01071

| Job Title | | | | | | | |
|---|---|---|---|---|---|---|---|
| PHYSICAL THERAPY AIDE SR | 12.3801 | 12.6978 | 13.0235 | 13.2640 | 13.6138 | 13.9638 | |
| PHYSICAL THERAPY ASST I | 16.3577 | 16.7772 | 17.2073 | 17.6240 | 18.0803 | 18.4967 | |
| PHYSICAL THERAPY ASST II | 17.3394 | 17.7837 | 18.2400 | 18.6816 | 19.1652 | 19.6066 | |
| PHYSICAL THERAPY TECH SR | 13.3173 | 13.6588 | 14.0093 | 14.3484 | 14.7199 | 15.0589 | |
| PHYSICAL THERAPY TECHNICIAN | 13.0057 | 13.3391 | 13.6810 | 14.0201 | 14.3918 | 14.7307 | |
| | | | | | | | |
| PROJECTOR OPERATOR | 14.8963 | 15.2815 | 15.6679 | | | | |
| PROJECTOR OPERATOR | 12.0366 | 12.3455 | 12.6616 | 12.9899 | 13.3176 | | |
| | | | | | | | |
| PSYCHIATRIC ATTENDANT | 13.7442 | 14.1060 | 14.4675 | 14.8235 | 15.1796 | 15.5234 | |
| PSYCHIATRIC TECHNICIAN | 15.8876 | 16.3058 | 16.7238 | 17.1300 | 17.5244 | 17.9184 | 18.3129 |
| PSYCHIATRIC TECHNICIAN SR | 16.5930 | 17.0294 | 17.4662 | 17.8731 | 18.2671 | 18.6610 | 19.0552 |
| | | | | | | | |
| RADIOLOGIC TECH I | 18.6379 | 19.1279 | 19.6186 | 19.9283 | 20.3682 | | |
| RADIOLOGIC TECH II | 19.7530 | 20.2727 | 20.7926 | 21.2636 | 21.9260 | | |
| RADIOLOGIC TECH III | 20.6129 | 21.1556 | 21.6981 | 22.3160 | 23.3682 | 24.4209 | 25.4727 |
| RADIOLOGIC TECH LIMITED | 17.7868 | 18.2545 | 18.7227 | 19.0184 | 19.4381 | | |
| RADIOLOGIC TECH SUPV | 22.1998 | 22.7837 | 23.3682 | 24.4209 | 25.4727 | 26.5246 | 27.5770 |
| | | | | | | | |
| REG RESP THERAPY TECH I | 19.8940 | 20.4175 | 20.9406 | 21.3472 | 21.8555 | 22.3638 | |
| REG RESP THERAPY TECH II | 20.9561 | 21.5077 | 22.0590 | 22.5673 | 23.3808 | 24.3971 | 25.4135 |
| | | | | | | | |
| RESP CARE PRACTITIONER I | 18.9467 | 19.4451 | 19.9437 | 20.3308 | 20.8149 | 21.2991 | 0.0000 |
| RESP CARE PRACTITIONER II | 19.9581 | 20.4834 | 21.0086 | 21.4928 | 22.2675 | 23.2352 | 24.2033 |
| RESP CARE PRACTR SUPV | 22.0040 | 22.5828 | 23.1619 | 23.6957 | 24.5496 | 25.6168 | 26.6843 |
| | | | | | | | |
| RESPIRATORY CARE PERMITTEE | 17.0520 | | | | | | |
| RESPIRATORY SUPPLY AIDE | 12.2302 | 12.5437 | 12.8653 | 13.1605 | 13.4667 | 13.7404 | |
| RESPIRATORY SUPPLY AIDE SR | 12.4403 | 12.7592 | 13.0864 | 13.3274 | 13.6770 | 14.0269 | |
| | | | | | | | |
| SERVICE PARTNER | 11.9016 | 12.2066 | 12.5196 | 12.8476 | 13.1757 | | |
| | | | | | | | |
| STERILE PROC TECH II – CERT | 13.2280 | 13.5671 | 13.9151 | 14.2348 | 14.5656 | 14.8613 | |
| STERILE PROC TECH SR – CERT | 13.7573 | 14.1099 | 14.4719 | 14.8041 | 15.1482 | 15.4558 | |
| STERILE PROCESSING TECH I | 12.7193 | 13.0453 | 13.3800 | 13.6870 | 14.0055 | 14.2896 | |
| | | | | | | | |
| STOREKEEPER | 12.0366 | 12.3455 | 12.6616 | 12.9899 | 13.3176 | | |
| STOREKEEPER – CHIEF | 13.4871 | 13.8327 | 14.1874 | 14.5721 | 14.9060 | | |
| STOREKEEPER I | 12.2637 | 12.5780 | 12.9007 | 13.2347 | 13.5691 | | |
| STOREKEEPER II | 12.4610 | 12.7805 | 13.1081 | 13.4400 | 13.8976 | | |
| | | | | | | | |
| SURGICAL ASSISTANT CERT | 16.5756 | 17.0008 | 17.4368 | 17.8882 | 18.4252 | 19.0465 | |
| SURGICAL ASST TRAINEE | 15.6807 | | | | | | |
| SURGICAL ASST. | 16.1715 | 16.5861 | 17.0113 | 17.4519 | 17.9761 | 18.5821 | |

### WAGE RATES EFFECTIVE OCTOBER 8, 2000
### STRUCTURE B2

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| SURGICAL TECHNICIAN | 15.0758 | 15.4622 | 15.8587 | 16.2515 | 16.6825 | 17.0750 | |
| SURGICAL TECHNICIAN SR | 15.4369 | 15.8327 | 16.2386 | 16.6319 | 17.0626 | 17.4556 | |
| | | | | | | | |
| UNIT ASSISTANT | 12.6971 | 13.0227 | 13.3565 | 13.6353 | 13.9303 | 14.2743 | |
| UNIT ASSISTANT SR | 12.9602 | 13.3011 | 13.6424 | 13.8960 | 14.2640 | 14.6325 | |
| | | | | | | | |
| VISION SERVICES ASST I | 12.4476 | 12.7669 | 13.0939 | 13.3939 | 13.6935 | 13.9376 | |
| VISION SERVICES ASST II | 12.8850 | 13.2153 | 13.5541 | 13.8646 | 14.1746 | 14.4271 | |

140

KFH 01072

YARDKEEPER                    11.9117   12.2173   12.5306   12.8587   13.1864

141

KFH 01073



**WAGE RATES EFFECTIVE DECEMBER 31, 2000**
**STRUCTURE B2**

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| ALLERY ASST SUPV CENTRL LAB | 14.5259 | 14.8983 | 15.2804 | 15.6278 | 16.1550 | 16.6463 | |
| ALLERGY TECHNICIAN | 13.6079 | 13.9567 | 14.3147 | 14.5905 | 14.9852 | 15.3690 | |
| ALLERGY TECHNICIAN SR | 14.1599 | 14.5228 | 14.8954 | 15.2190 | 15.6620 | 16.0933 | |
| ALLERGY TECHNICIAN TRAINEE | 12.9093 | 13.2405 | 13.5801 | 13.8314 | 14.1772 | 14.5025 | |
| ANESTHESIA SUPPLY AIDE | 12.3525 | 12.6691 | 12.9940 | 13.2921 | 13.6014 | 13.8778 | |
| ANESTHESIA SUPPLY AIDE SR | 12.5647 | 12.8868 | 13.2173 | 13.4607 | 13.8138 | 14.1672 | |
| ANESTHESIA TECH ASST SR | 14.6073 | 14.9819 | 15.3656 | 15.7466 | 16.1642 | 16.5447 | |
| ANESTHESIA TECH ASST | 14.2511 | 14.6166 | 14.9910 | 15.3625 | 15.7700 | 16.1411 | |
| BONE DENSITOMETRY TECH | 14.3279 | 14.6952 | 15.0719 | 15.5083 | 16.1364 | 16.6003 | |
| CARDIOVASCULAR TECH | 17.8890 | 18.3476 | 18.8180 | 19.5156 | 20.5604 | 21.6062 | |
| CARDIOVASCULAR TECH SR | 19.2139 | 19.7067 | 20.2121 | 20.9089 | 21.9543 | 22.9996 | |
| CARE PARTNER | 12.4707 | 12.7903 | 13.1183 | 13.4194 | 13.7316 | 14.0104 | |
| CENTRAL SUPPLY TECHNICIAN | 12.3525 | 12.6691 | 12.9940 | 13.2921 | 13.6014 | 13.8778 | |
| CLERICAL GRADE 1 | 11.4583 | 11.7522 | 12.0532 | 12.2411 | 12.4956 | 12.7492 | |
| CLERICAL GRADE 2 | 11.9401 | 12.2464 | 12.5602 | 12.7706 | 13.0688 | 13.3670 | |
| CLERICAL GRADE 3 | 12.1917 | 12.5043 | 12.8248 | 13.0895 | 13.3379 | 13.7037 | |
| CLERICAL GRADE 4 | 12.4435 | 12.7623 | 13.0895 | 13.3332 | 13.6863 | 14.0396 | |
| CLERICAL GRADE 5 | 12.9445 | 13.2762 | 13.6167 | 13.9037 | 14.3014 | 14.6986 | |
| CLERICAL GRADE 6 | 13.5312 | 13.8784 | 14.2343 | 14.5653 | 15.0181 | 15.4707 | |
| CLERICAL GRADE 7 | 14.1129 | 14.4745 | 14.8457 | 15.2102 | 15.7404 | 16.2703 | |
| COMMUNICATION OPERATOR | 12.1686 | 12.4808 | 12.8005 | 13.0151 | 13.3189 | 13.5098 | 13.9713 |
| COMMUNICATION OPERATOR SR | 12.4250 | 12.7437 | 13.0702 | 13.3400 | 13.6339 | 13.8248 | 14.3083 |
| COOK A | 13.3347 | 13.6766 | 14.0275 | 14.3711 | 14.7154 | | |
| COOK IN CHARGE (SR) | 13.9078 | 14.2643 | 14.6301 | 14.9744 | 15.3181 | | |
| CT SCHEDULING ASSISTANT | 12.4435 | 12.7623 | 13.0895 | 13.3332 | 13.6863 | 14.0396 | |
| CUSTODIAN/WATCHMAN | 12.8701 | 13.2000 | 13.5384 | 13.8693 | 14.2012 | | |
| CYTO-HISTO TECHNOL SUPV | 27.5396 | 28.2643 | 28.9988 | 30.2049 | 31.2011 | 31.7860 | |
| CYTOLOGY TECHNOL CHIEF | 26.6372 | 27.3383 | 28.0386 | 28.6234 | 29.4916 | 30.3782 | |
| CYTOTECHNOLOGIST I | 23.6391 | 24.2612 | 24.8837 | 25.2128 | 26.0994 | 26.9678 | |
| CYTOTECHNOLOGIST II | 24.4212 | 25.0638 | 25.7063 | 26.2005 | 27.0687 | 28.0284 | |
| CYTOTECHNOLOGIST III | 25.2551 | 25.9197 | 26.5842 | 27.1690 | 28.1656 | 29.1440 | |
| DARK ROOM TECHNICIAN | 12.5355 | 12.8570 | 13.1867 | 13.4408 | 13.9044 | 14.2360 | |
| DEPARTMENT SECRETARY | 13.3824 | 13.7255 | 14.0777 | 14.3395 | 14.7190 | 15.0993 | |

**WAGE RATES EFFECTIVE DECEMBER 31, 2000**
**STRUCTURE B2**

KFH 01074

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| DIAG ULTRASONOGRAPHER I | 22.6594 | 23.2556 | 23.8519 | 24.2280 | 24.7634 | 25.6154 | |
| DIAG ULTRASONOGRAPHER II | 24.2457 | 24.8837 | 25.5217 | 26.2482 | 27.4858 | 28.8037 | 29.9610 |
| DIAG ULTRASONOGRAPHER III | 25.4581 | 26.1278 | 26.7977 | 27.5608 | 28.8602 | 30.2438 | 31.4594 |
| DIAG ULTRASONOGRPHR SUPV | 27.4177 | 28.1385 | 28.8602 | 30.1603 | 31.4595 | 32.8494 | 34.0580 |
| DIAG ULTRASNGRPHR TRAINEE | 19.9031 | | | | | | |
| EEG TECHNOLOGIST I | 15.0010 | 15.3858 | 15.7805 | 16.2068 | 16.9745 | 17.6569 | |
| EEG TECHNOLOGIST II | 15.8932 | 16.3006 | 16.7188 | 17.1451 | 17.9981 | 18.8509 | |
| EKG TECHNICIAN | 14.3279 | 14.6952 | 15.0719 | 15.5083 | 16.1364 | 16.6003 | |
| EKG TECHNICIAN SR | 14.9495 | 15.3328 | 15.7261 | 16.2007 | 16.9650 | 17.5556 | |
| EMERGENCY DEPT TECH I | 12.5721 | 12.8946 | 13.2248 | 13.5278 | 13.8304 | 14.0770 | |
| EMERGENCY DEPT TECH II | 14.8707 | 15.2520 | 15.6431 | 16.0305 | 16.4556 | 16.8428 | |
| GARDENER | 13.2090 | 13.5478 | 13.8950 | 14.2326 | 14.5703 | | |
| GARDENER – SENIOR | 14.2388 | 14.6041 | 14.9783 | 15.3190 | 15.6565 | | |
| HISTOLOGIC TECH I | 18.5683 | 19.0569 | 19.5457 | 19.9446 | 20.2597 | 20.5258 | |
| HISTOLOGIC TECH II | 20.0925 | 20.6215 | 21.1499 | 21.6985 | 22.0638 | 22.3132 | |
| HISTOLOGIC TECH TRAINEE | 15.5410 | 15.9495 | 16.3588 | 16.6324 | 17.0207 | 17.4091 | |
| HISTOLOGIC TECHNICIAN SUPV | 22.2320 | 22.8175 | 23.4024 | 23.9845 | 24.4498 | 24.7987 | |
| HOME HEALTH AIDE | 12.5333 | 12.8544 | 13.1842 | 13.4826 | 13.7917 | 14.0674 | |
| HOMEMAKER | 7.8398 | | | | | | |
| HOUSEKEEPING AIDE | 12.0206 | 12.3287 | 12.6448 | 12.9763 | 13.3075 | | |
| HOUSEKEEPING HEAD AIDE | 12.3353 | 12.6516 | 12.9763 | 13.3075 | 13.6386 | | |
| INVASIVE CARDIO SPECIALIST | 24.6014 | 25.3395 | 26.0996 | 26.7520 | 27.4210 | 28.1062 | |
| LABORATORY ASSISTANT I | 12.5093 | 12.8299 | 13.1592 | 13.3795 | 13.6917 | 14.0042 | |
| LABORATORY ASSISTANT II | 13.0363 | 13.3708 | 13.7139 | 13.9320 | 14.3386 | 14.7090 | |
| LABORATORY ASSISTANT III | 13.2567 | 13.5967 | 13.9452 | 14.2002 | 14.5701 | 14.9404 | |
| LABORATORY ASSISTANT SR | 13.5612 | 13.9090 | 14.2656 | 14.5664 | 14.9834 | 15.3993 | |
| LICENSED VOC NURSE | 16.2768 | 16.7052 | 17.1334 | 17.5496 | 17.9538 | 18.3574 | 18.7616 |
| LICENSED VOC NURSE SR | 16.9995 | 17.4466 | 17.8941 | 18.3109 | 18.7146 | 19.1181 | 19.5220 |
| LIFT TECHNICIAN | 12.3525 | 12.6691 | 12.9940 | 13.2921 | 13.6014 | 13.8778 | |
| LINEN ROOM SUPERVISOR | 12.3353 | 12.6516 | 12.9763 | 13.3075 | 13.6386 | | |
| MEDICAL ASSISTANT | 12.5721 | 12.8946 | 13.2248 | 13.5278 | 13.8304 | 14.0770 | |
| MEDICAL ASSISTANT SR | 12.8917 | 13.2222 | 13.5613 | 13.8636 | 14.1662 | 14.4128 | |
| MEDICAL LEGL SPEC SAC ONLY | 15.2073 | 15.5985 | 15.9903 | 16.4572 | 16.9626 | 17.4668 | |

### WAGE RATES EFFECTIVE DECEMBER 31, 2000
### STRUCTURE B2

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| MEDICAL RECORD CODER I | 15.5057 | 15.9134 | 16.3215 | 16.6654 | 17.1419 | 17.6184 | |
| MEDICAL RECORD CODER II | 16.7374 | 17.1780 | 17.6184 | 17.9883 | 18.5026 | 19.0151 | |

143

KFH 01075

| | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| MEDICAL SECRETARY | 15.8815 | 16.2998 | 16.7176 | 17.2163 | 17.7557 | 18.2941 | |
| MEDICAL SECRETARY SR | 16.6754 | 17.1146 | 17.5535 | 18.0773 | 18.6435 | 19.2088 | |
| MEDICAL SECRETARY TRAINEE | 12.8007 | 13.1287 | 13.4652 | 13.7160 | 14.0792 | 14.4427 | |
| MESSENGER DRIVER | 12.1253 | 12.4364 | 12.7552 | 12.9763 | 13.1420 | | |
| MESSENGER DRIVER SR | 12.8441 | 13.1734 | 13.5116 | 13.7324 | 13.8976 | | |
| MONITOR TECHNICIAN | 13.2248 | 13.5567 | 13.8959 | 14.1787 | 14.4785 | 14.8280 | |
| MRI TECHNOLOGIST I | 23.5881 | 24.0599 | 24.5412 | 25.0317 | 25.5180 | | |
| MRI TECHNOLOGIST II | 25.2149 | 25.7192 | 26.2335 | 26.7581 | 27.2934 | 27.8392 | |
| MRI TECHNOLOGIST SUPV | 26.8417 | 27.3783 | 27.9260 | 28.4846 | 29.0542 | 29.6353 | |
| MRI TECHNOLOGIST TRAINEE | 21.5307 | 21.9614 | 22.4005 | | | | |
| NUCLEAR MED TECH SUPVR | 25.1218 | 25.7829 | 26.4440 | 27.2119 | 28.0147 | 28.7831 | |
| NUCLEAR MEDICINE TECH I | 22.7275 | 23.3254 | 23.9238 | 24.6919 | 25.4943 | 26.2621 | |
| NUCLEAR MEDICINE TECH II | 24.1222 | 24.7572 | 25.3918 | 26.1600 | 26.9628 | 27.7310 | |
| NURSE ASSISTANT | 12.4707 | 12.7903 | 13.1183 | 13.4194 | 13.7316 | 14.0106 | |
| NURSE ASSISTANT SR | 12.6082 | 12.9316 | 13.2633 | 13.5638 | 13.8543 | 14.1549 | |
| NUTRITION AIDE | 11.8841 | 12.1886 | 12.5010 | 12.9729 | 13.2872 | | |
| NUTRITION CLERK | 12.0335 | 12.3420 | 12.6585 | 13.1304 | 13.4447 | | |
| NUTRITION CLERK SR | 12.3275 | 12.6359 | 12.9525 | 13.4245 | 13.7387 | | |
| OB TECHNICIAN | 13.1358 | 13.4725 | 13.8178 | 14.1603 | 14.5357 | 14.8780 | |
| OB TECHNICIAN SR | 13.4505 | 13.7954 | 14.1494 | 14.4919 | 14.8671 | 15.2095 | |
| OCCUPNL THERP ASST I CERT | 15.2270 | 15.6174 | 16.0178 | 16.4057 | 16.8306 | 17.2182 | |
| OCCUPNL THERP ASST II CERT | 16.1407 | 16.5543 | 16.9791 | 17.3902 | 17.8403 | 18.2513 | |
| OPTHALMIC PHOTOGRAPHER | 16.3397 | 16.7586 | 17.1884 | 17.5928 | 18.9408 | 20.2892 | |
| OPTHALMIC TECH II CERT | 18.3137 | 18.7831 | 19.2646 | 20.2785 | 21.2927 | 22.3067 | 23.3203 |
| OPTHALMIC TECHNICIAN | 17.4415 | 17.8888 | 18.3472 | 19.3128 | 20.2788 | 21.2444 | 22.2099 |
| ORTHOPEDIC TECHNICIAN | 14.8707 | 15.2520 | 15.6431 | 16.0305 | 16.4556 | 16.8428 | |
| ORTHOPEDIC TECHNICIAN SR | 15.2270 | 15.6174 | 16.0178 | 16.4057 | 16.8306 | 17.2182 | |
| PACEMAKER TECHNICIAN | 15.4173 | 15.7848 | 16.1616 | 16.5978 | 17.2259 | 17.6897 | |
| PACEMAKER TECHNICIAN SR | 16.0391 | 16.4224 | 16.8156 | 17.2904 | 18.0545 | 18.6452 | |
| PATHOLOGY TECH ASST | 14.2511 | 14.6165 | 14.9911 | 15.3625 | 15.7700 | 16.1410 | |
| PATHOLOGY TECH ASST SR | 14.5927 | 14.9668 | 15.3508 | 15.7222 | 16.1293 | 16.5008 | |
| PATIENT TRANSPTION AIDE | 11.7296 | 12.0300 | 12.3387 | 12.5264 | 12.7806 | 13.0347 | |

## WAGE RATES EFFECTIVE DECEMBER 31, 2000
## STRUCTURE B2

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| PHARMACY INTERN | 14.0165 | 14.3759 | 14.7448 | 15.0187 | 15.4169 | 15.8148 | |
| PHARMACY TECH OUTPATIENT | 13.6681 | 14.0186 | 14.3779 | 14.6414 | 15.0239 | 15.4063 | |
| PHARMACY TECH INPATIENT | 14.2204 | 14.5851 | 14.9590 | 15.2331 | 15.6311 | 16.0290 | |
| PHYSICAL THERAPY AIDE | 12.0011 | 12.3090 | 12.6246 | 12.8343 | 13.1324 | 13.4306 | |

KFH 01076

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| PHYSICAL THERAPY AIDE SR | 12.5039 | 12.8248 | 13.1537 | 13.3966 | 13.7499 | 14.1034 | |
| PHYSICAL THERAPY ASST I | 16.5213 | 16.9450 | 17.3794 | 17.8002 | 18.2611 | 18.6817 | |
| PHYSICAL THERAPY ASST II | 17.5128 | 17.9615 | 18.4224 | 18.8684 | 19.3569 | 19.8027 | |
| PHYSICAL THERAPY TECH SR | 13.4505 | 13.7954 | 14.1494 | 14.4919 | 14.8671 | 15.2095 | |
| PHYSICAL THER TECHNICIAN | 13.1358 | 13.4725 | 13.8178 | 14.1603 | 14.5357 | 14.8780 | |
| | | | | | | | |
| PROJECTOR OPERATOR | 15.0453 | 15.4343 | 15.8246 | | | | |
| PROJECTOR OPERATOR | 12.1570 | 12.4690 | 12.7882 | 13.1198 | 13.4508 | | |
| | | | | | | | |
| PSYCHIATRIC ATTENDANT | 13.8816 | 14.2471 | 14.6122 | 14.9717 | 15.3314 | 15.6786 | |
| PSYCHIATRIC TECHNICIAN | 16.0465 | 16.4689 | 16.8910 | 17.3013 | 17.6996 | 18.0976 | 18.4960 |
| PSYCHIATRIC TECHNICIAN SR | 16.7589 | 17.1997 | 17.6409 | 18.0518 | 18.4498 | 18.8476 | 19.2458 |
| | | | | | | | |
| RADIOLOGIC TECH I | 18.8243 | 19.3192 | 19.8148 | 20.1276 | 20.5719 | | |
| RADIOLOGIC TECH II | 19.9505 | 20.4754 | 21.0005 | 21.4762 | 22.1453 | | |
| RADIOLOGIC TECH III | 20.8190 | 21.3672 | 21.9151 | 22.5392 | 23.6019 | 24.6651 | 25.7274 |
| RADIOLOGIC TECH LIMITED | 17.9647 | 18.4370 | 18.9099 | 19.2086 | 19.6325 | | |
| RADIOLOGIC TECH SUPV | 22.4218 | 23.0115 | 23.6019 | 24.6651 | 25.7274 | 26.7898 | 27.8528 |
| | | | | | | | |
| REG RESP THERAPY TECH I | 20.0929 | 20.6217 | 21.1500 | 21.5607 | 22.0741 | 22.5874 | |
| REG RESP THERAPY TECH II | 21.1657 | 21.7228 | 22.2796 | 22.7930 | 23.6146 | 24.6411 | 25.6676 |
| | | | | | | | |
| RESP CARE PRACTITIONER I | 19.1362 | 19.6396 | 20.1431 | 20.5341 | 21.0230 | 21.5121 | |
| RESP CARE PRACTITIONER II | 20.1577 | 20.6882 | 21.2187 | 21.7077 | 22.4902 | 23.4676 | 24.4453 |
| RESP CARE PRACT SUPV | 22.2240 | 22.8086 | 23.3935 | 23.9327 | 24.7951 | 25.8730 | 26.9511 |
| RESPIRATORY CARE PERMITTEE | 17.2225 | | | | | | |
| | | | | | | | |
| RESPIRATORY SUPPLY AIDE | 12.3525 | 12.6691 | 12.9940 | 13.2921 | 13.6014 | 13.8778 | |
| RESPIRATORY SUPPLY AIDE SR | 12.5647 | 12.8868 | 13.2173 | 13.4607 | 13.8138 | 14.1672 | |
| | | | | | | | |
| SERVICE PARTNER | 12.0206 | 12.3287 | 12.6448 | 12.9761 | 13.3075 | | |
| | | | | | | | |
| STERILE PROC TECH II CERT | 13.3603 | 13.7028 | 14.0543 | 14.3771 | 14.7113 | 15.0099 | |
| STERILE PROC TECH SR CERT | 13.8949 | 14.2510 | 14.6166 | 14.9521 | 15.2997 | 15.6104 | |
| STERILE PROCESSING TECH I | 12.8465 | 13.1758 | 13.5138 | 13.8239 | 14.1456 | 14.4325 | |
| | | | | | | | |
| STOREKEEPER | 12.1570 | 12.4690 | 12.7882 | 13.1198 | 13.4508 | | |
| STOREKEEPER – CHIEF | 13.6220 | 13.9710 | 14.3293 | 14.7178 | 15.0551 | | |
| STOREKEEPER I | 12.3863 | 12.7038 | 13.0297 | 13.3670 | 13.7048 | | |
| STOREKEEPER II | 12.5856 | 12.9083 | 13.2392 | 13.5744 | 14.0366 | | |
| | | | | | | | |
| SURGICAL ASSISTANT CERT | 16.7414 | 17.1708 | 17.6112 | 18.0671 | 18.6095 | 19.2370 | |
| SURGICAL ASST TRAINEE | 15.8375 | 15.8375 | | | | | |
| SURGICAL ASST. | 16.3332 | 16.7520 | 17.1814 | 17.6264 | 18.1559 | 18.7679 | |

## WAGE RATES EFFECTIVE DECEMBER 31, 2000
## STRUCTURE B2

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| SURGICAL TECHNICIAN | 15.2266 | 15.6168 | 16.0173 | 16.4140 | 16.8493 | 17.2458 | |
| SURGICAL TECHNICIAN SR | 15.5913 | 15.9910 | 16.4010 | 16.7982 | 17.2332 | 17.6302 | |
| | | | | | | | |
| UNIT ASSISTANT | 12.8241 | 13.1529 | 13.4901 | 13.7717 | 14.0696 | 14.4170 | |
| UNIT ASSISTANT SR | 13.0898 | 13.4341 | 13.7788 | 14.0350 | 14.4066 | 14.7788 | |
| | | | | | | | |
| VISION SERVICES ASST I | 12.5721 | 12.8946 | 13.2248 | 13.5278 | 13.8304 | 14.0770 | |
| VISION SERVICES ASST II | 13.0139 | 13.3475 | 13.6896 | 14.0032 | 14.3163 | 14.5714 | |

145

KFH 01077

YARDKEEPER          12.0308  12.3395   12.6559   12.9873   13.3183

146

KFH 01078



**WAGE RATES EFFECTIVE OCTOBER 7, 2001**
**STRUCTURE B2**

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| ALLRGY ASST SUPV CENTRL LAB | 15.1069 | 15.4942 | 15.8916 | 16.2529 | 16.8012 | 17.3122 | |
| ALLERGY TECHNICIAN | 14.1522 | 14.5150 | 14.8873 | 15.1741 | 15.5846 | 15.9838 | |
| ALLERGY TECHNICIAN SR | 14.7263 | 15.1037 | 15.4912 | 15.8278 | 16.2885 | 16.7370 | |
| ALLERGY TECHNICIAN TRAINEE | 13.4257 | 13.7701 | 14.1233 | 14.3847 | 14.7443 | 15.0826 | |
| ANESTHESIA SUPPLY AIDE | 12.8466 | 13.1759 | 13.5138 | 13.8238 | 14.1455 | 14.4329 | |
| ANESTHESIA SUPPLY AIDE SR | 13.0673 | 13.4023 | 13.7460 | 13.9991 | 14.3664 | 14.7339 | |
| ANESTHESIA TECH ASST SR | 15.1916 | 15.5812 | 15.9802 | 16.3765 | 16.8108 | 17.2065 | |
| ANESTHESIA TECH ASST | 14.8211 | 15.2013 | 15.5906 | 15.9770 | 16.4008 | 16.7867 | |
| BONE DENSITOMETRY TECH | 14.9010 | 15.2830 | 15.6748 | 16.1286 | 16.7819 | 17.2643 | |
| CARDIOVASCULAR TECH | 18.6046 | 19.0815 | 19.5707 | 20.2962 | 21.3828 | 22.4704 | |
| CARDIOVASCULAR TECH SR | 19.9825 | 20.4950 | 21.0206 | 21.7453 | 22.8325 | 23.9196 | |
| CARE PARTNER | 12.9695 | 13.3019 | 13.6430 | 13.9562 | 14.2809 | 14.5708 | |
| CENTRAL SUPPLY TECHNICIAN | 12.8466 | 13.1759 | 13.5138 | 13.8238 | 14.1455 | 14.4329 | |
| CLERICAL GRADE 1 | 11.9166 | 12.2223 | 12.5353 | 12.7307 | 12.9954 | 13.2592 | |
| CLERICAL GRADE 2 | 12.4177 | 12.7363 | 13.0626 | 13.2814 | 13.5916 | 13.9017 | |
| CLERICAL GRADE 3 | 12.6794 | 13.0045 | 13.3378 | 13.6131 | 13.9130 | 14.2518 | |
| CLERICAL GRADE 4 | 12.9412 | 13.2728 | 13.6131 | 13.8665 | 14.2338 | 14.6012 | |
| CLERICAL GRADE 5 | 13.4623 | 13.8072 | 14.1614 | 14.4598 | 14.8735 | 15.2865 | |
| CLERICAL GRADE 6 | 14.0724 | 14.4335 | 14.8037 | 15.1479 | 15.6188 | 16.0895 | |
| CLERICAL GRADE 7 | 14.6774 | 15.0535 | 15.4395 | 15.8186 | 16.3700 | 16.9211 | |
| COMMUNICATION OPERATOR | 12.6553 | 12.9800 | 13.3125 | 13.5357 | 13.8517 | 14.0502 | 14.5302 |
| COMMUNICATION OPER SR | 12.9220 | 13.2534 | 13.5930 | 13.8736 | 14.1793 | 14.3778 | 14.8806 |
| COOK A | 13.8681 | 14.2237 | 14.5886 | 14.9459 | 15.3040 | | |
| COOK IN CHARGE (SR) | 14.4641 | 14.8349 | 15.2153 | 15.5734 | 15.9308 | | |
| CT SCHEDULING ASSISTANT | 12.9412 | 13.2728 | 13.6131 | 13.8665 | 14.2338 | 14.6012 | |
| CUSTODIAN/WATCHMAN | 13.3849 | 13.7280 | 14.0799 | 14.4241 | 14.7692 | | |
| CYTO-HISTO TECHNOL SUPV | 28.6412 | 29.3949 | 30.1484 | 31.4131 | 32.4491 | 33.0574 | |
| CYTOLOGY TECHNOL CHIEF | 27.7027 | 28.4318 | 29.1601 | 29.7683 | 30.6713 | 31.5933 | |
| CYTOTECHNOLOGIST I | 24.5847 | 25.2316 | 25.8790 | 26.2213 | 27.1434 | 28.0465 | |
| CYTOTECHNOLOGIST II | 25.3980 | 26.0664 | 26.7346 | 27.2485 | 28.1514 | 29.1495 | |
| CYTOTECHNOLOGIST III | 26.2653 | 26.9565 | 27.6476 | 28.2558 | 29.2922 | 30.3098 | |
| DARK ROOM TECHNICIAN | 13.0369 | 13.3713 | 13.7142 | 13.9784 | 14.4606 | 14.8054 | |
| DEPARTMENT SECRETARY | 13.9177 | 14.2745 | 14.6408 | 14.9131 | 15.3078 | 15.7033 | |

**WAGE RATES EFFECTIVE OCTOBER 7, 2001**
**STRUCTURE B2**

147

KFH 01079

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| DIAG ULTRASONOGRAPHER I | 23.5658 | 24.1858 | 24.8060 | 25.1971 | 25.7539 | 26.6400 | |
| DIAG ULTRASONOGRAPHER II | 25.2155 | 25.8790 | 26.5426 | 27.2981 | 28.5852 | 29.9558 | 31.1594 |
| DIAG ULTRASONOGRAPHER III | 26.4764 | 27.1729 | 27.8696 | 28.6632 | 30.0146 | 31.4536 | 32.7178 |
| DIAG ULTRASONOGRPHR SUPV | 28.5144 | 29.2640 | 30.0146 | 31.3667 | 32.7179 | 34.1634 | 35.4203 |
| DIAG ULTRASONO TRAINEE | 20.6992 | | | | | | |
| | | | | | | | |
| EEG TECHNOLOGIST I | 15.6010 | 16.0012 | 16.4117 | 16.8551 | 17.6535 | 18.3632 | |
| EEG TECHNOLOGIST II | 16.5289 | 16.9526 | 17.3876 | 17.8309 | 18.7180 | 19.6049 | |
| EKG TECHNICIAN | 14.9010 | 15.2830 | 15.6748 | 16.1286 | 16.7819 | 17.2643 | |
| EKG TECHNICIAN SR | 15.5475 | 15.9461 | 16.3551 | 16.8487 | 17.6436 | 18.2578 | |
| | | | | | | | |
| EMERGENCY DEPT TECH I | 13.0750 | 13.4104 | 13.7538 | 14.0689 | 14.3836 | 14.6401 | |
| EMERGENCY DEPT TECHN II | 15.4655 | 15.8621 | 16.2688 | 16.6717 | 17.1138 | 17.5165 | |
| | | | | | | | |
| GARDENER | 13.7374 | 14.0897 | 14.4508 | 14.8019 | 15.1531 | | |
| GARDENER SR | 14.8084 | 15.1883 | 15.5774 | 15.9318 | 16.2828 | | |
| | | | | | | | |
| HISTOLOGIC TECH I | 19.3110 | 19.8192 | 20.3275 | 20.7424 | 21.0701 | 21.3468 | |
| HISTOLOGIC TECH II | 20.8962 | 21.4464 | 21.9959 | 22.5664 | 22.9464 | 23.2057 | |
| HISTOLOGIC TECH TRAINEE | 16.1626 | 16.5875 | 17.0132 | 17.2977 | 17.7015 | 18.1055 | |
| HISTOLOGIC TECHNICIAN SUPVR | 23.1213 | 23.7302 | 24.3385 | 24.9439 | 25.4278 | 25.7906 | |
| | | | | | | | |
| HOME HEALTH AIDE | 13.0346 | 13.3686 | 13.7116 | 14.0219 | 14.3434 | 14.6301 | |
| HOMEMAKER | 8.1534 | | | | | | |
| | | | | | | | |
| HOUSEKEEPING AIDE | 12.5014 | 12.8218 | 13.1506 | 13.4954 | 13.8398 | | |
| HOUSEKEEPING HEAD AIDE | 12.8287 | 13.1577 | 13.4954 | 13.8398 | 14.1841 | | |
| | | | | | | | |
| INVASIVE CARDIO SPECIALIST | 25.5855 | 26.3531 | 27.1436 | 27.8221 | 28.5178 | 29.2304 | |
| | | | | | | | |
| LABORATORY ASSISTANT I | 13.0097 | 13.3431 | 13.6856 | 13.9147 | 14.2394 | 14.5644 | |
| LABORATORY ASSISTANT II | 13.5578 | 13.9056 | 14.2625 | 14.4893 | 14.9121 | 15.2974 | |
| LABORATORY ASSISTANT III | 13.7870 | 14.1406 | 14.5030 | 14.7682 | 15.1529 | 15.5380 | |
| LABORATORY ASSISTANT SR | 14.1036 | 14.4654 | 14.8362 | 15.1491 | 15.5827 | 16.0153 | |
| | | | | | | | |
| LICENSED VOCATIONAL NURSE | 16.9279 | 17.3734 | 17.8187 | 18.2516 | 18.6720 | 19.0917 | 19.5121 |
| LICENSED VOC NURSE SR | 17.6795 | 18.1445 | 18.6099 | 19.0433 | 19.4632 | 19.8828 | 20.3029 |
| | | | | | | | |
| LIFT TECHNICIAN | 12.8466 | 13.1759 | 13.5138 | 13.8238 | 14.1455 | 14.4329 | |
| | | | | | | | |
| LINEN ROOM SUPERVISOR | 12.8287 | 13.1577 | 13.4954 | 13.8398 | 14.1841 | | |
| | | | | | | | |
| MEDICAL ASSISTANT | 13.0750 | 13.4104 | 13.7538 | 14.0689 | 14.3836 | 14.6401 | |
| MEDICAL ASSISTANT SR | 13.4074 | 13.7511 | 14.1038 | 14.4181 | 14.7328 | 14.9893 | |
| | | | | | | | |
| MEDICAL LEGAL SPEC SAC ONLY | 15.8156 | 16.2224 | 16.6299 | 17.1155 | 17.6411 | 18.1655 | |

### WAGE RATES EFFECTIVE OCTOBER 7, 2001
### STRUCTURE B2

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| MEDICAL RECORD CODER I | 16.1259 | 16.5499 | 16.9744 | 17.3320 | 17.8276 | 18.3231 | |
| MEDICAL RECORD CODER II | 17.4069 | 17.8651 | 18.3231 | 18.7078 | 19.2427 | 19.7757 | |

148

KFH 01080

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| MEDICAL SECRETARY | 16.5168 | 16.9518 | 17.3863 | 17.9050 | 18.4659 | 19.0259 | |
| MEDICAL SECRETARY SR | 17.3424 | 17.7992 | 18.2556 | 18.8004 | 19.3892 | 19.9772 | |
| MEDICAL SECRETARY TRAINEE | 13.3127 | 13.6538 | 14.0038 | 14.2646 | 14.6424 | 15.0204 | |
| MESSENGER DRIVER | 12.6103 | 12.9339 | 13.2654 | 13.4954 | 13.6677 | | |
| MESSENGER DRIVER SR | 13.3579 | 13.7003 | 14.0521 | 14.2817 | 14.4535 | | |
| MONITOR TECHNICIAN | 13.7538 | 14.0990 | 14.4517 | 14.7458 | 15.0576 | 15.4211 | |
| MRI TECHNOLOGIST I | 24.5316 | 25.0223 | 25.5228 | 26.0330 | 26.5387 | | |
| MRI TECHNOLOGIST II | 26.2235 | 26.7480 | 27.2828 | 27.8284 | 28.3851 | 28.9528 | |
| MRI TECHNOLOGIST SUPVR | 27.9154 | 28.4734 | 29.0430 | 29.6240 | 30.2164 | 30.8207 | |
| MRI TECHNOLOGIST TRAINEE | 22.3919 | 22.8399 | 23.2965 | | | | |
| NUCLEAR MED TECH SUPV | 26.1267 | 26.8142 | 27.5018 | 28.3004 | 29.1353 | 29.9344 | |
| NUCLEAR MEDICINE TECH I | 23.6366 | 24.2584 | 24.8808 | 25.6796 | 26.5141 | 27.3126 | |
| NUCLEAR MEDICINE TECH II | 25.0871 | 25.7475 | 26.4075 | 27.2064 | 28.0413 | 28.8402 | |
| NURSE ASSISTANT | 12.9695 | 13.3019 | 13.6430 | 13.9562 | 14.2809 | 14.5710 | |
| NURSE ASSISTANT SR | 13.1125 | 13.4489 | 13.7938 | 14.1064 | 14.4085 | 14.7211 | |
| NUTRITION AIDE | 12.3595 | 12.6761 | 13.0010 | 13.4918 | 13.8187 | | |
| NUTRITION CLERK | 12.5148 | 12.8357 | 13.1648 | 13.6556 | 13.9825 | | |
| NUTRITION CLERK SENIOR | 12.8206 | 13.1413 | 13.4706 | 13.9615 | 14.2882 | | |
| OB TECHNICIAN | 13.6612 | 14.0114 | 14.3705 | 14.7267 | 15.1171 | 15.4731 | |
| OB TECHNICIAN SR | 13.9885 | 14.3472 | 14.7154 | 15.0716 | 15.4618 | 15.8179 | |
| OCCUPNL THER ASST I CERT | 15.8361 | 16.2421 | 16.6585 | 17.0619 | 17.5038 | 17.9069 | |
| OCCUPNL THERP ASST II CERT | 16.7863 | 17.2165 | 17.6583 | 18.0858 | 18.5539 | 18.9814 | |
| OPTHALMIC PHOTOGRAPHER | 16.9933 | 17.4289 | 17.8759 | 18.2965 | 19.6984 | 21.1008 | |
| OPTHALMIC TECH II CERT | 19.0462 | 19.5344 | 20.0352 | 21.0896 | 22.1444 | 23.1990 | 24.2531 |
| OPTHALMIC TECHNICIAN | 18.1392 | 18.6044 | 19.0811 | 20.0853 | 21.0900 | 22.0942 | 23.0983 |
| ORTHOPEDIC TECHNICIAN | 15.4655 | 15.8621 | 16.2688 | 16.6717 | 17.1138 | 17.5165 | |
| ORTHOPEDIC TECHNICIAN SR | 15.8361 | 16.2421 | 16.6585 | 17.0619 | 17.5038 | 17.9069 | |
| PACEMAKER TECHNICIAN | 16.0340 | 16.4162 | 16.8081 | 17.2617 | 17.9149 | 18.3973 | |
| PACEMAKER TECHNICIAN SR | 16.6807 | 17.0793 | 17.4882 | 17.9820 | 18.7767 | 19.3910 | |
| PATHOLOGY TECH ASST | 14.8211 | 15.2012 | 15.5907 | 15.9770 | 16.4008 | 16.7866 | |
| PATHOLOGY TECH ASST SR | 15.1764 | 15.5655 | 15.9648 | 16.3511 | 16.7745 | 17.1608 | |
| PATIENT TRANS AIDE | 12.1988 | 12.5112 | 12.8322 | 13.0275 | 13.2918 | 13.5561 | |

## WAGE RATES EFFECTIVE OCTOBER 7, 2001
## STRUCTURE B2

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| PHARMACY INTERN | 14.5772 | 14.9509 | 15.3346 | 15.6194 | 16.0336 | 16.4474 | |
| PHARMACY TECH OUTPATIENT | 14.2148 | 14.5793 | 14.9530 | 15.2271 | 15.6249 | 16.0226 | |
| PHARMACY TECH INPATIENT | 14.7892 | 15.1685 | 15.5574 | 15.8424 | 16.2563 | 16.6702 | |
| PHYSICAL THERAPY AIDE | 12.4811 | 12.8014 | 13.1296 | 13.3477 | 13.6577 | 13.9678 | |

149

KFH 01081


| | | | | | | | |
|---|---|---|---|---|---|---|---|
| PHYSICAL THERAPY AIDE SR | 13.0041 | 13.3378 | 13.6798 | 13.9325 | 14.2999 | 14.6675 | |
| PHYSICAL THERAPY ASST I | 17.1822 | 17.6228 | 18.0746 | 18.5122 | 18.9915 | 19.4290 | |
| PHYSICAL THERAPY ASST II | 18.2133 | 18.6800 | 19.1593 | 19.6231 | 20.1312 | 20.5948 | |
| PHYSICAL THERAPY TECH SR | 13.9885 | 14.3472 | 14.7154 | 15.0716 | 15.4618 | 15.8179 | |
| PHYSICAL THERAPY TECH | 13.6612 | 14.0114 | 14.3705 | 14.7267 | 15.1171 | 15.4731 | |
| PROJECTOR OPERATOR | 15.6471 | 16.0517 | 16.4576 | | | | |
| PROJECTOR OPERATOR | 12.6433 | 12.9678 | 13.2997 | 13.6446 | 13.9888 | | |
| PSYCHIATRIC ATTENDANT | 14.4369 | 14.8170 | 15.1967 | 15.5706 | 15.9447 | 16.3057 | |
| PSYCHIATRIC TECHNICIAN | 16.6884 | 17.1277 | 17.5666 | 17.9934 | 18.4076 | 18.8215 | 19.2358 |
| PSYCHIATRIC TECHNICIAN SR | 17.4293 | 17.8877 | 18.3465 | 18.7739 | 19.1878 | 19.6015 | 20.0156 |
| RADIOLOGIC TECH CERTIFIED | 18.6833 | 19.1745 | 19.6663 | 19.9769 | 20.4178 | | |
| RADIOLOGIC TECH I | 19.5773 | 20.0920 | 20.6074 | 20.9327 | 21.3948 | | |
| RADIOLOGIC TECH II | 20.7485 | 21.2944 | 21.8405 | 22.3352 | 23.0311 | | |
| RADIOLOGIC TECH III | 21.6518 | 22.2219 | 22.7917 | 23.4408 | 24.5460 | 25.6517 | 26.7565 |
| RADIOLOGIC TECH SUPV | 23.3187 | 23.9320 | 24.5460 | 25.6517 | 26.7565 | 27.8614 | 28.9669 |
| REG RESP THERAPY TECH I | 20.8966 | 21.4466 | 21.9960 | 22.4231 | 22.9571 | 23.4909 | |
| REG RESP THERAPY TECH II | 22.0123 | 22.5917 | 23.1708 | 23.7047 | 24.5592 | 25.6267 | 26.6943 |
| RESP CARE PRACTITIONER I | 19.9016 | 20.4252 | 20.9488 | 21.3555 | 21.8639 | 22.3726 | |
| RESP CARE PRACTITIONER II | 20.9640 | 21.5157 | 22.0674 | 22.5760 | 23.3898 | 24.4063 | 25.4231 |
| RESP CARE PRACT SUPVR | 23.1130 | 23.7209 | 24.3292 | 24.8900 | 25.7869 | 26.9079 | 28.0291 |
| RESPIRATORY CARE PERMITTEE | 17.9114 | | | | | | |
| RESPIRATORY SUPPLY AIDE | 12.8466 | 13.1759 | 13.5138 | 13.8238 | 14.1455 | 14.4329 | |
| RESPIRATORY SUPPLY AIDE SR | 13.0673 | 13.4023 | 13.7460 | 13.9991 | 14.3664 | 14.7339 | |
| SERVICE PARTNER | 12.5014 | 12.8218 | 13.1506 | 13.4951 | 13.8398 | | |
| STERILE PROC TECH II CERT | 13.8947 | 14.2509 | 14.6165 | 14.9522 | 15.2998 | 15.6103 | |
| STERILE PROC TECH SR CERT | 14.4507 | 14.8210 | 15.2013 | 15.5502 | 15.9117 | 16.2348 | |
| STERILE PROCESSING TECH I | 13.3604 | 13.7028 | 14.0544 | 14.3769 | 14.7114 | 15.0098 | |
| STOREKEEPER | 12.6433 | 12.9678 | 13.2997 | 13.6446 | 13.9888 | | |
| STOREKEEPER – CHIEF | 14.1669 | 14.5298 | 14.9025 | 15.3065 | 15.6573 | | |
| STOREKEEPER I | 12.8818 | 13.2120 | 13.5509 | 13.9017 | 14.2530 | | |
| STOREKEEPER II | 13.0890 | 13.4246 | 13.7688 | 14.1174 | 14.5981 | | |
| SURGICAL ASSISTANT CERT | 17.4111 | 17.8576 | 18.3156 | 18.7898 | 19.3539 | 20.0065 | |
| SURGICAL ASST. | 16.9865 | 17.4221 | 17.8687 | 18.3315 | 18.8821 | 19.5186 | |

**WAGE RATES EFFECTIVE OCTOBER 7, 2001**
**STRUCTURE B2**

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| SURGICAL TECHNICIAN | 15.8357 | 16.2415 | 16.6580 | 17.0706 | 17.5233 | 17.9356 | |
| SURGICAL TECHNICIAN SR | 16.2150 | 16.6306 | 17.0570 | 17.4701 | 17.9225 | 18.3354 | |
| TRAINEE SURGICAL ASST | 16.4710 | | | | | | |
| UNIT ASSISTANT | 13.3371 | 13.6790 | 14.0297 | 14.3226 | 14.6324 | 14.9937 | |
| UNIT ASSISTANT SR | 13.6134 | 13.9715 | 14.3300 | 14.5964 | 14.9829 | 15.3700 | |

 

| | | | | | | |
|---|---|---|---|---|---|---|
| VISION SERVICES ASST I | 13.0750 | 13.4104 | 13.7538 | 14.0689 | 14.3836 | 14.6401 |
| VISION SERVICES ASST II | 13.5345 | 13.8814 | 14.2372 | 14.5633 | 14.8890 | 15.1543 |
| YARDKEEPER | 12.5120 | 12.8331 | 13.1621 | 13.5068 | 13.8510 | |

KFH 01083



**WAGE RATES EFFECTIVE JANUARY 1, 2002
STRUCTURE B2**

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| ALLRGY ASST SUPV CENTRL LAB | 15.2580 | 15.6491 | 16.0505 | 16.4154 | 16.9692 | 17.4853 | |
| ALLERGY TECHNICIAN | 14.2937 | 14.6602 | 15.0362 | 15.3258 | 15.7404 | 16.1436 | |
| ALLERGY TECHNICIAN SR | 14.8736 | 15.2547 | 15.6461 | 15.9861 | 16.4514 | 16.9044 | |
| ALLERGY TECHNICIAN TRAINEE | 13.5600 | 13.9078 | 14.2645 | 14.5285 | 14.8917 | 15.2334 | |
| ANESTHESIA SUPPLY AIDE | 12.9751 | 13.3077 | 13.6489 | 13.9620 | 14.2870 | 14.5772 | |
| ANESTHESIA SUPPLY AIDE SR | 13.1980 | 13.5363 | 13.8835 | 14.1391 | 14.5101 | 14.8812 | |
| ANESTHESIA TECH ASST SR | 15.3435 | 15.7370 | 16.1400 | 16.5403 | 16.9789 | 17.3786 | |
| ANESTHESIA TECH ASST | 14.9693 | 15.3533 | 15.7465 | 16.1368 | 16.5648 | 16.9546 | |
| BONE DENSITOMETRY TECH | 15.0500 | 15.4358 | 15.8315 | 16.2899 | 16.9497 | 17.4369 | |
| CARDIOVASCULAR TECH | 18.7906 | 19.2723 | 19.7664 | 20.4992 | 21.5966 | 22.6951 | |
| CARDIOVASCULAR TECHNICIAN | 20.1823 | 20.7000 | 21.2308 | 21.9628 | 23.0608 | 24.1588 | |
| CARE PARTNER | 13.0992 | 13.4349 | 13.7794 | 14.0958 | 14.4237 | 14.7165 | |
| CENTRAL SUPPLY TECHNICIAN | 12.9751 | 13.3077 | 13.6489 | 13.9620 | 14.2870 | 14.5772 | |
| CLERICAL GRADE 1 | 12.0358 | 12.3445 | 12.6607 | 12.8580 | 13.1254 | 13.3918 | |
| CLERICAL GRADE 2 | 12.5419 | 12.8637 | 13.1932 | 13.4142 | 13.7275 | 14.0407 | |
| CLERICAL GRADE 3 | 12.8062 | 13.1345 | 13.4712 | 13.7492 | 14.0521 | 14.3943 | |
| CLERICAL GRADE 4 | 13.0706 | 13.4055 | 13.7492 | 14.0052 | 14.3761 | 14.7472 | |
| CLERICAL GRADE 5 | 13.5969 | 13.9453 | 14.3030 | 14.6044 | 15.0222 | 15.4394 | |
| CLERICAL GRADE 6 | 14.2131 | 14.5778 | 14.9517 | 15.2994 | 15.7750 | 16.2504 | |
| CLERICAL GRADE 7 | 14.8242 | 15.2040 | 15.5939 | 15.9768 | 16.5337 | 17.0903 | |
| COMMUNICATION OPERATOR | 12.7819 | 13.1098 | 13.4456 | 13.6711 | 13.9902 | 14.1907 | 14.6755 |
| COMMUNICATION OPERATOR SR | 13.0512 | 13.3859 | 13.7289 | 14.0123 | 14.3211 | 14.5216 | 15.0294 |
| COOK A | 14.0068 | 14.3659 | 14.7345 | 15.0954 | 15.4570 | | |
| COOK IN CHARGE (SR) | 14.6087 | 14.9832 | 15.3675 | 15.7291 | 16.0901 | | |
| CT SCHEDULING ASSISTANT | 13.0706 | 13.4055 | 13.7492 | 14.0052 | 14.3761 | 14.7472 | |
| CUSTODIAN/WATCHMAN | 13.5187 | 13.8653 | 14.2207 | 14.5683 | 14.9169 | | |
| CYTO-HISTO TECHNOL- SUPV | 28.9276 | 29.6888 | 30.4499 | 31.7272 | 32.7736 | 33.3880 | |
| CYTOLOGY TECHNOL- CHIEF | 27.9797 | 28.7161 | 29.4517 | 30.0660 | 30.9780 | 31.9092 | |
| CYTOTECHNOLOGIST I | 24.8305 | 25.4839 | 26.1378 | 26.4835 | 27.4148 | 28.3270 | |
| CYTOTECHNOLOGIST II | 25.6520 | 26.3271 | 27.0019 | 27.5210 | 28.4329 | 29.4410 | |
| CYTOTECHNOLOGIST III | 26.5280 | 27.2261 | 27.9241 | 28.5384 | 29.5851 | 30.6129 | |
| DARK ROOM TECHNICIAN | 13.1673 | 13.5050 | 13.8513 | 14.1182 | 14.6052 | 14.9535 | |
| DEPARTMENT SECRETARY | 14.0569 | 14.4172 | 14.7872 | 15.0622 | 15.4609 | 15.8603 | |

**WAGE RATES EFFECTIVE JANUARY 1, 2002
STRUCTURE B2**

KFH 01084



| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| DIAG ULTRASONOGRAPHER I | 23.8015 | 24.4277 | 25.0541 | 25.4491 | 26.0114 | 26.9064 | |
| DIAG ULTRASONOGRAPHER II | 25.4677 | 26.1378 | 26.8080 | 27.5711 | 28.8711 | 30.2554 | 31.4710 |
| DIAG ULTRASONOGRAPHER III | 26.7412 | 27.4446 | 28.1483 | 28.9498 | 30.3147 | 31.7681 | 33.0450 |
| DIAG ULTRASONOGRPHR SUPV | 28.7995 | 29.5566 | 30.3147 | 31.6804 | 33.0451 | 34.5050 | 35.7745 |
| DIAG ULTRASONGRPHR TRAINEE | 20.9062 | | | | | | |
| | | | | | | | |
| EEG TECHNOLOGIST I | 15.7570 | 16.1612 | 16.5758 | 17.0237 | 17.8300 | 18.5468 | |
| EEG TECHNOLOGIST II | 16.6942 | 17.1221 | 17.5615 | 18.0092 | 18.9052 | 19.8009 | |
| | | | | | | | |
| EKG TECHNICIAN | 15.0500 | 15.4358 | 15.8315 | 16.2899 | 16.9497 | 17.4369 | |
| EKG TECHNICIAN SR | 15.7030 | 16.1056 | 16.5187 | 17.0172 | 17.8200 | 18.4404 | |
| | | | | | | | |
| EMERGENCY DEPT TECH I | 13.2058 | 13.5445 | 13.8913 | 14.2096 | 14.5274 | 14.7865 | |
| EMERGENCY DEPT TECH II | 15.6202 | 16.0207 | 16.4315 | 16.8384 | 17.2849 | 17.6917 | |
| | | | | | | | |
| GARDENER | 13.8748 | 14.2306 | 14.5953 | 14.9499 | 15.3046 | | |
| GARDENER – SENIOR | 14.9565 | 15.3402 | 15.7332 | 16.0911 | 16.4456 | | |
| | | | | | | | |
| HISTOLOGIC TECH I | 19.5041 | 20.0174 | 20.5308 | 20.9498 | 21.2808 | 21.5603 | |
| HISTOLOGIC TECH II | 21.1052 | 21.6609 | 22.2159 | 22.7921 | 23.1759 | 23.4378 | |
| HISTOLOGIC TECH TRAINEE | 16.3242 | 16.7534 | 17.1833 | 17.4707 | 17.8785 | 18.2866 | |
| HISTOLOGIC TECHNICIAN SUPV | 23.3525 | 23.9675 | 24.5819 | 25.1933 | 25.6821 | 26.0485 | |
| | | | | | | | |
| HOME HEALTH AIDE | 13.1649 | 13.5023 | 13.8487 | 14.1621 | 14.4868 | 14.7764 | |
| HOMEMAKER | 8.2349 | | | | | | |
| | | | | | | | |
| HOUSEKEEPING AIDE | 12.6264 | 12.9500 | 13.2821 | 13.6304 | 13.9782 | | |
| HOUSEKEEPING HEAD AIDE | 12.9570 | 13.2893 | 13.6304 | 13.9782 | 14.3259 | | |
| | | | | | | | |
| INVASIVE CARDIO SPECIALIST | 25.8414 | 26.6166 | 27.4150 | 28.1003 | 28.8030 | 29.5227 | |
| | | | | | | | |
| LABORATORY ASSISTANT I | 13.1398 | 13.4765 | 13.8225 | 14.0538 | 14.3818 | 14.7100 | |
| LABORATORY ASSISTANT II | 13.6934 | 14.0447 | 14.4051 | 14.6342 | 15.0612 | 15.4504 | |
| LABORATORY ASSISTANT III | 13.9249 | 14.2820 | 14.6480 | 14.9159 | 15.3044 | 15.6934 | |
| LABORATORY ASSISTANT SR | 14.2446 | 14.6101 | 14.9846 | 15.3006 | 15.7385 | 16.1755 | |
| | | | | | | | |
| LICENSED VOC NURSE | 17.0972 | 17.5471 | 17.9969 | 18.4341 | 18.8587 | 19.2826 | 19.7072 |
| LICENSED VOC NURSE SR | 17.8563 | 18.3259 | 18.7960 | 19.2337 | 19.6578 | 20.0816 | 20.5059 |
| | | | | | | | |
| LIFT TECHNICIAN | 12.9751 | 13.3077 | 13.6489 | 13.9620 | 14.2870 | 14.5772 | |
| | | | | | | | |
| LINEN ROOM SUPERVISOR | 12.9570 | 13.2893 | 13.6304 | 13.9782 | 14.3259 | | |
| | | | | | | | |
| MEDICAL ASSISTANT | 13.2058 | 13.5445 | 13.8913 | 14.2096 | 14.5274 | 14.7865 | |
| MEDICAL ASSISTANT SR | 13.5415 | 13.8886 | 14.2448 | 14.5623 | 14.8801 | 15.1392 | |
| MEDICAL LEGAL SPEC SAC ONLY | 15.9738 | 16.3846 | 16.7962 | 17.2867 | 17.8175 | 18.3472 | |

<center>

**WAGE RATES EFFECTIVE JANUARY 1, 2002**
**STRUCTURE B2**

</center>

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| MEDICAL RECORD CODER I | 16.2872 | 16.7154 | 17.1441 | 17.5053 | 18.0059 | 18.5063 | |
| MEDICAL RECORD CODER II | 17.5810 | 18.0438 | 18.5063 | 18.8949 | 19.4351 | 19.9735 | |

<center>153</center>

KFH 01085



| | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| MEDICAL SECRETARY | 16.6820 | 17.1213 | 17.5602 | 18.0841 | 18.6506 | 19.2162 | |
| MEDICAL SECRETARY SR | 17.5158 | 17.9772 | 18.4382 | 18.9884 | 19.5831 | 20.1770 | |
| MEDICAL SECRETARY TRAINEE | 13.4458 | 13.7903 | 14.1438 | 14.4072 | 14.7888 | 15.1706 | |
| | | | | | | | |
| MESSENGER DRIVER | 12.7364 | 13.0632 | 13.3981 | 13.6304 | 13.8044 | | |
| MESSENGER DRIVER SR | 13.4915 | 13.8373 | 14.1926 | 14.4245 | 14.5980 | | |
| | | | | | | | |
| MONITOR TECHNICIAN | 13.8913 | 14.2400 | 14.5962 | 14.8933 | 15.2082 | 15.5753 | |
| | | | | | | | |
| MRI TECHNOLOGIST I | 24.7769 | 25.2725 | 25.7780 | 26.2933 | 26.8041 | | |
| MRI TECHNOLOGIST VI | 26.4857 | 27.0155 | 27.5556 | 28.1067 | 28.6690 | 29.2423 | |
| MRI TECHNOLOGIST SUPVR | 28.1946 | 28.7581 | 29.3334 | 29.9202 | 30.5186 | 31.1289 | |
| MRI TECHNOLOGIST TRAINEE | 22.6158 | 23.0683 | 23.5295 | | | | |
| | | | | | | | |
| NUCLEAR MED TECH SUPV | 26.3880 | 27.0823 | 27.7768 | 28.5834 | 29.4267 | 30.2337 | |
| NUCLEAR MEDICINE TECH I | 23.8730 | 24.5010 | 25.1296 | 25.9364 | 26.7792 | 27.5857 | |
| NUCLEAR MEDICINE TECH II | 25.3380 | 26.0050 | 26.6716 | 27.4785 | 28.3217 | 29.1286 | |
| | | | | | | | |
| NURSE ASSISTANT | 13.0992 | 13.4349 | 13.7794 | 14.0958 | 14.4237 | 14.7167 | |
| NURSE ASSISTANT SR | 13.2436 | 13.5834 | 13.9317 | 14.2475 | 14.5526 | 14.8683 | |
| | | | | | | | |
| NUTRITION AIDE | 12.4831 | 12.8029 | 13.1310 | 13.6267 | 13.9569 | | |
| NUTRITION CLERK | 12.6399 | 12.9641 | 13.2964 | 13.7922 | 14.1223 | | |
| NUTRITION CLERK SENIOR | 12.9488 | 13.2727 | 13.6053 | 14.1011 | 14.4311 | | |
| | | | | | | | |
| OB TECHNICIAN | 13.7978 | 14.1515 | 14.5142 | 14.8740 | 15.2683 | 15.6278 | |
| OB TECHNICIAN SR | 14.1284 | 14.4907 | 14.8626 | 15.2223 | 15.6164 | 15.9761 | |
| | | | | | | | |
| OCCUPNL THER ASST I CERT | 15.9945 | 16.4045 | 16.8251 | 17.2325 | 17.6788 | 18.0860 | |
| OCCUPNL THERP ASST II CERT | 16.9542 | 17.3887 | 17.8349 | 18.2667 | 18.7394 | 19.1712 | |
| | | | | | | | |
| OPTHALMIC PHOTOGRAPHER | 17.1632 | 17.6032 | 18.0547 | 18.4795 | 19.8954 | 21.3118 | |
| OPTHALMIC TECH II CERT | 19.2367 | 19.7297 | 20.2356 | 21.3005 | 22.3658 | 23.4310 | 24.4956 |
| OPTHALMIC TECHNICIAN | 18.3206 | 18.7904 | 19.2719 | 20.2862 | 21.3009 | 22.3151 | 23.3293 |
| | | | | | | | |
| ORTHOPEDIC TECHNICIAN | 15.6202 | 16.0207 | 16.4315 | 16.8384 | 17.2849 | 17.6917 | |
| ORTHOPEDIC TECHNICIAN SR | 15.9945 | 16.4045 | 16.8251 | 17.2325 | 17.6788 | 18.0860 | |
| | | | | | | | |
| PACEMAKER TECHNICIAN | 16.1943 | 16.5804 | 16.9762 | 17.4343 | 18.0940 | 18.5813 | |
| PACEMAKER TECHNICIAN SR | 16.8475 | 17.2501 | 17.6631 | 18.1618 | 18.9645 | 19.5849 | |
| | | | | | | | |
| PATHOLOGY TECH ASST | 14.9693 | 15.3532 | 15.7466 | 16.1368 | 16.5648 | 16.9545 | |
| PATHOLOGY TECH ASST SR | 15.3282 | 15.7212 | 16.1244 | 16.5146 | 16.9422 | 17.3324 | |
| | | | | | | | |
| PATIENT TRANSPORTATION AIDE | 12.3208 | 12.6363 | 12.9605 | 13.1578 | 13.4247 | 13.6917 | |

## WAGE RATES EFFECTIVE JANUARY 1, 2002
## STRUCTURE B2

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| PHARMACY INTERN | 14.7230 | 15.1004 | 15.4879 | 15.7756 | 16.1939 | 16.6119 | |
| PHARMACY TECH OUTPATIENT | 14.3569 | 14.7251 | 15.1025 | 15.3794 | 15.7811 | 16.1828 | |
| PHARMACY TECH INPATIENT | 14.9371 | 15.3202 | 15.7130 | 16.0008 | 16.4189 | 16.8369 | |
| | | | | | | | |
| PHYSICAL THERAPY AIDE | 12.6059 | 12.9294 | 13.2609 | 13.4812 | 13.7943 | 14.1075 | |

154

KFH 01086



| | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| PHYSICAL THERAPY AIDE SR | 13.1341 | 13.4712 | 13.8166 | 14.0718 | 14.4429 | 14.8142 | |
| PHYSICAL THERAPY ASST I | 17.3540 | 17.7990 | 18.2553 | 18.6973 | 19.1814 | 19.6233 | |
| PHYSICAL THERAPY ASST II | 18.3954 | 18.8668 | 19.3509 | 19.8193 | 20.3325 | 20.8007 | |
| PHYSICAL THERAPY TECH SR | 14.1284 | 14.4907 | 14.8626 | 15.2223 | 15.6164 | 15.9761 | |
| PHYSICAL THERAPY TECH | 13.7978 | 14.1515 | 14.5142 | 14.8740 | 15.2683 | 15.6278 | |
| | | | | | | | |
| PROJECTOR OPERATOR | 15.8036 | 16.2122 | 16.6222 | | | | |
| PROJECTOR OPERATOR | 12.7697 | 13.0975 | 13.4327 | 13.7810 | 14.1287 | | |
| | | | | | | | |
| PSYCHIATRIC ATTENDANT | 14.5813 | 14.9652 | 15.3487 | 15.7263 | 16.1041 | 16.4688 | |
| PSYCHIATRIC TECHNICIAN | 16.8553 | 17.2990 | 17.7423 | 18.1733 | 18.5917 | 19.0097 | 19.4282 |
| PSYCHIATRIC TECHNICIAN SR | 17.6036 | 18.0666 | 18.5300 | 18.9616 | 19.3797 | 19.7975 | 20.2158 |
| | | | | | | | |
| RADIOLOGIC TECH I | 19.7731 | 20.2929 | 20.8135 | 21.1420 | 21.6087 | | |
| RADIOLOGIC TECH II | 20.9560 | 21.5073 | 22.0589 | 22.5586 | 23.2614 | | |
| RADIOLOGIC TECH III | 21.8683 | 22.4441 | 23.0196 | 23.6752 | 24.7915 | 25.9082 | 27.0241 |
| RADIOLOGIC TECH LIMITED | 18.8701 | 19.3662 | 19.8630 | 20.1767 | 20.6220 | | |
| RADIOLOGIC TECHNOL SUPV | 23.5519 | 24.1713 | 24.7915 | 25.9082 | 27.0241 | 28.1400 | 29.2566 |
| | | | | | | | |
| REG RESPIRATORY THER TECH I | 21.1056 | 21.6611 | 22.2160 | 22.6473 | 23.1867 | 23.7258 | |
| REG RESPIRATORY THER TECH II | 22.2324 | 22.8176 | 23.4025 | 23.9417 | 24.8048 | 25.8830 | 26.9612 |
| | | | | | | | |
| RESP CARE PRACTITIONER I | 20.1006 | 20.6295 | 21.1583 | 21.5691 | 22.0825 | 22.5963 | |
| RESP CARE PRACTITIONER II | 21.1736 | 21.7309 | 22.2881 | 22.8018 | 23.6237 | 24.6504 | 25.6773 |
| RESP CARE PRACT SUPV | 23.3441 | 23.9581 | 24.5725 | 25.1389 | 26.0448 | 27.1770 | 28.3094 |
| | | | | | | | |
| RESPIRATORY CARE PERMITTEE | 18.0905 | | | | | | |
| | | | | | | | |
| RESPIRATORY SUPPLY AIDE | 12.9751 | 13.3077 | 13.6489 | 13.9620 | 14.2870 | 14.5772 | |
| RESPIRATORY SUPPLY AIDE SR | 13.1980 | 13.5363 | 13.8835 | 14.1391 | 14.5101 | 14.8812 | |
| | | | | | | | |
| SERVICE PARTNER | 12.6264 | 12.9500 | 13.2821 | 13.6301 | 13.9782 | | |
| | | | | | | | |
| STERILE PROC TECH II CERT | 14.0336 | 14.3934 | 14.7627 | 15.1017 | 15.4528 | 15.7664 | |
| STERILE PROC TECH SR CERT | 14.5952 | 14.9692 | 15.3533 | 15.7057 | 16.0708 | 16.3971 | |
| STERILE PROCESSING TECH I | 13.4940 | 13.8398 | 14.1949 | 14.5207 | 14.8585 | 15.1599 | |
| | | | | | | | |
| STOREKEEPER | 12.7697 | 13.0975 | 13.4327 | 13.7810 | 14.1287 | | |
| STOREKEEPER – CHIEF | 14.3086 | 14.6751 | 15.0515 | 15.4596 | 15.8139 | | |
| STOREKEEPER I | 13.0106 | 13.3441 | 13.6864 | 14.0407 | 14.3955 | | |
| STOREKEEPER II | 13.2199 | 13.5588 | 13.9065 | 14.2586 | 14.7441 | | |

### WAGE RATES EFFECTIVE JANUARY 1, 2002
### STRUCTURE B2

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| SURGICAL ASSISTANT CERT | 17.5852 | 18.0362 | 18.4988 | 18.9777 | 19.5474 | 20.2066 | |
| SURGICAL ASST TRAINEE | 16.6357 | | | | | | |
| SURGICAL ASST. | 17.1564 | 17.5963 | 18.0474 | 18.5148 | 19.0709 | 19.7138 | |
| | | | | | | | |
| SURGICAL TECHNICIAN | 15.9941 | 16.4039 | 16.8246 | 17.2413 | 17.6985 | 18.1150 | |
| SURGICAL TECHNICIAN SR | 16.3772 | 16.7969 | 17.2276 | 17.6448 | 18.1017 | 18.5188 | |
| | | | | | | | |
| UNIT ASSISTANT | 13.4705 | 13.8158 | 14.1700 | 14.4658 | 14.7787 | 15.1436 | |

KFH 01087

 
| | | | | | |
|---|---|---|---|---|---|
| UNIT ASSISTANT SR | 13.7495 | 14.1112 | 14.4733 | 14.7424 | 15.1327 | 15.5237 |
| | | | | | |
| VISION SERVICES ASST I | 13.2058 | 13.5445 | 13.8913 | 14.2096 | 14.5274 | 14.7865 |
| VISION SERVICES ASST II | 13.6698 | 14.0202 | 14.3796 | 14.7089 | 15.0379 | 15.3058 |
| | | | | | |
| YARDKEEPER | 12.6371 | 12.9614 | 13.2937 | 13.6419 | 13.9895 | |

156

KFH 01088



**WAGE RATES EFFECTIVE OCTOBER 6, 2002**
**STRUCTURE B2**

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| ALLRGY ASST SUPV CENTRL LAB | 15.8683 | 16.1140 | 16.5273 | 16.9030 | 17.4732 | 18.0047 | |
| ALLERGY TECHNICIAN | 14.8654 | 15.2466 | 15.6376 | 15.9388 | 16.3700 | 16.7893 | |
| ALLERGY TECHNICIAN SR | 15.4685 | 15.8649 | 16.2719 | 16.6255 | 17.1095 | 17.5806 | |
| ALLERGY TECHNICIAN TRAINEE | 14.1024 | 14.4641 | 14.8351 | 15.1096 | 15.4874 | 15.8427 | |
| ANESTHESIA SUPPLY AIDE | 13.4941 | 13.8400 | 14.1949 | 14.5205 | 14.8585 | 15.1603 | |
| ANESTHESIA SUPPLY AIDE SR | 13.7259 | 14.0778 | 14.4388 | 14.7047 | 15.0905 | 15.4764 | |
| ANESTHESIA TECH ASST SR | 15.9572 | 16.3665 | 16.7856 | 17.2019 | 17.6581 | 18.0737 | |
| ANESTHESIA TECH ASST | 15.5681 | 15.9674 | 16.3764 | 16.7823 | 17.2274 | 17.6328 | |
| BONE DENSITOMETRY TECH | 15.6520 | 16.0532 | 16.4648 | 16.9415 | 17.6277 | 18.1344 | |
| CARDIOVASCULAR TECH | 19.5422 | 20.0432 | 20.5571 | 21.3192 | 22.4605 | 23.6029 | |
| CARDIOVASCULAR TECH SR | 20.9896 | 21.5280 | 22.0800 | 22.8413 | 23.9832 | 25.1252 | |
| CARE PARTNER | 13.6232 | 13.9723 | 14.3306 | 14.6596 | 15.0006 | 15.3052 | |
| CENTRAL SUPPLY TECHNICIAN | 13.4941 | 13.8400 | 14.1949 | 14.5205 | 14.8585 | 15.1603 | |
| CLERICAL GRADE 1 | 12.5172 | 12.8383 | 13.1671 | 13.3723 | 13.6504 | 13.9275 | |
| CLERICAL GRADE 2 | 13.0436 | 13.3782 | 13.7209 | 13.9508 | 14.2766 | 14.6023 | |
| CLERICAL GRADE 3 | 13.3184 | 13.6599 | 14.0100 | 14.2992 | 14.6142 | 14.9701 | |
| CLERICAL GRADE 4 | 13.5934 | 13.9417 | 14.2992 | 14.5654 | 14.9511 | 15.3371 | |
| CLERICAL GRADE 5 | 14.1408 | 14.5031 | 14.8751 | 15.1886 | 15.6231 | 16.0570 | |
| CLERICAL GRADE 6 | 14.7816 | 15.1609 | 15.5498 | 15.9114 | 16.4060 | 16.9004 | |
| CLERICAL GRADE 7 | 15.4172 | 15.8122 | 16.2177 | 16.6159 | 17.1950 | 17.7739 | |
| COMMUNICATION OPERATOR | 13.2932 | 13.6342 | 13.9834 | 14.2179 | 14.5498 | 14.7583 | 15.2625 |
| COMMUNICATION OPERATOR SR | 13.5732 | 13.9213 | 14.2781 | 14.5728 | 14.8939 | 15.1025 | 15.6306 |
| COOK A | 14.5671 | 14.9405 | 15.3239 | 15.6992 | 16.0753 | | |
| COOK IN CHARGE (SR) | 15.1930 | 15.5825 | 15.9822 | 16.3583 | 16.7337 | | |
| CT SCHEDULING ASSISTANT | 13.5934 | 13.9417 | 14.2992 | 14.5654 | 14.9511 | 15.3371 | |
| CUSTODIAN/WATCHMAN | 14.0594 | 14.4199 | 14.7895 | 15.1510 | 15.5136 | | |
| CYTO-HISTO TECHNOL - SUPV | 30.0847 | 30.8764 | 31.6679 | 32.9963 | 34.0845 | 34.7235 | |
| CYTOLOGY TECHNOL - CHIEF | 29.0989 | 29.8647 | 30.6298 | 31.2686 | 32.2171 | 33.1856 | |
| CYTOTECHNOLOGIST I | 25.8237 | 26.5033 | 27.1833 | 27.5428 | 28.5114 | 29.4601 | |
| CYTOTECHNOLOGIST II | 26.6781 | 27.3802 | 28.0820 | 28.6218 | 29.5702 | 30.6186 | |
| CYTOTECHNOLOGIST III | 27.5891 | 28.3151 | 29.0411 | 29.6799 | 30.7685 | 31.8374 | |
| DARK ROOM TECHNICIAN | 13.6940 | 14.0452 | 14.4054 | 14.6829 | 15.1894 | 15.5516 | |
| DEPARTMENT SECRETARY | 14.6192 | 14.9939 | 15.3787 | 15.6647 | 16.0793 | 16.4947 | |

**WAGE RATES EFFECTIVE OCTOBER 6, 2002**
**STRUCTURE B2**

KFH 01089



| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| DIAG ULTRASONOGRAPHER I | 24.7536 | 25.4048 | 26.0563 | 26.4671 | 27.0519 | 27.9827 | |
| DIAG ULTRASONOGRAPHER II | 26.4864 | 27.1833 | 27.8803 | 28.6739 | 30.0259 | 31.4656 | 32.7298 |
| DIAG ULTRASONOGRAPHER III | 27.8108 | 28.5424 | 29.2742 | 30.1078 | 31.5273 | 33.0388 | 34.3668 |
| DIAG ULTRASONOGRPHR SUPV | 29.9515 | 30.7389 | 31.5273 | 32.9476 | 34.3669 | 35.8852 | 37.2055 |
| DIAG ULTRASNGRPHR TRAINEE | 21.7424 | | | | | | |
| EEG TECHNOLOGIST I | 16.3873 | 16.8076 | 17.2388 | 17.7046 | 18.5432 | 19.2887 | |
| EEG TECHNOLOGIST II | 17.3620 | 17.8070 | 18.2640 | 18.7296 | 19.6614 | 20.5929 | |
| EKG TECHNICIAN | 15.6520 | 16.0532 | 16.4648 | 16.9415 | 17.6277 | 18.1344 | |
| EKG TECHNICIAN SR | 16.3311 | 16.7498 | 17.1794 | 17.6979 | 18.5328 | 19.1780 | |
| EMERGENCY DEPT TECH I | 13.7340 | 14.0863 | 14.4470 | 14.7780 | 15.1085 | 15.3780 | |
| EMERGENCY DEPT TECH II | 16.2450 | 16.6615 | 17.0888 | 17.5119 | 17.9763 | 18.3994 | |
| GARDENER | 14.4298 | 14.7998 | 15.1791 | 15.5479 | 15.9168 | | |
| GARDENER – SENIOR | 15.5548 | 15.9538 | 16.3625 | 16.7347 | 17.1034 | | |
| HISTOLOGIC TECH I | 20.2843 | 20.8181 | 21.3520 | 21.7878 | 22.1320 | 22.4227 | |
| HISTOLOGIC TECH II | 21.9494 | 22.5273 | 23.1045 | 23.7038 | 24.1029 | 24.3753 | |
| HISTOLOGIC TECH TRAINEE | 16.9772 | 17.4235 | 17.8706 | 18.1695 | 18.5936 | 19.0181 | |
| HISTOLOGIC TECHNICIAN SUPVR | 24.2866 | 24.9262 | 25.5652 | 26.2010 | 26.7094 | 27.0904 | |
| HOME HEALTH AIDE | 13.6915 | 14.0424 | 14.4026 | 14.7286 | 15.0663 | 15.3675 | |
| HOMEMAKER | 8.5643 | | | | | | |
| HOUSEKEEPING AIDE | 13.1315 | 13.4680 | 13.8134 | 14.1756 | 14.5373 | | |
| HOUSEKEEPING HEAD AIDE | 13.4753 | 13.8209 | 14.1756 | 14.5373 | 14.8989 | | |
| INVASIVE CARDIO SPECIALIST | 26.8751 | 27.6813 | 28.5116 | 29.2243 | 29.9551 | 30.7036 | |
| LABORATORY ASSISTANT I | 13.6654 | 14.0156 | 14.3754 | 14.6160 | 14.9571 | 15.2984 | |
| LABORATORY ASSISTANT II | 14.2411 | 14.6065 | 14.9813 | 15.2196 | 15.6636 | 16.0684 | |
| LABORATORY ASSISTANT III | 14.4819 | 14.8533 | 15.2339 | 15.5125 | 15.9166 | 16.3211 | |
| LABORATORY ASSISTANT SR | 14.8144 | 15.1945 | 15.5840 | 15.9126 | 16.3680 | 16.8225 | |
| LICENSED VOC NURSE | 17.7811 | 18.2490 | 18.7168 | 19.1715 | 19.6130 | 20.0539 | 20.4955 |
| LICENSED VOC NURSE SR | 18.5706 | 19.0589 | 19.5478 | 20.0030 | 20.4441 | 20.8849 | 21.3261 |
| LIFT TECHNICIAN | 13.4941 | 13.8400 | 14.1949 | 14.5205 | 14.8585 | 15.1603 | |
| LINEN ROOM SUPERVISOR | 13.4753 | 13.8209 | 14.1756 | 14.5373 | 14.8989 | | |
| MEDICAL ASSISTANT | 13.7340 | 14.0863 | 14.4470 | 14.7780 | 15.1085 | 15.3780 | |
| MEDICAL ASSISTANT SR | 14.0832 | 14.4441 | 14.8146 | 15.1448 | 15.4753 | 15.7448 | |
| MEDICAL LEGAL SPEC SAC ONLY | 16.6128 | 17.0400 | 17.4680 | 17.9782 | 18.5302 | 19.0811 | |

## WAGE RATES EFFECTIVE OCTOBER 6, 2002
### STRUCTURE B2

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| MEDICAL RECORD CODER I | 16.9387 | 17.3840 | 17.8299 | 18.2055 | 18.7261 | 19.2466 | |
| MEDICAL RECORD CODER II | 18.2842 | 18.7656 | 19.2466 | 19.6507 | 20.2125 | 20.7724 | |

KFH 01090

| | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| MEDICAL SECRETARY | 17.3493 | 17.8062 | 18.2626 | 18.8075 | 19.3966 | 19.9848 | |
| MEDICAL SECRETARY SR | 18.2164 | 18.6963 | 19.1757 | 19.7479 | 20.3664 | 20.9841 | |
| MEDICAL SECRETARY TRAINEE | 13.9836 | 14.3419 | 14.7096 | 14.9835 | 15.3804 | 15.7774 | |
| MESSENGER DRIVER | 13.2459 | 13.5857 | 13.9340 | 14.1756 | 14.3566 | | |
| MESSENGER DRIVER SR | 14.0312 | 14.3908 | 14.7603 | 15.0015 | 15.1819 | | |
| MONITOR TECHNICIAN | 14.4470 | 14.8096 | 15.1800 | 15.4890 | 15.8165 | 16.1983 | |
| MRI TECHNOLOGIST I | 25.7680 | 26.2834 | 26.8091 | 27.3450 | 27.8763 | | |
| MRI TECHNOLOGIST II | 27.5451 | 28.0961 | 28.6578 | 29.2310 | 29.8158 | 30.4120 | |
| MRI TECHNOLOGIST SUPV | 29.3224 | 29.9084 | 30.5067 | 31.1170 | 31.7393 | 32.3741 | |
| MRI TECHNOLOGIST TRAINEE | 23.5204 | 23.9910 | 24.4707 | | | | |
| NUCLEAR MED TECH SUPVR | 27.4435 | 28.1656 | 28.8879 | 29.7267 | 30.6038 | 31.4430 | |
| NUCLEAR MEDICINE TECH I | 24.8279 | 25.4810 | 26.1348 | 26.9739 | 27.8504 | 28.6891 | |
| NUCLEAR MEDICINE TECH II | 26.3515 | 27.0452 | 27.7385 | 28.5776 | 29.4546 | 30.2937 | |
| NURSE ASSISTANT | 13.6232 | 13.9723 | 14.3306 | 14.6596 | 15.0006 | 15.3054 | |
| NURSE ASSISTANT SR | 13.7733 | 14.1267 | 14.4890 | 14.8174 | 15.1347 | 15.4630 | |
| NUTRITION AIDE | 12.9824 | 13.3150 | 13.6562 | 14.1718 | 14.5152 | | |
| NUTRITION CLERK | 13.1455 | 13.4827 | 13.8283 | 14.3439 | 14.6872 | | |
| NUTRITION CLERK SENIOR | 13.4668 | 13.8036 | 14.1495 | 14.6651 | 15.0083 | | |
| OB TECHNICIAN | 14.3497 | 14.7176 | 15.0948 | 15.4690 | 15.8790 | 16.2529 | |
| OB TECHNICIAN SR | 14.6935 | 15.0703 | 15.4571 | 15.8312 | 16.2411 | 16.6151 | |
| OCCUPNL THERP ASST I CERT | 16.6343 | 17.0607 | 17.4981 | 17.9218 | 18.3860 | 18.8094 | |
| OCCUPNL THERP ASST II CERT | 17.6324 | 18.0842 | 18.5483 | 18.9974 | 19.4890 | 19.9380 | |
| OPTHALMIC PHOTOGRAPHER | 17.8497 | 18.3073 | 18.7769 | 19.2187 | 20.6912 | 22.1643 | |
| OPTHALMIC TECH II CERT | 20.0062 | 20.5189 | 21.0450 | 22.1525 | 23.2604 | 24.3682 | 25.4754 |
| OPTHALMIC TECHNICIAN | 19.0534 | 19.5420 | 20.0428 | 21.0976 | 22.1529 | 23.2077 | 24.2625 |
| ORTHOPEDIC TECHNICIAN | 16.2450 | 16.6615 | 17.0888 | 17.5119 | 17.9763 | 18.3994 | |
| ORTHOPEDIC TECHNICIAN SR | 16.6343 | 17.0607 | 17.4981 | 17.9218 | 18.3860 | 18.8094 | |
| PACEMAKER TECHNICIAN | 16.8421 | 17.2436 | 17.6552 | 18.1317 | 18.8178 | 19.3246 | |
| PACEMAKER TECHNICIAN SR | 17.5214 | 17.9401 | 18.3696 | 18.8883 | 19.7231 | 20.3683 | |
| PATHOLOGY TECH ASST | 15.5681 | 15.9673 | 16.3765 | 16.7823 | 17.2274 | 17.6327 | |
| PATHOLOGY TECH ASST SR | 15.9413 | 16.3500 | 16.7694 | 17.1752 | 17.6199 | 18.0257 | |
| PATIENT TRANSPORTATION AIDE | 12.8136 | 13.1418 | 13.4789 | 13.6841 | 13.9617 | 14.2394 | |

## WAGE RATES EFFECTIVE OCTOBER 6, 2002
## STRUCTURE B2

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| PHARMACY INTERN | 15.3119 | 15.7044 | 16.1074 | 16.4066 | 16.8417 | 17.2764 | |
| PHARMACY TECH INPATIENT | 15.5346 | 15.9330 | 16.3415 | 16.6408 | 17.0757 | 17.5104 | |
| PHARMACY TECH OUTPATIENT | 14.9312 | 15.3141 | 15.7066 | 15.9946 | 16.4123 | 16.8301 | |
| PHYSICAL THERAPY AIDE | 13.1101 | 13.4466 | 13.7913 | 14.0204 | 14.3461 | 14.6718 | |

159

KFH 01091

| | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| PHYSICAL THERAPY AIDE SR | 13.6595 | 14.0100 | 14.3693 | 14.6347 | 15.0206 | 15.4068 | |
| PHYSICAL THERAPY ASST I | 18.0482 | 18.5110 | 18.9855 | 19.4452 | 19.9487 | 20.4082 | |
| PHYSICAL THERAPY ASST II | 19.1312 | 19.6215 | 20.1249 | 20.6121 | 21.1458 | 21.6327 | |
| PHYSICAL THERAPY TECH SR | 14.6935 | 15.0703 | 15.4571 | 15.8312 | 16.2411 | 16.6151 | |
| PHYSICAL THERAPY TECHNICIAN | 14.3497 | 14.7176 | 15.0948 | 15.4690 | 15.8790 | 16.2529 | |
| | | | | | | | |
| PROJECTOR OPERATOR | 16.4357 | 16.8607 | 17.2871 | | | | |
| PROJECTOR OPERATOR | 13.2805 | 13.6214 | 13.9700 | 14.3322 | 14.6938 | | |
| | | | | | | | |
| PSYCHIATRIC ATTENDANT | 15.1646 | 15.5638 | 15.9626 | 16.3554 | 16.7483 | 17.1276 | |
| PSYCHIATRIC TECHNICIAN | 17.5295 | 17.9910 | 18.4520 | 18.9002 | 19.3354 | 19.7701 | 20.2053 |
| PSYCHIATRIC TECHNICIAN SR | 18.3077 | 18.7893 | 19.2712 | 19.7201 | 20.1549 | 20.5894 | 21.0244 |
| | | | | | | | |
| RADIOLOGIC TECH I | 20.5640 | 21.1046 | 21.6460 | 21.9877 | 22.4730 | | |
| RADIOLOGIC TECH II | 21.7942 | 22.3676 | 22.9413 | 23.4609 | 24.1919 | | |
| RADIOLOGIC TECH III | 22.7430 | 23.3419 | 23.9404 | 24.6222 | 25.7832 | 26.9445 | 28.1051 |
| RADIOLOGIC TECH LIMITED | 19.6249 | 20.1408 | 20.6575 | 20.9838 | 21.4469 | | |
| RADIOLOGIC TECHNOL SUPV | 24.4940 | 25.1382 | 25.7832 | 26.9445 | 28.1051 | 29.2656 | 30.4269 |
| | | | | | | | |
| REG RESP THERAPY TECH.I | 21.9498 | 22.5275 | 23.1046 | 23.5532 | 24.1142 | 24.6748 | |
| REG RESP THERAPY TECH II | 23.1217 | 23.7303 | 24.3386 | 24.8994 | 25.7970 | 26.9183 | 28.0396 |
| | | | | | | | |
| RESP CARE PRACTITIONER I | 20.9046 | 21.4547 | 22.0046 | 22.4319 | 22.9658 | 23.5002 | |
| RESP CARE PRACTITIONER II | 22.0205 | 22.6001 | 23.1796 | 23.7139 | 24.5686 | 25.6364 | 26.7044 |
| RESP CARE PRACT SUPV | 24.2779 | 24.9164 | 25.5554 | 26.1445 | 27.0866 | 28.2641 | 29.4418 |
| | | | | | | | |
| RESPIRATORY CARE PERMITTEE | 18.8141 | | | | | | |
| | | | | | | | |
| RESPIRATORY SUPPLY AIDE | 13.4941 | 13.8400 | 14.1949 | 14.5205 | 14.8585 | 15.1603 | |
| RESPIRATORY SUPPLY AIDE SR | 13.7259 | 14.0778 | 14.4388 | 14.7047 | 15.0905 | 15.4764 | |
| | | | | | | | |
| SERVICE PARTNER | 13.1315 | 13.4680 | 13.8134 | 14.1753 | 14.5373 | | |
| | | | | | | | |
| STERILE PROC TECH II CERT | 14.5949 | 14.9691 | 15.3532 | 15.7058 | 16.0709 | 16.3971 | |
| STERILE PROC TECH SR CERT | 15.1790 | 15.5680 | 15.9674 | 16.3339 | 16.7136 | 17.0530 | |
| STERILE PROCESSING TECH I | 14.0338 | 14.3934 | 14.7627 | 15.1015 | 15.4528 | 15.7663 | |
| | | | | | | | |
| STOREKEEPER | 13.2805 | 13.6214 | 13.9700 | 14.3322 | 14.6938 | | |
| STOREKEEPER CHIEF | 14.8809 | 15.2621 | 15.6536 | 16.0780 | 16.4465 | | |
| STOREKEEPER I | 13.5310 | 13.8779 | 14.2339 | 14.6023 | 14.9713 | | |
| STOREKEEPER II | 13.7487 | 14.1012 | 14.4628 | 14.8289 | 15.3339 | | |

## WAGE RATES EFFECTIVE OCTOBER 6, 2002
## STRUCTURE B2

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| SURGICAL ASSISTANT CERT | 18.2886 | 18.7576 | 19.2388 | 19.7368 | 20.3293 | 21.0149 | |
| SURGICAL ASST TRAINEE | 17.3011 | | | | | | |
| SURGICAL ASST | 17.8427 | 18.3002 | 18.7693 | 19.2554 | 19.8337 | 20.5024 | |
| | | | | | | | |
| SURGICAL TECHNICIAN | 16.6339 | 17.0601 | 17.4976 | 17.9310 | 18.4064 | 18.8396 | |
| SURGICAL TECHNICIAN SR | 17.0323 | 17.4688 | 17.9167 | 18.3506 | 18.8258 | 19.2596 | |
| | | | | | | | |
| UNIT ASSISTANT | 14.0093 | 14.3684 | 14.7368 | 15.0444 | 15.3698 | 15.7493 | |

160

KFH 01092

| | | | | | | |
|---|---|---|---|---|---|---|
| UNIT ASSISTANT SR | 14.2995 | 14.6756 | 15.0522 | 15.3321 | 15.7380 | 16.1446 |
| VISION SERVICES ASST I | 13.7340 | 14.0863 | 14.4470 | 14.7780 | 15.1085 | 15.3780 |
| VISION SERVICES ASST II | 14.2166 | 14.5810 | 14.9548 | 15.2973 | 15.6394 | 15.9180 |
| YARDKEEPER | 13.1426 | 13.4799 | 13.8254 | 14.1876 | 14.5491 | |

161

KFH 01093


**WAGE RATES EFFECTIVE OCTOBER 5, 2003**
**STRUCTURE B2**

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| ALLRGY ASST SUPV CENTRL LAB | 16.5030 | 16.7586 | 17.1884 | 17.5791 | 18.1721 | 18.7249 | |
| ALLERGY TECHNICIAN | 15.4600 | 15.8565 | 16.2631 | 16.5764 | 17.0248 | 17.4609 | |
| ALLERGY TECHNICIAN SR | 16.0872 | 16.4995 | 16.9228 | 17.2905 | 17.7939 | 18.2838 | |
| ALLERGY TECHNICIAN TRAINEE | 14.6665 | 15.0427 | 15.4285 | 15.7140 | 16.1069 | 16.4764 | |
| ANESTHESIA SUPPLY AIDE | 14.0339 | 14.3936 | 14.7627 | 15.1013 | 15.4528 | 15.7667 | |
| ANESTHESIA SUPPLY AIDE SR | 14.2749 | 14.6409 | 15.0164 | 15.2929 | 15.6941 | 16.0955 | |
| ANESTHESIA TECH ASST SR | 16.5955 | 17.0212 | 17.4570 | 17.8900 | 18.3644 | 18.7966 | |
| ANESTHESIA TECH ASST | 16.1908 | 16.6061 | 17.0315 | 17.4536 | 17.9165 | 18.3381 | |
| BONE DENSITOMETRY TECH | 16.2781 | 16.6953 | 17.1234 | 17.6192 | 18.3328 | 18.8598 | |
| CARDIOVASCULAR TECH | 20.3239 | 20.8449 | 21.3794 | 22.1720 | 23.3589 | 24.5470 | |
| CARDIOVASCULAR TECH SR | 21.8292 | 22.3891 | 22.9632 | 23.7550 | 24.9425 | 26.1302 | |
| CARE PARTNER | 14.1681 | 14.5312 | 14.9038 | 15.2460 | 15.6006 | 15.9174 | |
| CENTRAL SUPPLY TECHNICIAN | 14.0339 | 14.3936 | 14.7627 | 15.1013 | 15.4528 | 15.7667 | |
| CLERICAL GRADE 1 | 13.0179 | 13.3518 | 13.6938 | 13.9072 | 14.1964 | 14.4846 | |
| CLERICAL GRADE 2 | 13.5653 | 13.9133 | 14.2697 | 14.5088 | 14.8477 | 15.1864 | |
| CLERICAL GRADE 3 | 13.8511 | 14.2063 | 14.5704 | 14.8712 | 15.1988 | 15.5689 | |
| CLERICAL GRADE 4 | 14.1371 | 14.4994 | 14.8712 | 15.1480 | 15.5491 | 15.9506 | |
| CLERICAL GRADE 5 | 14.7064 | 15.0832 | 15.4701 | 15.7961 | 16.2480 | 16.6993 | |
| CLERICAL GRADE 6 | 15.3729 | 15.7673 | 16.1718 | 16.5479 | 17.0622 | 17.5764 | |
| CLERICAL GRADE 7 | 16.0339 | 16.4447 | 16.8664 | 17.2805 | 17.8828 | 18.4849 | |
| COMMUNICATION OPERATOR | 13.8249 | 14.1796 | 14.5427 | 14.7866 | 15.1318 | 15.3486 | 15.8730 |
| COMMUNICATION OPERATOR SR | 14.1161 | 14.4782 | 14.8492 | 15.1557 | 15.4897 | 15.7066 | 16.2558 |
| COOK A | 15.1498 | 15.5381 | 15.9369 | 16.3272 | 16.7183 | | |
| COOK IN CHARGE (SR) | 15.8007 | 16.2058 | 16.6215 | 17.0126 | 17.4030 | | |
| CT SCHEDULING ASSISTANT | 14.1371 | 14.4994 | 14.8712 | 15.1480 | 15.5491 | 15.9506 | |
| CUSTODIAN/WATCHMAN | 14.6218 | 14.9967 | 15.3811 | 15.7570 | 16.1341 | | |
| CYTO-HISTO TECHNOL SUPV | 31.2881 | 32.1115 | 32.9346 | 34.3162 | 35.4479 | 36.1124 | |
| CYTOLOGY TECHNOL CHIEF | 30.2629 | 31.0593 | 31.8550 | 32.5193 | 33.5058 | 34.5130 | |
| CYTOTECHNOLOGIST I | 26.8566 | 27.5634 | 28.2706 | 28.6445 | 29.6519 | 30.6385 | |
| CYTOTECHNOLOGIST II | 27.7452 | 28.4754 | 29.2053 | 29.7667 | 30.7530 | 31.8433 | |
| CYTOTECHNOLOGIST III | 28.6927 | 29.4477 | 30.2027 | 30.8671 | 31.9992 | 33.1109 | |
| DARK ROOM TECHNICIAN | 14.2418 | 14.6070 | 14.9816 | 15.2702 | 15.7970 | 16.1737 | |
| DEPARTMENT SECRETARY | 15.2040 | 15.5937 | 15.9938 | 16.2913 | 16.7225 | 17.1545 | |

**WAGE RATES EFFECTIVE OCTOBER 5, 2003**
**STRUCTURE B2**

KFH 01094



| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| DIAG ULTRASONOGRAPHER I | 25.7437 | 26.4210 | 27.0986 | 27.5258 | 28.1340 | 29.1020 | |
| DIAG ULTRASONOGRAPHER II | 27.5459 | 28.2706 | 28.9955 | 29.8209 | 31.2269 | 32.7242 | 34.0390 |
| DIAG ULTRASONOGRAPHER III | 28.9232 | 29.6841 | 30.4452 | 31.3121 | 32.7884 | 34.3604 | 35.7415 |
| DIAG ULTRASONOGRPHR SUPVR | 31.1496 | 31.9685 | 32.7884 | 34.2655 | 35.7416 | 37.3206 | 38.6937 |
| DIAG ULTRASONGRPHR TRAINEE | 22.6121 | | | | | | |
| EEG TECHNOLOGIST I | 17.0428 | 17.4799 | 17.9284 | 18.4128 | 19.2849 | 20.0602 | |
| EEG TECHNOLOGIST II | 18.0565 | 18.5193 | 18.9946 | 19.4788 | 20.4479 | 21.4166 | |
| EKG TECHNICIAN | 16.2781 | 16.6953 | 17.1234 | 17.6192 | 18.3328 | 18.8598 | |
| EKG TECHNICIAN SR | 16.9843 | 17.4198 | 17.8666 | 18.4058 | 19.2741 | 19.9451 | |
| EMERGENCY DEPT TECH I | 14.2834 | 14.6498 | 15.0249 | 15.3691 | 15.7128 | 15.9931 | |
| EMERGENCY DEPT TECH II | 16.8948 | 17.3280 | 17.7724 | 18.2124 | 18.6954 | 19.1354 | |
| GARDENER | 15.0070 | 15.3918 | 15.7863 | 16.1698 | 16.5535 | | |
| GARDENER – SENIOR | 16.1770 | 16.5920 | 17.0170 | 17.4041 | 17.7853 | | |
| HISTOLOGIC TECH I | 21.0957 | 21.6508 | 22.2061 | 22.6593 | 23.0173 | 23.3196 | |
| HISTOLOGIC TECH II | 22.8274 | 23.4284 | 24.0287 | 24.6520 | 25.0670 | 25.3503 | |
| HISTOLOGIC TECH TRAINEE | 17.6563 | 18.1204 | 18.5854 | 18.8963 | 19.3373 | 19.7788 | |
| HISTOLOGIC TECHNICIAN SUPV | 25.2581 | 25.9232 | 26.5878 | 27.2490 | 27.7778 | 28.1740 | |
| HOME HEALTH AIDE | 14.2392 | 14.6041 | 14.9787 | 15.3177 | 15.6690 | 15.9822 | |
| HOMEMAKER | 8.9069 | | | | | | |
| HOUSEKEEPING AIDE | 13.6568 | 14.0067 | 14.3659 | 14.7426 | 15.1188 | | |
| HOUSEKEEPING HEAD AIDE | 14.0143 | 14.3737 | 14.7426 | 15.1188 | 15.4949 | | |
| INVASIVE CARDIO SPECIALIST | 27.9501 | 28.7886 | 29.6521 | 30.3933 | 31.1533 | 31.9317 | |
| LABORATORY ASSISTANT I | 14.2120 | 14.5762 | 14.9504 | 15.2006 | 15.5554 | 15.9103 | |
| LABORATORY ASSISTANT II | 14.8107 | 15.1908 | 15.5806 | 15.8284 | 16.2901 | 16.7111 | |
| LABORATORY ASSISTANT III | 15.0612 | 15.4474 | 15.8433 | 16.1330 | 16.5533 | 16.9739 | |
| LABORATORY ASSISTANT SR | 15.4070 | 15.8023 | 16.2074 | 16.5491 | 17.0227 | 17.4954 | |
| LICENSED VOCL NURSE | 18.4923 | 18.9790 | 19.4655 | 19.9384 | 20.3975 | 20.8561 | 21.3153 |
| LICENSED VOC NURSE SR | 19.3134 | 19.8213 | 20.3297 | 20.8031 | 21.2619 | 21.7203 | 22.1791 |
| LIFT TECHNICIAN | 14.0339 | 14.3936 | 14.7627 | 15.1013 | 15.4528 | 15.7667 | |
| LINEN ROOM SUPERVISOR | 14.0143 | 14.3737 | 14.7426 | 15.1188 | 15.4949 | | |
| MEDICAL ASSISTANT | 14.2834 | 14.6498 | 15.0249 | 15.3691 | 15.7128 | 15.9931 | |
| MEDICAL ASSISTANT SR | 14.6465 | 15.0219 | 15.4072 | 15.7506 | 16.0943 | 16.3746 | |
| MEDICAL LEGAL SPEC SAC ONLY | 17.2773 | 17.7216 | 18.1667 | 18.6973 | 19.2714 | 19.8443 | |

## WAGE RATES EFFECTIVE OCTOBER 5, 2003
## STRUCTURE B2

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| MEDICAL RECORD CODER I | 17.6162 | 18.0794 | 18.5431 | 18.9337 | 19.4751 | 20.0165 | |
| MEDICAL RECORD CODER II | 19.0156 | 19.5162 | 20.0165 | 20.4367 | 21.0210 | 21.6033 | |

163

KFH 01095

| | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| MEDICAL SECRETARY | 18.0433 | 18.5184 | 18.9931 | 19.5598 | 20.1725 | 20.7842 | |
| MEDICAL SECRETARY SR | 18.9451 | 19.4442 | 19.9427 | 20.5378 | 21.1811 | 21.8235 | |
| MEDICAL SECRETARY TRAINEE | 14.5429 | 14.9156 | 15.2980 | 15.5828 | 15.9956 | 16.4085 | |
| | | | | | | | |
| MESSENGER DRIVER | 13.7757 | 14.1291 | 14.4914 | 14.7426 | 14.9309 | | |
| MESSENGER DRIVER SR | 14.5924 | 14.9664 | 15.3507 | 15.6016 | 15.7892 | | |
| | | | | | | | |
| MONITOR TECHNICIAN | 15.0249 | 15.4020 | 15.7872 | 16.1086 | 16.4492 | 16.8462 | |
| | | | | | | | |
| MRI TECHNOLOGIST I | 26.7987 | 27.3347 | 27.8815 | 28.4388 | 28.9914 | | |
| MRI TECHNOLOGIST II | 28.6469 | 29.2199 | 29.8041 | 30.4002 | 31.0084 | 31.6285 | |
| MRI TECHNOLOGIST SUPVR | 30.4953 | 31.1047 | 31.7270 | 32.3617 | 33.0089 | 33.6691 | |
| MRI TECHNOLOGIST TRAINEE | 24.4612 | 24.9506 | 25.4495 | | | | |
| | | | | | | | |
| NUCLEAR MED TECH SUPV | 28.5412 | 29.2922 | 30.0434 | 30.9158 | 31.8280 | 32.7007 | |
| NUCLEAR MEDICINE TECH I | 25.8210 | 26.5002 | 27.1802 | 28.0529 | 28.9644 | 29.8367 | |
| NUCLEAR MEDICINE TECH II | 27.4056 | 28.1270 | 28.8480 | 29.7207 | 30.6328 | 31.5054 | |
| | | | | | | | |
| NURSE ASSISTANT | 14.1681 | 14.5312 | 14.9038 | 15.2460 | 15.6006 | 15.9176 | |
| NURSE ASSISTANT SR | 14.3242 | 14.6918 | 15.0686 | 15.4101 | 15.7401 | 16.0815 | |
| | | | | | | | |
| NUTRITION AIDE | 13.5017 | 13.8476 | 14.2024 | 14.7387 | 15.0958 | | |
| NUTRITION CLERK | 13.6713 | 14.0220 | 14.3814 | 14.9177 | 15.2747 | | |
| NUTRITION CLERK – SENIOR | 14.0055 | 14.3557 | 14.7155 | 15.2517 | 15.6086 | | |
| | | | | | | | |
| OB TECHNICIAN | 14.9237 | 15.3063 | 15.6986 | 16.0878 | 16.5142 | 16.9030 | |
| OB TECHNICIAN SR | 15.2812 | 15.6731 | 16.0754 | 16.4644 | 16.8907 | 17.2797 | |
| | | | | | | | |
| OCCUPNL THERP ASST I CERT | 17.2997 | 17.7431 | 18.1980 | 18.6387 | 19.1214 | 19.5618 | |
| OCCUPNL THERP ASST II CERT | 18.3377 | 18.8076 | 19.2902 | 19.7573 | 20.2686 | 20.7355 | |
| | | | | | | | |
| OPTHALMIC PHOTOGRAPHER | 18.5637 | 19.0396 | 19.5280 | 19.9874 | 21.5188 | 23.0509 | |
| OPTHALMIC TECH II CERT | 20.8064 | 21.3397 | 21.8868 | 23.0386 | 24.1908 | 25.3429 | 26.4944 |
| OPTHALMIC TECHNICIAN | 19.8155 | 20.3237 | 20.8445 | 21.9415 | 23.0390 | 24.1360 | 25.2330 |
| | | | | | | | |
| ORTHOPEDIC TECHNICIAN | 16.8948 | 17.3280 | 17.7724 | 18.2124 | 18.6954 | 19.1354 | |
| ORTHOPEDIC TECHNICIAN SR | 17.2997 | 17.7431 | 18.1980 | 18.6387 | 19.1214 | 19.5618 | |
| | | | | | | | |
| PACEMAKER TECHNICIAN | 17.5158 | 17.9333 | 18.3614 | 18.8570 | 19.5705 | 20.0976 | |
| PACEMAKER TECHNICIAN SR | 18.2223 | 18.6577 | 19.1044 | 19.6438 | 20.5120 | 21.1830 | |
| | | | | | | | |
| PATHOLOGY TECH ASST | 16.1908 | 16.6060 | 17.0316 | 17.4536 | 17.9165 | 18.3380 | |
| PATHOLOGY TECH ASST SR | 16.5790 | 17.0040 | 17.4402 | 17.8622 | 18.3247 | 18.7467 | |
| | | | | | | | |
| PATIENT TRANSPORTATION AIDE | 13.3261 | 13.6675 | 14.0181 | 14.2315 | 14.5202 | 14.8090 | |

## WAGE RATE EFFECTIVE OCTOBER 5, 2003
## STRUCTURE B2

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| PHARMACY INTERN | 15.9244 | 16.3326 | 16.7517 | 17.0629 | 17.5154 | 17.9675 | |
| PHARMACY TECH OUTPATIENT | 15.5284 | 15.9267 | 16.3349 | 16.6344 | 17.0688 | 17.5033 | |
| PHARMACY TECH INPATIENT | 16.1560 | 16.5703 | 16.9952 | 17.3064 | 17.7587 | 18.2108 | |
| | | | | | | | |
| PHYSICAL THERAPY AIDE | 13.6345 | 13.9845 | 14.3430 | 14.5812 | 14.9199 | 15.2587 | |

164

KFH 01096



| Job Title | | | | | | |
|---|---|---|---|---|---|---|
| PHYSICAL THERAPY AIDE SR | 14.2059 | 14.5704 | 14.9441 | 15.2201 | 15.6214 | 16.0231 |
| PHYSICAL THERAPY ASST I | 18.7701 | 19.2514 | 19.7449 | 20.2230 | 20.7466 | 21.2245 |
| PHYSICAL THERAPY ASST II | 19.8964 | 20.4064 | 20.9299 | 21.4366 | 21.9916 | 22.4980 |
| PHYSICAL THERAPY TECH SR | 15.2812 | 15.6731 | 16.0754 | 16.4644 | 16.8907 | 17.2797 |
| PHYSICAL THERAPY TECHNICIAN | 14.9237 | 15.3063 | 15.6986 | 16.0878 | 16.5142 | 16.9030 |
| PROJECTOR OPERATOR | 17.0931 | 17.5351 | 17.9786 | | | |
| PROJECTOR OPERATOR | 13.8117 | 14.1663 | 14.5288 | 14.9055 | 15.2816 | |
| PSYCHIATRIC ATTENDANT | 15.7712 | 16.1864 | 16.6011 | 17.0096 | 17.4182 | 17.8127 |
| PSYCHIATRIC TECHNICIAN | 18.2307 | 18.7106 | 19.1901 | 19.6562 | 20.1088 | 20.5609 | 21.0135 |
| PSYCHIATRIC TECHNICIAN SR | 19.0400 | 19.5409 | 20.0420 | 20.5089 | 20.9611 | 21.4130 | 21.8654 |
| RADIOLOGIC TECH I | 21.3866 | 21.9488 | 22.5118 | 22.8672 | 23.3719 | |
| RADIOLOGIC TECH II | 22.6660 | 23.2623 | 23.8590 | 24.3993 | 25.1596 | |
| RADIOLOGIC TECH III | 23.6527 | 24.2756 | 24.8980 | 25.6071 | 26.8145 | 28.0223 | 29.2293 |
| RADIOLOGIC TECH LIMITED | 20.4099 | 20.9464 | 21.4838 | 21.8232 | 22.3048 | |
| RADIOLOGIC TECHNOL SUPV | 25.4738 | 26.1437 | 26.8145 | 28.0223 | 29.2293 | 30.4362 | 31.6440 |
| REG RESPIRATORY THER TECH I | 22.8278 | 23.4286 | 24.0288 | 24.4953 | 25.0788 | 25.6618 |
| REG RESPIRATORY THER TECH II | 24.0466 | 24.6795 | 25.3121 | 25.8954 | 26.8289 | 27.9950 | 29.1612 |
| RESP CARE PRACTITIONER I | 21.7408 | 22.3129 | 22.8848 | 23.3292 | 23.8844 | 24.4402 |
| RESP CARE PRACTITIONER II | 22.9013 | 23.5041 | 24.1068 | 24.6625 | 25.5513 | 26.6619 | 27.7726 |
| RESP CARE PRACTITIONER SUPV | 25.2490 | 25.9131 | 26.5776 | 27.1903 | 28.1701 | 29.3947 | 30.6195 |
| RESPIRATORY CARE PERMITTEE | 19.5667 | | | | | |
| RESPIRATORY SUPPLY AIDE | 14.0339 | 14.3936 | 14.7627 | 15.1013 | 15.4528 | 15.7667 |
| RESPIRATORY SUPPLY AIDE SR | 14.2749 | 14.6409 | 15.0164 | 15.2929 | 15.6941 | 16.0955 |
| SERVICE PARTNER | 13.6568 | 14.0067 | 14.3659 | 14.7423 | 15.1188 | |
| STERILE PROC TECH CERT SR | 15.7862 | 16.1907 | 16.6061 | 16.9873 | 17.3821 | 17.7351 |
| STERILE PROC TECH II CERT | 15.1787 | 15.5679 | 15.9673 | 16.3340 | 16.7137 | 17.0530 |
| STERILE PROCESSING TECH I | 14.5952 | 14.9691 | 15.3532 | 15.7056 | 16.0709 | 16.3970 |
| STOREKEEPER | 13.8117 | 14.1663 | 14.5288 | 14.9055 | 15.2816 | |
| STOREKEEPER CHIEF | 15.4761 | 15.8726 | 16.2797 | 16.7211 | 17.1044 | |
| STOREKEEPER I | 14.0722 | 14.4330 | 14.8033 | 15.1864 | 15.5702 | |
| STOREKEEPER II | 14.2986 | 14.6652 | 15.0413 | 15.4221 | 15.9473 | |

### WAGE RATES EFFECTIVE OCTOBER 5, 2003
### STRUCTURE B2

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| SURGICAL ASSISTANT CERT | 19.0201 | 19.5079 | 20.0084 | 20.5263 | 21.1425 | 21.8555 | |
| SURGICAL ASST TRAINEE | 17.9931 | | | | | | |
| SURGICAL ASST. | 18.5564 | 19.0322 | 19.5201 | 20.0256 | 20.6270 | 21.3225 | |
| SURGICAL TECHNICIAN | 17.2993 | 17.7425 | 18.1975 | 18.6482 | 19.1427 | 19.5932 | |
| SURGICAL TECHNICIAN SR | 17.7136 | 18.1676 | 18.6334 | 19.0846 | 19.5788 | 20.0300 | |
| UNIT ASSISTANT | 14.5697 | 14.9431 | 15.3263 | 15.6462 | 15.9846 | 16.3793 | |

KFH 01097

| | | | | | | |
|---|---|---|---|---|---|---|
| UNIT ASSISTANT SR | 14.8715 | 15.2626 | 15.6543 | 15.9454 | 16.3675 | 16.7904 |
| | | | | | | |
| VISION SERVICES ASST I | 14.2834 | 14.6498 | 15.0249 | 15.3691 | 15.7128 | 15.9931 |
| VISION SERVICES ASST II | 14.7853 | 15.1642 | 15.5530 | 15.9092 | 16.2650 | 16.5547 |
| | | | | | | |
| YARDKEEPER | 13.6683 | 14.0191 | 14.3784 | 14.7551 | 15.1311 | |

166

KFH 01098


**WAGE RATES EFFECTIVE OCTOBER 3, 2004**
**STRUCTURE B2**

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| ALLRGY ASST SUPV CENTRL LAB | 17.1631 | 17.4289 | 17.8759 | 18.2823 | 18.8990 | 19.4739 | |
| ALLERGY TECHNICIAN | 16.0784 | 16.4908 | 16.9136 | 17.2395 | 17.7058 | 18.1593 | |
| ALLERGY TECHNICIAN SR | 16.7307 | 17.1595 | 17.5997 | 17.9821 | 18.5057 | 19.0152 | |
| ALLERGY TECHNICIAN TRAINEE | 15.2532 | 15.6444 | 16.0456 | 16.3426 | 16.7512 | 17.1355 | |
| | | | | | | | |
| ANESTHESIA SUPPLY AIDE | 14.5953 | 14.9693 | 15.3532 | 15.7054 | 16.0709 | 16.3974 | |
| ANESTHESIA SUPPLY AIDE SR | 14.8459 | 15.2265 | 15.6171 | 15.9046 | 16.3219 | 16.7393 | |
| ANESTHESIA TECH ASST SR | 17.2593 | 17.7020 | 18.1553 | 18.6056 | 19.0990 | 19.5485 | |
| ANESTHESIA TECH ASST | 16.8384 | 17.2703 | 17.7128 | 18.1517 | 18.6332 | 19.0716 | |
| | | | | | | | |
| BONE DENSITOMETRY TECH | 16.9292 | 17.3631 | 17.8083 | 18.3240 | 19.0661 | 19.6142 | |
| | | | | | | | |
| CARDIOVASCULAR TECH | 21.1369 | 21.6787 | 22.2346 | 23.0589 | 24.2933 | 25.5289 | |
| CARDIOVASCULAR TECH SR | 22.7024 | 23.2847 | 23.8817 | 24.7052 | 25.9402 | 27.1754 | |
| | | | | | | | |
| CARE PARTNER | 14.7348 | 15.1124 | 15.5000 | 15.8558 | 16.2246 | 16.5541 | |
| | | | | | | | |
| CENTRAL SUPPLY TECHNICIAN | 14.5953 | 14.9693 | 15.3532 | 15.7054 | 16.0709 | 16.3974 | |
| | | | | | | | |
| CLERICAL GRADE 1 | 13.5386 | 13.8859 | 14.2416 | 14.4635 | 14.7643 | 15.0640 | |
| CLERICAL GRADE 2 | 14.1079 | 14.4698 | 14.8405 | 15.0892 | 15.4416 | 15.7939 | |
| CLERICAL GRADE 3 | 14.4051 | 14.7746 | 15.1532 | 15.4660 | 15.8068 | 16.1917 | |
| CLERICAL GRADE 4 | 14.7026 | 15.0794 | 15.4660 | 15.7539 | 16.1711 | 16.5886 | |
| CLERICAL GRADE 5 | 15.2947 | 15.6865 | 16.0889 | 16.4279 | 16.8979 | 17.3673 | |
| CLERICAL GRADE 6 | 15.9878 | 16.3980 | 16.8187 | 17.2098 | 17.7447 | 18.2795 | |
| CLERICAL GRADE 7 | 16.6753 | 17.1025 | 17.5411 | 17.9717 | 18.5981 | 19.2243 | |
| | | | | | | | |
| COMMUNICATION OPERATOR | 14.3779 | 14.7468 | 15.1244 | 15.3781 | 15.7371 | 15.9625 | 16.5079 |
| COMMUNICATION OPERATOR SR | 14.6807 | 15.0573 | 15.4432 | 15.7619 | 16.1093 | 16.3349 | 16.9060 |
| | | | | | | | |
| COOK A | 15.7558 | 16.1596 | 16.5744 | 16.9803 | 17.3870 | | |
| COOK IN CHARGE (SR) | 16.4327 | 16.8540 | 17.2864 | 17.6931 | 18.0991 | | |
| | | | | | | | |
| CT SCHEDULING ASSISTANT | 14.7026 | 15.0794 | 15.4660 | 15.7539 | 16.1711 | 16.5886 | |
| | | | | | | | |
| CUSTODIAN/WATCHMAN | 15.2067 | 15.5966 | 15.9963 | 16.3873 | 16.7795 | | |
| | | | | | | | |
| CYTO-HISTO TECHNOL SUPVR | 32.5396 | 33.3960 | 34.2520 | 35.6888 | 36.8658 | 37.5569 | |
| CYTOLOGY TECHNOL CHIEF | 31.4734 | 32.3017 | 33.1292 | 33.8201 | 34.8460 | 35.8935 | |
| CYTOTECHNOLOGIST I | 27.9309 | 28.6659 | 29.4014 | 29.7903 | 30.8380 | 31.8640 | |
| CYTOTECHNOLOGIST II | 28.8550 | 29.6144 | 30.3735 | 30.9574 | 31.9831 | 33.1170 | |
| CYTOTECHNOLOGIST III | 29.8404 | 30.6256 | 31.4108 | 32.1018 | 33.2792 | 34.4353 | |
| | | | | | | | |
| DARK ROOM TECHNICIAN | 14.8115 | 15.1913 | 15.5809 | 15.8810 | 16.4289 | 16.8206 | |
| | | | | | | | |
| DEPARTMENT SECRETARY | 15.8122 | 16.2174 | 16.6336 | 16.9430 | 17.3914 | 17.8407 | |

**WAGE RATES EFFECTIVE OCTOBER 3, 2004**
**STRUCTURE B2**

KFH 01099



| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| DIAG ULTRASONOGRAPHER I | 26.7734 | 27.4778 | 28.1825 | 28.6268 | 29.2594 | 30.2661 | |
| DIAG ULTRASONOGRAPHER II | 28.6477 | 29.4014 | 30.1553 | 31.0137 | 32.4760 | 34.0332 | 35.4006 |
| DIAG ULTRASONOGRAPHER III | 30.0801 | 30.8715 | 31.6630 | 32.5646 | 34.0999 | 35.7348 | 37.1712 |
| DIAG ULTRASONOGRAPHER SUPV | 32.3956 | 33.2472 | 34.0999 | 35.6361 | 37.1713 | 38.8134 | 40.2414 |
| DIAG ULTRASNOGRPHR TRAINEE | 23.5166 | | | | | | |
| EEG TECHNOLOGIST I | 17.7245 | 18.1791 | 18.6455 | 19.1493 | 20.0563 | 20.8626 | |
| EEG TECHNOLOGIST II | 18.7788 | 19.2601 | 19.7544 | 20.2580 | 21.2658 | 22.2733 | |
| EKG TECHNICIAN | 16.9292 | 17.3631 | 17.8083 | 18.3240 | 19.0661 | 19.6142 | |
| EKG TECHNICIAN SR | 17.6637 | 18.1166 | 18.5813 | 19.1420 | 20.0451 | 20.7429 | |
| EMERGENCY DEPT TECHNICIAN I | 14.8547 | 15.2358 | 15.6259 | 15.9839 | 16.3413 | 16.6328 | |
| EMERGENCY DEPT TECHNICIAN II | 17.5706 | 18.0211 | 18.4833 | 18.9409 | 19.4432 | 19.9008 | |
| GARDENER | 15.6073 | 16.0075 | 16.4178 | 16.8166 | 17.2156 | | |
| GARDENER SR | 16.8241 | 17.2557 | 17.6977 | 18.1003 | 18.4990 | | |
| HISTOLOGIC TECH I | 21.9395 | 22.5168 | 23.0943 | 23.5657 | 23.9380 | 24.2524 | |
| HISTOLOGIC TECH II | 23.7405 | 24.3655 | 24.9898 | 25.6381 | 26.0697 | 26.3643 | |
| HISTOLOGIC TECH TRAINEE | 18.3626 | 18.8452 | 19.3288 | 19.6522 | 20.1108 | 20.5700 | |
| HISTOLOGIC TECHNICIAN SUPV | 26.2684 | 26.9601 | 27.6513 | 28.3390 | 28.8889 | 29.3010 | |
| HOME HEALTH AIDE | 14.8088 | 15.1883 | 15.5778 | 15.9304 | 16.2958 | 16.6215 | |
| HOMEMAKER | 9.2632 | | | | | | |
| HOUSEKEEPING AIDE | 14.2031 | 14.5670 | 14.9405 | 15.3323 | 15.7236 | | |
| HOUSEKEEPING HEAD AIDE | 14.5749 | 14.9486 | 15.3323 | 15.7236 | 16.1147 | | |
| INVASIVE CARDIO SPECIALIST | 29.0681 | 29.9401 | 30.8382 | 31.6090 | 32.3994 | 33.2090 | |
| LABORATORY ASSISTANT I | 14.7805 | 15.1592 | 15.5484 | 15.8086 | 16.1776 | 16.5467 | |
| LABORATORY ASSISTANT II | 15.4031 | 15.7984 | 16.2038 | 16.4615 | 16.9417 | 17.3795 | |
| LABORATORY ASSISTANT III | 15.6636 | 16.0653 | 16.4770 | 16.7783 | 17.2154 | 17.6529 | |
| LABORATORY ASSISTANT SR | 16.0233 | 16.4344 | 16.8557 | 17.2111 | 17.7036 | 18.1952 | |
| LICENSED VOC NURSE | 19.2320 | 19.7382 | 20.2441 | 20.7359 | 21.2134 | 21.6903 | 22.1679 |
| LICENSED VOC NURSE SR | 20.0859 | 20.6142 | 21.1429 | 21.6352 | 22.1124 | 22.5891 | 23.0663 |
| LIFT TECHNICIAN | 14.5953 | 14.9693 | 15.3532 | 15.7054 | 16.0709 | 16.3974 | |
| LINEN ROOM SUPERVISOR | 14.5749 | 14.9486 | 15.3323 | 15.7236 | 16.1147 | | |
| MEDICAL ASSISTANT | 14.8547 | 15.2358 | 15.6259 | 15.9839 | 16.3413 | 16.6328 | |
| MEDICAL ASSISTANT SR | 15.2324 | 15.6228 | 16.0235 | 16.3806 | 16.7381 | 17.0296 | |
| MEDICAL LEGAL SPEC SAC ONLY | 17.9684 | 18.4305 | 18.8934 | 19.4452 | 20.0423 | 20.6381 | |

WAGE RATES EFFECTIVE OCTOBER 3, 2004
STRUCTURE B2

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| MEDICAL RECORD CODER I | 18.3208 | 18.8026 | 19.2848 | 19.6910 | 20.2541 | 20.8172 | |
| MEDICAL RECORD CODER II | 19.7762 | 20.2968 | 20.8172 | 21.2542 | 21.8618 | 22.4674 | |

168

KFH 01100

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| MEDICAL SECRETARY | 18.7650 | 19.2591 | 19.7528 | 20.3422 | 20.9794 | 21.6156 | |
| MEDICAL SECRETARY SR | 19.7029 | 20.2220 | 20.7404 | 21.3593 | 22.0283 | 22.6964 | |
| MEDICAL SECRETARY TRAINEE | 15.1246 | 15.5122 | 15.9099 | 16.2061 | 16.6354 | 17.0648 | |
| MESSENGER DRIVER | 14.3267 | 14.6943 | 15.0711 | 15.3323 | 15.5281 | | |
| MESSENGER DRIVER SR | 15.1761 | 15.5651 | 15.9647 | 16.2257 | 16.4208 | | |
| MONITOR TECHNICIAN | 15.6259 | 16.0181 | 16.4187 | 16.7529 | 17.1072 | 17.5200 | |
| MRI TECHNOLOGIST I | 27.8706 | 28.4281 | 28.9968 | 29.5764 | 30.1511 | | |
| MRI TECHNOLOGIST II | 29.7928 | 30.3887 | 30.9963 | 31.6162 | 32.2487 | 32.8936 | |
| MRI TECHNOLOGIST SUPV | 31.7151 | 32.3489 | 32.9961 | 33.6562 | 34.3293 | 35.0159 | |
| MRI TECHNOLOGIST TRAINEE | 25.4396 | 25.9486 | 26.4675 | | | | |
| NUCLEAR MED TECH SUPV | 29.6828 | 30.4639 | 31.2451 | 32.1524 | 33.1011 | 34.0087 | |
| NUCLEAR MEDICINE TECH I | 26.8538 | 27.5602 | 28.2674 | 29.1750 | 30.1230 | 31.0302 | |
| NUCLEAR MEDICINE TECH II | 28.5018 | 29.2521 | 30.0019 | 30.9095 | 31.8581 | 32.7656 | |
| NURSE ASSISTANT | 14.7348 | 15.1124 | 15.5000 | 15.8558 | 16.2246 | 16.5543 | |
| NURSE ASSISTANT SR | 14.8972 | 15.2795 | 15.6713 | 16.0265 | 16.3697 | 16.7248 | |
| NUTRITION AIDE | 14.0418 | 14.4015 | 14.7705 | 15.3282 | 15.6996 | | |
| NUTRITION CLERK | 14.2182 | 14.5829 | 14.9567 | 15.5144 | 15.8857 | | |
| NUTRITION CLERK SENIOR | 14.5657 | 14.9299 | 15.3041 | 15.8618 | 16.2329 | | |
| OB TECHNICIAN | 15.5206 | 15.9186 | 16.3265 | 16.7313 | 17.1748 | 17.5791 | |
| OB TECHNICIAN SR | 15.8924 | 16.3000 | 16.7184 | 17.1230 | 17.5663 | 17.9709 | |
| OCCUPNL THERP ASST I CERT | 17.9917 | 18.4528 | 18.9259 | 19.3842 | 19.8863 | 20.3443 | |
| OCCUPNL THERP ASST II CERT | 19.0712 | 19.5599 | 20.0618 | 20.5476 | 21.0793 | 21.5649 | |
| OPTHALMIC PHOTOGRAPHER | 19.3062 | 19.8012 | 20.3091 | 20.7869 | 22.3796 | 23.9729 | |
| OPTHALMIC TECH II CERT | 21.6387 | 22.1933 | 22.7623 | 23.9601 | 25.1584 | 26.3566 | 27.5542 |
| OPTHALMIC TECHNICIAN | 20.6081 | 21.1366 | 21.6783 | 22.8192 | 23.9606 | 25.1014 | 26.2423 |
| ORTHOPEDIC TECHNICIAN | 17.5706 | 18.0211 | 18.4833 | 18.9409 | 19.4432 | 19.9008 | |
| ORTHOPEDIC TECHNICIAN SR | 17.9917 | 18.4528 | 18.9259 | 19.3842 | 19.8863 | 20.3443 | |
| PACEMAKER TECHNICIAN | 18.2164 | 18.6506 | 19.0959 | 19.6113 | 20.3533 | 20.9015 | |
| PACEMAKER TECHNICIAN SR | 18.9512 | 19.4040 | 19.8686 | 20.4296 | 21.3325 | 22.0303 | |
| PATHOLOGY TECHNICAL ASST | 16.8384 | 17.2702 | 17.7129 | 18.1517 | 18.6332 | 19.0715 | |
| PATHOLOGY TECHNICAL ASST SR | 17.2422 | 17.6842 | 18.1378 | 18.5767 | 19.0577 | 19.4966 | |
| PATIENT TRANSPORTATION AIDE | 13.8591 | 14.2142 | 14.5788 | 14.8008 | 15.1010 | 15.4014 | |

## WAGE RATES EFFECTIVE OCTOBER 3, 2004
## STRUCTURE B2

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| PHARMACY INTERN | 16.5614 | 16.9859 | 17.4218 | 17.7454 | 18.2160 | 18.6862 | |
| PHARMACY TECH OUTPATIENT | 16.1495 | 16.5638 | 16.9883 | 17.2998 | 17.7516 | 18.2034 | |
| PHARMACY TECH INPATIENT | 16.8022 | 17.2331 | 17.6750 | 17.9987 | 18.4690 | 18.9392 | |
| PHYSICAL THERAPY AIDE | 14.1799 | 14.5439 | 14.9167 | 15.1644 | 15.5167 | 15.8690 | |

169

KFH 01101

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| PHYSICAL THERAPY AIDE SR | 14.7741 | 15.1532 | 15.5419 | 15.8289 | 16.2463 | 16.6640 | |
| PHYSICAL THERAPY ASST I | 19.5209 | 20.0215 | 20.5347 | 21.0319 | 21.5765 | 22.0735 | |
| PHYSICAL THERAPY ASST II | 20.6923 | 21.2227 | 21.7671 | 22.2941 | 22.8713 | 23.3979 | |
| PHYSICAL THERAPY TECH SR | 15.8924 | 16.3000 | 16.7184 | 17.1230 | 17.5663 | 17.9709 | |
| PHYSICAL THERAPY TECHNICIAN | 15.5206 | 15.9186 | 16.3265 | 16.7313 | 17.1748 | 17.5791 | |
| PROJECTOR OPERATOR | 17.7768 | 18.2365 | 18.6977 | | | | |
| PROJECTOR OPERATOR | 14.3642 | 14.7330 | 15.1100 | 15.5017 | 15.8929 | | |
| PSYCHIATRIC ATTENDANT | 16.4020 | 16.8339 | 17.2651 | 17.6900 | 18.1149 | 18.5252 | |
| PSYCHIATRIC TECHNICIAN | 18.9599 | 19.4590 | 19.9577 | 20.4424 | 20.9132 | 21.3833 | 21.8540 |
| PSYCHIATRIC TECHNICIAN SR | 19.8016 | 20.3225 | 20.8437 | 21.3293 | 21.7995 | 22.2695 | 22.7400 |
| RADIOLOGIC TECH I | 22.2421 | 22.8268 | 23.4123 | 23.7819 | 24.3068 | | |
| RADIOLOGIC TECH II | 23.5726 | 24.1928 | 24.8134 | 25.3753 | 26.1660 | | |
| RADIOLOGIC TECH III | 24.5988 | 25.2466 | 25.8939 | 26.6314 | 27.8871 | 29.1432 | 30.3985 |
| RADIOLOGIC TECH LIMITED | 21.2263 | 21.7843 | 22.3432 | 22.6961 | 23.1970 | | |
| RADIOLOGIC TECHNOL SUPV | 26.4928 | 27.1894 | 27.8871 | 29.1432 | 30.3985 | 31.6536 | 32.9098 |
| REG RESPIRATORY THER TECH I | 23.7409 | 24.3657 | 24.9900 | 25.4751 | 26.0820 | 26.6883 | |
| REG RESPIRATORY THER TECH II | 25.0085 | 25.6667 | 26.3246 | 26.9312 | 27.9021 | 29.1148 | 30.3276 |
| RESP CARE PRACTITIONER I | 22.6104 | 23.2054 | 23.8002 | 24.2624 | 24.8398 | 25.4178 | |
| RESP CARE PRACTITIONER II | 23.8174 | 24.4443 | 25.0711 | 25.6490 | 26.5734 | 27.7284 | 28.8835 |
| RESP CARE PRACTITIONER SUPV | 26.2590 | 26.9496 | 27.6407 | 28.2779 | 29.2969 | 30.5705 | 31.8443 |
| RESPIRATORY CARE PERMITTEE | 20.3494 | | | | | | |
| RESPIRATORY SUPPLY AIDE | 14.5953 | 14.9693 | 15.3532 | 15.7054 | 16.0709 | 16.3974 | |
| RESPIRATORY SUPPLY AIDE SR | 14.8459 | 15.2265 | 15.6171 | 15.9046 | 16.3219 | 16.7393 | |
| SERVICE PARTNER | 14.2031 | 14.5670 | 14.9405 | 15.3320 | 15.7236 | | |
| STERILE PROC TECH CERT SR | 16.4176 | 16.8383 | 17.2703 | 17.6668 | 18.0774 | 18.4445 | |
| STERILE PROC TECH II CERT | 15.7858 | 16.1906 | 16.6060 | 16.9874 | 17.3822 | 17.7351 | |
| STERILE PROCESSING TECH I | 15.1790 | 15.5679 | 15.9673 | 16.3338 | 16.7137 | 17.0529 | |
| STOREKEEPER | 14.3642 | 14.7330 | 15.1100 | 15.5017 | 15.8929 | | |
| STOREKEEPER CHIEF | 16.0951 | 16.5075 | 16.9309 | 17.3899 | 17.7886 | | |
| STOREKEEPER I | 14.6351 | 15.0103 | 15.3954 | 15.7939 | 16.1930 | | |
| STOREKEEPER II | 14.8705 | 15.2518 | 15.6430 | 16.0390 | 16.5852 | | |
| SURGICAL ASSISTANT CERT | 19.7809 | 20.2882 | 20.8087 | 21.3474 | 21.9882 | 22.7297 | |
| SURGICAL ASST TRAINEE | 18.7128 | | | | | | |
| SURGICAL ASST. | 19.2987 | 19.7935 | 20.3009 | 20.8266 | 21.4521 | 22.1754 | |

**WAGE RATES EFFECTIVE OCTOBER 3, 2004**
**STRUCTURE B2**

| Job Title | START | 1 YEAR | 2 YEARS | 3 YEARS | 4 YEARS | 5 YEARS | 6 YEARS |
|---|---|---|---|---|---|---|---|
| SURGICAL TECHNICIAN | 17.9913 | 18.4522 | 18.9254 | 19.3941 | 19.9084 | 20.3769 | |
| SURGICAL TECHNICIAN SR | 18.4221 | 18.8943 | 19.3787 | 19.8480 | 20.3620 | 20.8312 | |
| UNIT ASSISTANT | 15.1525 | 15.5408 | 15.9394 | 16.2720 | 16.6240 | 17.0345 | |
| UNIT ASSISTANT SR | 15.4664 | 15.8731 | 16.2805 | 16.5832 | 17.0222 | 17.4620 | |
| VISION SERVICES ASST I | 14.8547 | 15.2358 | 15.6259 | 15.9839 | 16.3413 | 16.6328 | |
| VISION SERVICES ASST II | 15.3767 | 15.7708 | 16.1751 | 16.5456 | 16.9156 | 17.2169 | |

170

KFH 01102

YARDKEEPER                    14.2150  14.5799    14.9535    15.3453    15.7363

171

KFH 01103



**WAGE RATES EFFECTIVE OCTOBER 8, 2000**
**FRESNO STRUCTURE**

| Job Title | START | 12 MOS | 24 MOS | 36 MOS | 48 MOS | | |
|---|---|---|---|---|---|---|---|
| HOUSEKEEPING AIDE | 10.1885 | 10.4584 | 10.7185 | 10.9864 | 11.2611 | | |
| HEAD HOUSEKEEPING AIDE | 10.4584 | 10.7185 | 10.9881 | 11.2627 | 11.5446 | | |
| LINEN ROOM SUPERVISOR | 10.4584 | 10.7185 | 10.9881 | 11.2627 | 11.5446 | | |
| CUSTODIAN WATCHMAN | 10.9109 | 11.1709 | 11.4407 | 11.7265 | 12.0197 | | |
| NUTRITION AIDE | 10.0733 | 10.4487 | 10.7088 | 10.9764 | 11.2507 | | |
| NUTRITION CLERK | 10.1982 | 10.5740 | 10.8340 | 11.1047 | 11.3825 | | |
| COOK A | 10.8916 | 11.1612 | 11.4212 | 11.7068 | 11.9996 | | |
| COOK IN CHARGE (SR) | 11.3540 | 11.6140 | 11.8837 | 12.1806 | 12.4852 | | |

| | START | 3 MOS | 12 MOS | 24 MOS | 36 MOS | | |
|---|---|---|---|---|---|---|---|
| MESSENGER DRIVER | 10.2756 | 10.4584 | 10.5932 | 10.8581 | 11.1297 | | |
| SR. MESSENGER DRIVER | 10.8822 | 11.0649 | 11.1902 | 11.4700 | 11.7566 | | |

| | START | 12 MOS | 24 MOS | 36 MOS | 48 MOS | | |
|---|---|---|---|---|---|---|---|
| GARDENER | 11.1954 | 11.4601 | 11.7349 | 12.0283 | 12.3291 | | |
| SR GARDENER | 12.0587 | 12.3333 | 12.5984 | 12.9134 | 13.2362 | | |
| YARDKEEPER | 10.1982 | 10.4680 | 10.7281 | 10.9960 | 11.2711 | | |
| STOREKEEPER | 10.3044 | 10.5740 | 10.8439 | 11.1148 | 11.3925 | | |
| STOREKEEPER I | 11.2052 | 11.4896 | 11.7837 | 12.0786 | 12.3804 | | |
| STOREKEEPER II | 11.3915 | 11.6759 | 12.0689 | 12.3703 | 12.6797 | | |
| CHIEF STOREKEEPER | 12.3237 | 12.6571 | 12.9517 | 13.2754 | 13.6073 | | |

| | START | 12 MOS | 24 MOS | 36 MOS | 48 MOS | 60 MOS | 72 MOS |
|---|---|---|---|---|---|---|---|
| LICENSED VOCATIONAL NURSE | 15.9573 | 16.3378 | 16.7062 | 17.0751 | 17.4437 | 17.8798 | 18.3269 |
| SR. LICENSED VOCATIONAL NURSE | 16.6592 | 17.0392 | 17.4080 | 17.7766 | 18.1452 | 18.5987 | 19.0636 |

| | START | 12 MOS | 24 MOS | 36 MOS | 48 MOS | 60 MOS | |
|---|---|---|---|---|---|---|---|
| CARE PARTNER | 10.2376 | 10.8463 | 11.4553 | 12.064 | 12.6728 | 13.2814 | |
| TRAINEE SURGICAL ASST | 16.9746 | 17.3989 | 17.8339 | | | | |
| CERTIFIED SURGICAL ASSISTANT | 17.9353 | 18.3937 | 18.9409 | 19.5779 | 20.0674 | 20.5692 | |
| SURGICAL ASST. | 17.4978 | 17.9449 | 18.4788 | 19.1004 | 19.5779 | 20.0674 | |
| EMERGENCY DEPT TECHNICIAN I | 11.3705 | 11.6310 | 11.8916 | 12.1033 | 12.4058 | 12.716 | |
| EMERGENCY DEPT TECHNICIAN II | 15.9387 | 16.3311 | 16.7566 | 17.1491 | 17.5776 | 18.0172 | |
| ORTHOPEDIC TECHNICIAN | 15.9387 | 16.3311 | 16.7566 | 17.1491 | 17.5776 | 18.0172 | |
| SR. ORTHOPEDIC TECHNICIAN | 16.3203 | 16.7128 | 17.138 | 17.5304 | 17.9686 | 18.4179 | |

172

KFH 01104


**WAGE RATES EFFECTIVE OCTOBER 8, 2000**
**FRESNO STRUCTURE**

|  | START | 12 MOS | 24 MOS | 36 MOS | 48 MOS | 60 MOS |
|---|---|---|---|---|---|---|
| SURGICAL TECHNICIAN | 15.9387 | 16.3311 | 16.7566 | 17.1491 | 17.5776 | 18.0172 |
| SR. SURGICAL TECHNICIAN | 16.3203 | 17.1126 | 17.548 | 17.9498 | 18.3984 | 18.8585 |

|  | START | 12 MOS | 24 MOS | 36 MOS | 48 MOS | 60 MOS |
|---|---|---|---|---|---|---|
| OB TECHNICIAN | 14.0792 | 14.4258 | 14.8014 | 15.1482 | 15.5269 | 15.9152 |
| SR. OB TECHNICIAN | 14.4162 | 14.7630 | 15.1386 | 15.4852 | 15.8723 | 16.2694 |
| PSYCHIATRIC TECHNICIAN | 15.4229 | 15.7908 | 16.1468 | 16.5034 | 16.8597 | 17.2813 |
| SR PSYCHIATRIC TECHNICIAN | 16.1013 | 16.4687 | 16.8252 | 17.1814 | 17.5376 | 17.9761 |
| PATHOLOGY TECHNICAL ASST | 15.2745 | 15.6507 | 16.0583 | 16.4343 | 16.8453 | 17.2666 |
| SR PATHOLOGY TECHNICAL ASST | 15.6402 | 16.0164 | 16.4240 | 16.8003 | 17.2199 | 17.6507 |
| NURSE ASSISTANT | 10.2376 | 10.4710 | 10.7142 | 10.9278 | 11.2010 | 11.4811 |
| SR. NURSE ASSISTANT | 10.3445 | 10.5878 | 10.8113 | 11.0444 | 11.3207 | 11.6037 |
| CENTRAL SUPPLY TECHNICIAN | 10.1406 | 10.3717 | 10.6126 | 10.8242 | 11.0949 | 11.3723 |
| STERILE PROCESSING TECH I | 10.5461 | 10.7865 | 11.0371 | 11.2574 | 11.5386 | 11.8271 |
| CERTIFIED STERILE PROC TECH II | 10.9680 | 11.2181 | 11.4787 | 11.7074 | 12.0003 | 12.3003 |
| SR CERTIFIED STERILE PROC TECH | 11.4066 | 11.6669 | 11.9377 | 12.176 | 12.4801 | 12.7922 |
| ANESTHESIA SUPPLY AIDE | 10.1406 | 10.3717 | 10.6126 | 10.8242 | 11.0949 | 11.3723 |
| SR. ANESTHESIA SUPPLY AIDE | 10.3137 | 10.5065 | 10.7762 | 11.0458 | 11.3217 | 11.6049 |
| ANESTHESIA TECHNICAL ASST | 11.7023 | 11.9689 | 12.2470 | 12.5129 | 12.8589 | 13.2260 |
| RESPIRATORY SUPPLY AIDE | 10.1406 | 10.3717 | 10.6126 | 10.8242 | 11.0949 | 11.3723 |
| SR. RESPIRATORY SUPPLY AIDE | 10.3137 | 10.5065 | 10.7762 | 11.0458 | 11.3217 | 11.6049 |
| HOME HEALTH AIDE | 10.2848 | 10.5258 | 10.7567 | 10.9689 | 11.2431 | 11.5243 |

|  | START | 2 MOS | 14 MOS | 26 MOS | 38 MOS | 50 MOS |
|---|---|---|---|---|---|---|
| MEDICAL ASSISTANT | 11.3705 | 11.6310 | 11.8916 | 12.1033 | 12.4801 | 12.7160 |
| SR MEDICAL ASSISTANT | 11.6596 | 11.9182 | 12.1781 | 12.3900 | 12.7000 | 13.0175 |

|  | START | 3 MOS | 12 MOS | 24 MOS | 36 MOS | 48 MOS |
|---|---|---|---|---|---|---|
| UNIT ASSISTANT | 11.5155 | 11.7485 | 12.0022 | 12.2963 | 12.6038 | 12.9188 |
| SR. UNIT ASSISTANT | 11.8501 | 12.0631 | 12.3875 | 12.7015 | 13.019 | 13.3444 |
| MONITOR TECHNICIAN | 11.8319 | 12.0650 | 12.3190 | 12.6157 | 12.9257 | 13.2422 |
| PATIENT TRANSPORTATION AIDE | 10.5355 | 10.6893 | 10.9012 | 11.0747 | 11.3518 | 11.6354 |
| PHYSICAL THERAPY AIDE | 10.8532 | 11.0360 | 11.2865 | 11.6705 | 11.9621 | 12.2613 |
| SR PHYSICAL THERAPY AIDE | 11.3058 | 11.5176 | 11.8158 | 12.1245 | 12.4276 | 12.7381 |

**WAGE RATES EFFECTIVE OCTOBER 8, 2000**
**FRESNO STRUCTURE**

173

KFH 01105



|  | START | 1 YEAR | 2YEARS | 3YEARS | 4YEARS |  |  |
|---|---|---|---|---|---|---|---|
| SERVICE PARTNER | 10.1885 | 10.4584 | 10.7185 | 10.9864 | 11.2611 |  |  |

|  | START | 1 YEAR | 2YEARS | 3YEARS | 4YEARS | 5YEARS |  |
|---|---|---|---|---|---|---|---|
| ADMINISTRATIVE PARTNER | 11.4193 | 11.6242 | 11.9370 | 12.2963 | 12.6038 | 12.9188 |  |
| SR ADMINISTRATIVE PARTNER | 11.6475 | 11.8567 | 12.1758 | 12.5422 | 12.8558 | 13.1771 |  |

|  | START | 2 MOS | 14 MOS | 26 MOS | 38 MOS | 50 MOS |  |
|---|---|---|---|---|---|---|---|
| SR VISION SERVICES ASST | 12.0645 | 12.3407 | 12.6171 | 12.8418 | 13.1629 | 13.4919 |  |
| VISION SERVICES ASST I | 11.3705 | 11.631 | 11.8916 | 12.1033 | 12.4058 | 12.7160 |  |
| VISION SERVICES ASST II | 11.7703 | 12.0398 | 12.3094 | 12.5286 | 12.8418 | 13.1629 |  |

|  | START | 3 MOS | 12 MOS | 24 MOS | 36 MOS | 48 MOS |  |
|---|---|---|---|---|---|---|---|
| CLERICAL GRADE 1 | 10.3622 | 10.5258 | 10.7472 | 10.9689 | 11.2431 | 11.5243 |  |
| CLERICAL GRADE 2 | 10.7954 | 10.9781 | 11.2382 | 11.4888 | 11.776 | 12.0704 |  |
| CLERICAL GRADE 3 | 11.0265 | 11.2577 | 11.5079 | 11.7872 | 12.0819 | 12.3841 |  |
| CLERICAL GRADE 4 | 11.2577 | 11.4597 | 11.7681 | 12.0665 | 123681 | 12.6773 |  |
| CLERICAL GRADE 5 | 11.7103 | 11.9608 | 12.2978 | 12.6347 | 12.9506 | 13.2746 |  |
| CLERICAL GRADE 6 | 12.2402 | 12.519 | 12.9139 | 13.2991 | 13.6317 | 13.9721 |  |
| CLERICAL GRADE 7 | 12.7602 | 13.0778 | 13.5303 | 13.9831 | 14.3325 | 14.6907 |  |

|  | START | 3 MOS | 12 MOS | 24 MOS | 36 MOS | 48 MOS |  |
|---|---|---|---|---|---|---|---|
| MEDICAL SECRETARY TRAINEE | 11.5809 | 11.7887 | 12.1059 | 12.4129 | 12.7232 | 13.0413 |  |
| MEDICAL SECRETARY | 12.9018 | 13.2823 | 13.6936 | 14.1050 | 14.4574 | 14.8190 |  |
| SR MEDICAL SECRETARY | 13.5468 | 13.9464 | 14.3782 | 14.8100 | 15.1803 | 15.5599 |  |

|  | START | 3 MOS | 12 MOS | 21 MOS | 30 MOS | 42 MOS | 54 MOS |
|---|---|---|---|---|---|---|---|
| COMMUNICATION OPERATOR | 10.9338 | 11.1883 | 11.4533 | 11.6103 | 12.0128 | 12.3131 | 12.6211 |
| SR COMMUNICATION OPERATOR | 11.2376 | 11.4731 | 11.7281 | 11.8952 | 12.2974 | 12.6048 | 12.9199 |

|  | START | 3 MOS | 12 MOS | 24 MOS | 36 MOS | 48 MOS | 60 MOS |
|---|---|---|---|---|---|---|---|
| MEDICAL RECORD CODER I | 13.2346 | 13.6258 | 14.0375 | 14.4687 | 14.6977 | 15.0349 | 15.7615 |
| MEDICAL RECORD CODER II | 14.1960 | 14.6146 | 15.0670 | 15.5051 | 15.7454 | 16.154 | 16.5902 |

|  | START | 3 MOS | 12 MOS | 24 MOS | 36 MOS | 48 MOS |  |
|---|---|---|---|---|---|---|---|
| CYTOTECHNOLOGIST I | 21.1306 | 21.4048 | 22.3620 | 23.0965 | 23.8909 | 24.4885 |  |
| CYTOTECHNOLOGIST II | 21.8347 | 22.2524 | 23.1926 | 24.0114 | 24.8375 | 25.4586 |  |
| CYTOTECHNOLOGIST III | 22.5623 | 23.0633 | 24.1202 | 24.9509 | 25.8092 | 26.4544 |  |
| CHIEF CYTOLOGY TECHNOLOGIST | 23.7912 | 24.2928 | 25.2519 | 26.0105 | 26.9053 | 27.5781 |  |
| SUPV CYTO-HISTO TECHNOLOGIST | 24.5908 | 25.6167 | 26.6970 | 27.2028 | 28.1388 | 28.8420 |  |

WAGE RATES EFFECTIVE OCTOBER 8, 2000
FRESNO STRUCTURE

|  | START | 3 MOS | 12 MOS | 24 MOS | 36 MOS | 48 MOS |
|---|---|---|---|---|---|---|

174



| | START | 3 MOS | 12 MOS | 24 MOS | 36 MOS | 48 MOS | 60 MOS |
|---|---|---|---|---|---|---|---|
| NUCLEAR MEDICINE TECH I | 22.2768 | 22.9856 | 23.6746 | 24.4296 | 25.0634 | 25.6898 | |
| NUCLEAR MEDICINE TECH II | 23.6333 | 24.3420 | 25.0875 | 25.7961 | 26.4410 | 27.1020 | |
| SUPV NUCLEAR MED TECH | 24.6108 | 25.2458 | 26.0650 | 26.7740 | 27.4433 | 28.1294 | |

| | START | 3 MOS | 12 MOS | 24 MOS | 36 MOS | 48 MOS | 60 MOS |
|---|---|---|---|---|---|---|---|
| RESPIRATORY CARE PERMITTEE | 14.8583 | 15.3128 | | | | | |
| REG RESPIRATORY THERAPY TECH I | 17.3347 | 17.6680 | 18.0815 | 18.5073 | 18.9699 | 19.4440 | |
| REG RESPIRATORY THERAPY TECH II | 18.2541 | 18.6680 | 19.3464 | 20.1738 | 20.8751 | 21.3968 | 21.9318 |
| RESP CARE PRACTITIONER I | 16.5091 | 16.8266 | 17.2206 | 17.6259 | 18.0665 | 18.5183 | 0 |
| RESP CARE PRACTITIONER II | 17.3848 | 17.7790 | 18.4252 | 19.2133 | 19.8810 | 20.3778 | 20.8873 |
| SUPV RESP CARE PRACTITIONER | 19.1667 | 19.6014 | 20.3136 | 21.1826 | 21.9188 | 22.4666 | 23.0283 |

| | START | 3 MOS | 12MOS | 24 MOS | 36 MOS | 48 MOS |
|---|---|---|---|---|---|---|
| PHYSICAL THERAPY ASST I | 15.8033 | 16.1817 | 16.5960 | 16.9741 | 17.3983 | 17.8334 |
| PHYSICAL THERAPY ASST II | 16.7515 | 17.1526 | 17.5915 | 17.9924 | 18.4423 | 18.9035 |
| PHYSICAL THERAPY TECHNICIAN | 14.0792 | 14.4258 | 14.8014 | 15.1482 | 15.5269 | 15.9152 |
| SR. PHYSICAL THERAPY TECH. | 14.4162 | 14.7630 | 15.1386 | 15.4852 | 15.8723 | 16.2694 |

| | START | 3 MOS | 12 MOS | 24 MOS | 36 MOS | 48 MOS |
|---|---|---|---|---|---|---|
| OCCUPATIONL THER ASST CERT I | | | | | | |
| OCCUPATIONL THER ASST CERT II | | | | | | |

| | START | 6 MOS | 12 MOS | 24 MOS | 36 MOS |
|---|---|---|---|---|---|
| RADIOLOGIC TECH I | 18.1959 | 18.4851 | 18.8946 | 19.3668 | 19.8510 |

| | START | 12 MOS | 24 MOS | 36 MOS | 48 MOS | 60 MOS | 72 MOS |
|---|---|---|---|---|---|---|---|
| RADIOLOGIC TECH II | 19.2798 | 19.7255 | 20.3278 | 20.8358 | 21.3570 | | |
| RADIOLOGIC TECH III | 20.1110 | 20.6768 | 21.6525 | 22.6157 | 23.5910 | 24.1810 | 24.7855 |
| SUPV. RADIOLOGIC TECHNOLOGIST | 21.6525 | 22.6157 | 23.5910 | 24.5546 | 25.5181 | 26.1560 | 26.8098 |

| | START | 3 MOS | 12 MOS | 24 MOS | 36 MOS | 48 MOS |
|---|---|---|---|---|---|---|
| TRAINEE ALLERGY TECHNICIAN | 12.3701 | 12.6002 | 12.9134 | 13.206 | 13.5361 | 13.8745 |
| ALLERGY TECHNICIAN | 13.0284 | 13.2687 | 13.6342 | 13.9791 | 14.3286 | 14.6871 |
| SR. ALLERGY TECHNICIAN | 13.5509 | 13.8434 | 14.2403 | 14.6373 | 15.0034 | 15.3783 |
| EKG TECHNICIAN | 12.9865 | 13.3625 | 13.8955 | 14.2925 | 14.6498 | 15.016 |
| SR EKG TECHNICIAN | 13.5509 | 13.9583 | 14.6061 | 15.1077 | 15.4852 | 15.8723 |

### WAGE RATES EFFECTIVE OCTOBER 8, 2000
### FRESNO STRUCTURE

| START | 3 MOS | 12 MOS | 24 MOS | 36 MOS | 48 MOS |
|---|---|---|---|---|---|

175

KFH 01107

| | START | 12 MOS | 24 MOS | 36 MOS | 48 MOS | 60 MOS |
|---|---|---|---|---|---|---|
| EEG TECHNOLOGIST I | 15.5570 | 15.9747 | 16.7269 | 17.3955 | 17.8304 | 18.2762 |
| EEG TECHNOLOGIST II | 16.4762 | 16.8940 | 17.7299 | 18.5658 | 19.0297 | 19.5058 |

| | START | 12 MOS | 24 MOS | 36 MOS | 48 MOS | 60 MOS |
|---|---|---|---|---|---|---|
| MRI TECHNOLOGIST TRAINEE | 20.8162 | 21.0176 | 21.3509 | | | |
| MRI TECHNOLOGIST I | 22.7888 | 23.1775 | 23.7633 | 24.2944 | 24.6032 | |
| MRI TECHNOLOGIST II | 24.3543 | 24.8949 | 25.9182 | 26.8449 | 27.2713 | 27.6210 |
| SUPVR MRI TECHNOLOGIST | 25.9182 | 26.9126 | 27.9083 | 28.3606 | 28.8145 | 29.4095 |

| | START | 3 MOS | 12 MOS | 24 MOS | 36 MOS | 48 MOS |
|---|---|---|---|---|---|---|
| CARDIOVASCULAR TECH | 16.9465 | 17.5628 | 18.5029 | 19.4328 | 19.9186 | 20.4168 |
| SR CARDIOVASCULAR TECHNICIAN | 18.1896 | 18.8162 | 19.7569 | 20.6869 | 21.2038 | 21.734 |
| LABORATORY ASSISTANT I | 11.3100 | 11.5013 | 11.7742 | 12.0366 | 12.3374 | 12.6458 |
| LABORATORY ASSISTANT II | 11.7942 | 12.0061 | 12.3290 | 12.6415 | 12.9576 | 13.2814 |
| LABORATORY ASSISTANT III | 11.9961 | 12.2079 | 12.5308 | 12.8436 | 13.1645 | 13.4938 |
| SR LABORATORY ASSISTANT | 12.2686 | 12.5308 | 12.8837 | 13.237 | 13.5678 | 13.9072 |
| HISTOLOGIC TECH. TRAINEE | 14.1854 | 14.417 | 14.7597 | 15.0912 | 15.4682 | 15.8550 |
| HISTOLOGIC TECH I | 16.9252 | 17.2675 | 17.5435 | 17.7757 | 18.2203 | 18.6756 |
| HISTOLOGIC TECH II | 18.3060 | 18.7811 | 19.0904 | 19.3113 | 19.7941 | 20.2891 |
| SUPV. HISTOLOGY TECHNICIAN | 20.2392 | 20.7363 | 21.1342 | 21.4326 | 21.9681 | 22.5172 |
| DARK ROOM TECHNICIAN | 12.5190 | 12.7504 | 13.1932 | 13.5016 | 13.8389 | 14.1851 |

| | START | 6 MOS | 12 MOS | 24 MOS | 36 MOS | 48 MOS |
|---|---|---|---|---|---|---|
| DIAG ULTRASONOGRAPHER I | 21.5175 | 21.8596 | 22.3434 | 23.0986 | 23.6758 | 24.2680 |

| | START | 12 MOS | 24 MOS | 36 MOS | 48 MOS | 60 MOS | 72 MOS |
|---|---|---|---|---|---|---|---|
| DIAG ULTRASONOGRAPHER II | 23.0236 | 23.6725 | 24.7886 | 25.8917 | 27.0087 | 27.6836 | 28.3757 |
| DIAG ULTRASONOGRAPHER III | 24.1752 | 24.8558 | 26.0281 | 27.1862 | 28.359 | 29.0678 | 29.7945 |
| SUPV DIAG ULTRASONOGRAPHER | 26.0361 | 26.7689 | 28.0314 | 29.7503 | 30.9131 | 31.5719 | 32.2555 |

| | START | 3 MOS | 12 MOS | 24 MOS | 36 MOS | 48 MOS | 60 MOS |
|---|---|---|---|---|---|---|---|
| OPTHALMIC PHOTOGRAPHER | 13.8119 | 14.1356 | 15.2121 | 16.2881 | 16.6952 | 17.1130 | |
| OPTHALMIC TECHNICIAN | 14.7315 | 15.5045 | 16.2674 | 17.0403 | 17.8134 | 18.2589 | 18.7153 |
| CERT OPTHALMIC TECH II | 15.4679 | 16.2796 | 17.0807 | 17.8924 | 18.7039 | 19.1718 | 19.6510 |

| | START | 3 MOS | 12 MOS | 24 MOS | 36 MOS | 48 MOS |
|---|---|---|---|---|---|---|
| PHARMACY INTERN | 15.5987 | 15.8911 | 16.3089 | 16.7269 | 17.1450 | 17.5735 |
| INPATIENT PHARMACY TECHNICIAN | 12.8621 | 13.0929 | 13.4474 | 13.7862 | 14.1309 | 14.4840 |
| OUTPATIENT PHARMACY TECH | 12.3624 | 12.5844 | 12.9228 | 13.2509 | 13.5821 | 13.9214 |

KFH 01108

 
|  | START | 12 MOS | 24 MOS | 36 MOS | 48 MOS | 60 MOS |
|---|---|---|---|---|---|---|
| LIFT TECHNICIAN | 10.1406 | 10.3717 | 10.6126 | 10.8242 | 11.0949 | 11.3723 |

|  | START | 3 MOS | 12 MOS | 24 MOS | 36 MOS | 48 MOS |
|---|---|---|---|---|---|---|
| BONE DENSITOMETRY TECH | 12.9865 | 13.3625 | 13.8955 | 14.2925 | 14.6498 | 15.0160 |
| HOMEMAKER | 7.7622 |  |  |  |  |  |

177

KFH 01109

## APPENDIX E

### SHIFT DIFFERENTIAL / TENURE STEP / EXPERIENCE CREDIT IN LIEU OF BENEFITS

I.    SCHEDULE Y

Effective November 1, 1992, for the classifications listed below, evening shift differential shall be $1.00 per hour and night shift differential shall be $1.25 per hour.

The In Lieu of Benefits differential shall be $1.00 per hour for the classifications listed below.

Allergy Tech
Allergy Tech Trainee
Anesthesia Supply Aide
Asst. Sup. Centrl. Allrg. Lab
Care Partner
Central Supply Tech
Cert. Sterile 'Proc Tech II
Chief Storekeeper
Clerical Grade 1 through 7
Communication Operator
Cook A, B
Cook In Charge Sr.
Custodian Watchman
Dark Room Tech
Department Secretary
Dishwasher/Potwasher
Fountain Attendant
Gardener
Head Housekeeping Aide
Home Health Aide
Housekeeper
Inpatient Pharmacy Tech
Laboratory Assistant I, II, III
Linen Room Supervisor
Medical Assistant
Messenger Driver
Nurse Assistant
Nutrition Aide
Nutrition Clerk
OB Tech
Outpatient Pharmacy Tech

Patient Transp. Aide
Pharmacist Intern
Physical Therapy Aide
Physical Therapy Tech
Psychiatric Attend (Mart.)
Resp. Care Permittee
Respiratory Supply Aide
Service Partner
Sr. Allergy Tech
Sr. Anesthesia Supply Aide
Sr. Cert. Sterile Proc Tech
Sr. Communication Oper.
Sr. Gardener
Sr. Lab Assistant
Sr. Medical Assistant
Sr. Messenger Driver
Sr. Nurse Assistant
Sr. Nutrition Clerk
Sr. OB Tech
Sr. Physical Therapy Aide I
Sr. Physical Therapy Tech
Sr. Resp. Supply Aide
Sr. Surgical/Supply Tech
Sterile Processing Tech II
Stockroom Asst. Berk.
Storekeeper
Storekeeper I, II
Unit Assistant
Vision Services Asst. I
Watchman
Yardkeeper

II.    SCHEDULE Z

178

KFH 01110



Effective November 1, 1992, for the classifications listed below, evening shift differential shall be $1.45 per hour and night shift differential shall be $1.95 per hour.

Effective November 1, 1992, for the classifications below, the In Lieu of Benefits differential shall be $2.00 per hour.

Anesthesia Tech Asst.
Cardiovascular Tech
Certified Surgical Assistant
Cert. Occupational Therapist Asst. I, II
Chief Cytotechnologist
Cytogenetic Tech I
Cytogenetic Tech II
Cytogenetic Tech III
Cytogenetic Trainee
Cytotechnologist I
Cytotechnologist II
Cytotechnologist III
Diag. Ultrason. I, II & III & Trainee
Driver/Foreman (Berk/Liv)
EEG Tech I
EEG Tech II
EKG Technician
Histologic Tech I
Histologic Tech II
Histologic Tech Trainee
Licensed Vocational Nurse
Medical Record Coder I, II
Medical Secretary
Molecular Technologist I, II, III
M.R.I. Tech I, II & III
Nuclear Medicine Tech I
Nuclear Medicine Tech II
Ophthalmic Photographer
Ophthalmic Tech
Ophthalmic Tech II
Orthopedic Tech
Pathology Tech Asst.
Physical Therapy Asst. I, II
Psychiatric Tech

Radiographic Film Proc. Tech
Radiologic Technologist I
Radiologic Technologist II
Radiologic Technologist III
Reagent Chemist (S.F.)
Reg. Respir. Care Prac. I
Reg. Respir. Care Prac. II
Respiratory Care Prac. I
Respiratory Care Prac. II
Sr. Anesthesia Tech Asst.
Sr. Cardiovascular Tech
Sr. EKG Tech
Sr. Lic. Vocational Nurse
Sr. Mammography Tech
Sr. Orthopedic Tech
Sr. Ortho Tech (Hayward)
Sr. Pathology Tech Asst.
Sr. Psychiatric Tech
Sr. Surgical Tech
Supv. Cyto/Histo Tech
Supv. Diag. Ultrasonographer
Supv. Histologic Tech
Supv. Nuclr. Med. Tech
Supv. Radiologic Tech
Supv. Resp. Care Practitioner
Surgical Assistant
Surgical Assistant Trainee
Surgical Tech
Surplus Material Assistant
Truck Driver (Berk/Liv)
Vision Services Asst. II
Warehouse Leadman (Berk/Liv)
Warehouseman (Berk/Liv)

KFH 01111



## APPENDIX F

### LETTER OF AGREEMENT
### <u>RETRAINING COMMITTEE</u>

The Employer agrees to designate a representative who will meet, at the Union's request, to discuss efforts to be made mutually to seek government funding for retraining purposes, whenever any significant event shall make this a reasonable course of action.

180

KFH 01112



## APPENDIX G

## LETTER OF AGREEMENT
## BILINGUAL ASSIGNMENTS

The Employer and the Union agree that no employee shall be required to use a second language to translate or interpret. Translating and interpreting may be requested of the employee by the Employer, but compliance with such request shall be voluntary on the employee's part.

Acceptance of a posted position is voluntary and thereby waives this provision.

181

KFH 01113

APPENDIX H

EXCERPT FROM LETTER OF AGREEMENT - JULY 20, 1972

Section 2 is included for reference purposes only as cited in
Article XI - Wage Rates, Section 9, Newly-Licensed LVNs

2)    The conditions under which Nursing Department employees working directly with patients are eligible for reclassification to Licensed Vocational Nurse, if such licensure is obtained after the date of their employment and without having taken the prescribed school program is as follows:

Employees who obtained their licensure prior to January 1, 1968 shall be reclassified and paid at the first step rate for Licensed Vocational Nurse retroactive to the date such licensure was obtained. Such employees shall remain at the first step rate and shall not accumulate credit for progression through the LVN salary range until they satisfy the criteria established by the Employer with respect to the administration of medications. Such date shall also be the date used to commence eligibility for future tenure increases.

Employees who obtain their licensure on or after July 20, 1972 shall be reclassified and paid at the step rate for Licensed Vocational Nurse which is closest to but greater than their current rate of pay effective the date such licensure was obtained. Such employees shall remain at that step rate and shall not accumulate credit for progression through the LVN salary range until they satisfy the criteria established by the Employer with respect to the administration of medication; and further, will not progress through the Licensed Vocational Nurse step rates until such time as an LVN vacancy exists. Such date shall also be the date used to commence eligibility for future tenure increases.

In no case, however, shall an employee be eligible for reclassification to LVN if she declines to perform those duties which are permitted by State law by virtue of her licensure.

KFH 01114



## APPENDIX I

### SERVICE PERFORMANCE PAY PROGRAM - PILOT PROJECT

Lump sum service performance payments will be made as follows to eligible employees based on service performance as rated by the Kaiser Permanente Health Plan Membership for the years **1998**, **1999** and **2000**.

#### Measurement Years: **1998**, **1999** and **2000**

| Performance Targets | Points Improvement | Payout Percentage |
|---|---|---|
| Threshold | 2 | 1.5% |
| Target | 3 | 2.0% |
| Stretch | 4 | 2.5% |

Performance Measurement:

The measurement instrument shall be the Kaiser Permanente Member and Patient Surveys to the following questions:

Thinking of your experiences in the past 12 months, how would you rate Kaiser Permanente on providing you with:

- Personal and responsive service
- Convenient and easy access

The percent of "very good" and "excellent" response ratings to these questions shall determine the year-end score for the measurement year. Points of improvement shall be determined by subtracting the prior year's year-end score from the measurement year's year-end score.

The percent of "very good" and "excellent" response ratings to these questions shall determine the year-end score for the measurement year. Points of improvement shall be determined by subtracting the prior year's year-end score from the measurement year's year-end score.

Payment Formula:

Eligible employees shall receive the percentage payout in accordance with the above schedule based upon the regional points of improvement. To determine the lump-sum payment, the payout percentage shall be multiplied by the employee's total wage compensation for the measurement year(s).

Eligible Employee:

183

KFH 01115

An eligible employee is an employee on the Kaiser Permanente payroll on March 1 following the measurement year and who has completed 300 hours of work in the measurement year.

Payment Date:

The first pay period after April 1 following the measurement year.

Kaiser Permanente Member and Patient Surveys:

The Employer reserves the right to modify, add or delete questions on the surveys or to modify the computation for all questions except for the survey question of:

Thinking of your experiences in the past 12 months, how would you rate Kaiser Permanente on providing you with:

- Personal and responsive service
- Convenient and easy access.

The administration of the surveys and survey processes shall be determined by Kaiser Permanente.

184

KFH 01116

DEFINITIONS:

Measurement Instrument:
    The Kaiser Permanente Member and Patient Surveys year-end results

Survey Questions:
- Personal and responsive service
- Convenient and easy access

Response Ratings:
    Percent of responses within the categories of "very good" and "excellent" for the above two survey questions

Measurement Year:
    January 1-December 31, **1998**, **1999** and **2000**

Payment Date:
    The first pay period after April 1 following the measurement year

Year-end Score:
    The response ratings for the years ending **1998**, **1999** and **2000**

Points of Improvement:
    The amount by which the measurement year's year-end score exceeds the prior year's year-end score.

Ex: [Year-end **1998** score] - [Year-end **1997** score] = Points of improvement for **1998**

Performance Targets:
    Designates the points of improvement at the end of the measurement year for the survey questions.

Performance Target Categories:
- Threshold
- Target
- Stretch

Payout Percentage:
    The percent of lump-sum payment that corresponds to the performance targets.

Payment Formula:
    The payout percentage designated by the performance targets multiplied by an employee's total wage compensation for a measurement year.

Eligible Employee:
    An employee on the payroll as of March 1 following the measurement year and who has completed 300 hours of work in the measurement year.

KFH 0



APPENDIX J

## JOINT TRAINING INSTITUTE ON UNION/MANAGEMENT RELATIONS (PILOT)

The parties agree to establish a region-wide joint Training Institute. A Board shall be established for this Institute and shall consist of five (5) management representatives and five (5) employee representatives and shall meet as necessary beginning in the first quarter of 1997. Employee representatives shall be designated by the Union and may include Union field representatives who are compensated by the Union. The combination of employee and Union representatives shall not exceed five (5) members. Such meetings shall be arranged and scheduled by mutual agreement. The Board shall identify and address joint employee/management labor relations development needs. In order to meet this objective, the Board shall implement joint education and training efforts which foster and enhance the relationships between employees and management and which improve employee/management understanding of the Collective Bargaining Agreement.

The Board shall convene under the following principles:

A.   The Board shall research the amount of funding necessary to meet the above objectives and present a budget recommendation to the Executive Vice President of Kaiser Foundation Health Plan and Executive Director of The Permanente Medical Group for approval. The recommended budget shall be submitted and reviewed by June 1, 1997, and shall include Institute budget needs for the remaining term of this Agreement.

B.   The Board shall have the authority to hire an Institute director or consultant. At the Board's direction, the director or consultant shall manage the funding, plan assessment and training activities, implement training, direct and oversee training efforts, identify appropriate external and internal resources, approve payment for training materials and resources utilized for the training efforts, and interview and hire consultants/trainers/speakers.

C.   This provision of the Collective Bargaining Agreement shall be considered a pilot approach to conducting joint employee/management labor relations training and shall extend to successor agreements only upon mutual agreement of the parties. Prior to the expiration of this Agreement, the Board shall assess the effectiveness of the Institute and prepare recommendations for consideration of the parties regarding the continued viability of the Institute.

D.   The employee representatives of the Board shall be compensated for time spent at Board meetings.

E.   Issues which are covered by the provisions of this Agreement, which are proper subjects of collective bargaining between the Employer and the Union, or which are the proper subject of the grievance procedure contained herein, shall not be discussed by this Board. Nothing in this Article shall be subject to the grievance and arbitration provisions of this Agreement, with

186

KFH 0



the exception of disputes related to the pay of employee committee members. Discussions or agreements made pursuant to this Article are non-precedent setting and may not be used in whole or in part in any dispute.

187

**KFH** 01119



APPENDIX K

LETTER OF AGREEMENT

KAISER PERMANENTE MEDICAL CARE PROGRAM
NORTHERN CALIFORNIA REGION
(Excluding the Fresno Medical Center)
and
H.C.W.U., LOCAL 250

MEMBER FOCUSED CARE INITIATIVE

Health Care Workers Union, Local 250 and Kaiser Permanente agree to the following with regard to the implementation of the Member Focused Care Initiative in the Northern California Region (excluding the Fresno Medical Center). The provisions contained herein will apply at the time a medical center introduces the Member Focused Care Initiative.

It is agreed and understood that each medical center shall retain the right to implement a portion or all of the Member Focused Care Initiative or not implement the Initiative at all.

1.    NOTICE OF IMPLEMENTATION:

When a Medical Center is prepared to implement the Member Focused Care Initiative, the following steps will be taken:

A.    The facility will provide the appropriate Union Field Representative (copy to the Union Kaiser Division Director) with thirty (30) days advance written notice of its intent to implement Member Focused Care.

B.    Within the thirty (30) day period described in A. above, a meeting at the facility will be held between the Union and facility management at a mutually agreed upon time and date.  The purpose of such meeting will be for management to advise the Union of its implementation and posting plan and to provide the Union with appropriate supportive documentation such as a list of affected employees, current schedules, bargaining unit seniority of affected employees, etc.

C.    Joint union-management departmental meetings at the facility will be held at mutually agreeable times to introduce implementation plans to affected employees and to answer questions from affected employees.

D.    Prior to implementation of layoffs, the Employer will meet with the Union to discuss alternatives to layoffs that will minimize the impact on employees.

E.    Member Focused Care positions will be posted.  Qualified employees will be awarded such positions based upon bargaining unit seniority.  It is understood that employees can only bid on "like" hours positions (i.e., 24 to 24 hours, 32 to 32 hours, etc.).  If "like" hours positions are not available, the Parties shall meet to discuss special situations.

188

F.  Daily staffing reductions in other nursing units will not affect the staffing assignments on the Member Focused Care units for a period of sixty (60) days post implementation, unless deemed necessary by operational requirements or permanent reduction in force.

G.  For the Service Partner classification, the duties of feeding patients and recording intake following meal completion shall not be implemented earlier than thirty (30) days after the initial implementation of Member Focused Care, unless mutually agreed by the parties to waive this provision.

2.  SENIORITY:

Kaiser Permanente agrees to adhere to the seniority provisions as outlined in the Collective Bargaining Agreement between Local 250 and Kaiser Permanente Medical Care Program.

Hospital-wide (KFH) seniority will be recognized within the KFH Nursing Department for the Local 250 positions.

The Employer will provide the Union with copies of all job postings prior to the actual posting of new positions.

3.  TRAINING:

Kaiser Permanente management recognizes the fact that transfer applicants may not possess all of the necessary or required job skills. Kaiser Permanente management, during the implementation stages, agrees to provide the necessary training to supplement some of the skills that transfer applicants would bring to the workplace. Necessary training will be at the Employer's expense.

Employees shall be given on-the-job training necessary to meet the minimum qualifications of the posted position. Such on-the-job training shall be determined by the Employer and reviewed with the Union.

With regard to layoffs resulting from employees' inability to satisfactorily demonstrate the skills required of the position at the conclusion of the training period or layoffs as a result of operational requirements to reduce in force, the parties agree to abide by the terms and conditions surrounding these issues that arise from the bargaining of the Collective Bargaining Agreement upon ratification.

KFH 01121

4. WAGES:

Wage rates are set forth in the Master Collective Bargaining Agreement and are reflected in Appendix D for the Service Partner and Care Partner (unlicensed) classifications.

5. POSITION QUALIFICATIONS:

The parties did not reach agreement on position qualifications for internal transfer applicants. Disputes arising out of or in connection with job bid denials shall be subject to the Dispute Resolution Process developed for the implementation of Member Focused Care.

6. DISPUTE RESOLUTION PROCESS:

It is the intent of the parties to utilize a proactive approach to resolving issues before they become grievances.

The Human Resources Consultant and/or the Service Director or designee and the Chief Shop Steward and/or Field Representative shall meet to resolve any and all disputes that may arise including, but not limited to, those that relate to awarding of jobs (and denials thereof) and the satisfactory completion of training in connection with the implementation of Member Focused Care.

Should the parties be unable to mutually resolve any issue(s), the Kaiser Division Director or his/her designee for Local 250 and the Patient Care Leader or his/her designee shall resolve the issue expeditiously. If the parties are unable to reach agreement they may elect to utilize a mediator. If there is still no resolution an expedited arbitration process will be used. Any decision made by the arbitrator shall be non-precedent setting, but shall be binding on both parties. All costs shall be borne equally by both parties.

7. NON-PRECEDENT SETTING:

It is understood and agreed by all parties that this Agreement shall not constitute precedent for either party nor shall either party use any portion of this Agreement in any pending or future case of a similar or dissimilar nature.

This Letter of Agreement shall become effective on the date of its execution by both parties and shall remain in effect until modified or canceled by mutual agreement.

The provisions of the Letter of Agreement relate solely to Member Focused Care and shall not be used or relied upon by either party for any other purposes.

KFH 01122

## APPENDIX L

### Agreement for Flexible Work Arrangement

_____ (Position Title)

This Agreement, effective _____, modifies the Collective Bargaining Agreement between the KAISER FOUNDATION HOSPITALS, THE PERMANENTE MEDICAL GROUP, INC., AND KAISER FOUNDATION HEALTH PLAN (hereinafter referred to as the "Employer") and the SEIU Local 250 HOSPITAL AND HEALTH CARE WORKERS' UNION, (hereinafter referred to as the "Union"). The agreement has been initiated at the request of the affected employees to implement a flexible work arrangement for all Regular Full-Time _____ within the _____ Department.

Nothing herein shall obligate the Employer to establish a flexible work arrangement.

The Employer and the Union agree to adopt a flexible work arrangement, commencing on Sunday. Full-time employees subject to this agreement will receive overtime compensation of one and one-half (1½) times their regular rate of pay for any hours worked in excess of forty (40) in a work week and double time for all hours worked in excess of twelve (12) in a workday.

The parties acknowledge that at least two-thirds (2/3) of the affected employees have voluntarily agreed in writing to work four (4) ten (10) hour shifts. (Affected employees include all employees in a readily identifiable work unit, such as a division, a department, a job classification, a shift, a separate physical location, or a recognized subdivision of any such work unit.) Additionally, a secret ballot vote was conducted in accordance with current California Labor Code. (**NOTE**: Please refer to the most recent Wage Order when preparing the agreement document.) At the end of one (1) year, if one-third (1/3) of the affected employees petition for a vote to terminate this agreement, the Employer will conduct a secret ballot vote. Provided that at least two-thirds (2/3) of the affected employees vote in support of the agreement, this agreement may be extended.

Unless otherwise provided below, all other provisions of the Collective Bargaining Agreement shall remain in force.

     a.      All full-time employees shall have the option to select a four-day, ten-hour-per-day schedule (hereinafter referred to as the "4x10 Schedule") or a five-day, eight-hour-per-day schedule (hereinafter referred to as the "5x8 Schedule"), subject to operational needs.

     b.      The overtime provisions of Article VIII, Section 3, of the Agreement that refer to premium pay for work performed in excess of eight hours in any one workday are waived for all full-time employees working a 4 x 10 Schedule.

191

KFH 01123



c.   The overtime provisions of the Industrial Welfare Commission Orders are waived for all full-time employees working a 4x10 Schedule. (**NOTE**: Please refer to the most recent IWC Wage Order for current citations when preparing the agreement document.)

d.   Accruals for sick leave, vacation, educational leave, etc., shall be based on full-time employees' scheduled hours per the agreement. Full-time employees covered by this agreement shall be allowed to utilize their vacation, sick leave, etc., in eight (8) hour increments (if on a 5 x 8 Schedule) or ten (10) hour increments (if on a 4 x 10 Schedule) up to their maximum allowable hours per the agreement.

e.   For holidays only, full-time employees covered by the agreement shall be allowed to utilize their maximum of eighty (80) hours of holiday benefits in ten (10) or eight (8) hour increments. Holidays shall be paid in accordance with the Collective Bargaining Agreement, except that, if a full-time employee covered by the agreement works on a holiday, he/she shall be paid at the rate of time and one-half (1½) and shall also be given a paid day off or an additional day's pay equal to the actual hours worked on such holiday, not to exceed ten (10) hours at straight-time pay. The Employer shall have the option to schedule three eight (8) hour shifts or two ten (10) and one four (4) hour shift, in order to meet operational needs and to avoid holiday staffing/overtime in excess of twenty-hour (24) hours.

f.   For purposes of Article IX, Shift Premium, the shift differential, if any, which applies at the start of the ten (10) hour shift, shall remain in affect for the complete shift.

g.   Employees will receive one (1) unpaid thirty (30) minute lunch period and two (2) rest periods per ten (10) hour shift. Such rest periods shall be taken in the middle of each five (5) hour segment.

h.   The Employer shall continue its policy of establishing scheduled days of work and days off, subject to operational needs. This agreement allows the affected department employees to work either a 4 x 10 Schedule or a 5 x 8 Schedule.

i.   Affected full-time department employees wishing to change from a 4 x 10 Schedule or a 5 x 8 scheduling must request such change in writing. No person will be allowed more than one change in each three (3) month period. Changes shall be subject to operational needs.

j.   Either party may terminate this agreement after thirty (30) days written notice is given to the other party.

k.   Upon termination of this agreement, the schedule in effect immediately preceding the implementation of this flexible work schedule shall be reinstated. Unless terminated in accordance with paragraph (j) above, this agreement shall remain in effect.

192

KFH 01124

This agreement covers all Regular Full-Time ( __classification title__ ) only in the (__department name__ ) Department and shall not constitute a precedent or practice for either party.

KAISER FOUNDATION HOSPITALS
THE PERMANENTE MEDICAL GROUP, INC.,
AND KAISER FOUNDATION HEALTH PLAN

BY:

_____       _____
Department Manager                                       Date

_____       _____
Human Resources Consultant                         Date

SEIU Local 250, Hospital and Healthcare
Workers' Union

_____       _____
SEIU Local 250 Representative                        Date

December 5, 2000

193

KFH 01125



## INDEX

|  | PARAGRAPH | PAGE |
|---|---|---|
| Anniversary Raise (see: Tenure Increases) |  |  |
| Arbitration | 295-296 | 61 |
| Areas - Definition of Areas I & II | Appendix A, Section 2 | 71 |
| Bereavement Leave | 207-209 | 42 |
| Bilingual Assignments | Appendix G | 188 |
| Breaks (see: Rest Periods) |  |  |
| Bulletin Boards | 282 | 58 |
| Business Agent (Field Representative) | 278-281 | 58 |
| Call-Ins | 88 | 20-21 |
| Casual Employees |  |  |
| - Assignment of Casual Work | 53 | 13 |
| - Benefits, Eligibility For | 98,103 | 23-24 |
| - Definition of Casual Employees | 98 | 23 |
| - Differential In-Lieu of Benefits | 102 | 23 |
| - Float Differential | 65-67 | 16 |
| - Pay for Holidays Worked | 152 | 32 |
| - Probationary Period | 285 | 59 |
| - Reclassification to Short-Hour, Temporary or Regular Status | 99 | 23 |
| - Seniority |  |  |
| - Definition | 28 | 6 |
| - Seniority Lists | 29 | 6 |
| - Tenure Steps | 104 | 24 |
| Checkoff | 19 | 4 |
| Child Care | 273-274 | 57 |
| Classification Review | 118-123 | 26-27 |
| Clerical Classifications | 130-138 | 28-30 |
| Confidentiality of Medical Records | 310 | 63 |
| Conscientious Objection | 275-277 | 57 |
| Demotion Between Areas I & II | Appendix A, Section 4 | 72 |
| Dental Plan (see "Insurance Benefits") | 242-245 | 50 |
| Differential In Lieu of Benefits |  |  |
| - Short-Hour, Temporary, Casual Employees | 102 | 23 |
| Discipline |  |  |
| - Cause for Discipline | 303,309 | 62-63 |
| - Letters of Warning | 305-307 | 63 |
| - Patient and Physician Complaints | 304 | 63 |
| - Performance Evaluations | 305-306 | 63 |
| - Performance/Production Standards | 309 | 63 |

194

KFH 01126



|                                                             | PARAGRAPH   | PAGE   |
| ----------------------------------------------------------- | ----------- | ------ |
| - Probationary Employees                                    | 285         | 58     |
| - Representation at Disciplinary Meetings                   | 280         | 58     |
| - Use of Materials from Personnel Files                     | 281         | 58     |
| Discrimination                                              | 26-27       | 6      |
| Distribution of "Standby" Time, Overtime, Additional Hours  | 73-75       | 18     |
| Dues                                                        | 19          | 4      |
| Duration of Agreement                                       | 319         | 66.    |
|                                                             |             |        |
| Educational Leave                                           |             |        |
| - Administration                                            | 214-216     | 43-44  |
| - Eligible Employees                                        | 210         | 42-43  |
| - Eligible Programs                                         | 211-213     | 43     |
| - Hours Paid                                                | 217-219     | 44-45  |
| - Night Shift Employees                                     | 219         | 45     |
| - Reports                                                   | 214         | 43     |
| - Requests for Leave                                        | 215         | 44     |
| Employer Indemnification                                    | 20          | 5      |
| Excerpt LVN Letter, July 20, 1972                           | Appendix H  | 189    |
|                                                             |             |        |
| Facility Safety Committee                                   | 25          | 6      |
| Float Differential                                          | 65-71       | 16-17  |
| Funeral Leave (See: Bereavement Leave)                      | 207-209     | 42     |
|                                                             |             |        |
| Grievances                                                  |             |        |
| - Definition of Grievance                                   | 286         | 59     |
| - Employer Grievances                                       | 300         | 61     |
| - Grievance Procedure                                       |             |        |
| - Arbitration                                               | 295-296     | 61     |
| - Minutes of Grievance Meetings                             | 301         | 61     |
| - Modification of Procedure                                 | 302         | 62     |
| - Precedent-Setting Settlements                             | 299         | 61     |
| - Steps 1-4                                                 | 288-296     | 59-61  |
| - Time Limits for Initial Filing                            | 288-289     | 59     |
| - Waiver of Time Limits                                     | 298         | 61     |
|                                                             |             |        |
| Health and Safety                                           | 23,25       | 5,6    |
| Health Plan (see Insurance Benefits)                        |             |        |
| Higher Classification, Relief In                            | 127-138     | 28-30  |
| Hiring                                                      | 17          | 4      |
| Holidays                                                    |             |        |
| - Birthday Holiday                                          | 144-145     | 30-31  |
| - Compensatory Time Off                                     | 153         | 33     |
| - Floating Holiday                                          | 146         | 31     |

KFH 01127

|  | PARAGRAPH | PAGE |
|---|---|---|
| - Holiday During Sick Leave | 191 | 39 |
| - Holiday During Vacation Period | 170 | 35 |
| - Holiday Observance | 139-143 | 30 |
| - Holiday Pay | 147-150,159-161 | 31-32,34 |
| - Holiday Scheduling | 155-158 | 33 |
| - Overtime Credit for Holidays Not Worked | 154 | 33 |
| - Paid Holidays | 139 | 30 |
| - Regular Full-time Employees | 147-150 | 31-32 |
| - Regular Part-time Employees | 151 | 32 |
| - Short-Hour, Temporary, and Casual Employees | 152 | 32 |
| - Sunday, Holidays Falling On | 159 | 34 |
| - Thanksgiving, Christmas, New Year's Day | 140-143 | 30 |
| Hours of Employment (see; Scheduling) | | |
|  | | |
| In-Service Education | 220-222 | 45 |
| Insurance Benefits | | |
| - Accidental Death & Dismemberment Coverage | 240-241 | 49 |
| - Dental Benefits | | |
| - Claims Disputes | 243 | 50 |
| - Coordination of Benefits | 245 | 50 |
| - Effective Date of Coverage | 241 | 49 |
| - Orthodontia Coverage | 244 | 50 |
| - Health Plan Benefits | | |
| - Description of Coverage | 231 | 47 |
| - Eligible Dependents | 232 | 47 |
| - Effective Date of Coverage | 234 | 47 |
| - Change in Plans | 235 | 47-48 |
| - Retiree Coverage | 237-239 | 48-49 |
| - Short-Hour Employees | 246 | 50-51 |
| - Leave of Absence, Coverage During | 200 | 40 |
| - Leave of Absence Coverage During Industrial Disability | 201 | 41 |
| - Life Insurance | 240-241 | 49 |
| - Optical Coverage | 231 | 47 |
| - Prescription Drug Coverage | 231 | 47 |
| - Psychiatric Coverage | 231 | 47 |
| - Summary Plan Description | 247 | 51 |
|  | | |
| Job Descriptions | 116-117 | 26 |
| Job Vacancies | | |
| - Notification of Union | 17 | 4 |
| - Posting | 51-52 | 13 |
| - Seniority | 45 | 12 |
| Joint Conference on Service Issues | 311 | 63-64 |

196

KFH 01128

| | PARAGRAPH | PAGE |
|---|---|---|
| Joint Training Institute on Union/Management Relations | Appendix J | 193-194 |
| Jury Duty Pay | 226-229 | 46 |
| | | |
| Labor-Management Common Interest Forum | 311-315 | 65 |
| Layoff and Recall (Article VI - Seniority) | | |
| - Mechanization | 37-44 | 10-12 |
| - Notice of Layoff | 36 | 10 |
| - Seniority | 32-35 | 7-10 |
| Leaves of Absence | | |
| - Benefit Accrual During Leave (Non-Industrial) | 197 | 40 |
| - Industrial | 200 | 41 |
| - Other Leaves | 195 | 40 |
| - Emergency Situations | 195-196 | 40 |
| - Industrial Disability Leave | 200-201 | 41 |
| - Non-Industrial Disability Leave | 197 | 40 |
| - Maternity Leave | 197 | 40 |
| - Modified Work Plans | 205 | 42 |
| - Insurance Benefits During Leave | 199 | 40 |
| - Industrial | 200 | 41 |
| - Other Leaves | 195-196 | 40 |
| - Return From leave | 202-204 | 41-42 |
| - Seniority Accrual | 28,201 | 7, 41 |
| - Written Confirmation | 198 | 40 |
| Licensed Vocational Nurses | Appendix H | 189 |
| Life Insurance (see: Insurance Benefits) | 239-240 | 49 |
| List of Classifications | Appendix B | 80-83 |
| | | |
| Maintenance, Service, and Technical Classifications | 124-128 | 27-28 |
| Meals | | |
| - Dietary Employees | 179-180 | 37 |
| - Meal Periods | 179-180 | 37 |
| Mechanization (see: Layoff) | 37-44 | 10-11 |
| Medical Insurance (see: Insurance Benefits) | 231-239 | 47-49 |
| Meetings, Mandatory | 91 | 22 |
| Member Focused Care Initiative | Appendix K | 195-197 |
| Mileage | 181 | 38 |
| | | |
| New Employees, Notification of | 18 | 4 |
| | | |
| On-Call (see: Casual Employees) | 98-101 | 23 |
| Overtime - Computation | 81-92 | 19-22 |
| - Credit Towards Overtime Computation | 91 | 22 |
| - "Allowed Time" | 91 | 22 |
| | PARAGRAPH | PAGE |

KFH 01129

| | PARAGRAPH | PAGE |
|---|---|---|
| - Jury Duty Pay | 230 | 47 |
| - Paid Holidays | 154 | 33 |
| - Standby Pay | 87-88 | 20-21 |
| - Sick Leave | 185 | 37-38 |
| - Vacation | 172 | 36 |
| - Non-Duplication of Overtime | 92 | 22 |
| - Notice of Overtime Requirements | 56 | 14 |
| - Overtime Rates | 84-86 | 20 |
| - Payroll Day | 83 | 19 |
| - Payroll Week | 82 | 19 |
| - Rest Period Between Shifts | 58 | 14 |
| - Seventh Consecutive Day | 61,86 | 15,20 |
| - Sixth Day | 85 | 20 |
| | | |
| Pay Day | 108-109 | 25 |
| Paycheck Deposit | 110 | 25 |
| Pension | 254-267 | 53-56 |
| Performance Evaluations | 305 | 63 |
| Personnel Files | 281 | 58 |
| Physical, Examinations, Annual | 251 | 52 |
| Position Specifications | Appendix C | 84-107 |
| Posting | | |
| - Job Vacancies | 51-52 | 13 |
| - Work Schedules | 56-57 | 14 |
| Premium Employees | 106-107 | 25 |
| Prescriptions - Drug Coverage (see: Insurance) | 231 | 47 |
| Probationary Employees | 283 | 59 |
| Promotion - Between Areas I & II | Appendix A, Section 4.B | 72 |
| Promotions | 47-48 | 12 |
| - Pay | 127,132,136 | 28,29,30 |
| - Permanent and Temporary Transfers | 129-138 | 29,30 |
| - Seniority | | |
| - Application | 30,31,45 | 7,12 |
| - Clerical Classifications | 130-138 | 29-30 |
| - Maintenance, Service & Technical Class. | 124-129 | 28-29 |
| - Written Transfer Requests | 48 | 12 |
| Purpose of Agreement | 1 | 1 |
| | | |
| Recall From Layoff | 34 | 9 |
| Recognition | 14 | 3 |
| Reduction in Force (see: Layoff-Recall) | 32-35 | 7-9 |
| | | |
| | PARAGRAPH | PAGE |
| Regular Employees | | |
| - Definition | 97 | 23 |
| - Benefit Accrual | 97,103 | 23,24 |

198

KFH 01130

| | PARAGRAPH | PAGE |
|---|---|---|
| Relief in a Non-Bargaining Unit | | |
| - Managerial Position | 107 | 25 |
| Reporting Pay | 89 | 21 |
| Resource Network California | Appendix L | ??? |
| Rest Periods | | |
| - Between Shifts | 58 | 14 |
| - During Shifts | 80 | 19 |
| Retraining Committee | Appendix F | 187 |
| Room and Personal Laundry | 176 | 37 |
| | | |
| Safety | 23,25 | 5,6 |
| Safety Committee | 25 | 6 |
| Safety Equipment | 178 | 37 |
| Savings Clause | 318 | 67 |
| Scheduling | | |
| - Alternative Schedules | 57-64 | 14-16 |
| - Change in Posted Schedules | 56-57 | 14 |
| - Change in Shift Assignment or Days Off | 57 | 14 |
| - Holiday Compensatory Time Off | 152 | 33 |
| - Normal Workweek | 55 | 14 |
| - Notice of Schedule Changes | 89,90 | 21,22 |
| - Posting of Schedules | 56-57 | 14 |
| - Rest Period Between Shifts | 58 | 14 |
| - Split Shift | 76-79 | 19 |
| - Standby Compensatory Time Off | 87-88 | 20-21 |
| - Weekends Off | 59-64 | 15-16 |
| - Starting and Quitting Times | 56 | 14 |
| Scope of Agreement | 2-9 | 1-2 |
| Seniority | | |
| - Accumulation | | |
| - Bargaining Unit Seniority | 28 | 6 |
| - Layoff and Recall, Seniority for | 32 | 8 |
| - Leave of Absence, Accumulation During | 28,202 | 6,42 |
| - Regular and Eligible Short-Hour Employees | 30-31 | 7 |
| - Seniority Lists | 29 | 7 |
| - Application | | |
| - Additional Hours Distribution | 74 | 18 |
| - Assignment of Casual Work | 53 | 13 |
| - Bidding on Job Vacancies | 45-52 | 12-13 |
| - Day Off Changes | 57 | 14 |
| | | |
| | PARAGRAPH | PAGE |
| - Holiday Compensatory Time Off | 152 | 33 |
| - Holiday Scheduling | 155-158 | 33-34 |
| - Layoff | 32 | 7-8 |
| - Leave of Absence, Upon Expiration of | 202 | 42 |
| - Leave of Absence, Upon Return From | 203-205 | 42 |

199

KFH 01131

| | PARAGRAPH | PAGE |
|---|---|---|
| - Overtime Distribution | 74 | 18 |
| - Promotion | 45 | 12 |
| - Recall From Layoff | 32 | 7-8 |
| - Reduction in Force | 32 | 7-8 |
| - Scheduling | | |
|   - Changes in Days Off | 57 | 14 |
|   - Changes in Shift Assignment | 57 | 14 |
|   - Emergency Changes in Work Schedules | 56 | 14 |
|   - Holidays | 155,156,158 | 33-34 |
|   - Vacations | 168-171 | 35-36 |
| - Standby Distribution | 73 | 18 |
| - Transfer | 45-50 | 12 |
| Service Performance Pay Program | Appendix I | 190-192 |
| Shift Assignment | 57 | 14 |
| Shift Premium | 93-96, Appendix E | 22-23,185 |
| Short-Hour Employees | | |
| - Benefits, Eligibility | 113,246 | 23,51 |
| - Definition | 98 | 23 |
| - Differential in Lieu of Benefits | 102 | 24 |
| - Eligible Short-Hour Employees | 31 | 7 |
| - Health Benefits | 246 | 51 |
| - Pay for Holidays Worked | 152 | 33 |
| - Probationary Period | 283 | 59 |
| - Seniority | | |
|   - Accumulation | 28 | 6 |
|   - Seniority Lists | 29 | 7 |
| - Tenure Steps | 104 | 24 |
| Sick Leave | | |
| - Accumulation | 182-184 | 38 |
| - Applicability | | |
|   - Illness | 186 | 39 |
|   - Medical and Dental Appointments | 189 | 39 |
|   - Psychological Treatment | 190 | 39 |
| - Accrual Requests | 195 | 40 |
| - Holiday During Sick Leave | 191 | 39 |
| - Pay | 185 | 38 |
| - Return From Sick Leave | 194 | 40 |
| - State Disability, Integration With | 192-193 | 39-40 |
| - Vacation, Illness or Injury During | 187-188 | 39 |
| | PARAGRAPH | PAGE |
| - Worker's Compensation, Integration With | 193 | 39 |
| Split Shifts | 76-79 | 19 |
| Standby | | |
| - Compensatory Time Off | 87 | 20 |
| - Distribution | 73 | 18 |
| - Holiday Standby Duty | 87 | 20 |
| - Pay | 87-88 | 20 |

KFH 01132

State Disability Insurance                                          192-193          39
Stewards
    - Disciplinary Meetings                                         280              58
    - Grievance Procedure                                           288-296          60-62
    - Performance Evaluations                                       305              63
    - Recognition                                                   279              58
    - Warning Letters                                               306              63
Strike                                                              283              59
Subcontracting                                                      10-13            2-3
Supervisory Employees                                               7-8              2

Tax Savings Retirement Plan (TSA/401K)                              272              57
Temporary Employees
    - Benefits, Eligibility For                                     98,103           23,24
    - Definition                                                    98               23
    - Differential In-Lieu of Benefits                              102              24
    - Float Differential                                            67               16
    - Pay for Holidays Worked                                       152              33
    - Probationary Period                                           283              59
    - Seniority
        - Accumulation                                              28               6
        - Seniority Lists                                           29               7
    - Tenure Steps                                                  104              24
Tenure Increases (Steps/Anniversary Raise)
    - Effective Date                                                111-115          25-26
    - Short-Hour, Casual, Temporary Employees                       104              24
Therapeutic Abortions (Conscientious Objection)                     275-277          57-58
Training Committee                                                  223-226          46
Transfers
    - Permanent and Temporary Transfers                             128,129,132-136  28-30
    - Seniority
        - Application                                               30               7
    - Tenure Step
        - Clerical Classifications                                  133-135          29-30
        - Maintenance, Service & Technical Classifications          128-129          28-29
    - Written Transfer Requests                                     51               13


                                                                    PARAGRAPH        PAGE
Transfers Between Areas I & II                                      Appendix A, Sections 4-5   72-73

Unemployment Compensation                                           252-253          53
Uniforms - Laundry                                                  177              37
Union and Management Responsibility                                 22-24            5
Union Business                                                      278-282          58
Union Membership                                                    15-16            3-4

Vacations
    - Accrual                                                       162-165          34-35

KFH 01133

- Call Back During Vacation .............................................. 172 ............ 36
- Carry Over .............................................................. 168 ............ 35
- Holiday During Vacation ............................................... 170 ............ 36
- Illness or Injury During Vacation .................................... 187-188 ......... 39
- Pay .................................................................... 167 ............ 35
- Radiation Leave ....................................................... 173 ............ 36
- Scheduling ............................................................ 168-171 ........ 35-36
- Termination, Pro Rata Vacation Upon .................................. 174-175 ......... 36
Volunteers ............................................................... 21 ............ 5

Wage Administrative Practices ........................................... Appendix A ....... 71
- Geographic Area Definitions (Areas I & II) ........................... Section 2 ........ 71
- Promotions, Demotions and Transfers ................................. Sections 4,5 ... 72,73
- Structure A (All Employees Hired On or Before 10/25/86) ............. Section 1-A ...... 71
- Structure B-1 (Area I Employees Hired After 10/25/86) ............... Section 1-B ...... 71
- Structure B-2 (Area II Employees Hired After 10/25/86) .............. Section 1-C ...... 71
Wage Rates
- Structure A/B-1 / 2000-2004 ......................................... Appendix D .... 108-135
- Structure B-2 / 2000-2004 ........................................... Appendix D .... 136-159
Wage Review & Equity Adjustments ....................................... 312 ............ 65
Wages - General
- No Reduction in Wage Rates .......................................... 106 ............ 25
- Premium Employees ................................................... 106-107 ......... 25
- Tenure Steps ........................................................ 104,111-115 . 24,25-26
- Wage Equality ....................................................... 27 ............. 6
Warning Letters ......................................................... 305-307 ......... 63
Weekend Off Guarantee ................................................... 60-64 ......... 15-16
Work In A Higher Classification ......................................... 127,132 ...... 28,29
Work In A Non-Bargaining Unit Position .................................. 107 ............ 25
Working Conditions ...................................................... 25 ............. 6
Workload Distribution ................................................... 72 ............. 18
Work Stoppages .......................................................... 283-284 ......... 59
Workers' Compensation - Integrate With Sick Leave ...................... 193 ............ 39

KFH 01134

1

**PROOF OF SERVICE**

2     I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Seyfarth Shaw LLP, 560 Mission Street, Suite 3100,

3     San Francisco, California 94105. On August 24, 2007, I served the within document(s):

4     DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

5

6     ☐    I sent such document from facsimile machine (415) 397-8549 on August 24, 2007. I certify that said transmission was completed and that all pages were received and that

7     a report was generated by facsimile machine (415) 397-8549 which confirms said transmission and receipt. I, thereafter, mailed a copy to the interested party(ies) in this

8     action by placing a true copy thereof enclosed in sealed envelope(s) addressed to the parties listed below.

9

10     ☒    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below.

11

12     ☐    by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

13

14     ☐    by placing the document(s) listed above, together with an unsigned copy of this declaration, in a sealed Federal Express envelope with postage paid on account and deposited with Federal Express at San Francisco, California, addressed as set forth

15     below.

16     ☐    by transmitting the document(s) listed above, electronically, via the e-mail addresses set forth below.

17

18     Charles J. Katz
Law Offices of Charles J. Katz

19     475 El Camino Real, Suite 300
Millbrae, CA 94030

20

21     Elladene Lee Katz
Law Offices of Elladene Lee Katz

22     327 North San Mateo Drive, Suite 9
P.O. Box 517
San Mateo, CA 9440

23

24     I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same

25     day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than on day after the date of deposit for mailing in affidavit.

26

27     I declare that I am employed in the office of a member of the bar of this court whose direction the service was made. Executed on August 24, 2007, at San Francisco, California.

28

_____
JESSICA E. LIBBEY

SF1 28300172.1 / 23815-900015